DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
MICHAEL F. TUBACH (S.B. #145955)
mtubach@omm.com
DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:     +1 415 984 8700
Facsimile:     +1 415 984 8701

Attorneys for Defendant
JHL BIOTECH, INC.

[Additional Counsel and Representations Listed on
Signature Pages]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| GENENTECH, INC., | Case No. 3:18-cv-06582-WHA |
| Plaintiff, | **DEFENDANTS JHL BIOTECH, INC., RACHO JORDANOV, AND ROSE LIN'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF CRIMINAL CASE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, | Date:    February 14, 2019<br>Time:    8:00 a.m.<br>Dept:    Courtroom 12, 19th Floor<br>Judge:   Hon. William H. Alsup |
| Defendants. | Complaint Filed: October 29, 2018<br>Trial Date: Not Set |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       PLEASE TAKE NOTICE that on February 14, 2019, at 8:00 a.m., or as soon thereafter as

3   this matter may be heard by the above-captioned Court, at 450 Golden Gate Avenue, Courtroom

4   12, 29th Floor, San Francisco, CA 94102, before the Honorable William H. Alsup, Defendants

5   JHL Biotech, Inc., Racho Jordanov, and Rose Lin will, and hereby do, move this Court for an

6   order staying this case pending resolution of the related criminal case, *United States v. Lam*, Case

7   No. 3:18-cr-00527-WHA (N.D. Cal. Oct. 25, 2018).

8       Defendants' motion is based on this Notice of Motion and Motion; the Memorandum of

9   Points and Authorities, which has been filed and served concurrently herewith; the accompanying

10  Declarations of Michael F. Tubach, Edward W. Swanson, and Amy Craig, along with supporting

11  exhibits; the Proposed Order submitted herewith; all pleadings and papers already on file with the

12  Court in this action; and any such evidence and argument as may be presented at the hearing

13  before this Court.

14

15      Dated:  January 4, 2019

DARIN W. SNYDER
16                                          MICHAEL F. TUBACH
DAVID R. EBERHART
17                                          O'MELVENY & MYERS LLP

18                                          By:     /s/ Michael F. Tubach
Michael F. Tubach

19                                          Attorneys for Defendant
20                                          JHL BIOTECH, INC.

21

22

23

24

25

26

27

28

1    Dated:  January 4, 2019

2                                          Edward W. Swanson, SBN 159859
                                           ed@smllp.law
3                                          Britt Evangelist, SBN 260457
                                           britt@smllp.law
4                                          SWANSON & McNAMARA LLP
                                           300 Montgomery Street, Suite 1100
5                                          San Francisco, California 94104
                                           Telephone: (415) 477-3800
                                           Facsimile: (415) 477-9010
6
                                           By:    /s/ Edward W. Swanson
7                                                      Edward W. Swanson

8                                          Attorneys for Defendant
                                           RACHO JORDANOV
9
     Dated:  January 4, 2019
10
                                           MILES EHRLICH (SBN 237954)
11                                         miles@ramsey-ehrlich.com
                                           ISMAIL RAMSEY (SBN 189820)
12                                         izzy@ramsey-ehrlich.com
                                           AMY E. CRAIG (SBN 269339)
13                                         amy@ramsey-ehrlich.com
                                           KATHARINE KATES (SBN 155534)
14                                         katharine@ramsey-ehrlich.com
                                           RAMSEY & EHRLICH LLP
15                                         803 Hearst Avenue
                                           Berkeley, CA 94710
16                                         (510) 548-3600 (Tel)
                                           (510) 291-3060 (Fax)
17
                                           By:    /s/ Amy E. Craig
18                                                      Amy E. Craig

19                                         Attorneys for Defendant
                                           ROSE LIN
20

21

22

23

24

25

26

27

28

                                ii
                                           DEFS. JHL BIOTECH, JORDANOV, AND
                                           LIN'S NOTICE OF MOT. & MOT. TO STAY;
                                           MEM. P. & A. – 3:18-CV-06582-WHA

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF RELEVANT FACTS ............................................................. 2

III.    ARGUMENT ...................................................................................................... 5

    A.      Defendants' Interests Strongly Favor a Stay.......................................... 5

        1.      The Individual Defendants' Interests Weigh in Favor of a Stay............. 6

        2.      JHL's Interests Also Weigh in Favor of a Stay............................. 9

    B.      Genentech Will Be Only Minimally Prejudiced by a Stay ..................... 12

    C.      Other Factors Favor a Stay.................................................................... 13

        1.      Judicial Efficiency Is Served by a Stay ...................................... 14

        2.      The Public Interest Will Be Best Served by a Stay.................................. 14

IV.    CONCLUSION .................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

Page

**CASES**

3

*Baker v. SeaWorld Entm't Inc.*,
 2018 WL 1726534 (S.D. Cal. 2018) ................................................................. 15

4

5

*Baxter v. Palmigiano*,
 425 U.S. 308 (1976) ............................................................................................. 7

6

*Braswell v. United States*,
 487 U.S. 99 (1988) ............................................................................................... 9

7

8

*Bridges v. Geringer*,
 2013 WL 3888328 (N.D. Cal. 2014) ................................................... 5, 6, 10, 11

9

*Bruner Corp. v. Balogh*,
 819 F. Supp. 811 (E.D. Wis. 1993) ................................................................... 6, 9

10

*Cadence Design Sys. v. Avant!, Inc.*,
 1997 U.S. Dist. LEXIS 24147 (N.D. Cal. 1997) ........................................ 5, 9, 11

11

12

*CFPB v. Glob. Fin. Support, Inc.*,
 2016 U.S. Dist. LEXIS 64959 (S.D. Cal. 2016) ................................................ 14

