1    Edward W. Swanson, SBN 159859
     ed@smllp.law
2    Britt Evangelist SBN 260457
     britt@smllp.law
3    SWANSON & McNAMARA LLP
     300 Montgomery Street, Suite 1100
4    San Francisco, California 94104
     Telephone: (415) 477-3800
5    Facsimile: (415) 477-9010
6
7    Attorneys for RACHO JORDANOV
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11                     SAN FRANCISCO DIVISION
12

| | |
|---|---|
| GENENTECH, INC., | Case No. 3:18-CV-06582-WHA |
| Plaintiff, | **DEFENDANT RACHO JORDANOV'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT UNDER FRCP 12(b)(6) AND JOINDER IN JHL BIOTECH INC.'S MOTION TO DISMISS** |
| v. | |
| JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, Defendants. | **Judge:** Hon. William H. Alsup<br>**Courtroom:** 12 - 19th Floor<br>**Date:** February 14, 2018<br>**Time:** 8:00 a.m. |

23   / / /
24
25
26   / / /
27
28

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ........................................................................................... 1

3   II.   SUMMARY OF RELEVANT ALLEGATIONS AGAINST MR. JORDANOV ................. 1

4   III.  ARGUMENT ................................................................................................ 4

5       A.   The Absence of Allegations of Wrongful Conduct by Mr. Jordanov After the Enactment

6            of the DTSA is Fatal to Plaintiff's First Cause of Action ..................................... 4

7       B.   Plaintiff Has Not Pled Primary Liability as to Mr. Jordanov under the DTSA or the

8            CUTSA (the First and Second Causes of Action) ............................................. 5

9       C.   Plaintiff Fails to State a Claim for Conspiracy Under California Law (Third Cause of

10           Action) ............................................................................................... 9

11      D.   There is no Civil Conspiracy Claim Under the DTSA ..................................... 10

12
13      E.   Causes of Action Five and Seven Should be Dismissed for the Reasons Stated in JHL's

14           Motion to Dismiss ................................................................................ 11

15
16  IV.   CONCLUSION ........................................................................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

**FEDERAL CASES**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) ........... 6

*Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331 (N.D. Ga. 2017) ...................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 8

*Athena Feminine Techs. Inc. v. Wilkes,*
    WL 4079927 (N.D. Cal. Sept. 13, 2011) ...................................................... 11

*ATS Prod., Inc v. Champion Fiberglass, Inc.*,
    2015 WL 6552698 (N.D. Cal. Oct. 28, 2015) ................................................... 8

*Attia v. Google LLC*, 2018 WL 2971049 (N.D. Cal. June 13, 2018) ............................... 4

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    2018 WL 2298500 (N.D. Cal. May 21, 2018) ............................................... 4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 8

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*,
    2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) .................................................. 4

*Gilbrook v. City of Westminster,* 177 F.3d 839 (9th Cir. 1999) ................................. 11

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ........................................ 11

*MedioStream, Inc. v. Microsoft Corp*, 869 F.Supp.2d 1095 (N.D. Cal. 2012) .................... 5

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 271 F. Supp. 3d 835 (E.D.V.A. 2017) .................... 10

**STATE CASES**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994). .................... 9

*Choate v. County of Orange*, 86 Cal.App.4th 312 (2000) ...................................... 9, 10

*Metro Traffic Control v. Shadow Traffic*, 22 Cal.App.4th 853 (1994) ........................... 6

*PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368 (2000) ............................................. 6

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

*Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773 (1979)........................................................................ 9

**STATUTES**

18 U.S.C. § 1836............................................................................................................................. 10

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

1

2 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3 **I.    INTRODUCTION**

4    The complaint alleges that defendant Racho Jordanov, and others at JHL Biotech, Inc.,

5 misappropriated trade secrets in violation of state and federal law.  Plaintiff's allegations fall

6 short of meeting the applicable pleading standards in a number of respects.

