ROD DIVELBISS (SBN 102345)
JRA LAW PARTNERS, LLP
450 Pacific Avenue, Suite 200
San Francisco, CA 94133
Phone: (415) 962-2882
Facsimile: (415) 788-6929
Email: rdivelbiss@jralp.com

Attorneys for Defendant
JOHN CHAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| GENENTECH, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50,<br><br>　　　　　Defendants. | Case No. 3:18-cv-06582-WHA<br><br>**DEFENDANT JOHN CHAN'S OPPOSITION TO PLAINTIFF GENENTECH, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　February 14, 2019<br>Time:　8:00 a.m.<br>Dept:　Courtroom 12, 19th Floor<br>Judge:　Hon. William H. Alsup<br><br>Complaint Filed: October 29, 2018<br>Trial Date: Not Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL/PROCEDURAL BACKGROUND .................................................................. 2

III. LEGAL STANDARD .......................................................................................................... 4

IV. ARGUMENT ....................................................................................................................... 4

    A. Genentech Has Failed to Demonstrate That It Is Likely to Succeed Against Mr. Chan .................................................................. 5

    B. Genentech Failed to Affirmatively Demonstrate That It Would Suffer Irreparable Harm Absent an Injunction Against Mr. Chan ..................................... 5

    C. No Harm to Genentech Is Imminent, and Genentech's Delay Contradicts Any Contention of Imminent Harm .......................................... 7

    D. The Balance of Equities Is in Mr. Chan's Favor ...................................................... 8

    E. Genentech's Requested Relief Is Overly Broad and Vague, Imposing a Heavy Burden of Compliance ......................................... 10

    F. Genentech Has Failed to Show That an Injunction Is In the Public Interest ......... 11

V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**Cases**

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d at 1135 (9th Cir. 2011) .................................................................................... 4, 5

*American Bd. Of Psychiatry & Neurology, Inc. v. Johnson-Powell*,
   129 F3d 1, 4 (1st Cir. 1997) ............................................................................................ 4

*Dahl v. HEM Pharmaceuticals Corp.*,
   7 F3d 1399, 786 F3d 733, 740 (9th Cir. 1993) ............................................................... 4

*Earth Island Institute v. Carlton*,
   626 F3d 462, 469 (9th Cir. 2010) ................................................................................... 4

*Groupion, LLC v. Groupon, Inc.*,
   826 F. Supp. 2d 1156, 1167 (N.D. Cal. 2011) ....................................................... 4, 6, 8

*Koninklijke Philips Elecs. N.V v. Seoul Semiconductor Co., Ltd*,
   2011 WL 13227959, at *6 (C.D. Cal. 2011) .................................................................. 8

*Marilyn Nutcraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F3d 873, 879 (9th Cir. 2009) ................................................................................... 4

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
   762 F.2d 1374, 1377 (9th Cir. 1985) .............................................................................. 7

*Oren Enters., Inc. v. Stefanie Cove & Co.*,
   2017 WL 8220230, at *5 (C.D. Cal. 2017) ................................................................ 7, 8

*Perez v. Valley Garlic, Inc.*,
   2016 WL 6094809, at *11 (E.D. Cal 2016) ................................................................. 11

*Protech Diamond Tools, Incorporation v. Liao*,
   2009 WL 1626587, at *6 (N.D. Cal. 2009) ................................................................ 7, 8

*Stanley v. University of S. Cal.*,
   13 F.3rd 1313, 1320 (9th Cir. 1994) .............................................................................. 1

*Swarmify, Inc. v. Cloudflare, Inc.*,
   2018 WL 1142204, at *5-6 (N.D. Cal. 2018) ................................................................ 6

*Trump v. International Refugee Assistance Project*
   US __, ___, 137 S. Ct. 2080, 2087 (2017) ..................................................................... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*U.S. Philips Corp. v. KBC Bank N.V.,*
  590 F3d 1091, 1094 (9th Cir. 2010) ............................................................................... 4

*United States v. Hubbell*,
  530 U.S. 27, 36-37 (2000) ........................................................................................ 2, 9

*Verigy US, Inc. v. Mayder,*
  2008 WL 564634, at *10 (N.D. Cal. 2008) ................................................................. 10

