DAVID H. SCHWARTZ (SBN 62693)
NANCY CHUNG (SBN 225584)
LAW OFFICES OF DAVID H. SCHWARTZ, INC.
423 Washington Street, Sixth Floor
San Francisco, CA 94111
Tel: (415) 399-9301
Fax: (415) 399-9878
E-mail: dhs@lodhs.com; nchung@lodhs.com

Attorneys for Defendants Xanthe Lam, Allen Lam

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, <br><br> Defendants | CASE NO.: 3:18-cv-06582-WHA <br><br> **DEFENDANTS XANTHE LAM AND ALLEN LAM'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF AUTHORITIES

I. SUMMARY OF THE LAMS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION .............................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 3

III. LEGAL STANDARD FOR OBTAINING PRELIMINARY INJUNCTION .................... 6

IV. ARGUMENT .......................................................................................................................... 7

    A. Plaintiff's Requests that the Court Order the Lams to Turn Over Genentech Confidential or Trade Secret Documents to Genentech and to Provide Genentech and the Court a Log of their Communications Are Unnecessary to Prevent Irreparable Harm to Genentech But Will Require the Lams to Make Potentially Self-Incriminating Disclosures .................................................................................................................. 7

        1. Plaintiff's Request for Relief No. 5 Would Require the Lams to Make Testimonial Incriminating Disclosures as to Documents Potentially in Their Possession – Disclosures from which They Are Protected Under the Fifth Amendment ............... 7

        2. Plaintiff's Request for Relief No. 7 Seeking a Log of Potentially Incriminating Communications Regarding the Allegedly Misappropriated Trade Secrets Seeks Testimonial Disclosures from which They Are Protected Under the Fifth Amendment ............................................................................................................... 10

        3. Plaintiff Has Presented No Basis for a Finding that the Relief Sought in Requests 5 or 7 Are Necessary to Avoid Imminent Irreparable Harm ...................................... 11

    B. The Prejudice from Granting Plaintiff Civil Discovery Rights Against the Lams and Co-Defendants When Such Discovery Would Force Assertions of the Privilege (with Resulting Adverse Inferences) in the Civil Action and Provide the Government Evidence for Its Criminal Prosecution Which It Could Not Otherwise Obtain, Substantially Outweighs the Plaintiff's Right to Immediate Civil Discovery in the Form of Requests 5, 6 and 7 ..................................................................................... 12

    C. Granting Plaintiff Civil Discovery in the Guise of "Preliminary Relief" Is Against the Public Interest Because It Will Give the Government an Unfair Advantage By Having Access to Information Otherwise Unavailable to It. ...................................................... 15

V. CONCLUSION ..................................................................................................................... 15

LAM OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:18-cv-06585-WHA

TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Cottrell*, 632 F.3rd 1127 (9th Cir. 2011) ...................................................... 6

*Anderson v. United States*, 612 F.2nd 1112 ............................................................................................ 7

*City & Cty. of San Francisco v. Trump*, 897 F.3rd 1225 U.S. App. LEXIS 21318 (2018) .................... 7

*Doe v. United States (In re Grand Jury Subpoena)* 385 F.3rd 905 (9th Cir. 2004) ................................ 9

*Fed. Ins. Co. v. Laney* 2013 U.S. Dist. LEXIS 21250 2013 WL 594267 ............................................ 14

*Johnson v. Kay*, 860 F.2nd 529 (2nd Cir. 1988) ...................................................................................... 7

*Martinez v. Mathews*, 544 F.2nd 1233 (5th Cir. 1976) ............................................................................ 7

*Perez v. Valley Garlic, Inc.*, 2016 WL 6094809 (E.D. Cal. 2016) ....................................................... 14

*Stanley v. University of S. Cal.* 13 F.3rd 1313 (9th Cir. 1994).................................................... 1, 7, 14

*Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 1142204 (N.D. Cal. 2018) ............................................ 11

*Trump v. Int'l Refugee Assistance Project* ___U.S.___ [137 S.Ct. 2080, 198 L.Ed.2d 643] ............ 2, 7

*U.S. v. Pac. Design Furniture, Inc.*, 2015 WL 5440588 (C.D. Cal. 2015) .......................................... 14

*United States v. Hubbell* 530 U.S. 27 (2000) ..................................................................................... 2, 8

*United States v. Padilla* 869 F.2nd 372 (8th Cir. 1989) ........................................................................ 13

