1  Edward W. Swanson, SBN 159859
   ed@smllp.law
2  Britt Evangelist, SBN 260457
   britt@smllp.law
3  SWANSON & McNAMARA LLP
   300 Montgomery Street, Suite 1100
4  San Francisco, California 94104
   Telephone: (415) 477-3800
5  Facsimile: (415) 477-9010
6

7  Attorneys for RACHO JORDANOV

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  GENENTECH, INC.,                    Case No. 3:18-CV-06582-WHA

14              Plaintiff,              **DEFENDANT RACHO JORDANOV'S
                                        REPLY IN SUPPORT OF HIS MOTION
15       v.                             TO DISMISS THE COMPLAINT UNDER
                                        FRCP 12(b)(6)**
16  JHL BIOTECH, INC., XANTHE LAM, an
    individual, ALLEN LAM, an           **Judge:** Hon. William H. Alsup
17  individual, ALLEN LAM, an           **Courtroom:** 12 - 19th Floor
    individual, JAMES QUACH, an         **Date:** February 14, 2018
    individual, RACHO                   **Time:** 8:00 a.m.
18  JORDANOV, an individual, ROSE LIN, an
    individual, JOHN CHAN, an individual,
19  and DOES 1-50,
    Defendants.
20

21

22

23

24

25

26

27

28

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

## I.      INTRODUCTION

Despite Plaintiff's arguments to the contrary, the complaint filed in this case fails to allege that Mr. Jordanov (1) knew of or should have known of Ms. Lam's alleged trade secret theft, or (2) wrongfully participated in that conduct.  The complaint alleges only that Mr. Jordanov recruited a Genentech employee to work at JHL and worked with her on tasks related to Plaintiff's publicly disclosed formulations.  Furthermore, with regards to its cause of action under the federal trade secret statute, Plaintiff has not pled theft or use of a trade secret by Mr. Jordanov after the enactment of the statute in May 2016, as it must in order to sustain its claim under the statute.  And Plaintiff's attempt to use conspiracy allegations to satisfy this requirement is not supported by the law cited by Plaintiff, nor has Plaintiff sufficiently pled the conspiracy allegations.

## III.    ARGUMENT

### A.      Plaintiff's Complaint Does Not Adequately Allege Liability under the CUTSA or DTSA (First and Second Causes of Action)

Plaintiff argues that its complaint adequately pleads "both primary and secondary liability" for trade secret misappropriation.  Opp. at 15:23-18:03.  It does not.

In terms of primary liability, where, as here, the defendant did not acquire the trade secret directly from the owner, the Plaintiff must show (1) the defendant knew or had reason to know before use of the information that it was a trade secret, and (2) the defendant knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality.  *MedioStream, Inc. v. Microsoft Corp*, 869 F.Supp.2d 1095, 1114 (N.D. Cal. 2012).  In opposition, Plaintiff argues it has adequately alleged trade secret theft by Mr. Jordanov, because its complaint states that he recruited Mr. and Ms. Lam to JHL "knowing they would steal Genentech information," and that he then solicited and used the trade secret information he knew they would bring with them to JHL.  Opp. at 16:01-16:06 (citing ¶¶ 34,

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

1   142–43, 156–57, 175, 239–40).   However, the paragraphs cited by Plaintiff in their opposition,

2   to the extent they speak at all to the state of Mr. Jordanov's knowledge of Ms. Lam's alleged

3   trade secret theft, contain conclusory allegations, not facts[1], and thus they do not meet the

4   pleading standard.  *ATS Prod., Inc v. Champion Fiberglass, Inc.*, No. 13-CV-02403-SI, 2015 WL

5   6552698, at *3 (N.D. Cal. Oct. 28, 2015) (dismissing complaint against defendant Capital Resin

6   where Plaintiff alleged defendant worked on formulations embodying its trade secrets and that

7   defendant "knew or should have known" the secrets were misappropriated, because "nowhere in

8   its complaint does ATS allege any facts that would allow the Court to infer that Capital Resin

9   knew or should have known that ATS's trade secrets were misappropriated"); *Agilysys, Inc. v.*

10  *Hall*, 258 F. Supp. 3d 1331, 1346–47 (N.D. Ga. 2017) (dismissing complaint alleging that, *inter*

11  *alia*, the defendant hired competitor's former employee, Hall, "with full knowledge of Hall's

12  possession of, and access to, Plaintiff's trade secret information," because plaintiff had "not

13  alleged facts in the Amended Complaint to support its allegations").  These factually-devoid

14  conclusions are not enough where, as explained in Mr. Jordanov's moving papers, the work

15  being performed for JHL by Ms. Lam related to drug product formulations, a publicly-disclosed

16  topic.  *See* Jordanov Motion to Dismiss, Dkt. 62-1 at 7:12-8:07; Request for Judicial Notice in

17  Support of Motions to Dismiss, Dkt. 63 at **Ex. A**.

18        Plaintiff argues in opposition that its trade secret claims are not based on the acquisition

19  and use of public formulations but on "stolen Genentech confidential materials and know-how."