13

*Chao v. Fleming*,
 498 F. Supp. 2d 1034 (W.D. Mich. 2007) ......................................................... 6, 8

14

15

*Clifford v. Trump*,
 2018 WL 3435419 (C.D. Cal. 2018) .................................................................. 14

16

*Clinton v. Jones*,
 520 U.S. 681 (1997) ............................................................................................. 5

17

18

*Cont'l Ins. Co. v. Cota*,
 2008 WL 4298372 (N.D. Cal. 2008) .................................................................... 7

19

*David Peyser Sportswear, Inc. v. Quality Payroll Sys., Inc.*,
 2008 WL 4185704 (E.D.N.Y. 2008) .................................................................... 9

20

21

*Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,
 2012 WL 12895670 (C.D. Cal. 2012) ............................................... 9, 12, 13, 15

22

*Douglas v. United States*,
 2006 WL 2038375 (N.D. Cal. 2006) .................................................................. 14

23

24

*Englebrick v. Worthington Indus., Inc.*,
 670 F. Supp. 2d 1048 (C.D. Cal. 2009) ............................................................... 8

25

*ESG Capital Partners LP v. Stratos*,
 22 F. Supp. 3d 1042 (C.D. Cal. 2014) ................................................................. 7

26

*Fed. Ins. Co. v. Laney*,
 2013 WL 594267 (N.D. Cal. 2013) ...................................................................... 6

27

28

*Fed. Sav. & Loan. Ins. Corp. v. Molinaro*,
 889 F.2d 899 (9th Cir. 1989) ............................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page

*Jones v. Conte*,
   2005 WL 1287017 (N.D. Cal. 2005)................................................................. 13, 14

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1994)............................................................. 5, 12, 13, 15

*McCormick v. Rexroth*,
   2010 WL 934242 (N.D. Cal. 2010)................................................................. 6, 13

*Medina v. Argent Mortg. Co.*,
   2006 WL 1305230 (N.D. Cal. 2006)............................................................ 7, 9, 13

*SEC v. Alexander*,
   2010 WL 5388000 (N.D. Cal. 2010)................................................................ 6, 8, 9

*SEC v. Dresser Indus. Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ....................................................................... 5, 6

*Square 1 Bank v. Lo*,
   2014 WL 7206874 (N.D. Cal. 2014).................................................................... 6

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin. Inc.*,
   2009 WL 2136986 (E.D. Cal. 2009)........................................................... 8, 10, 15

*Thissel v. Murphy*,
   2017 WL 6945402 (N.D. Cal. 2017)..................................................................... 5

*United States v. Dist. Council of N.Y.C.*,
   832 F. Supp. 644 (S.D.N.Y. 1993)..................................................................... 11

*United States v. Lam, et al.*,
   No. CR-18-527-WHA (N.D. Cal. Oct. 25, 2018) ........................................... 1, 4, 15

*United States v. Moussaoui*,
   382 F.3d 453 (4th Cir. 2004).............................................................................. 12

*United States v. Taveras*,
   436 F. Supp. 2d 493 (E.D.N.Y. 2006), *rev'd in part on other grounds sub nom.*
   *United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008) .............................................. 12

*United States v. Theresius Filippi*,
   918 F.2d 244 (1st Cir. 1990)............................................................................... 12

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 2123560 (N.D. Cal. 2017)..................................................................... 14

*Wimbledon Fund, SPC v. Graybox, LLC*,
   2017 U.S. Dist. LEXIS 5517 (C.D. Cal. 2017)........................................................ 9

**STATUTES**

18 U.S.C. § 1030 .................................................................................................... 2

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

18 U.S.C. § 1832 ................................................................................................................. 2

4

28 U.S.C. § 1783 ............................................................................................................... 11

5

**RULES**

6

Fed. R. Crim. P. 17(e)(2) ................................................................................................. 11

7

Fed. R. Evid. 801(d)(2)(E) ............................................................................................... 11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   <u>INTRODUCTION</u>

3    Defendants JHL Biotech, Inc. ("JHL"), Racho Jordanov, and Rose Lin move to stay this

4  civil action in favor of the related criminal case pending in this Court. By Genentech's own

5  admission, the civil and criminal cases "concern substantially the same transaction or events, are

6  predicated upon the same underlying facts, involve the theft of the same intellectual property, and

7  are brought against the same parties." Genentech, Inc.'s Administrative Mot. to Relate Cases at

8  2:16-18, *United States v. Lam, et al.*, No. CR-18-527-WHA (N.D. Cal. Oct. 25, 2018), ECF

9  No. 19. Courts routinely stay civil actions in favor of pending criminal actions where there is a

10  substantial overlap between the two cases. Here, the overlap is nearly complete. To allow both

11  actions to proceed would put the individual defendants in the untenable position of having to

12  choose between exercising their constitutional rights against self-incrimination and defending

13  themselves in the civil action. And although JHL does not have a privilege against self-

14  incrimination, it will be severely hampered in defending itself from the civil claims given that the

15  key witnesses in the case will refuse to testify. Not staying the case as to JHL will also unfairly

16  provide the government access to discovery via the civil action to which it would not otherwise

17  be entitled.

18    By contrast, any prejudice to Genentech from a stay would be minimal. Genentech waited

19  two years to file this civil action, and did so only after the government had filed the related

20  criminal charges. Genentech was willing to wait so long because it evidently viewed the criminal

21  case as more important than pursuing its own civil claims. It should not be heard to complain now

22  that the very proceeding it helped the government to bring results in a delay of the civil action it

23  waited so long to file. Moreover, any stay in this action will not go into effect until after this

24  Court has ruled on Genentech's request for a preliminary injunction. The Court therefore will

25  have resolved any issues of immediate and irreparable harm.