7    First, with regard to Plaintiff's First Cause of Action for violating the DTSA, Plaintiff has

8 failed to allege wrongful conduct by Mr. Jordanov after the enactment of that statute in May

9 2016, which it must do to sustain a claim under the law.

10    Second, Plaintiff cannot sustain its Second Cause of Action for violating the CUTSA,

11 because it has not alleged that Mr. Jordanov either knowingly participated in the trade secret

12 theft or knew of and consented to the theft.  Plaintiff alleges only that Mr. Jordanov recruited a

13 Genentech employee to work at JHL and then worked with her on JHL drug product formulation

14 projects while she was on a leave of absence from Genentech.  In light of the fact that

15 Genentech's drug product formulations are publicly disclosed, these allegations do not create a

16 reasonable inference that Mr. Jordanov knew or should have known of the trade secret theft and

17 that he participated in it or consented to it.  Plaintiff's DTSA claim fails for the same reasons.

18

19    Finally, Plaintiff has failed to plead an actionable conspiracy cause of action against Mr.

20 Jordanov, because the conspiracy cause of action alleged by Plaintiff (Third Cause of Action) is

21 invalid under both California and federal law.  In addition, Plaintiff has failed to sufficiently

22 allege facts establishing that Mr. Jordanov conspired with others to steal Plaintiff's trade secrets.

23 **II.    SUMMARY OF RELEVANT ALLEGATIONS AGAINST MR. JORDANOV**

24    The complaint alleges five causes of action against Mr. Jordanov.  The first three allege

25 misappropriation of trade secrets in violation of the DTSA (First Cause of Action),

26 misappropriation of trade secrets in violation of the CUTSA (Second Cause of Action), and

27

28

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

conspiracy to misappropriate trade secrets in violation of both the DTSA and the CUTSA (Third Cause of Action).  With respect to all three causes of action, Plaintiff alleges a limited scope of conduct by Mr. Jordanov: he recruited Ms. Lam to work at JHL, she worked with him at JHL on formulations for JHL's biosimilars during the fall and winter of 2013 while she remained employed by Genentech, and he knew Ms. Lam mentored one of JHL's formulation scientists, John Chan.

The complaint focuses primarily on the allegation that Mr. Jordanov and others at JHL solicited Xanthe Lam, a then-current Genentech employee, and Alan Lam, a former Genentech employee, to work at JHL.  *See* Complaint, ¶12 (alleging "JHL's unlawful scheme commenced in 2013, when JHL founders Racho Jordanov and Rose Lin solicited Xanthe and her husband to help JHL develop biosimilar versions of four Genentech medicines"); *id*. at ¶ 27 (stating that as part of the theft conspiracy, "at Jordanov and Lin's request, Xanthe took a month-long trip in December 2013 to work as a 'Visiting Scientist' in JHL's laboratory in Taiwan"); *id*. at ¶ 142-43 ("Defendants Racho Jordanov and Rose Lin emailed Xanthe Lam at her personal email address to offer her a consulting job for JHL . . . In September 2013, Jordanov and Lin invited Xanthe via her personal email to come and work in-person on formulation in JHL's lab in Taiwan[.]").  Plaintiff also alleges that Ms. Lam accepted that invitation and worked with Mr. Jordanov and others at JHL on formulations for JHL's products during the fall and winter of 2013, (*see id*. at ¶ 157 (alleging that in December 2013 "Xanthe went about her work as a JHL employee and agent, assisting JHL's formulation and analytical development efforts. Jordanov and Lin worked closely with Xanthe during that time, attending meetings together on formulation strategy . . ."); *id*. at ¶ 142 ("Xanthe, Lin, and Jordanov also discussed the raw materials and equipment that Xanthe would need to conduct formulation work on two of JHL's biosimilars[.]"); *id*. at ¶ 153 ("Xanthe was present at a grand opening of JHL's manufacturing facility in Taiwan on December 5, 2013, and was photographed raising a glass alongside Racho Jordanov . . ."), and