*Waymo LLC v. Uber Techs., Inc.,*
  2017 WL 2123560, at *6 (N.D. Cal. 2017) ................................................................... 5

*Winter v. Natural Resources Defense Council, Inc.,*
  555 US 7, 22, 129 S. Ct. 365, 376 (2008) ................................................................. 4, 6

*X Corp. v. Doe*,
  805 F. Supp. 1298, 1311 (E.D. Va. 1992) ................................................................... 11

I.      **INTRODUCTION**

Genentech Motion for a Preliminary Injunction seeks an Order (1) requiring each of the Defendants to refrain from disclosing claimed trade secrets; (2) restraining each of the Defendants from selling pharmaceuticals which were developed using Genentech's trade secrets; (3) restraining each of the Defendants from utilizing Genentech trade secret information in any processes; (4) enjoining each of the Defendants from submitting filings before regulatory bodies; (5) issuing a mandatory injunction requiring return of documents to Genentech; (6) requiring certain Defendants, not including John Chan, to conduct an investigation; and (7) requiring Defendants, including John Chan, to provide a log of all communications between Defendants over a multi-year period. (The trade secrets at issue allegedly concerned the biopharmaceutics Pulmozyme, Rituxan, Hercepten and Avastin. (Compl. ¶ 44)).

Defendant John Chan opposes the granting of any preliminary injunctive relief in this action for the reasons set forth in the Opposition of Defendant JHL Biotech, Inc. ("JHL") including the declarations filed by JHL in support of its Opposition and joins in JHL's Opposition and the Oppositions filed by Defendants Quach, Racho, Lin and the Lams. Genentech is not entitled to the extraordinary remedy sought for the reasons stated in the JHL Opposition Memorandum, and certainly not with respect to Mr. Chan.

With respect to requested mandates Nos. 1–4, it is not alleged that Mr. Chan has or had the ability to compete with Genentech, sell pharmaceuticals, utilize claimed trade secrets in any process or has the ability to submit regulatory filings. Therefore, with respect to Nos. 1-4, there could not be any imminent or irreparable harm to Genentech if Mr. Chan is not enjoined. Accordingly, only requests Nos. 5 and 7 could possibly apply to Mr. Chan.[1]

Mr. Chan files this separate opposition focusing on Plaintiff's mandatory injunctive request Nos. 5 and 7. Mandatory preliminary injunctive relief should be denied "unless the facts and law clearly favor the moving party." (*Stanley v. University of S. Cal.* 13 F.3rd 1313, 1320 (9th Cir. 1994).) Here, Plaintiff has presented no factual basis for claiming the mandatory requests are needed to prevent imminent irreparable harm.

---

[1] Request No. 6, demanding an investigation is not directed toward Mr. Chan.

Requests 5 and 7 directly implicate Mr. Chan's right against self-incrimination protected under the Fifth Amendment to the United States Constitution.

Request 5 would require Mr. Chan to search all of his files and records and disclose the information in his possession relating to Genentech and/or that was derived from Genentech trade secret, confidential, or proprietary information. Any substantive response to Request 5 would be testimonial in nature and subject to objection by Fifth Amendment privilege, which Mr. Chan will exercise. (*United States v. Hubbell*, 530 U.S. 27, 43 (2000).)

Request 7, if granted, would direct Mr. Chan to set forth a chronology of his communications with the other defendants relating to Plaintiff's claimed trade secrets and confidential or proprietary information. It would require testimonial action by Mr. Chan, who would be forced to assert his Fifth Amendment privilege and refuse to comply, risking the imposition of an adverse inference in this civil action.

Plaintiff has failed to present any reasons why the very real harm to Mr. Chan from being forced to choose between preserving his Fifth Amendment rights and defending a civil suit outweighs whatever harm Plaintiff would suffer from not obtaining the information and materials sought in Requests 5 and 7 until after the completion of the criminal proceeding. The Motion should therefore be denied.

## II. FACTUAL/PROCEDURAL BACKGROUND

Genentech is a Bay Area company that engages in pharmaceutical manufacturing. (Compl. ¶ 43). As alleged, JHL is a biotech company headquartered in Taiwan with primary operations in Taiwan and China. (Compl. ¶ 46).