*Verigy US, Inc. v. Mayder*, 2008 WL 564634 (N.D. Cal. 2008) ......................................................... 12

*Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560 (N.D. Cal. 2017) ............................................... 6

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ..................................... 6, 7, 11

**Statutes**

18 U.S.C. § 1030 ............................................................................................................................. 3, 6, 10

18 U.S.C. § 1832 ............................................................................................................................. 3, 6, 10

28 U.S.C. § 1783 ..................................................................................................................................... 13

**Rules**

Federal Rule of Criminal Procedure 15................................................................................................. 15

Federal Rule of Criminal Procedure 16................................................................................................. 15

Federal Rule of Criminal Procedure 17................................................................................................. 15

**Treatises**

Wright & Miller, 2 *Fed. Prac. & Proc. Crim.* § 278 (4th ed.).............................................................. 14

**Constitutional Provisions**

United States Constitution, Amendment V ................................................................................... passim

### I. SUMMARY OF THE LAMS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Xanthe Lam and Allen Lam (jointly"the Lams"), who are also criminal defendants in criminal proceeding CR 18-527 pending before this Court, oppose the granting of any preliminary injunctive relief in this action for the reasons set forth in the Opposition of Defendant JHL Biotech, Inc. ("JHL") including the declarations filed by JHL in support of its Opposition and join in JHL's Opposition.

While the Lams join in the arguments made by JHL that Plaintiff has failed to meet its burden for establishing a basis for preliminary injunctive relief, were the Court to determine otherwise, the Lams are agreeable to the entry of an order that would incorporate Plaintiff's Requests 1-4 for prohibitory injunction, to the extent that the term "Genentech's trade secret information" is defined with sufficient specificity to permit reasonable compliance.

The Lams file this separate opposition focusing on Plaintiff's mandatory injunctive requests 5, 6, and 7. Mandatory preliminary injunctive relief should be denied "'unless the facts and law clearly favor the moving party.'" *Stanley v. University of S. Cal.* 13 F.3rd 1313, 1320 (9th Cir. 1994). Here, Plaintiff has no factual basis for claiming the mandatory requests are needed to prevent imminent irreparable harm; the harm that the Lam Defendants (and other Defendants) would suffer by the Court ordering requests 5, 6, and 7 far outweighs any harm Plaintiff would suffer if the requests are denied; and the strong public policy need to have criminal prosecutions proceed in accordance with the discovery permitted under the Federal Rules of Criminal Procedure would be undermined if the requests were ordered.

Requests 5 and 7 directly implicate the Lam Defendants' right against self-incrimination protected under the Fifth Amendment to the United States Constitution. Request 7, if granted, would direct the Lams to set forth a chronology of their communications with the other defendants relating to Plaintiff's trade secrets and confidential or proprietary information. It would require patent testimonial action by the Lams, who would be forced to assert their Fifth Amendment privilege and refuse to comply, risking the imposition of an adverse inference in this civil action.

Request 5 would require the Lams to search all of their files and records and disclose specific files, documents, and information in their possession that they obtained from Genentech and/or derived from Genentech trade secret, confidential, or proprietary information. Complying with that request would require each of the Lams to make "extensive use of the contents of his[/her] own mind" in order to determine which, if any, of the materials and information in their possession or control matched the materials the Court was requiring them to produce. Thus, any substantive response to Request 5 would be testimonial in nature and subject to objection by Fifth Amendment privilege, which the Lams will exercise. *United States v. Hubbell* 530 U.S. 27, 43 (2000).

Plaintiff has completely failed to present any reasons why the harm to the Lam Defendants from being forced to choose between preserving their Fifth Amendment rights and defending a civil suit seeking ruinous damages against them vastly outweighs whatever harm Plaintiff would suffer from not obtaining the information and materials sought in Requests 5 and 7 until after the completion of the criminal proceeding. Given that the Court may mold its decree to meet the exigencies of the particular case," *Trump v. Int'l Refugee Assistance Project* ___U.S.___ [137 S.Ct. 2080 2087, 198 L.Ed.2d 643, 650],  the Court should decline to order the mandatory disclosures sought by Plaintiff in Requests 5 and 7.