20  Opp. at 16:13-17:07 (citing Complaint, ¶ 26); *id*. at 16, n.8 (stating that trade secret claims are

---

[1] Paragraph 34 alleges that Ms. Rose Lin recruited the Lams to two different Taiwanese biotech companies.  Paragraphs 142-143 and 156-157 allege that Mr. Jordanov and Ms. Lin recruited Ms. Lam to do formulation work for JHL while she was employed at Genentech.  The allegations in paragraph 175 do not concern Mr. Jordanov.  Paragraphs 239-240 contain conclusory allegations that Mr. Jordanov and Ms. Lin "solicited Genentech's trade secret information" from Ms. Lam.  Paragraph 26, relied on elsewhere in Plaintiff's opposition (Opp. at 9:21-9:27), likewise contains the conclusory allegation that Mr. Jordanov "knowingly received and utilized a significant amount of stolen Genentech confidential materials."

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

based on "undisclosed proprietary information regarding how Genentech came to decide upon the most suitable formulation[.]").  However, nowhere in its complaint has Plaintiff sufficiently identified a formulation-related trade secret that it claims Ms. Lam shared with Mr. Jordanov such that Mr. Jordanov would have been put on notice that Ms. Lam was using Genentech trade secrets to perform her work for JHL.  Instead, Plaintiff only vaguely describes its formulation-related trade secrets as "formulation know-how" or its "information regarding the development and selection of a formulation."  Complaint, ¶¶ 4, 16, 177(b).  Plaintiff's formulation-related trade secret allegations are similar to those dismissed by other courts in this district as failing to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, *2 (N.D. Cal. Feb. 16, 2017) (citations and internal quotations omitted); *see also Vendavo, Inc. v. Price f(x) AG*, No. 17–CV–06930–RS, 2018 WL 1456697, *4 (N.D. Cal. Mar. 23, 2018); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542, *6 (N.D. Cal. Oct. 24, 2013).

In *Vendavo*, the court dismissed as too vague a trade secret claim that allegedly included things like "... negative knowhow learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements." *Id.* at *3 (internal quotations omitted). Similarly, in *Space Data Corp.*, the plaintiff in its complaint identified the trade secrets at issue only by vaguely alleging that they involved "data on the environment in the stratosphere" and **"**data on the propagation of radio signals from stratospheric balloon-based transceivers**."** 2017 WL 5013363 at *2.  In granting the motion to dismiss, the court found that this "high-level overview" of plaintiff's purported trade secrets was too vague to support a trade secret misappropriation claim, particularly where the plaintiff had "not made clear which aspects of its technology and other information" were part of public patents and which were secret.  *Id*. Similarly, in *Synopsys,* the plaintiff alleged the trade secrets at issue related to three of plaintiff's

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

products but also referred to plaintiff's publicly available patents improperly as trade secrets. 2013 WL 5770542 at *6.  The court found the complaint's description of alleged trade secrets to be "too sweeping and vague for Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie." *Id.*[2]

Plaintiff alleges only that Mr. Jordanov was aware that Ms. Lam's work focused on replicating the publicly-disclosed Genentech formulations.  Complaint, ¶ 142 (alleging Mr. Jordanov and Ms. Lam attended meetings at which they discussed "the raw materials and equipment that Xanthe would need to conduct formulation work on two of JHL's biosimilars, JHL 1101, designed to mimic Rituxan®, and JHL 1188, designed to mimic Herceptin®").  To the extent Plaintiff claims some aspect of Ms. Lam's formulation work involved trade secrets, it has not met the pleading requirements for identifying those trade secrets and thus has not pled that Mr. Jordanov knew or should have known of Ms. Lam's alleged theft and use.  Moreover, allegations about the mere discussion of "formulation work" or "formulation strategy" for proposed biosimilars to Genentech's medicines do not establish Mr. Jordanov's knowledge of Ms. Lam's alleged misappropriation and use of Genentech trade secrets.  Instead, Genentech's conclusory allegations state nothing more than non-actionable "reverse engineering" of a publicly-disclosed formulation.  *See Waymo LLC v. Uber Technologies, Inc. et al*, Case 3:17-cv-00939-WHA, Dkt. No. 2449, Penultimate Jury Instructions on Trade Secret Misappropriation, 7:12-22.