26    The Court should stay this civil action pending the outcome of the criminal case.

27

28

## II.    STATEMENT OF RELEVANT FACTS

Genentech filed this civil action on October 29, 2018, hours after the government unsealed the indictment in the related case. (Pl's. Mot. for Prelim. Inj. 17:21-26, ECF No. 20; *see also* Tubach Decl.[1] ¶ 2.) In its 73-page Complaint, Genentech admits that it learned about the allegations that underlie the Complaint in October 2016. (Compl. ¶ 36.) The Complaint and the indictment both allege that former Genentech employees misappropriated trade secrets from Genentech for the benefit of JHL. (Compl. ¶¶ 1-3; Tubach Decl. ¶ 2, Ex. 1.) The indictment was returned sealed on October 25, 2018, one week after JHL's counsel informed FBI Agent Letitia Wu that JHL, a foreign corporation, would not accept service of a grand jury subpoena. (Tubach Decl. ¶ 3.)

The civil action names as defendants JHL and two of its founders and current executives, Racho Jordanov and Rose Lin, as well as individual defendants Xanthe Lam, Allen Lam, James Quach, and John Chan. (Compl. ¶¶ 48, 53, 57, 61, 64, 67.) JHL is a biotech company incorporated in the Cayman Islands, with its principal place of business in Taiwan. (Lin Decl.[2] ¶¶ 4-5.) JHL's main business is developing "biosimilar" versions of existing biopharmaceutical products. (Compl. ¶ 1.) The Complaint alleges that defendants Allen Lam, Quach, and Chan were either employees of or consultants to JHL and that defendant Xanthe Lam "engag[ed] in concurrent employment or other activity with JHL." (*Id*. ¶¶ 53, 58, 68, 70, 295.) The Complaint further alleges that Xanthe Lam is a former Genentech employee who was terminated by Genentech in October 2017 based on her supposed role in the allegations in the Complaint. (*Id.* ¶ 255.)

The indictment names four of the defendants also named in the civil action—Xanthe Lam, Allen Lam, Quach, and Chan. (Tubach Decl. ¶ 2, Ex. 1. ¶¶ 5-8) It charges defendants with theft of trade secrets, 18 U.S.C. § 1832, violations of the Computer Fraud and Abuse Act, 18 U.S.C.

---

[1] "Tubach Decl." refers to the Declaration of Michael F. Tubach in Support of Defendants JHL Biotech, Inc., Racho Jordanov, and Rose Lin's Motion to Stay Proceedings Pending Resolution of Criminal Case filed herewith.

[2] "Lin Decl." refers to the Declaration of Dahjan Lin in Support of Defendant JHL Biotech, Inc.'s Motion to Dismiss.

1   § 1030, and related charges for conspiracy, aiding and abetting, and criminal forfeiture. (Tubach
2   Decl. ¶ 2, Ex. 1.)

3       JHL is not named in the indictment, but JHL is central to the allegations in the indictment
4   and the purported beneficiary of the criminal defendants' alleged acts. (*See* Tubach Decl. ¶ 2,
5   Ex. 1.) Likewise, while Jordanov and Lin are not "named" in the indictment, the allegations
6   involving JHL's "founders" in the indictment pertain to them. (*See, e.g.*, Tubach Decl. ¶ 2, Ex. 1
7   ¶ 13 ("Since JHL's inception as a company, *its founders* solicited XANTHE LAM and ALLEN
8   LAM to help JHL develop biosimilars designed to compete directly with Genentech's
9   products[.]") (emphasis added); *see also id.* ¶¶ 14, 15.) For example, the indictment alleges that
10  Allen Lam disclosed a particular Genentech trade secret "to JHL" via a January 7, 2014 email.
11  (*Id.* ¶ 9(c), (d) (claiming as a trade secret procedures for identifying Pulmozyme and quantifying
12  the activity of Pulmozyme using methyl green assay); *id.* at Count 5 (alleging as an overt act in
13  the trade secret theft conspiracy a January 7, 2014 email from Allen Lam to JHL regarding
14  "Methyl Green Assay for Quantitating the Activity of Pulmozyme").) Genentech alleges in the
15  civil action that Jordanov and Lin were the recipients of that January 7, 2014 email. (*See* ECF
16  No. 17, Balough Decl. ISO Mot. for Prelim. Inj. (redacted) ¶ 21(iii) ("[O]n January 7, 2014, Mr.
17  Lam sent Racho Jordanov, Rose Lin, and others from JHL 'the methyl green activity assay used
18  by the innovator' and provided additional instructions for how JHL should execute the essay
19  [sic]."); *id.* Ex. 8 (redacted copy of 1/7/2014 email).)

20      The facts underlying the Complaint and the indictment are the same. Both pleadings
21  describe the same course of conduct during the same time period. Both allege that JHL and a
22  similar group of individuals misappropriated trade secrets from Genentech to aid JHL in
23  developing biosimilars of the same four Genentech drugs—Pulmozyme, Rituxan, Herceptin, and
24  Avastin (the "Reference Drugs"). Specifically, the Complaint and the indictment both allege that
25  Defendants misappropriated trade secrets from Genentech, including (i) Genentech's analytical
26  methods for testing the stability, potency, purity, chemical composition and identity, and quality
27  of the Reference Drugs; (ii) information related to the formulation of the Reference Drugs; and
28  (iii) protocols and systems related to quality assurance and control and manufacturing processes.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1   (Compl. ¶ 16; Tubach Decl. ¶ 2, Ex. 1 ¶ 9.) Both pleadings also include allegations related to

2   computer fraud and abuse. (Compl. ¶¶ 325-335; Tubach Decl. ¶ 2, Ex. 1 ¶¶ 27-38.)