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

that during this time period, Mr. Jordanov and others were aware of her continued employment by Genentech. *Id*. at ¶ 26 ("All the while, JHL's co-founders, Racho Jordanov and Rose Lin, well understood that Xanthe was employed at Genentech."); *id*. at ¶ 143 ("Before, during, and after this period, Racho Jordanov, Rose Lin, and JHL knew that Xanthe was employed by Genentech.").  However, Plaintiff also alleges that Ms. Lam told Mr. Jordanov and others that she would be taking a leave from Genentech during her work for JHL.  *See* Complaint, ¶ 145 (alleging that in an October 2013 email, Ms. Lam told her niece that she would "be taking my sabbatical leave from my company this December (Dec. 2-31st) and joining a biotechnology company in Taiwan as a Visiting Scientist"); *id*. at ¶ 254(a) (Ms. Lam stating she went to JHL during her sabbatical from Genentech); *id*. at ¶ 144 (alleging Ms. Lam emailed a friend and informed him that she would be working at JHL while on her sabbatical); *id*. at ¶ 142 (stating that Ms. Lam told Mr. Jordanov that her ability to work for JHL for a month "would depend on her ability to find someone to cover for her on her ongoing projects for Genentech"); *id*. at ¶ 143 (accord).

    Plaintiff additionally alleges that Mr. Jordanov knew of Ms. Lam's mentoring or coaching of one of JHL's formulation scientists, John Chan, and that she terminated that relationship out of concern for her Genentech job.  *Id*. at at ¶ 174 ("Xanthe also stated that Racho Jordanov and Rose Lin took her and Allen Lam out to dinner to thank Xanthe for 'educating' and 'sharing science' with John Chan," a formulation scientist at JHL and that upon hearing that Ms. Lam would no longer mentor John Chan, Mr. Jordanov told Ms. Lam "he understood the concern, in light of Xanthe's employment at Genentech").

    In addition to the above, Plaintiff alleges, without any factual support, that Mr. Jordanov and others at JHL requested that Ms. Lam use Genentech's trade secrets in performing her work at JHL, and that he and others knowingly used those trade secrets to develop JHL's biosimilar products.  *Id*. at ¶ 13 ("[T]he Lams provided JHL with confidential, proprietary, and trade secret

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

information from Genentech, at the behest of Jordanov and Lin, that helped accelerate JHL's development of biosimilar versions of Genentech medicines."); *id.* at ¶ 26 (alleging that Mr. Jordanov and others "knowingly received and utilized a significant amount of stolen Genentech confidential materials and know-how, which JHL then put to use in its own product development, formulation, manufacturing, and regulatory efforts").

## III.   ARGUMENT

### A.   The Absence of Allegations of Wrongful Conduct by Mr. Jordanov After the Enactment of the DTSA is Fatal to Plaintiff's First Cause of Action

Under federal law, the DTSA applies only to conduct that occurs *after* the date of enactment on May 11, 2016. *Attia v. Google LLC,* 2018 WL 2971049, *10 (N.D. Cal. June 13, 2018) (*citing Defense of Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376*). A complaint alleging a DTSA claim must state facts establishing misappropriation or use by the particular defendant after this date. *See Id.* at *10-12*; Becton, Dickinson & Co. v. Cytek Biosciences Inc.,* 2018 WL 2298500, *5 (N.D. Cal. May 21, 2018, Chesney, J.) (dismissing DTSA claims against five individual defendants where complaint did not contain allegations that defendants participated in using plaintiff's trade secrets after May 2016); *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc*., 2017 WL 1436044 at *4 (N.D. Cal. Apr. 24, 2017) (dismissing DTSA claim where the complaint contained insufficient "facts about when post-enactment use occurred").  The complaint alleges generally that JHL continues to possess and use Plaintiff's trade secret to the present day. *See*, *e.g*., Complaint, ¶ 41 ("From 2013 to the present, JHL has continued to use Genentech's confidential, proprietary, and trade secret information[.]"); *id.* at ¶ 189 ("On information and belief, JHL continues to possess, use, and benefit from the Genentech confidential, proprietary, and trade secret information that Defendants misappropriated[.]").  The Complaint, however, contains no factual allegations that Mr. Jordanov himself disclosed, acquired, or used any Genentech trade secrets after May 11, 2016.  Instead, the allegations against Mr. Jordanov center on the fall and winter of 2013 time