Defendant John Chan is a former JHL employee; he was not an officer, director or owner of JHL. (See, Compl. ¶ 67). In fact, the position held by Mr. Chan was his first job after completing his studies at the University of Sydney. Mr. Chan left JHL in 2017. (Compl. ¶ 70).

The civil action names as defendants JHL Biotech, Inc. ("JHL"), two of its founders and current executives, Racho Jordanov and Rose Lin, as well as individual defendants Xanthe Lam, Allen Lam, James Quach, and moving party, John Chan. In its 73-page Complaint, Genentech admits that it learned about the allegations that underlie the Complaint over two years ago, *in*

*October 2016.* (Compl. ¶ 36). Apparently recognizing that there was no imminent and irreparable harm that could come to Genentech by waiting to pursue their claims, Genentech "refrained" from pursuing its civil remedies until after indictments were unsealed. *Ibid.*

With respect Mr. Chan, Genentech alleges the following:

- Xanthe Lam helped Mr. Chan obtain employment at JHL (Compl. ¶¶ 158-162.);
- Mr. Chan worked for JHL in Taiwan from approximately April 2014 to approximately July 2017, where he worked as a Project Manager and Scientist. (Compl. at ¶¶ 67, 68);
- Xanthe Lam purportedly "funneled Genentech trade secret information to Mr. Chan during regular Skype calls." (Compl. ¶¶ 31, 69, 165 and 166);
- Xanthe Lam purportedly sent a technical report to her husband with the instruction to make a copy "for John." (Compl. ¶¶ 168-170.); and
- Xanthe "coached" Mr. Chan in his role as a JHL scientist (Compl. ¶ 254.)

There are no other factual allegations of claimed wrongdoing by Mr. Chan.[2]

On October 29, 2018, over two years after it became aware of the claimed misconduct, Genentech brought suit against JHL and six individual defendants, including John Chan. The claims relate to alleged trade secret misappropriation and related claims. (Compl. ¶ 244.)

On November 5, 2018, Genentech filed a motion for a preliminary injunction against all defendants. Genentech's proposed injunction would prevent all of the named defendants, including Mr. Chan, from using or disclosing the alleged trade secrets, and from making or selling products, or using processes or methods, that utilize, embody, or were developed with the benefit or use of any Genentech trade secret information. (Proposed Order ¶¶ 1-3.) The proposed injunction would also prevent each of the Defendants from submitting information derived from, containing, or embodying any alleged trade secret to regulators. (Proposed Order ¶ 4.) Genentech also asks the Court to require Mr. Chan and others to return Genentech trade secret information, and to produce a log of communications wherein any of four individuals "may have

---

[2] Because of concerns about potential waiver of Fifth Amendment privilege, in opposing the Motion for Preliminary Injunction, Mr. Chan is neither affirming nor denying the factual predicate set forth by Plaintiff as a basis for some preliminary relief.

1   mentioned" any Genentech confidential or trade secret information.  (Proposed Order ¶¶ 5-7.)

2   "Trade secret information" was not defined in Genentech's proposed injunction.

3         Mr. Chan joins in the arguments submitted by JHL and other Defendants in their

4   Oppositions to the Motion for Preliminary Injunction. For the reasons set forth in those

5   Oppositions, and as set forth below, the Motion should be denied as to Mr. Chan.

6   **III.   LEGAL STANDARD**

7         A preliminary injunction is an "extraordinary remedy that may only be awarded upon a

8   clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense*

9   *Council, Inc.,* 555 US 7, 22, 129 S. Ct. 365, 376 (2008); see also, *Earth Island Institute v.*

10  *Carlton, 626 F3d 462, 469 (9th Cir. 2010).* Such relief is "subject to heightened scrutiny and

11  should not be issued unless the facts and law *clearly favor the moving party."* (Emphasis added).