Although not directed at the Lams, the Lam Defendants also specifically oppose the relief sought in Request 6. Individual defendants Jordanov and Lin indicate they intend to invoke their Fifth Amendment privilege with respect to that request for relief, but corporate defendant JHL has no privilege to assert and likely would have to comply with the request for a sworn accounting of the facts necessary to establish the Government's criminal case, which sworn accounting would then be available to the Government for use in prosecuting the Lams. Under the discovery allowed by the Rules of Criminal Procedure, the Government could not obtain this information on its own. Thus, granting the relief sought in Request 6 will unfairly prejudice the Lams in the criminal proceeding. As with Requests 5 and 7, Plaintiff does not explain why prejudice to the Lams and the other two criminal defendants from the Court enforcing Request 6 against JHL does not far

outweigh any burden on Plaintiff from waiting to the conclusion of the criminal proceeding to obtain the requested information through a normal discovery process.

Finally, because the mandatory orders for Requests 5, 6 and 7 will upset the balance between the Government and criminal defendants in the criminal case, the very strong public policy that criminal prosecutions be handled fairly and even-handedly in accordance with the Rules of Criminal Procedure, granting Requests 5, 6 and 7 is not in the public interest. As Plaintiff has failed to put forward any factual basis for why Requests 5, 6 and 7 are necessary to prevent imminent irreparable harm, the reasonable inference is that these requests were made by Genentech to benefit the Government, in furtherance of the "hand in glove" relationship of Genentech and the Government laid out in the Declaration of William Osterhoudt ("Osterhoudt Dec.") filed in support of this opposition. As Requests 5, 6 and 7 will unfairly benefit the Government in the criminal prosecution, public policy requires they be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Xanthe Lam and Allen Lam are not only defendants in this civil action alleging misappropriation of trade secret information belonging to Genentech, they are also named in the related criminal proceeding 3:18-CR 18-527-WHA pending before this Court, and which this Court deemed related upon the motion of Plaintiff Genentech. In the indictment in that proceeding the Government is charging Xanthe Lam with, among other things, criminal theft of Genentech trade secrets pursuant to 18 U.S.C. § 1832(a) and criminal computer fraud and abuse pursuant to 18 U.S.C. § 1030(a) relating to unlawful access to Genentech computers and servers. Allen Lam is charged with, among other things, criminal theft of Genentech trade secrets pursuant to 18 U.S.C. 1832(a) which Allen allegedly obtained from his wife, Xanthe.

Together with this Opposition, the Lams are filing a Motion to Stay this civil proceeding pending the outcome of the related criminal proceeding, but they are not asking the Court to stay this proceeding prior to ruling on Plaintiff's Motion for Preliminary Injunction. The Motion to Stay is predicated upon the extreme prejudice that will be suffered by the Lams with respect to the criminal prosecution if Genentech is permitted to proceed with civil discovery in any fashion in this action

prior to the resolution of the criminal proceeding. For this reason, the Lam's specifically oppose Requests 5, 6, and 7 as they are nothing more than attempts to obtain discovery before a stay is entered.

Because of concerns about potential waiver of Fifth Amendment privilege, in opposing the Motion for Preliminary injunction, the Lams are neither affirming nor denying the factual predicate set forth by Plaintiff as a basis for some preliminary relief. However, the Lams are opposing the scope of relief sought by Plaintiff against the Lams because, if granted, such relief would force the Lam's to prematurely and unnecessarily assert their Fifth Amendment rights against self-incrimination with respect to testimonial disclosures of materials in their possession and the provision of narratives concerning communications with third parties concerning the alleged transmission of alleged trade secret material and/or materials that may have existed on Genentech servers.

Plaintiff does not contend that either Xanthe or Allen Lam currently are in possession or have control of any Genentech trade secret materials. Plaintiff asserts in its motion that Xanthe Lam was employed as a scientist at Genentech for 30 years and had access to Genentech confidential and trade secret material including material that Plaintiff contends are trade *secrets*. Plaintiff's motion is based on its assertion that Xanthe downloaded various files to her Genentech MacBook laptop, a computer in Genentech's possession. (Kirshman Dec ¶ 8, French Dec. ¶¶ 4 and 5) Xanthe Lam was terminated by Genentech on October 13, 2017 and before that cooperated in two interviews with Genentech. (Osterhoudt Dec. ¶ 5, Kirshman Dec. ¶¶ 4, 19) At that time, Genentech recovered her Genentech issued I-Phone. Xanthe's access to any Genentech servers also was cut off. (Kirshman Dec. ¶ 4)

Allen Lam has not worked for Genentech since 1998 (Kirshman Dec. ¶ 20)

On September 11, 2017 the United States Department of Justice executed a search warrant on the Lam's residence, seizing Allen Lam's laptop computer, the desktop computer, electronic storage devices, and various paper documents, Xanthe and Allen had in their home. (Osterhoudt Dec. ¶¶3-4),

Plaintiff makes no contention that either Xanthe or Allen have continued access to any Genentech confidential or proprietary material, and it is highly unlikely that *any* Genentech

confidential information, let alone trade secret material, could currently be accessed by either Xanthe Lam or Allen Lam.