With regards to Mr. Jordanov's liability as an officer or director of JHL, Plaintiff's "secondary liability" theory, Plaintiff argues it has adequately alleged that Mr. Jordanov knew or

---

[2]  Plaintiff's failure to identify any formulation related trade secret is perhaps not a surprise given that Plaintiff does not adequately identified any such trade secrets in its Statement Regarding Trade Secrets Pursuant to California Code of Civil Procedure Section 2019.201.  See Request for Judicial Notice in Support of Motions to Dismiss, Dkt. 63 at, e.g., **Ex. A**, pg. 1-2 (stating that Plaintiff has trade secret information "regarding how [it] came to decide upon the most suitable formulation for Pulmozyme" but failing to identify that information).

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

1    should have known of Ms. Lam's trade secret theft and that he consented to it.  Opp. at 16:09-
2    16:12.  Plaintiff's argument suffers from a number of problems.

3         First, as discussed above, Plaintiff's allegations do not meet the Rule 8 requirement of
4    adequately alleging Mr. Jordanov had knowledge of or should have known of Ms. Lam's alleged
5    trade secret theft.  They are conclusory and devoid of any facts from which Mr. Jordanov's
6    knowledge could be inferred.

7         Second, Plaintiff ignores Judge Patel's decision under analogous facts in *Accuimage*.
8    There, Judge Patel held that a plaintiff must allege "unreasonable participation" in the unlawful
9    conduct by the corporate officer.  *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp.
10   2d 941, 950-51 (N.D. Cal. 2003) (*citing PMC,* 78 Cal.App.4th at 1389); *PMC*, 78 Cal.App.4th at
11   1389 ("the corporate director or officer must have known or had reason to know of the
12   misappropriation and then unreasonably participated in the unlawful conduct").  In *Accuimage*,
13   Judge Patel dismissed a misappropriation claim against the CEO of a corporation on allegations
14   that (1) the CEO had expressed interest in hiring one of the plaintiff's key employees, (2) the
15   employee brought with him a laptop computer containing the previous employer's confidential
16   trade secret information when he joined the CEO's company, and (3) the new corporation soon
17   thereafter introduced a substantially similar competing product.  *Id.* at 945-46, 950-51.  Judge
18   Patel found the plaintiffs had failed to plead facts showing the CEO had himself participated in
19   the wrongful conduct sufficient to state a claim.  *Id*. at 950 (stating that "mere knowledge of
20   tortious conduct by the corporation is not enough to hold a director or officer liable for the torts
21   of the corporation absent other 'unreasonable participation' in the unlawful conduct by the
22   individual") (*citing PMC*, 78 Cal. App.4th at 1389).  Plaintiff does not attempt to and cannot
23   meaningfully distinguish its allegations from those found to be infirm in *Accuimage*.

24        Rather, Plaintiff focuses on allegations that Mr. Jordanov knew Ms. Lam continued to
25   work for Genentech during her consulting work for JHL.  Opp. at 17:19-17:25; Opp. at 9:25
26   (citing paragraphs 235 and 306 of the complaint).  However, as explained in Mr. Jordanov's
27
28

6

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

moving papers, Plaintiff's own allegations establish that Ms. Lam represented she would be taking a leave of absence from Genentech during her work for JHL.  *See* Complaint, ¶¶ 142 - 145.  Moreover, even if that were not the case, Plaintiff's allegations, at best, relate to whether or not Ms. Lam's work for JHL ran afoul of her employment agreement.  They do not speak to whether Mr. Jordanov knew or should have known of Ms. Lam's alleged theft and unreasonably participated in it.

**B.     Plaintiff Has Not Adequately Alleged Mr. Jordanov Continued to Use its Purported Trade Secrets After Enactment of the DTSA Sufficient to Sustain its First Cause of Action**

 In its Opposition, Plaintiff argues that it has adequately pled continued use of its trade secrets past the enactment date of the DTSA such that its DTSA claim against Mr. Jordanov should survive this motion to dismiss.  Opp. at 19:03-20:02.  Specifically, Plaintiff contends that it has adequately pled (1) that Mr. Jordanov continued to use Genentech trade secret after the May 2016 enactment date and (2) that Mr. Jordanov engaged in a conspiracy to violate the DTSA and therefore has liability for any continuing violation committed by his coconspirators.  Neither the law cited by Plaintiff nor the allegations in its complaint support these arguments.