3          Recognizing the similarities between the Complaint and the indictment, on October 30,

4   2018, Genentech filed an administrative motion to relate the civil and criminal cases. Genentech,

5   Inc.'s Administrative Motion to Relate Cases, *United States v. Lam, et al.*, No. CR-18-527-WHA

6   (N.D. Cal. Oct. 29, 2018), ECF No. 19. In the motion, Genentech stated that the civil and criminal

7   cases "concern substantially the same transaction or events, are predicated upon the same

8   underlying facts, involve the theft of the same intellectual property, and are brought against the

9   same parties." *Id.* 2:16-18. On November 6, 2018, the Court granted the motion and ordered the

10  cases related. Related Case Order, ECF No. 23.[3]

11         Given the overlapping subject matter of the criminal and civil proceedings, the individual

12  defendants intend to assert their Fifth Amendment right against self-incrimination until the

13  criminal case has concluded. (*See* Swanson Decl.[4] ¶¶ 6-7; Craig Decl.[5] ¶¶ 6-7; Divelbiss Decl.[6]

14  ¶¶ 6-7; Boersch Decl.[7] ¶¶ 7-8; Schwartz Decl.[8] ¶¶ 2-11.)

15

16

17  [3] On November 13, 2018, the Court issued a tentative scheduling order in the criminal
    proceedings, setting a trial date for July 22, 2019.  (ECF No. 32.)  On December 11, 2018, the

18  parties in the criminal action filed a proposed schedule with a trial date of April 2020, which the
    Court adopted at a hearing on December 18, 2018.  In the civil action, Genentech filed a motion

19  for a preliminary injunction ("PI Motion") on November 5, 2018.  (ECF No. 20.)  On November
    16, 2018, the Court entered a scheduling order, setting the timing for Defendants to respond to the

20  PI Motion and the Complaint, and to move for a stay.  (ECF No. 43.)

21  [4] "Swanson Decl." refers to the Declaration of Edward W. Swanson in Support of Defendants
    JHL Biotech, Inc., Racho Jordanov, and Rose Lin's Motion to Stay Proceedings Pending Resolution

22  of Criminal Case filed herewith.

23  [5] "Craig Decl." refers to the Declaration of Amy Craig in Support of Defendants JHL Biotech,
    Inc., Racho Jordanov, and Rose Lin's Motion to Stay Proceedings Pending Resolution of

24  Criminal Case filed herewith.

    [6] "Divelbiss Decl." refers to the Declaration of Rod Divelbiss in Support of Defendant John
25  Chan's Motion to Stay Proceedings Pending Resolution of Criminal Case.

26  [7] "Boersch Decl." refers to the Declaration of Martha Boersch in Support of Defendant James
    Quach's Joinders in Defendants' Motions to Stay Proceedings Pending Resolution of Criminal

27  Case, Opposition to Preliminary Injunction, and to Dismiss.

    [8] "Schwartz Decl." refers to the Declaration of David H. Schwartz in Support of the Lam
28  Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Lam Defendants'
    Motion to Stay.

1    ### III.    ARGUMENT

2    Defendants seek to stay these proceedings pending resolution of *United States v. Lam*. The

3    Court "'has broad discretion to stay proceedings as an incident to its power to control its own

4    docket.'" *Thissel v. Murphy*, 2017 WL 6945402, at *1 (N.D. Cal. 2017) (quoting *Clinton v. Jones*,

5    520 U.S. 681, 706 (1997)). The Court's decision "whether to stay civil proceedings in the face of

6    a parallel criminal proceeding should be made 'in light of the particular circumstances and

7    competing interests involved in the case,' including 'the extent to which the defendant's fifth

8    amendment rights are implicated.'" *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25

9    (9th Cir. 1994) (quoting *Fed. Sav. & Loan. Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.

10   1989)). In addition to evaluating Fifth Amendment concerns, courts in the Ninth Circuit consider

11   the following factors:

12   > (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or
     > any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
13   > (2) the burden which any particular aspect of the proceedings may impose on
     > defendants; (3) the convenience of the courts in the management of its cases, and
14   > the efficient use of judicial resources; (4) the interests of persons not parties to the
     > civil litigation; and (5) the interest of the public in the pending civil and criminal
15   > litigation.

16   *Keating*, 45 F.3d at 324-25 (citing *Molinaro*, 889 F.2d at 903). Each of these factors weighs in

17   favor of granting a stay here.

18   ### A.    Defendants' Interests Strongly Favor a Stay

19   In the absence of a stay, the individual defendants will be faced with the untenable choice

20   of defending themselves in the civil action or waiving their Fifth Amendment privileges. Given

21   the near total overlap between the allegations in the indictment and the Complaint, the interests of

22   justice require a stay of these proceedings. *See Bridges v. Geringer*, 2013 WL 3888328, at *2

23   (N.D. Cal. 2014) ("'[T]he strongest case for deferring civil proceedings until after completion of

24   criminal proceedings is where a party under indictment for a serious offense is required to defend

25   a civil or administrative action involving the same matter.'") (quoting *SEC v. Dresser Indus. Inc.*,

26   628 F.2d 1368, 1375-76 (D.C. Cir. 1980)). The burden on JHL of individual defendants'

27   invocation of their Fifth Amendment rights will severely hamper JHL's ability to defend itself.

28   *See Cadence Design Sys. v. Avant!, Inc.*, 1997 U.S. Dist. LEXIS 24147, at *5 (N.D. Cal. 1997)

("'[C]orporate defendants are entitled to stay a civil action where a parallel criminal proceeding prejudices the corporation's right to defend itself.'") (quoting *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 816 (E.D. Wis. 1993)). A stay should be granted until the criminal proceedings have concluded.