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

period.  *E.g.*, *id.* at ¶ 27 (stating that as part of the theft conspiracy "at Jordanov and Lin's request, Xanthe took a month-long trip in December 2013 to work as a 'Visiting Scientist' in JHL's laboratory in Taiwan"); *id.* at ¶ 143 ("In September 2013, Jordanov and Lin invited Xanthe via her personal email to come and work in-person on formulation in JHL's lab in Taiwan[.]"); *id.* at ¶ 157 (alleging that in December 2013 "Xanthe went about her work as a JHL employee and agent, assisting JHL's formulation and analytical development efforts. Jordanov and Lin worked closely with Xanthe during that time, attending meetings together on formulation strategy . . .").  These allegations are insufficient to bring Mr. Jordanov's conduct within the scope of the DTSA, and the First Cause of Action should be dismissed.

### B.  Plaintiff Has Not Pled Primary Liability as to Mr. Jordanov under the DTSA or the CUTSA (the First and Second Causes of Action)

The elements of a claim of misappropriation of a trade secret under the DTSA and under the CUTSA are substantially the same.  An owner of "information" that the owner has made "reasonable" efforts to keep secret and which "derives independent economic value . . . from not being generally known to" other persons, may establish liability by showing the defendant's wrongful acquisition, disclosure, or use of that information.  *See e.g., Becton,* 2018 WL 2298500, *2, *citing* 18 U.S.C. §§ 1836, 1839; Cal. Civ. Code § 3426.1, 3426.3.  Where the defendant did not acquire the trade secret directly from the owner, the Plaintiff must show that the defendant knew or had reason to know before the use that the information was a trade secret, and that the defendant knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality.  *MedioStream, Inc. v. Microsoft Corp*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012)  Similarly, where a plaintiff seeks to hold a corporate officer liable for alleged misappropriation by others within his company, the Plaintiff must show the individual officer or director "authorize[d], directe[d], or in some meaningful sense actively participate[d] in the wrongful conduct" through either "direct action" or  "knowing consent to or

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

approval of unlawful acts." *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1380 (2000).  Put another way, plaintiffs must allege "unreasonable participation" in the unlawful conduct by the corporate officer.  *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950-51 (N.D. Cal. 2003) (*citing PMC,* 78 Cal.App.4th at 1389); *PMC*, 78 Cal.App.4th at 1389 ("the corporate director or officer must have known or had reason to know of the misappropriation and then unreasonably participated in the unlawful conduct").  Thus, in order to maintain a cause of action against Mr. Jordanov, Plaintiff must plead sufficient facts to show that Mr. Jordanov knew or should have known of the trade secret theft by Ms. Lam, and that he unreasonably participated in that conduct by either directing or authorizing the conduct, or knowing of and consenting to the conduct.  The allegations in the complaint fail to meet this standard.

As detailed above, Plaintiff alleges that Mr. Jordanov solicited and recruited Ms. Lam to work on formulation projects at JHL and that he was aware of Ms. Lam's formulation work for JHL, both directly and through her mentoring of John Chan.  Plaintiff's allegations against Mr. Jordanov are strikingly similar to those in *Accuimage*, where Judge Patel dismissed a misappropriation claim against the CEO of a corporation on allegations that (1) the CEO had expressed interest in hiring one of the plaintiff's key employees, (2) the employee brought with him a laptop computer containing the previous employer's confidential trade secret information when he joined the CEO's company, and (3) the new corporation soon thereafter introduced a substantially similar competing product.  *Id.* at 945-46, 951.  Judge Patel found the plaintiffs had failed to plead facts showing the CEO had himself participated in the wrongful conduct sufficient to state a claim.  *Id.* at 950 (stating that "mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual") (citing *PMC*, 78 Cal. App.4th at 1389).