12  See also, *Dahl v. HEM Pharmaceuticals Corp.*, 7 F3d 1399, 786 F3d 733, 740 (9th Cir. 1993).

13        The function of a preliminary injunction is to preserve the status quo and to prevent

14  irreparable loss of rights prior to judgment. *Trump v. International Refugee Assistance Project–*

15  US __, ___, 137 S. Ct. 2080, 2087 (2017) (per curiam) – purpose of such equitable relief "not to

16  conclusively determine the rights of the parties" but to "balance the equities as the litigation

17  moves forward;" *American Bd. Of Psychiatry & Neurology, Inc. v. Johnson-Powell,* 129 F3d 1, 4

18  (1st Cir. 1997); *U.S. Philips Corp. v. KBC Bank N.V.,* 590 F3d 1091, 1094 (9th Cir. 2010)]

19        Where, as here, a party seeks mandatory relief an even higher level of scrutiny and proof

20  is needed. *Marilyn Nutcraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F3d 873, 879 (9th*

21  *Cir. 2009).)* (Mandatory injunctive relief is "particularly disfavored" and will not be granted

22  unless *extreme or very serious harm* will result if the injunction is not granted. It must also be

23  demonstrated that the harm is not capable of compensation in damages.)

24  **IV.   ARGUMENT**

25        "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

26  on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

27  [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

28  *All. for the Wild Rockies*, 632 F.3d at 1131; *see also Waymo LLC v. Uber Techs., Inc.*, 2017 WL

2123560, at *6 (N.D. Cal. 2017). *Winter* "requires the plaintiff to make a showing on all four prongs." *All. for the Wild Rockies v. Cottrell*, 632 F.3d at 1135. Where there are only "serious questions going to the merits," there must be a "hardship balance that tips *sharply* toward the plaintiff" to support issuance of an injunction, "assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (emphasis added).

### A. Genentech Has Failed to Demonstrate That It Is Likely to Succeed Against Mr. Chan

As an initial matter, Mr. Chan joins in the arguments submitted by JHL and other Defendants on this issue. Further, as discussed below, Genentech has made no substantive showing with respect to prevailing in its claims against Mr. Chan.

In Genentech's Motion, all that is asserted is that (1) Mr. Chan worked at JHL for a period of time (Motion, page 12:1-16); Mr. Chan had Skype calls with Xanthe Lam (Motion, page 2:12-15; p. 17:1-2); and Xanthe Lam oversaw JHL's formulation development through weekly Skype calls with Mr. Chan (Motion, page 2:12-14). Genentech's "proof" in its Motion is even more limited. In its supporting Declarations, Genentech submitted Skype call logs (French Decl. ¶ 16), none of which indicate that any misappropriation took place. The only other evidence offered as related to Mr. Chan is Exhibit 20 to the McCloskey Declaration, which indicate that Mr. Chan worked at JHL as a "Group Leader." Thus, it is abundantly clear that Genentech has failed to submit any, let alone sufficient, proof that it is likely to succeed on the merits as against Mr. Chan.

Further, for the reasons explained in the JHL Opposition Memorandum, Genentech has failed to show that it is likely to prove that Mr. Chan misappropriated Genentech's trade secrets.[3]

### B. Genentech Failed to Affirmatively Demonstrate That It Would Suffer Irreparable Harm Absent an Injunction Against Mr. Chan

Genentech must not only demonstrate likelihood of prevailing, but it must also

---

[3] As discussed following, this Court need not even address the merits at this point because Genentech failed to show that it would suffer irreparable harm if preliminary injunctive relief is not awarded as against Mr. Chan. In fact, there is nothing submitted by Genentech that demonstrates Genentech would suffer irreparable harm if Mr. Chan is not enjoined. That failure alone is fatal to Genentech's motion as it pertains to Mr. Chan.

affirmatively demonstrate that the injury it claims it would suffer, absent an injunction, would be imminent, significant, non-speculative, and irreparable. *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1167 (N.D. Cal. 2011); *see also Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 1142204, at *5-6 (N.D. Cal. 2018). ("[Plaintiff's] failure to show a likelihood of irreparable harm is a showstopper. *See Winter*, 555 U.S. at 20. This order therefore does not reach the other three *Winter* factors, nor does it consider the parties' additional arguments thereunder.").[4]