For the reasons put forward in the Opposition, Defendants Xanthe Lam and Allen Lam, for themselves, only, do not object to the entry of an order *pendente lite* that:

1. They not disclose or use, directly or indirectly, information belonging to Genentech determined by the Court to be a trade secret and described with reasonable specificity permitting the Lams to comply with the order. The Lams ask that the order except from its scope the use of such information for purposes of defending themselves in the criminal and civil proceedings;

2. They will not make, test, use, promote, offer to sell, market, commercialize, or sell biologics, therapeutics, drugs, and/or products of any kind that utilize, embody, or were developed, in whole or in part, with the benefit or use of any of information determined by the Court to be a trade secret;

3. They will not utilize any processes or methods that are derived from, contain, or embody, in whole or in part, any Genentech information determined by the Court to be a trade secret and described with reasonable specificity permitting the Lams to comply with the order;

4. They will not submit to or file with any regulatory body any documents or other materials (in paper, electronic, or any other form, including, for example, cell lines, assays, test results, drug substances, or drug products) that are derived from, contain, or embody, in whole or in part, Genentech information determined by the Court to be a trade secret and described with reasonable specificity permitting the Lams to comply with the order;

5. Within thirty (30) calendar days from being ordered they will complete a search for, preserve, and provide to their counsel to hold under the terms of the Protective Order in effect in this action the following materials, if in fact, any such materials are found by them to be in their possession or control: (i) all copies of all Genentech documents and information, including without limitation any confidential, proprietary, and/or trade secret information acquired from Genentech; and (ii) all copies of all materials (in paper, electronic, or any other form, including, for example, cell lines, assays, test results, drug

       substances, or drug products) containing any, or derived from any, Genentech trade secrets as determined by the Court and described with reasonable specificity permitting the Lams to comply with the order.

Were the Court to enter an order that incorporated Plaintiff's request for relief number 5 in its Motion that the Lams be ordered to turn over to Genentech documents and/or information in their possession (which possession would be an element of proof of a violation of both 18 USC §§ 1832(a) and 1030(a)) the Lams would, on advice of their counsel, assert their privilege against self-incrimination and refuse to comply. Similarly, were the Court to include Plaintiff's request for relief number 7, that each of the Lams prepare a log of all of their written and oral communications any JHL affiliated person, the Lams would, on advice of their counsel, assert their privilege against self-incrimination. (Schwartz Dec. ¶¶ 2-3, 6, 7-8, 11).

## III.    LEGAL STANDARD FOR OBTAINING PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *All. for the Wild Rockies v. Cottrell*, 632 F.3rd 1127, 1131 (9th Cir. 2011), citing *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *All. for the Wild Rockies*, *supra,* 632 F.3rd at 1131; see also *Waymo LLC v. Uber Techs., Inc*., 2017 WL 2123560, at *6 (N.D. Cal. 2017). Winter "requires the plaintiff to make a showing on all four prongs." *All. for the Wild Rockies*, *supra,* 632 F.3rd at 1135. Where there are only "serious questions going to the merits," as opposed to a "likelihood" of success on the merits, there must be a "hardship balance that tips sharply toward the plaintiff" to support issuance of an injunction, "assuming the other two elements of the *Winter* test are also met." *Id*. at 1132 (emphasis added).

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents. [citations]. The purpose of such interim equitable relief is not to conclusively determine the rights

of the parties, *University of Tex. v. Camenisch*, 451 U. S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981), but to balance the equities as the litigation moves forward. In awarding a preliminary injunction a court must also "conside[r] . . . the overall public interest." *Winter, supra*, at 26, 129 S. Ct. 365, 172 L. Ed. 2d 249. In the course of doing so, a court "need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project,* ___U.S.___, [137 S.Ct. 2080, 2087, 198 L.Ed.2d 643, 650] (2017); *City & Cty. of San Francisco v. Trump*, 897 F.3rd 1225, 2018 U.S. App. LEXIS 21318 (2018).