First, Plaintiff's reliance on *Sonoma Pharms. v. Collidion Inc.*, 2018 WL 33989410 (N.D. Cal. June 1, 2018) for its "ongoing violation" theory is misplaced.  There, the Court held: "Several courts, including those in this District, have concluded that DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date, ***so long as the defendant took some relevant act after that date***." *Id.* at *5, *quoting  Veronica Foods Co. v. Ecklin,* 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017) (internal punctuation omitted and emphasis added).  In *Sonoma,* to establish a continuing violation, the plaintiff alleged that it received a letter from one of the individual defendants, dated January 16, 2017, in which the defendant stated that each of the four individual defendants, now working for a competing firm, had "systematically copied all of [plaintiff's] trade secrets . .

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

1    . and are ***currently using these*** for starting up operations." *Sonoma* at *2 (emphasis added).

2    Thus, in *Sonoma,* the plaintiff alleged specific facts establishing that though the copying of the

3    trade secrets occurred prior to enactment of the DTSA, each of the individual defendants had

4    used the trade secrets post-enactment. *Id.; see also Becton, Dickinson and Company v. Cytek*

5    *Biosciences Inc.*, No.   , 2018 WL 2298500, *5 (N.D. Cal. May 21, 2018) (dismissing DTSA

6    claim against defendants where complaint failed to allege how each defendant was involved in

7    alleged on going use of trade secrets and when such involvement occurred).  Here, Plaintiff

8    alleges no relevant act by Mr. Jordanov after the date of enactment.  Unlike *Sonoma,* Plaintiff

9    alleges no specific fact establishing that Mr. Jordanov used any Genentech trade secrets after

10    May 11, 2016.  As a result, the claim for a direct violation of the DTSA must be dismissed.

11        Second, Plaintiff's argument that Mr. Jordanov is nonetheless liable for ongoing

12    violations under a conspiracy theory rests on faulty assumptions – that a conspiracy claim can be

13    brought under the DTSA and that it has adequately pled a conspiracy.  As JHL sets forth in its

14    opening (sec. IV-B-2(b)(1)) and reply briefs (sec. II-B-2(b)), the statutory framework of the

15    DTSA does not allow a private plaintiff to bring a claim under a conspiracy theory of liability.

16    As a result, under the DTSA, Plaintiff cannot rely on a conspiracy theory to establish Mr.

17    Jordanov's liability for the ongoing violations of others under the DTSA.  Nor does Plaintiff cite

18    to a case allowing a private plaintiff to bring a claim for conspiracy to violate the DTSA.  Its

19    citation to *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–511 (1994) – a

20    California case discussing the pleading of a conspiracy under California law – does nothing to

21    support Plaintiff's position that conspiracy allegations can save an untimely DTSA claim.

22    Indeed, *Applied Equip. Corp*., itself holds that a defendant cannot be held liable under a

23    conspiracy theory of liability if the defendant could not be held directly liable.  *Id*. at 510-514

24    (refusing to "illogically expand the doctrine of civil conspiracy by imposing tort liability for an

25    alleged wrong" via conspiracy allegations where the defendant could not be held primarily liable

26    for the tort and discussing cases so holding).

27

28

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA

Even if a conspiracy claim can be made under the DTSA, Plaintiff's conclusory allegations are insufficient to state a claim against Mr. Jordanov. *See* Jordanov Motion to Dismiss, Dkt. 62-1 at 11:08-11:18. And Plaintiff's citation to pre-*Twombly* and *Iqbal* authority (Opp. at 21:17-18) misstates Rule 8 pleading standards and does not save its insufficient pleadings. Plaintiff's bare assertion that Mr. Jordanov and Ms. Lin "recruited Xanthe and Allen Lam to steal trade secrets for JHL, and Xanthe and Allen agreed to do so," (Opp. at 21:5-21:6 *citing* Compl. ¶¶ 12–13), is no more than the type of unadorned accusation rejected in *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

### C. Mr. Jordanov Continues to Join in JHL's Motion to Dismiss and its Reply In Support Thereof

For the reasons described in JHL's concurrently filed Reply in support of its motion to dismiss at Sections II-B-1(a), II-B-1(b), II-B-2(a) and II-B-2(b), Causes of Action Three, Five and Seven should be dismissed as to Mr. Jordanov.

## IV.   CONCLUSION

For the foregoing reasons, all claims against defendant Racho Jordanov should be dismissed.

Dated: January 25, 2019

> /s/ *Edward W. Swanson*
> Edward W. Swanson
> Britt Evangelist
> SWANSON & McNAMARA LLP
> Attorneys for Defendant RACHO
> JORDANOV

**Reply ISO Racho Jordanov's Motion to Dismiss**
Case No. CV-18-06582-WHA