### 1.    The Individual Defendants' Interests Weigh in Favor of a Stay

The Fifth Amendment rights of an individual are implicated when he is a defendant in a civil proceeding and has been indicted in a criminal proceeding related to the same issues. *See, e.g.*, *Fed. Ins. Co. v. Laney*, 2013 WL 594267, at *3 (N.D. Cal. 2013) (Alsup, J.) (collecting cases and granting stay). There is a concern in such cases "that allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege against self-incrimination, result in discovery beyond the scope of what the Federal Rules of Criminal Procedure allow, expose the defense strategy, or otherwise cause prejudice." *Square 1 Bank v. Lo*, 2014 WL 7206874, at *1-*2 (N.D. Cal. 2014) (granting stay where both actions implicated "same nucleus of facts"). Where, as here, an indictment has been returned covering the same subject matter and core issues as the civil complaint, the case for a stay is strongest. *See Bridges*, 2013 WL 3888328, at *2 ("'[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.'") (quoting *Dresser*, 628 F.2d at 1375-76). The degree of the overlap between the civil and criminal cases is of particular importance when evaluating whether to stay the proceedings. *SEC v. Alexander*, 2010 WL 5388000, at *3 (N.D. Cal. 2010) ("[W]here the civil proceeding wholly or substantially overlaps with the criminal proceeding, a court may be justified in staying the civil case[.]"). Indeed, "[s]ome courts have gone so far as to recognize the extent of the overlap as the 'most important factor.'" *McCormick v. Rexroth*, 2010 WL 934242, at *2 (N.D. Cal. 2010) (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007)).

There can be no serious dispute that the factual overlap between the civil and criminal proceedings is extensive. Genentech acknowledged as much when it stated in its administrative motion to relate that "[b]oth actions concern substantially the same transaction or events, are

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1   predicated upon the same underlying facts, involve the theft of the same intellectual property, and

2   are brought against the same parties." (ECF No. 19.) The complaint and the indictment plainly

3   cover the "same nucleus of facts." *See Cont'l Ins. Co. v. Cota*, 2008 WL 4298372, at *2 (N.D.

4   Cal. 2008) (staying civil proceedings where "[i]t is undisputed that all of the civil action and the

5   criminal action spring from the same nucleus of facts").

6          Given this substantial factual overlap, the criminal defendants' Fifth Amendment rights

7   are directly implicated. *See, e.g.*, *Medina v. Argent Mortg. Co.*, 2006 WL 1305230, at *2 (N.D.

8   Cal. 2006) (rights of criminal defendants "clearly implicated based on the similarity of the

9   allegations contained in the criminal complaint with those raised in the present action"). A stay is

10  thus required to protect their Fifth Amendment privilege without forcing them to choose between

11  asserting that privilege and mounting a defense in the civil action. Moreover, assuming the

12  individual defendants invoke their privilege against self-incrimination and refuse to provide

13  substantive discovery responses or testimony, they face the prospect of having an adverse

14  inference drawn against them in the civil action. *See Baxter v. Palmigiano*, 425 U.S. 308, 317-18

15  (1976) (upholding adverse inference from inmate's invocation of privilege against self-

16  incrimination in civil disciplinary proceedings); *ESG Capital Partners LP v. Stratos*, 22 F. Supp.

17  3d 1042, 1046 (C.D. Cal. 2014) ("While a defendant in a criminal case may constitutionally assert

18  her Fifth Amendment rights with no adverse consequence, a trier of fact in a civil case may draw

19  an adverse inference from invocation of the Fifth Amendment."). It would be unfair for the

20  individual defendants to have adverse inferences drawn against them in the civil action while they

21  await trial on virtually identical criminal charges.

22          In addition to forcing the individual defendants to decide between invoking their Fifth

23  Amendment rights and defending themselves in this action, allowing the case to proceed would

24  unfairly permit the government access to discovery to which it is not otherwise entitled for use

25  against the defendants in the criminal case. While in a criminal case a defendant has only a

26  limited duty to disclose those documents he intends to use at trial, the disclosure obligations in a

27  civil case are much broader and are required at the beginning of the case. Given the similarities

28  between the two cases, any disclosures defendants provide in this case will be directly relevant to

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

issues in the criminal case. As a result, if the case is not stayed as to all defendants, the

government could have access to discovery—either from JHL or any individual defendants who

choose not to invoke their Fifth Amendment right—that it would not normally have in a criminal

case, including initial disclosures, document productions, and statements made in response to

interrogatories, document requests, requests for admission, and in depositions. The requested stay

is thus warranted because "broad civil discovery would unfairly expand the scope of criminal

discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." *Alexander*, 2010 WL

5388000, at \*5.

Although individual defendants Lin and Jordanov have not been indicted, their Fifth

Amendment rights are nevertheless directly implicated and support a stay for the same reasons.

No different from the indicted defendants, Jordanov and Lin should not have to choose between

exercising their constitutional right against self-incrimination in the face of an active criminal

investigation that directly affects them, or waiving that privilege to defend themselves in related

civil litigation. An individual need not be subject to any formal criminal proceedings or

indictment to exercise his Fifth Amendment rights; "[t]he right to assert one's privilege against

self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution."