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

1       Similarly here, Plaintiff's allegations do not amount to "unreasonable participation" in

2 the unlawful conduct.  There is nothing improper about soliciting a competitor's employee.  *Id.*

3 at 950 (dismissing claim against CEO where plaintiff alleged he "willfully conspired to

4 misappropriate AccuImage's trade secrets and that he expressed an interest in hiring Taylor away

5 from AccuImage"); *Metro Traffic Control v. Shadow Traffic*, 22 Cal.App.4th 853, 860 (1994)

6 (holding that because Cal. B&P § 16600 invalidates non-compete clauses, "[t]he corollary to this

7 proposition is that competitors may solicit another's employees if they do not use unlawful

8 means or engage in acts of unfair competition")[1].  Plaintiff also attempts to draw a negative

9 inference from the fact that Ms. Lam was still employed by Genentech while she performed

10 formulation work for JHL, but no such inference is warranted.  First, Plaintiff's other allegations

11 establish that Ms. Lam told Mr. Jordanov and others that she would be taking a leave of absence

12 from Genentech during her work for JHL.  *See* Complaint, ¶¶ 142 - 145.  Second, Plaintiff

13 alleges only that Mr. Jordanov was aware that Ms. Lam was working on formulations for JHL's

14 biosimilars.  *See*, *e.g.*, *id.* ¶ 142 (alleging that Ms. Lam and Mr. Jordanov "discussed the raw

15 materials that Ms. Lam would need to conduct formulation work on two of JHL's biosimilars");

16 *id.* at ¶ 157 (alleging Mr. Jordanov and Ms. Lam attended meetings at which they discussed the

17 "formulation strategy for JHL's biosimilars" of certain Genentech medicines").  The

18

19

---

20 [1] Plaintiff also alleges that Mr. Jordanov attempted to lure other Genentech employees to JHL and
solicited confidential information from other Genentech employees.  Complaint, ¶ 182 (alleging that in

21 March 2014, Mr. Jordanov contacted a Genentech employee to help find "someone" to help with
"purification of dnase" and that in February 2013 he contacted a Genentech employee and asked for "a

22 template for a cell line development service agreement").  But, as described above, soliciting employees
from a competitor is not enough to sustain a trade secret cause of action, and here Plaintiff alleges Mr.

23 Jordanov did even less: he asked for a referral to "someone," not specifically a Genentech employee, who
could help with specific work.  Nor is asking a Genentech employee for a "template for a cell line

24 development agreement" evidence that Mr. Jordanov participated in or knew of and consented to trade
secret theft.  Nowhere does Plaintiff allege that a "template for a cell line development agreement" is a

25 trade secret.  Rather the name of the document implies Mr. Jordanov requested a template of a legal
document.

26

27

28

---

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

formulations for Genentech's drug products are publicly-disclosed information, as admitted in other pleadings Plaintiff filed in this Court.  Request for Judicial Notice In Support of Defendants' Motion to Dismiss, **Exhibit A**.  Therefore, neither Ms. Lam's continued employment at Genentech – from which Mr. Jordanov understood she had taken a leave – nor the nature of her work for JHL – work related to publicly-disclosed information – would have put Mr. Jordanov on notice that Ms. Lam was improperly disclosing and using Genentech trade secrets.[2]

Finally, Plaintiff provides no factual support for the allegations that Mr. Jordanov and others at JHL knowingly requested and used the trade secrets allegedly taken by Ms. Lam.  While a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), "[t]his 'facial plausibility' standard requires the plaintiff to allege facts that add up to 'more than a sheer possibility that a defendant has acted unlawfully.'"  *ATS Prod., Inc v. Champion Fiberglass, Inc.*, 2015 WL 6552698, at *2–3 (N.D. Cal. Oct. 28, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Conclusory and factually-devoid allegations do not meet this pleading standard.  *See Ashcroft*, 556 U.S. at 678 (a pleading that offers "labels and conclusions" or lists elements but is "devoid of 'further factual enhancement'" does not meet Rule 8) (citations omitted).  Here, Plaintiff alleges, without providing factual support, that Ms. Lam provided JHL with Genentech's trade secrets "at the behest of [Mr.] Jordanov" (Complaint, ¶ 13) and that Mr. Jordanov "knowingly received and utilized" those trade secrets.  *Id*. at ¶ 26.  These conclusory