Particularly with respect to Mr. Chan, Genentech has not satisfied its burden of affirmatively demonstrating irreparable harm. First, the injuries it alleges either could be adequately compensated with damages, or are not significant, imminent or connected to the relief requested from Mr. Chan. Second, there is nothing submitted which even remotely suggests that Genentech would suffer irreparable harm if injunctive relief is not afforded as against Mr. Chan. In its motion, Genentech asserts that JHL is currently using Genentech trade secrets to compete with Genentech. (Motion, page 23:13-15). Continuing, Genentech argues that "JHL continues to leverage Genentech's trade secrets to bolster its own know-how." (Motion, page 23:16-18). Next, Genentech suggests that a loss of investors and talent to JHL would constitute irreparable harm. (Motion, page 24:16-26.) Finally, in support of its motion, Genentech asserts that "JHL is currently running a Global Phase II clinical trial of its Rituxan biosimilar … and has signed a lucrative deal with Sanofi to market it." (Motion, page 23:18-20). Again, none of those assertions even indirectly indicate that Genentech will suffer irreparable harm if Mr. Chan is not subject to an injunction.

Even without considering Genentech's delay in seeking relief, Genentech fails to show irreparable harm if Mr. Chan is not enjoined. Genentech makes various claims regarding the harm that it will suffer absent injunctive relief, and cites only paragraphs 33 through 35 of the McCloskey Declaration and Exhibits 21 through 23 thereto in support. (Motion, pages 23:13-25:8.) Each claim should be rejected by the Court.

---

[4] As discussed in detail by JHL in its Opposition Memorandum, Genentech wrongly contends there is a presumption of irreparable harm and relies in error on presumed alleged harm that either could be remedied with monetary damages, or is not significant, imminent, or connected to the requested injunction.

1    First, Genentech claims that JHL is using its trade secrets to make progress towards wrongfully competing with Genentech's medicines (Motion, page 23:12-20) and that any such progress by JHL harms Genentech "in ways that cannot be repaired with money damages awarded later." (Motion, pages 23:21-24:4). Setting aside the deficiency of proof on that issue with respect to JHL, no such assertion is made against Mr. Chan.

Second, Genentech alleges that JHL continues to wrongfully leverage Genentech's trade secrets to bolster JHL's know-how. (Motion, page 23:16-18). Again, there is not even a passing reference to Mr. Chan.

Third, Genentech suggests that JHL's partnership with competitor Sanofi "evidences Defendants' intention to use and disclose Genentech's trade secrets to benefit Genentech's competitors." (Motion, pages 23:18-20; 25:1-2.) Again, Mr. Chan has nothing to do with any partnership with Sanofi, nor has Genentech demonstrated anything of that nature.

Fourth, Genentech asserts that injunctive relief is needed because JHL lures talent from Genentech. (Motion, page 24:22-26). Again, Mr. Chan is not mentioned nor is there even an attempt to demonstrate that injunctive relief against Mr. Chan will somehow prevent this claimed irreparable harm.

Thus, because there has been no argument or proof that failure to enjoin Mr. Chan will cause irreparable harm, the Court should deny Genentech's motion as it pertains to him. .

### C. No Harm to Genentech Is Imminent, and Genentech's Delay Contradicts Any Contention of Imminent Harm

Genentech's delay seeking relief alone is grounds for denying its motion.  "[U]ndue delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction." *Protech Diamond Tools, Incorporation v. Liao*, 2009 WL 1626587, at *6 (N.D. Cal. 2009); s*ee also Oren Enters., Inc. v. Stefanie Cove & Co.*, 2017 WL 8220230, at *5 (C.D. Cal. 2017) ("sixth [sic] month delay in seeking injunctive relief establishes a lack of irreparable harm that is, on its own, a sufficient basis to deny the injunctive relief Plaintiffs seek"); *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay [of a number of