"A prohibitory injunction preserves the status quo." *Johnson v. Kay*, 860 F.2nd 529, 541 (2nd Cir. 1988). A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2nd 1112, 1114 (9th Cir. 1979) (quoting *Martinez v. Mathews*, 544 F.2nd 1233, 1243 (5th Cir. 1976)). When a mandatory preliminary injunction is requested, the district court should deny such relief "'unless the facts and law clearly favor the moving party.'" (*Stanley v. University of S. Cal.* 13 F.3rd 1313, 1320 (9th Cir. 1994).)

## IV.    ARGUMENT

A. <u>Plaintiff's Requests that the Court Order the Lams to Turn Over Genentech Confidential or Trade Secret Documents to Genentech and to Provide Genentech and the Court a Log of their Communications Are Unnecessary to Prevent Irreparable Harm to Genentech But Will Require the Lams to Make Potentially Self-Incriminating Disclosures</u>

1. *Plaintiff's Request for Relief No. 5 Would Require the Lams to Make Testimonial Incriminating Disclosures as to Documents Potentially in Their Possession – Disclosures from Which They Are Protected Under the Fifth Amendment*

In its Amended Notice of Motion and Motion for Preliminary Injunction [ECF 25], Plaintiff says it seeks an order for preliminary injunction that includes:

> 5. requiring Defendants to preserve and to return to Genentech within fourteen (14) calendar days of the date of the Court's Order on this Motion (i) all copies of all Genentech documents and information, including without limitation any trade secret and other confidential or proprietary information acquired from Genentech; and (ii) all copies of all materials (in paper, electronic, or any other form, including, for example, cell lines, assays, test results, drug substances, or drug products) containing any, or derived from any, Genentech information, trade secrets, or other confidential or proprietary information;

Under (i) of this request, Plaintiff seeks a Court order requiring Defendants to identify from the universe of documents and information held by them (if any exist), which documents and information, if any, they have in their possession or control that belong to Genentech and to disclose the fact of such possession to Genentech. Under (ii) of this request, Plaintiff seeks a Court order requiring Defendant to determine which materials in their possession or control "contain any" or are "derived from any, Genentech information trade secrets, or other confidential or proprietary information." Each of these requests require Defendants to make testimonial disclosures of the documents in their possession – a disclosures that could constitute self-incrimination.

The Supreme Court has held that the act of producing documents under legal compulsion "may have a compelled testimonial aspect."

> We have held that "the act of production" itself may implicitly communicate "statements of fact." By "producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." Moreover, as was true in this case, when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents.
>
> *United States v. Hubbell* 530 U.S. 27, 36-37 (2000)

"'The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.' *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 71 S. Ct. 814 (1951)." *Id.* at 38.

A disclosure or production of documents is testimonial when it is "unquestionably necessary for respondent to make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena." *United States v. Hubbell*, *supra,* 530 U.S. at 43.

Although a subpoena that seeks specified documents where the existence and location of the documents are a "foregone conclusion" may be permissible because the witness's act of turning over the documents "adds little or nothing to the sum total of the government's information by

conceding he in fact has the [documents]," the burden of showing possession and existence of the summoned documents is on the party issuing the subpoena. *Doe v. United States (In re Grand Jury Subpoena*) 385 F.3rd 905, 909-910 (9th Cir. 2004) (reversing motion to quash subpoena because Government failed to "establish the existence of the documents sought and Doe's possession of them with 'reasonable particularity.'")

Plaintiff's evidence that Xanthe Lam was in possession of Genentech materials flows from a forensic analysis of Xanthe's Genentech laptop computer which is in Plaintiff's possession. Plaintiff's evidence that Allen Lam was in possession of Genentech materials flows from a forensic analysis of a laptop computer and a desktop computer that were seized by the government. (Osterhoudt Dec ¶¶ 3-4.) Plaintiff has no evidence that the Lams, presently possess or control any materials or information as defined in Request 5.  Plaintiff has not met its burden of showing as a "foregone conclusion" that either of the Lams are presently in possession of any of the materials or information it is asking the Court to order produced. Nor has Plaintiff specified with "reasonable particularity" the documents it seeks. *Doe v. United States, supra,* 385 F.3rd at 911.  Rather, it wants "all copies of all Genentech documents and information," "without limitation," and "all copies of all materials…containing any, or derived from any, Genentech information…" The breadth and lack of specificity of the request requires the Lam Defendants to testify as to specific materials in their possession by themselves choosing what materials they must turn over.