*Englebrick v. Worthington Indus., Inc.*, 670 F. Supp. 2d 1048, 1050 (C.D. Cal. 2009) (internal

quotation and citation omitted); *see also Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum*

*Fin. Inc.*, 2009 WL 2136986, at \*3 (E.D. Cal. 2009) ("The mere possibility of criminal

prosecution is all that is necessary for the Fifth Amendment privilege against self-incrimination to

be invoked."). The government's investigation is not over, and there remains a potential that they

and others could face criminal charges. Where the allegations of the criminal and civil matters

significantly overlap and there is evidence that civil defendants, though as yet unindicted, face the

real prospect of criminal prosecution, courts have found a stay warranted. *See, e.g.*, *Taylor, Bean*,

2009 WL 2136986, at \*1-3 (granting motion to stay as to indicted and unindicted codefendants

where "pending criminal case and this civil case arise out of [the same] allegations," and while

only two of the defendants had been indicted, "the civil complaint alleges that all three individual

defendants were involved in the alleged fraudulent scheme"); *Chao*, 498 F. Supp. 2d at 1038-40

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1   (issuing a stay where "issues framed by any indictment to be handed down [would] be

2   coextensive with those in" the civil case, and where the threat of "an indictment appear[ed] to be

3   much more than some fanciful and far-off possibility"); *David Peyser Sportswear, Inc. v. Quality*

4   *Payroll Sys., Inc.*, 2008 WL 4185704, at *3 (E.D.N.Y. 2008) (issuing stay as to unindicted civil

5   defendant (Veit) where codefendant in civil case (Geller) had been indicted, and the "relationship

6   of Geller and Veit and the facts arising from that relationship . . . are inextricably interwoven in

7   both the civil and criminal actions").

8         In addition, the government should not be entitled to piggyback on the civil action to

9   obtain evidence for use in its criminal investigation that is beyond the scope of its criminal

10  subpoena powers. *See Alexander*, 2010 WL 5388000, at *5.

11              **2.    JHL's Interests Also Weigh in Favor of a Stay**

12        A stay is also appropriate where the Fifth Amendment rights of certain individuals will

13  prejudice another defendant's ability meaningfully to defend itself in a civil action. *See Cadence*,

14  1997 U.S. Dist. LEXIS 24147, at *5 ("'[C]orporate defendants are entitled to stay a civil action

15  where a parallel criminal proceeding prejudices the corporation's right to defend itself.") (quoting

16  *Bruner*, 819 F. Supp. at 816). Although JHL, as a corporation, does not have a Fifth Amendment

17  right against compulsory self-incrimination, *Braswell v. United States*, 487 U.S. 99, 107 (1988), it

18  will be prejudiced by the individual defendants' anticipated assertion of their Fifth Amendment

19  privileges. As a result, JHL will be forced to proceed with this case without being able to present

20  key testimony in its defense.

21        In similar situations involving unindicted corporate defendants, courts have granted stays

22  where allowing the civil proceedings to continue was likely to impede the corporation's ability to

23  mount a meaningful defense. *See, e.g.*, *Wimbledon Fund, SPC v. Graybox, LLC*, 2017 U.S. Dist.

24  LEXIS 5517, at *12-13 (C.D. Cal. 2017) (finding unindicted corporate entity would likely be

25  prejudiced by its managing member and key witness's assertion of his Fifth Amendment

26  privilege); *Delphi Connection Sys., LLC v. Koehlke Components, Inc.*, 2012 WL 12895670, at *2

27  (C.D. Cal. 2012) (describing prejudice to corporation where its president, who had not been

28  indicted, would invoke Fifth Amendment rights); *Medina*, 2006 WL 1305230, at *2 (granting

1  stay where individual defendants whose Fifth Amendment rights will be implicated are "the

2  persons most knowledgeable and the persons whom the corporation would designate to testify on

3  its behalf").

4      *Bridges v. Geringer* involved a situation similar to the instant case, in which a court stayed

5  civil proceedings brought against a bank, its vice president, and three other individual defendants

6  who were not bank employees, related to an alleged Ponzi scheme. 2013 WL 3888328, at *1.

7  Plaintiffs in *Bridges* brought claims for conspiracy to commit fraud and violations of Section

8  12(a)(2) of the Securities Act of 1934 against all defendants, as well as aiding and abetting fraud,

9  aiding and abetting breach of fiduciary duty, and negligent misrepresentation claims against the

10  bank defendant. *Id.* The *Bridges* court found that a stay was warranted as to all parties, including

11  the bank, because it would not be possible to determine the bank's liability without delving into

12  the actions of the individual defendants. *Id.* at *4. For example, the *Bridges* court pointed to the

13  aiding and abetting claims, noting that "the Court cannot determine if the Bank aided and abetted

14  the [individual] Defendants without establishing what the [individual] Defendants did." *Id.*

15      The same is true here. For example, count one of the Complaint alleges that defendants,

16  including JHL, misappropriated trade secret information to which Xanthe Lam had access in the

17  course of her employment at Genentech. (Compl. ¶¶ 259-70.) Specifically, Genentech alleges that

18  "Defendants acquired Genentech's confidential, proprietary and trade secret information from or

19  through Xanthe, and knew or had reason to know that the information was acquired by improper

20  means." (*Id.* ¶ 264.) Disproving this claim as to JHL will require the testimony of Xanthe Lam, as

21  well as the individual defendants to whom she allegedly passed this information. But the

22  individual defendants have indicated that they intend to invoke their Fifth Amendment privilege

23  against self-incrimination until the criminal case is concluded. Given that all of the alleged

24  perpetrators of the trade secret misappropriation, as well as JHL's founders and executives, are

25  expected to refuse to testify in the civil proceedings, JHL will be severely hampered in its ability

26  to defend itself against these and the other serious allegations in the Complaint. *See Taylor, Bean*,

27  2009 WL 2136986, at *3 (finding a corporate defendant would be "greatly prejudiced in it[s]

28  ability to meaningfully defend itself" where Fifth Amendment rights of key corporate employees

1  were implicated) (citing *Cadence Design Sys. v. Avant!, Inc.*, 1997 U.S. Dist. LEXIS 24147 (N.D.