---

[2] Mr. Jordanov likewise would have had no reason to know of Ms. Lam's alleged trade secret disclosure to John Chan and JHL's alleged resulting use thereof.  Ms. Lam and Mr. Chan are family friends (Complaint, ¶¶ 67, 144), and the complaint alleges that, consistent with that pre-existing relationship, Mr. Jordanov understood Ms. Lam mentored Mr. Chan through "educating" him and "sharing science" with him.  *Id*. at ¶ 174; *see also id*. at ¶ 159 (describing her role at JHL as "to coach and help").  While Plaintiff alleges that Ms. Lam disclosed Genentech trade secrets to Mr. Chan (*id*. at ¶ 169-70), nowhere does Plaintiff allege that Mr. Jordanov had knowledge of or reason to know of that disclosure.

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

allegations, especially in light of the allegations that Ms. Lam's work for JHL related to publicly-disclosed formulations, are insufficient.  *See ATS Prod., Inc*., 2015 WL 6552698, *3 (dismissing complaint against defendant Capital Resin where Plaintiff alleged defendant worked on formulations embodying its trade secrets and that defendant "knew or should have known" the secrets were misappropriated, because "nowhere in its complaint does ATS allege any facts that would allow the Court to infer that Capital Resin knew or should have known that ATS's trade secrets were misappropriated"); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1346–47 (N.D. Ga. 2017) (dismissing complaint alleging that, *inter alia*, the defendant hired competitor's former employee, Hall, "with full knowledge of Hall's possession of, and access to, Plaintiff's trade secret information," because plaintiff had "not alleged facts in the Amended Complaint to support its allegations").

## C.    Plaintiff Fails to State a Claim for Conspiracy Under California Law (Third Cause of Action)

As a preliminary matter, California does not recognize an independent cause of action for conspiracy.  *See*, *e.g*., *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*., 7 Cal.4th 503, 510-511 (1994).[3]

At a minimum, Plaintiff must re-plead its claim for conspiracy as a theory of liability within the substantive cause of action.  *See Accuimage*, 260 F. Supp. 2d at 947.  To do so, Plaintiff must allege specific actions by Mr. Jordanov that establish the elements of a conspiracy to misappropriate – including both facts establishing that he directly ordered, authorized, or participated in the conduct and facts that describe the formation and operation of the conspiracy and resulting damage.  *See id.* (*citing Wyatt v. Union Mortgage Co*., 24 Cal.3d 773, 785 (1979)). Plaintiff must set forth more than "'[b]are' allegations and 'rank' conjecture[.]"  *Choate v.*

---

[3] Mr. Jordanov joins and incorporates by reference the arguments made in this regard in JHL's Motion to Dismiss at Section IV-B-2(a).

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

*County of Orange*, 86 Cal.App.4th 312, 333 (2000).  A party seeking to establish a civil conspiracy "must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it."  *Id.*  Indiscriminately alleging that all defendants participated in the conspiracy is not enough.  *Accuimage*, 260 F. Supp. 2d at 948 ("To successfully plead this [conspiracy] cause of action, plaintiff must more clearly allege specific action on the part of each defendant that corresponds to the elements of a conspiracy cause of action.")