1  years] before seeking a preliminary injunction implies a lack of urgency and irreparable harm.");
2  *Koninklijke Philips Elecs. N.V v. Seoul Semiconductor Co., Ltd*, 2011 WL 13227959, at *6 (C.D.
3  Cal. 2011) ("Plaintiffs' delay in filing this action leads the Court to conclude that further delay
4  will not cause them irreparable harm."); *Groupion*, 826 F. Supp. 2d at 1167 (delay "implies a lack
5  of urgency and, thus, further undermines the need for a preliminary injunction").  Here,
6  Genentech waited more than two years before filing a lawsuit and moving for a preliminary
7  injunction, refuting any notion of imminent harm.  (Compl. ¶ 244) ("Genentech first received
8  notice of the allegations described herein on or about October 11, 2016".)
9  In *Oren Enterprises* and *Protech*, six-month and three-year delays, respectively, were
10 sufficient to deny preliminary injunctive relief.  *Oren Enterprises*, 2017 WL 8220230, at *5 (six
11 months); *Protech*, 2009 WL 1626587, at *6 (three years). The plaintiff in *Protech* argued that its
12 delay was excusable, claiming it had no reason to sue before defendants withdrew their petition to
13 cancel the trademark at issue.  The court in *Protech* rejected that excuse, because the delay meant
14 that the "allegedly infringing conduct ha[d] been occurring continually and without interruption
15 for years, without any legal action being taken by Plaintiff." *Id.* at *6.  Like in *Protech*,
16 Genentech's delay contradicts its claim of imminent harm absent injunctive relief.

### D. The Balance of Equities Is in Mr. Chan's Favor

In its Amended Notice of Motion and Motion for Preliminary Injunction [ECF 25] Plaintiff seeks an order for preliminary injunction that provides:

> 5. requiring Defendants to preserve and to return to Genentech within fourteen (14) calendar days of the date of the Court's Order on this Motion (i) all copies of all Genentech documents and information, including without limitation any trade secret and other confidential or proprietary information acquired from Genentech; and (ii) all copies of all materials (in paper, electronic, or any other form, including, for example, cell lines, assays, test results, drug substances, or drug products) containing any, or derived from any, Genentech information, trade secrets, or other confidential or proprietary information.

Under (i) of this request, Plaintiff seeks a Court order requiring Defendants to identify from the universe of documents and information held by them (if any exist), which documents and information, if any, they have in their possession or control that belong to Genentech and to

disclose the fact of such possession to Genentech. Under (ii) of this request, Plaintiff seeks a Court order requiring Defendant to determine which materials in their possession or control "contain any" or are "derived from any, Genentech information, trade secrets, or other confidential or proprietary information." The two requests therefore would require Defendants to make testimonial disclosures of the documents in their possession[5] – disclosures that could constitute self-incrimination. *United States v. Hubbell* 530 U.S. 27, 36-37 (2000).

Responding to this request will constitute testimony by Mr. Chan that he has determined that he is (or is not) in possession of Genentech "materials," "documents and information," and what those materials, documents, and/or information are. A substantive response to this request might tend to incriminate him. In other words, compliance with the requested order for disclosure and return of materials set forth in request (5) of Plaintiff's motion would subject Mr. Chan to testimonial disclosures that could constitute an element of offenses with which he has been charged. Mr. Chan has an unquestioned Fifth Amendment right to refuse to comply with such a request. (As set forth in the Declaration of Rod Divelbiss in Opposition to Plaintiff's Motion for Preliminary Injunction ("Divelbiss Dec. ¶ 3) Mr. Chan will assert his Fifth Amendment rights against self-incrimination in response to this request so long as he is facing the related criminal charges.

Similarly, Plaintiff's requested relief number 7 would constitute compelled testimony relating to the criminal charges facing Mr. Chan. Request number 7 directly seeks compelled testimony, typical of the type of information that would be sought in an interrogatory in civil discovery. Any response to this request may tend to incriminate Mr. Chan with respect to the criminal charges pending against him. As with request number 5, Mr. Chan has an unquestioned Fifth Amendment right to refuse to comply with such a request and he would invoke that right. Declaration of Rod Divelbiss, ¶ 4.

---

[5] A disclosure or production of documents is testimonial when it is "unquestionably necessary for respondent to make extensive use of "the contents of his own mind" in identifying the hundreds of documents responsive to the requests in the subpoena."(*United States v. Hubbell*, *supra,* 530 U.S. at 43).