Responding to this request will constitute testimony by each Defendant that they have themselves determined that they are (or are not) in possession of Genentech "materials," "documents and information," and what those materials, documents, and/or information are.

Fulfilling the disclosure requirement of Request 5 will unquestionably require the Lams "to make extensive use of the contents of their own mind[s]" in identifying what, if any, documents are responsive.  *United States v. Hubbell*, *supra,* 530 U.S. at 43.

If the Lams were to respond substantively to the request other than to state they each had no materials or information as defined, they would be establishing one or more elements of the crimes for which they are charged.

Section 1832(a) of Title 18 of the United States Code, which criminalizes trade secret theft, with which both Lam Defendants are charged, contains five disjunctive methods for violating the statute. Method (3) is that the defendant:

> (3) receives, buys, or *possesses* such information, knowing the same to have been stolen or appropriated, obtain, or converted without authorization; (emphasis supplied)

Section 1030(a) of Title 18 of the United States Code, which criminalizes "Fraud and related activity in connection with computers" provides under (a)(4) that a violation occurs when a person:

> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…

Compliance with the requested order for disclosure and return of materials set forth in request (5) of Plaintiff's motion would subject both Lams to testimonial disclosures that would constitute an element of at least two of the offenses with which they are charged – it could show that they "possess" information belonging to Genentech and/or that they have materials that came from a Genentech protected computer. The Lams have an unquestioned Fifth Amendment right to refuse to comply with such requests. As set forth in the Declaration of David H. Schwartz in Opposition to Plaintiff's Motion for Preliminary Injunction ("Schwartz Dec."), ¶¶ 2-3, 6, 7-8, 11, the Lams will assert their Fifth Amendment rights against self-incrimination and refuse to comply with any order requiring them to turn over Genentech materials or information that potentially could be in their possession so long as they are facing criminal charges.

> 2. *Plaintiff's Request for Relief No. 7 Seeking a Log of Potentially Incriminating Communications Regarding the Allegedly Misappropriated Trade Secrets Seeks Testimonial Disclosures from which They Are Protected Under the Fifth Amendment*

Unlike request 5, Plaintiff's requested relief number 7 needs no explication as to how it would constitute compelled testimony relating to the criminal charges facing the Lams:

> 7. requiring Defendants to provide to Genentech's counsel and the Court, within thirty (30) calendar days of the date of the Court's Order on this Motion, a complete and chronologically organized log of all oral and written communications—including, without limitation, conferences, meetings, phone calls, Skype or video-chat sessions, one-on-one conversations, texts, emails, letters, memos, and voicemails—wherein Xanthe Lam, Allen Lam, John Chan,

or James Quach may have mentioned any Genentech confidential, proprietary or trade secret information to any officer, director, employee, agent, supplier, vendor, customer, client, partner, or consultant of the JHL Defendants.

Request number 7 expressly seeks compelled testimony, typical of the type of information that would be sought in an interrogatory in civil discovery. Any response to this request may certainly tend to incriminate each of the Lams with respect to the criminal charges pending against them.

As with request number 5, the Lams have an unquestioned Fifth Amendment right to refuse to comply with such a request. As set forth in the Declaration of David H. Schwartz in Opposition to Plaintiff's Motion for Preliminary Injunction ("Schwartz Dec. ¶¶ 2-3, 6, 7-8, 11) the Lam's will assert their Fifth Amendment rights against self-incrimination and refuse to comply with any order requiring them to turn over Genentech materials or information that potentially could be in their possession so long as they are facing criminal charges.

### 3. Plaintiff Has Presented No Basis for a Finding that the Relief Sought in Requests 5 or 7 Are Necessary to Avoid Imminent Irreparable Harm

As argued compellingly by Defendant JHL in its Opposition to the Motion for Preliminary Injunction, there is no presumption of irreparable harm arising from evidence of trade secret misappropriation – Plaintiff bears the burden of establishing irreparable harm, (*Winter v. Natural Resources Defense Council, Inc., supra,* 555 U.S. 7, at 20-22; *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 1142204, at *6 (N.D. Cal. 2018)), and it has failed to do so.

JHL has argued and presented evidence showing that Plaintiff has failed to establish the existence of imminent irreparable harm for *any* preliminary injunctive relief, and the Lam Defendants specifically adopt those arguments and evidence presented.