2  Cal. 1997) (other citations omitted)). The same analysis applies equally to the claim based on

3  aiding and abetting others; it will not be possible to determine if JHL "aided and abetted the

4  [individual] Defendants without establishing what the [individual] Defendants did." *Bridges*,

5  2013 WL 3888328, at *1.[9]

6      As with the individual defendants, JHL faces the additional potential prejudice of an

7  adverse inference against it if the individual defendants assert their Fifth Amendment privileges

8  and refuse to testify in the civil proceedings. In particular, given Jordanov's and Lin's roles at

9  JHL, there is a possibility that Jordanov's and Lin's refusal to testify on grounds of self-

10  incrimination could result in an adverse inference being drawn against JHL. *See, e.g.*, *United

11  States v. Dist. Council of N.Y.C.*, 832 F. Supp. 644, 651 (S.D.N.Y. 1993) (in certain

12  circumstances, "courts have held that the Fifth Amendment invocation of an employee [is] proper

13  and competent evidence against an employer in civil litigation"). In addition, JHL will be at a

14  further disadvantage when it comes to obtaining relevant discovery because of Genentech's pre-

15  suit investigation. Genentech conducted a two-year internal investigation into the allegations in

16  the Complaint, apparently including interviews with individual defendants Xanthe Lam and

17  Quach. (Compl. ¶¶ 253, 256.) Genentech may attempt to use any statements made in those

18  interviews against JHL and the other defendants, Fed. R. Evid. 801(d)(2)(E) (statements of

19  coconspirator in furtherance of the conspiracy admissible as non-hearsay), but JHL would be

20  unable to examine Xanthe Lam or Quach if they refused to testify on Fifth Amendment grounds.

21  Basic notions of fairness support a stay under these circumstances.

22      Further, given the collaboration between Genentech and the government (*see* Compl.

23  ¶ 248 (noting Genentech's ongoing cooperation with the U.S. Attorney's Office investigation)),

24  the government may seek to obtain for use in its criminal investigation whatever information JHL

25  produces in the civil action. This could give the government a broader reach to its investigatory

26

27

28

---

[9] JHL separately argues in its Motion to Dismiss briefing, also filed today, that the aiding and abetting claim fails.  (ECF No. 57.)

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

powers than it otherwise has, given that JHL is not subject to the grand jury's subpoena power.[10]

*See* 28 U.S.C. § 1783 and Fed. R. Crim. P. 17(e)(2); *see also United States v. Moussaoui*, 382 F.3d 453, 463-64 (4th Cir. 2004) (noting the "well established and undisputed principle that the process power of the district court does not extend to foreign nationals abroad"); *United States v. Theresius Filippi*, 918 F.2d 244, 246 n.2 (1st Cir. 1990) ("The United States has no subpoena power over a foreign national in a foreign country."); *United States v. Taveras*, 436 F. Supp. 2d 493, 509 (E.D.N.Y. 2006) ("the federal district court's power of subpoena does not extend to non-citizens beyond the nation's borders"), *rev'd in part on other grounds sub nom. United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008). This would be unfair to the individual defendants for the reasons described above, but it would also be unfair to JHL, as it would allow the government to circumvent the limitations on its investigative powers based on the evident close coordination between Genentech and the government. Indeed, the simultaneous unsealing of the criminal indictment and filing of the civil action one week after JHL declined to accept service of a grand jury subpoena strongly suggests that the government and Genentech coordinated the filings of the criminal and civil charges precisely so the government could seek access to JHL documents produced in the civil action that it could not otherwise obtain.

## B.   Genentech Will Be Only Minimally Prejudiced by a Stay

The second factor courts evaluate in determining the propriety of a stay is the potential prejudice to the plaintiff. *Keating*, 45 F.3d at 324-25. Although courts typically find that plaintiffs have an interest in a speedy resolution of their civil claims, that concern is minimized here by Genentech's delay in filing the Complaint. *See Delphi*, 2012 WL 12895670, at *2 (fact that plaintiff waited six months to file complaint after alerting authorities of the defendants' allegedly illegal behavior "suggests to the Court that the remedies it seeks are not so pressing that a stay would cause it irreparable harm"). As Genentech has admitted, it became aware of the conduct alleged in the Complaint in October 2016, but waited two years before filing this action.

---

[10] JHL has separately moved to dismiss for lack of personal jurisdiction.  To the extent the Court grants that motion, the motion to stay would be moot as to JHL but not as to the individual defendants.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1  (Compl. ¶ 244.) Although Genentech asserts it delayed filing a civil complaint to avoid tipping

2  off Xanthe Lam to the ongoing criminal investigation (*id*. ¶ 248), Genentech's decision to wait

3  shows that it was content to defer a resolution of its civil claims. Moreover, Genentech waited a

4  year to file its complaint even after the FBI executed a search warrant on Xanthe and Allen Lam's

5  home in September 2017 and Genentech terminated her employment in October 2017.  (*Id*. ¶¶ 37,

6  255.) Having waited two years to file its civil complaint to benefit from the criminal

7  investigation, Genentech should await resolution of the resulting criminal charges before

8  proceeding on its civil claims. *See Medina*, 2006 WL 1305230, at *2 (noting plaintiff's lack of

9  "particular urgency regarding the prosecution of their civil action" as a factor weighing against a

10  finding of prejudice to plaintiff); *Delphi*, 2012 WL 12895670, at *2 (granting stay in part because

11  plaintiff waited six months after alerting authorities of the allegedly illegal behavior before filing

12  complaint).