Here, Plaintiff repeatedly refers to the defendants in a collective, undifferentiated fashion. *E.g.*, Complaint, ¶ 2 (alleging that "former Genentech employees and others at JHL conspired to give JHL an illegal and corrupt advantage"); *id.* at 285 ("Each Defendant . . . . agreed with and encouraged [Xanthe's] plan"). These shotgun-style, conclusory allegations fall short of the applicable pleading requirements.  Further, as explained above, Plaintiff's allegations fail to establish that Mr. Jordanov unreasonably participated in or knew of and consented to Ms. Lam's alleged trade secret theft.  Plaintiff has thus failed to plead adequately that Mr. Jordanov entered into the alleged conspiracy with Ms. Lam or others.  *Choate*, 86 Cal.App.4th at 333 (holding that civil conspiracy requires a "meeting of the minds" to accomplish and unlawful plan).

### D.   There is no Civil Conspiracy Claim Under the DTSA

The DTSA provides only limited civil remedies under 18 U.S.C. § 1836.  Section 1836(b)(2) provides only for private plaintiffs to obtain a civil seizure order.  18 U.S.C. § 1836(b)(2)(A)(i) (providing that a court may issue "an order providing for the seizure of property necessary to prevent the proposition or dissemination of the trade secret that is subject of the action").  Based on this language, at least one district court has held that the statute permits only a seizure of property under the specific process it sets out and precludes a civil cause of action for conspiracy under the criminal trade secret theft statute, §1832. *Steves & Sons, Inc. v. Jeld-*

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

*Wen, Inc*., 271 F. Supp. 3d 835, 842 (E.D.V.A. 2017).  The court further noted that civil conspiracy claims for trade secret misappropriation are generally considered to arise only under state law due to the limited civil seizure remedy and specific process authorized by Congress (*id.*), and counsel has not uncovered a case in which a court has recognized a conspiracy claim under the DTSA.  Given Congress's intent to limit a private cause of action under the DTSA to the seizure order process set forth in §1836(b)(2), this Court should decline to recognize a civil cause of action for conspiracy under the DTSA.

Even if there existed in law a cause of action for conspiracy under the DTSA, Plaintiff must allege "a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir. 1999)(citation omitted). To meet the first element, the plaintiff must allege the parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* Conclusory allegations of a meeting of the minds will not satisfy Rule 8. *See Lacey v. Maricopa County,* 693 F.3d 896, 935 (9th Cir. 2012); *see also Athena Feminine Techs. Inc. v. Wilkes,* 2011 WL 4079927, *7 (N.D. Cal. Sept. 13, 2011) (finding conclusory allegations of agreement insufficient to state as law conspiracy claim).

As discussed above in Section C, Plaintiff has merely stated the elements of a conspiracy without further factual support and has thus failed to meet the pleading standards.

### E.   Causes of Action Five and Seven Should be Dismissed for the Reasons Stated in JHL's Motion to Dismiss

For the reasons described in JHL's concurrently filed Motion to Dismiss at Sections IV-B-1(a) and 2(a), Causes of Action Five and Seven should be dismissed as to Mr. Jordanov.  As argued by JHL, the two year statute of limitations applicable to Plaintiff's intentional interference with contract claim (Fifth Cause of Action) and aiding and abetting breach of duty

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA

1  of loyalty claim (Seventh Cause of Action) ran before Plaintiff filed its complaint in this case.

2  *See* JHL Motion to Dismiss, section IV-B-1(a).  And, again as argued by JHL, the CUTSA

3  supersedes Plaintiff's common law claims, because they are "based on the same nucleus of facts"

4  as its claim for trade secret misappropriation.  *Id*. at section IV-B-1(b) (collecting cases).

5

6  **IV.      CONCLUSION**

7          For the foregoing reasons, all claims against defendant Racho Jordanov should be

8  dismissed.

9  Dated: January 4, 2019

10                                               /s/ *Edward W. Swanson*

11                                               Edward W. Swanson
                                                 Britt Evangelist
12                                               SWANSON & McNAMARA LLP
                                                 Attorneys for Defendant RACHO
13                                               JORDANOV

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendant Racho Jordanov's MPA In Support of His Motion to Dismiss**
Case No. CV-18-06582-WHA