Genentech does not even attempt to demonstrate any hardship it would suffer if the injunctive relief does not extend to Mr. Chan. In sharp contrast, the injunctive relief sought against Mr. Chan would necessarily implicate his Fifth Amendment rights and create possible negative inferences from invocation of those rights. Thus, the balance of equities overwhelmingly favors Mr. Chan, not Genentech. See, *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *10 (N.D. Cal. 2008). (An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it were not granted.)

Defendant JHL cannot assert a Fifth Amendment privilege objection against Request 5. However, granting Request 5 as to JHL will severely prejudice all Defendants, including Defendant John Chan, because JHL's compelled disclosures under Request 5 will provide the Government with evidence for its criminal prosecution that it could not obtain absent Plaintiffs seeking such information through civil discovery or, in this case, through civil discovery masquerading as relief to prevent imminent irreparable harm.

### E. Genentech's Requested Relief Is Overly Broad and Vague, Imposing a Heavy Burden of Compliance

Mr. Chan joins in the arguments submitted by JHL and other Defendants in this Action. Mr. Chan also submits the following argument.

Paragraphs 5 and 7 seek to impose disproportionately burdensome affirmative obligations on JHL.  They would require  JHL to return "all copies of Genentech documents and information," including "any confidential, proprietary, and/or trade secret information acquired from Genentech" and "all copies of all materials . . . containing [or] derived from any[] Genentech trade secrets" (paragraph 5); to investigate and provide an accounting under oath setting forth any person to whom JHL disclosed any Genentech materials (paragraph 6); and to provide a log of all oral and written communications "wherein Xanthe Lam, Allen Lam, John Chan, or James Quach may have mentioned any Genentech [confidential information]" to any "officer, director, employee, agent, supplier, or consultant" of JHL (paragraph 7).  (Proposed Order ¶¶ 5-7.)

Genentech cannot show that its requested mandatory relief is narrowly tailored and

necessary to provide it complete relief. *See Perez*, 2016 WL 6094809, at *11; *X Corp. v. Doe*, 805 F. Supp. 1298, 1311 (E.D. Va. 1992) (denying request for preliminary injunction to return confidential documents where not necessary to prevent harm to plaintiff). These paragraphs suffer from overbreadth and vagueness problems: paragraph 5, broadly requiring Defendants to "return" materials "containing any, or derived from any" Genentech trade secrets, is extremely broad. Paragraph 7 would require Defendants to determine whether any of four individuals "may have mentioned" any unspecified "Genentech confidential, proprietary, or trade secret information," in broadly defined communications, imposing the enormous burden of parsing potentially hundreds of thousands of emails and other communications.

### F. Genentech Has Failed to Show That an Injunction Is In the Public Interest

Defendant Chan joins in the arguments submitted by JHL and other Defendants in this Action. Mr. Chan also submits the following argument.

There is an overriding public interest in seeing that criminal trials are conducted fairly and evenhandedly pursuant to the established Federal Rules of Criminal Procedure. As stated in Rule 2: Purpose and Construction: "These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Rules 15, 16, and 17 set forth the scope and right of the parties to the criminal prosecution to obtain evidence pretrial. Discovery in criminal proceedings is vastly more limited than under the Federal Rules of Civil Procedure.

Mandatory injunctive relief requests Nos. 5 and 7 are nothing more than broadly worded requests for civil discovery by another name. Clearly there is a public interest in protecting companies from the misuse of misappropriated trade secrets. But that public interest cannot outweigh the need for assuring public trust in the criminal process. Civil litigants and the Government should not be permitted to use civil processes to subvert the balancing of discovery rights between the Government and criminal defendants to the advantage of the Government.

Genentech's truncated argument focuses on the assertion that Defendants should not use information that they do not have a right to possess (Motion, page 25:10-11), and talks about

legitimate compensation (Motion, page 25:17-18). However, those arguments relate to JHL, not Mr. Chan. In fact, there are no arguments specific to Mr. Chan. Accordingly, at least with respect to Mr. Chan, Genentech has failed to show that the overly broad injunctive relief sought is in the public interest.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Genentech's motion.

Dated:  January 4, 2019                           **JRA LAW PARTNERS, LLP**

By:  /s/ *Rod Divelbiss*
Rod Divelbiss
Attorneys for Defendant
JOHN CHAN