Focusing on requests for Relief 5 and 7 (and equally for Request 6 discussed below), the record is barren on why granting these requests for interim relief would protect Plaintiff from any conceivable imminent irreparable harm:

1. The Lams no longer have possession of the electronic devices which were used to present the forensic evidence presented by Plaintiff in support of its motion.

2. The Lams are agreeable to turning over any responsive materials that may exist to their counsel to hold until the resolution of the criminal proceedings;

3. The Lams are agreeable to entry of orders prohibiting them from using or disclosing any properly defined Genentech trade secrets or confidential or proprietary materials (as determined by the Court) pending the outcome of the litigation (and except for purposes of preparing a defense against their criminal charges).

4. As previously noted, the Lams have valid, good faith bases for refusing to comply with either request 5 or request 7 by asserting their Fifth Amendment privilege against self-incrimination. Ordering the requests will not result in Plaintiff gaining any information;

5. Plaintiff's claim of harm is that trade secret information has been provided to JHL; assuming, *arguendo*, that the Lams still have some trade secret information in their possession or control, given that they would be restrained from using or disclosing such information, including, obviously, using or disclosing information to JHL directly or indirectly, Plaintiff has not established how learning what, if any, Genentech trade secrets the Lams presently have would materially enhance any protection against the alleged *past* activity.

Plaintiff has failed to establish a case for imminent irreparable harm that would support its right to injunctive relief as requested in 5. and 7. Even if the Court were to find that some preliminary injunctive relief is appropriate, Plaintiff's requests for relief 5 and 7 should be rejected.

B. <u>The Prejudice from Granting Plaintiff Civil Discovery Rights Against the Lams and Co-Defendants When Such Discovery Would Force Assertions of the Privilege (with Resulting Adverse Inferences) in the Civil Action and Provide the Government Evidence for Its Criminal Prosecution Which It Could Not Otherwise Obtain, Substantially Outweighs the Plaintiff's Right to Immediate Civil Discovery in the Form of Requests 5, 6 and 7</u>

An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it were not granted. *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *10 (N.D. Cal. 2008).

As argued in the previous section, relief requests 5 and 7 provide no meaningful protection to Plaintiff against any case for imminent irreparable harm that it has presented. While the benefit

to Plaintiff from receiving that relief is negligible, the harm to the Lams with respect to their criminal prosecution from granting that relief is substantial. Were the Lams to comply with Court orders, they would waive Fifth Amendment rights and potentially provide valuable information the Government could use in its criminal prosecution. Given that the Lams will not waive their Fifth Amendment rights, their assertion of those rights and refusal to comply with the Court's order would likely result in an adverse inference being taken in the civil proceedings, where it is likely Plaintiff will be seeking hundreds of millions, if not billions, of dollars in damages.

With respect to requests 5 and 7, the balance of the hardships falls far more heavily on the Lams if the requests are granted, than upon the Plaintiff if the requests are denied.

The Lams also oppose the entry of Requests 5 and 7 as to the other defendants. Each of the individual defendants, including Defendants Jordanov and Lin, have indicated they will be asserting Fifth Amendment privilege in refusing to comply with Requests 5 and 7.  The same balance of equities exists for each of the other individual defendants, and Requests 5 and 7 should be denied for them as well.

Defendant JHL cannot assert a Fifth Amendment privilege objection against Request 5. But granting Request 5 as to JHL will severely prejudice the Lams, as well as Defendants Chan and Quach, because JHL's compelled disclosures under Request 5 will provide the Government with evidence for its criminal prosecution that it could not obtain absent Plaintiff's seeking such information through civil discovery or, in this case, through civil discovery masquerading as relief to prevent imminent irreparable harm.

In its Complaint [ECF 1], the Plaintiff alleges that Defendant JHL has its principal place of business in Hsinchu, Taiwan (¶46) but does not allege under what jurisdiction it exists. In fact, JHL is organized under the laws of the Cayman Islands and has no records in the United States. (Lin Dec. ¶ 4-8) Under Criminal Rule 17, the Government's ability to subpoena records in a foreign country is limited by the provision of 28 U.S.C. § 1783. Section 1783 limits the subpoena power to "a national or resident of the United States." There is no power for the Government or defendants to pursue criminal discovery against a foreign national located outside the United States. *United States v. Padilla* 869 F.2nd 372, 376-377 (8th Cir. 1989); Wright & Miller, 2 *Fed. Prac. & Proc. Crim.* § 278

(4th ed.), § 278Service—Person in a Foreign Country) The Government will not be able to subpoena JHL's records or obtain the information that Request 6 asks JHL to provide.

Like Requests 5 and 7, Request 6 is unsupported by any factual showing that Plaintiff faces imminent irreparable harm from Defendants disclosing its information to third parties. Request 6, like Requests 5 and 7, is not narrowly drawn to remedy the specific harm alleged. *Perez v. Valley Garlic, Inc.*, 2016 WL 6094809, at *11 (E.D. Cal. 2016); *U.S. v. Pac. Design Furniture, Inc.*, 2015 WL 5440588, at *3 (C.D.Cal. 2015) ("Injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs.")

Requests 5, 6 and 7 seek mandatory relief. Mandatory injunctions are "particularly disfavored" and are only granted when "the law and facts clearly favor the moving party. *Stanley v. Univ. of S. California*, 13 F.3rd , *supra at* 1320. As Plaintiff has failed to substantiate any risk of disclosure to third parties by *any* defendant, it is apparent that these requests are either Plaintiff's attempt to obtain some discovery cloaked as injunctive relief before a stay is imposed, and/or Plaintiff's attempt to provide the Government an edge in its criminal prosecution of the individual defendants.

Were the Court to grant the relief sought in Requests 5, 6, or 7, the responses obtained, which would, at a minimum, include responses from JHL, would provide the Government with discovery it would not be entitled to under the Rules of Criminal Procedure – giving the Government an unfair advantage over the Lams (and Chan and Quach) in the criminal proceedings.  This Court has pointed to the ability of the Government to obtain discovery "that it would otherwise not have under the federal rules of criminal procedure" as a reason for granting a stay of civil proceedings against civil defendants who were facing related criminal charges. *Fed. Ins. Co. v. Laney* 2013 U.S. Dist. LEXIS 21250 *8, 2013 WL 594267.  Plaintiff's attempt to obtain discovery benefitting the government in the parallel criminal prosecution through mandatory injunction orders should likewise be declined.

Request 6 also poses a substantial risk of harm to the Lams, while Plaintiff has failed to identify what harm would result to it if the request is denied. The balance of equities as to Request 6 falls heavily in favor of the Lam Defendants. For this reason, Request 6 should be denied.

C. <u>Granting Plaintiff Civil Discovery in the Guise of "Preliminary Relief" Is Against the Public Interest Because It Will Give the Government an Unfair Advantage by Having Access to Information Otherwise Unavailable to It.</u>

There is an overriding public interest in seeing that criminal trials are conducted fairly and evenhandedly pursuant to the established Federal Rules of Criminal Procedure. As stated in Rule 2: Purpose and Construction: "These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Rules 15, 16, and 17 set forth the scope and right of the parties to the criminal prosecution to obtain evidence pretrial. Discovery in criminal proceedings is vastly more limited than under the Federal Rules of Civil Procedure.

It is apparent that a stay of these civil proceedings pending outcome of the criminal prosecution is appropriate and desired by all defendants. Permitting discovery to go forward while the criminal prosecution is pending would force the four currently indicted defendants to choose between preserving their Fifth Amendment rights against self-incrimination at the potential cost of standing defenseless to a potentially ruinous damage award or defending their financial survival by giving up their most fundamental constitutional rights as criminal defendants. Public policy clearly points to avoiding putting defendants in such a Catch-22 position by staying discovery.

Mandatory injunctive relief requests 5, 6, and 7 are nothing more than requests for civil discovery by another name. Clearly there is a public interest in protecting companies from the misuse of misappropriated trade secrets. But that public interest cannot outweigh the need for assuring public trust in the criminal process. Civil litigants and the Government should not be permitted to use civil processes to subvert the balancing of discovery rights between the Government and criminal defendants to the advantage of the Government.

Requests 5, 6, and 7 are contrary to public policy where, as here, there are parallel criminal and civil actions. For that reason alone, the Court should deny these requests.

V. **CONCLUSION**

For the reasons stated Defendants Xanthe Lam and Allen Lam respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction in its entirety, or if the Court determines relief is warranted, to deny the requests for mandatory injunctive order numbers 5, 6, and 7.

| | |
|---|---|
| Dated: January 4, 2019 | Respectfully submitted, |
| | LAW OFFICES OF DAVID H. SCHWARTZ, INC. |
| | By:    */s/ David H. Schwartz*   |
| | David H. Schwartz |
| | Attorney for Defendants |
| | Xanthe Lam, Allen Lam |