13       Any potential prejudice to Genentech from delay is further minimized because a stay will

14  be entered only after this Court rules on Genentech's motion for a preliminary injunction. By

15  definition, the Court will have addressed and resolved any potential threat of irreparable harm. A

16  delay in Genentech's suit for money damages is of reduced significance, particularly given that

17  JHL is years away from selling any biosimilars of Genentech products. *See Jones v. Conte*, 2005

18  WL 1287017, at *2 (N.D. Cal. 2005) (harms that may be remedied by monetary damages not

19  reason to deny a stay). In addition, any prejudice to Genentech will be minimized by the likely

20  overlap between witnesses and evidence in the criminal and civil cases. *See McCormick*, 2010

21  WL 934242, at *3 ("[T]he fact that the witnesses for the two proceedings are likely to include

22  many of the same people providing much the same testimony should reduce the danger that any

23  testimony will be lost as a result of the stay."). In fact, as discussed below, Genentech may benefit

24  from a stay to the extent the criminal action resolves overlapping factual issues.

25       **C.    Other Factors Favor a Stay**

26       In addition to the potential prejudices to the parties, other factors that are to be considered

27  include the convenience of the Court and the interests of the public or any third parties. *Keating*,

28  45 F.3d at 324-25. Defendants are not aware of any third parties whose interests will be impacted

by a stay of these proceedings, but, as discussed below, the Court and the public will both benefit

from a stay of the civil proceedings pending resolution of the criminal matter.

### 1.      Judicial Efficiency Is Served by a Stay

Because the instant case is at an early stage, a stay pending resolution of the criminal

proceedings would promote judicial economy and efficiency. "[A] number of courts have

concluded that staying a parallel civil proceeding in its early stages may prove more efficient in

the long run." *CFPB v. Glob. Fin. Support, Inc.*, 2016 U.S. Dist. LEXIS 64959, at *15 (S.D. Cal.

2016) (collecting cases). A stay could help simplify the civil case and narrow the issues. *See*

*Clifford v. Trump*, 2018 WL 3435419, at *5 (C.D. Cal. 2018) (the possibility "that the outcome of

the criminal investigation will benefit the parties and the Court by streamlining the issues and

questions presented in this action" weighed in favor of a stay); *Douglas v. United States*, 2006

WL 2038375, at *6 (N.D. Cal. 2006) (noting that the results of a criminal trial may save "some

witnesses the time and cost of appearing at all"); *Jones*, 2005 WL 1287017, at *2 (finding that a

stay would conserve judicial resources by permitting the criminal investigation to resolve

common issues of fact).

In contrast, allowing the civil case to go forward without a stay would likely increase the

burden on the Court. The individual defendants will likely invoke their Fifth Amendment

privileges, foreseeably leading to discovery disputes and the need for Court intervention.

*Clifford*, 2018 WL 3435419, at *5 (noting the likelihood of discovery disputes and finding that

judicial efficiency weighs in favor of a stay); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL

2123560, at *5 (N.D. Cal. 2017) (assertion of Fifth Amendment privilege led to proliferation of

contentious discovery disputes). A stay would allow civil discovery to proceed in the future

unencumbered by Fifth Amendment concerns. *Jones*, 2005 WL 1287017, at *2 ("Staying the case

makes efficient use of judicial resources by insuring that common issues of fact will be resolved

and subsequent civil discovery will proceed unobstructed by concerns regarding self-

incrimination.") (internal quotation omitted).

### 2.      The Public Interest Will Be Best Served by a Stay

Courts often find that the final factor—the public interest—weighs in favor of a stay.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1    "[T]he public's interest in the integrity of the criminal case is entitled to precedence over the civil

2    litigant." *Taylor, Bean*, 2009 WL 2136986, at *4 (internal quotation omitted). Staying the civil

3    proceedings and allowing the criminal case to go forward helps "prevent premature disclosure of

4    criminal discovery materials." *Baker v. SeaWorld Entm't Inc.*, 2018 WL 1726534, at *3 (S.D.

5    Cal. 2018). A stay to protect the criminal proceedings is particularly crucial in cases such as this

6    one, which have received significant press coverage. *See Keating*, 45 F.3d at 326 ("[i]n such high

7    visibility situations, it is especially necessary to guard the rights of defendants, and concern for

8    the public deterrence value of an enforcement proceeding must not be allowed to override the

9    individual defendant's due process rights"). Although Genentech may argue that the public has an

10   interest in preventing trade secret theft, the criminal proceedings will protect this interest. "In fact,

11   the public interest is likely better served by the criminal proceedings, considering that the U.S.

12   Attorney will be acting on behalf of the general public." *Delphi*, 2012 WL 12895670, at *2.

13   Here, "[Genentech] only represents its own interests, and any benefits to the public will be

14   incidental." *Id.* at *2. The public interest factor thus also weighs in favor of a stay.

## IV.    CONCLUSION

16         For the foregoing reasons, the Court should stay the instant proceedings pending

17   resolution of the criminal proceedings in *United States v. Lam.*

19   Dated:  January 4, 2019

                                        DARIN W. SNYDER
20                                       MICHAEL F. TUBACH
                                        DAVID R. EBERHART
21                                       O'MELVENY & MYERS LLP

22                                       By:    /s/ Michael F. Tubach
                                               Michael F. Tubach
23
                                        Attorneys for Defendant
24                                       JHL BIOTECH, INC.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

Dated:  January 4, 2019

Edward W. Swanson, SBN 159859
ed@smllp.law
Britt Evangelist, SBN 260457
britt@smllp.law
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

By:      /s/ Edward W. Swanson
                  Edward W. Swanson

Attorneys for Defendant
RACHO JORDANOV

Dated:  January 4, 2019

MILES EHRLICH (SBN 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (SBN 189820)
izzy@ramsey-ehrlich.com
AMY E. CRAIG (SBN 269339)
amy@ramsey-ehrlich.com
KATHARINE KATES (SBN 155534)
katharine@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

By:      /s/Amy E. Craig
                  Amy E. Craig

Attorneys for Defendant
ROSE LIN

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: January 4, 2019

/s/ Michel F. Tubach
Michael F. Tubach

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S NOTICE OF MOT. & MOT. TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA