MILES EHRLICH (Cal. Bar No. 237954)
miles@ramsey-ehrlich.com
AMY E. CRAIG (SBN 269339)
amy@ramsey-ehrlich.com
KATHARINE KATES (Bar No. 155534)
katharine@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

*Attorneys for Defendant Rose Lin*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC., | Case No. 3:18-cv-06582-WHA |
| Plaintiff, | **DEFENDANT ROSE LIN'S REPLY IN SUPPORT OF JOINDER AND MOTION TO DISMISS UNDER FRCP 12(b)(6)** |
| v. | |
| JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, | **Judge:** Hon. William H. Alsup<br>**Courtroom:** 12 - 19th Floor<br>**Date:** February 14, 2018<br>**Time:** 8:00 a.m. |
| Defendants. | |

## I.    INTRODUCTION

Genentech's Opposition does not salvage the skeletal facts alleged as to Ms. Lin in its Complaint.  With few specific facts, Genentech seeks to impose personal liability on Ms. Lin for the unlawful misappropriation alleged against Xanthe and Allen Lam and JHL.  Its allegations against Ms. Lin are almost exclusively limited to her knowledge that

Xanthe and Allen Lam had access to Genentech's trade secrets and that she solicited them to work for JHL.  But, as set forth in Ms. Lin's opening brief and below, such limited allegations do not state a claim under the CUTSA or DTSA against Ms. Lin.  Nor do Genentech's conclusory allegations establish liability under state or federal conspiracy theories.  The federal DTSA claim must also fail for the simple reason that Genentech has not alleged any conduct by Ms. Lin that occurred after the date of the statute's enactment.  Finally, the remaining California causes of action alleged against Ms. Lin are superseded by the CUTSA and barred by the statute of limitations.  For all these reasons, this Court should dismiss the Complaint as to Ms. Lin.

## II.   ARGUMENT

### A. Genentech Fails To Plead Facts Establishing Ms. Lin's Knowing Participation In The Disclosure, Acquisition, Or Use Of Trade Secrets – Which Is Fatal To Claim Two

Genentech argues in its Opposition the cursory allegations as to Ms. Lin meet the minimum pleading standards.  But this completely ignores Judge Patel's decision under very similar facts in *Accuimage*.  There, the Court held that a corporate officer's knowledge that an employee has access to a competitor's trade secrets and that the employee worked on a competing product at the new company is insufficient to state a claim absent specific facts demonstrating the officer's "unreasonable participation" in the misappropriation.  *See Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 945-46, 950 (N.D.C.A. 2003).  *Accuimage* relies on California law regarding an officer's liability for the tortious conduct of a corporation: "the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 504 (1986); *see also PMC, Inc. v. Kadisha,* 78 Cal.App.4th 1368, 1380 (2000).  To impose liability for misappropriation, "the corporate director or officer must have known or had reason to know of the misappropriation and then unreasonably participated in the unlawful conduct." *PMC, Inc.*, 78 Cal.App.4th at 1389.  Under certain

circumstances, where a party knew – or had reason to know – of the misappropriation by others, the failure to stop tortious conduct may amount to such unreasonable participation.  *See id.*  But to state such a claim, Genentech must allege specific facts demonstrating this knowledge (or reason to know) and the failure to stop this misappropriation.  Genentech's conclusory allegations in the Complaint do not suffice. *See ATS Prod., Inc v. Champion Fiberglass, Inc.*, 2015 U.S. Dist. LEXIS 146314 at **7– 8 (N.D.C.A. 2015) (holding insufficient bare allegations that each defendant knew or should have known of the misappropriation of plaintiff's trade secrets in creating a new resin).

Instead, just like the plaintiff in *Accuimage,* Genentech's Complaint fails to allege facts demonstrating that Ms. Lin in any way authorized, directed, or participated in the alleged misappropriation.  Moreover, Genentech fails to allege the required detailed facts necessary to establish Ms. Lin's knowledge or reason to know of the misappropriation by others.  In its Opposition, Genentech points to several allegations – but none of them meet this standard, even when viewed together.  Opp. at 16:6, *citing* Compl., ¶¶ 34, 142– 43, 156–57, 175, 239–40.

First, Genentech identifies paragraph thirty-four of the Complaint, but that paragraph alleges only that Ms. Lin recruited the Lams to two Taiwanese biotech companies other than JHL.  This paragraph alleges nothing about Ms. Lin's knowledge of, or participation in, the purported trade secret misappropriation at issue here.

Second, Genentech emphasizes allegations that Ms. Lin and Mr. Joradanov recruited Xanthe Lam to work at JHL in December 2013, while she was employed at Genentech, and that the three discussed the materials and equipment she would need for "formulation work" and the "formulation strategy" for certain JHL biosimilars.  Compl., ¶¶ 142–43, 156-57.   But mere discussion of "formulation work" or "formulation strategy" for proposed biosimilars cannot establishes Ms. Lin's knowing consent or participation in a misappropriation, nor does it indicate that she even knew or had reason

to know of the misappropriation by Ms. Lam.  As Genentech admits, the formulation for the medicines at issue is publicly known.  These allegations, therefore, amount to nothing more than non-actionable reverse engineering.  Moreover, both the pleading standards established in the Northern District of California to state a trade secret misappropriation claim and Rule 8 require specific descriptions of the trade secrets at issue. *See Space Data Corp. v. X*, 2017 U.S. Dist. LEXIS 22571 at \*4-5 (N.D.C.A. 2017) (dismissing complaint for providing only a "high-level overview" and failure to describe "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies") (citations and internal quotations omitted); *Vendavo, Inc. v. Price f(x) AG*, 2018 U.S. Dist. LEXIS 48637 at \*\*9-10 (N.D.C.A. 2018) (conclusory and generalized allegations of a trade secret insufficient); Mar. 23, 2018); *Synopsys, Inc. v. ATopTech*,., 2013 U.S. Dist. LEXIS 153089 at \*\*20-21 (N.D.C.A. 2013) (complaint was "too sweeping and vague" to sufficiently define a trade secret and did not meet Rule 8 pleading requirements).

Genentech argues that its claims are based on "stolen Genentech confidential materials and know-how."  Opp. at 16:13-17:07 (citing Compl., ¶ 26); *id*. at 16, n.8 (stating that trade secret claims are based on "undisclosed proprietary information regarding how Genentech came to decide upon the most suitable formulation[.]").  In its Complaint, however, Genentech fails to identify a single formulation-related trade secret that it claims Ms. Lam shared with Ms. Lin.  Instead, Genentech cursorily references "formulation know-how" or its "information regarding the development and selection of a formulation."  Compl., ¶¶ 4, 16, 177(b).  Because Genentech fails to describe with any specificity what formulation-related trade secrets Ms. Lam purportedly shared with Ms. Lin, these allegations fail to state a claim under Rule 8 and the standards established in the Northern District of California.

Third, Genentech points to allegations it made regarding the receipt of purported "analytical methods" for biosimilars. Compl., ¶ 175. Yet, as Genentech describes it, this paragraph alleges only that Ms. Lin "exchanged 'several communications' by text message with Xanthe, including one in which Xanthe directed Lin to review an email concerning Genentech trade secrets, which was followed by a 27-minute-long video conference." Opp. at 17:16-18, *citing* Compl., ¶ 175.  Genentech fails to identify a single allegation that Ms. Lin additionally disclosed or used the "analytical methods."  Under California law, the receipt of a trade secret without additional allegations of disclosure or use cannot state a claim for trade secret misappropriation.  *See Silvaco Data Systems v. Intel Corp.* 184 Cal.App.4th 210, 223 (2010) ("one who passively receives a trade secret, but neither discloses nor uses it, would not be guilty of misappropriation").  Moreover, as with the formulation-related trade secrets set forth above, the bald allegation that Ms. Lin received emails and participated in a video conference on "analytical methods," without further specificity, fails to satisfy the pleading standards for trade secret misappropriation in the Northern District of California and under Rule 8.  *See, e.g., Synopsys,* 2013 U.S. Dist. LEXIS 153089 at **20-21.

Finally, Genentech seeks to rely on entirely conclusory allegations that Mr. Jordanov and Ms. Lin "solicited Genentech's trade secret information" from Xanthe Lam.  Compl., ¶¶ 239–40.  Again, if Genentech's labels and conclusions are removed, these allegations establish nothing more than that Ms. Lin and Mr. Jordanov hired Ms. Lam knowing that she had access to trade secrets.  The knowledge that Ms. Lam had access to trade secrets does not suffice to allege that Ms. Lin had reason to know that Ms. Lam had appropriated (or would appropriate) trade secrets, nor does it establish Ms. Lin's consent, authorization, or participation in the purported misappropriation.  In its Opposition, Genentech seeks to bolster this conclusory statement by pointing to its allegation that Mr. Jordanov and Ms. Lin "knowingly received and utilized a significant amount of stolen Genentech confidential materials, which JHL then put to use in its own

product development, formulation, manufacturing, and regulatory efforts." Opp. at 17:1-3, Compl., ¶ 26.  But these are just more labels and conclusions that do not meet the pleading standards of Rule 8.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A pleading that offers "labels and conclusions" or lists elements but is "devoid of 'further factual enhancement" does not meet Rule 8)(citations omitted).

Because Genentech cites no allegations establishing Ms. Lin's knowing consent, authorization, or participation in the purported misappropriation, or any allegations that she knew or should have known about the misappropriation, this Court should dismiss the CUTSA claim against her (Claim Two).

### B.  Genentech Fails To Allege A DTSA Claim Against Ms. Lin, Either As A Direct Violation Or Under A Conspiracy Theory, Thus, Claim One Should Be Dismissed

Because CUTSA and DTSA claims have substantially the same elements, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017), the DTSA claim should also be dismissed against Ms. Lin for failure to allege the elements of trade secret misappropriation, as set forth above.

Should the Court not dismiss the CUTSA and DTSA claims for failure to state a claim for misappropriation, the DTSA claim should nonetheless be dismissed because Genentech fails to allege conduct by Ms. Lin after the date of enactment – May 11, 2016. In its Opposition, Genentech raises two arguments as to why the DTSA claim should not be dismissed against Ms. Lin: first, that Genentech has sufficiently alleged an ongoing violation of the DTSA directly against Ms. Lin, and second, that Ms. Lin has engaged in a conspiracy to violate the DTSA and therefore has secondary liability for any continuing violation.  Neither argument is valid.

First, Genentech's reliance on *Sonoma Pharms. v. Collidion Inc.*, 2018 U.S. Dist. LEXIS 199088 (N.D.C.A. June 1, 2018), for its "ongoing violation" theory is misplaced. There, the Court observed: "Several courts, including those in this District, have concluded that DTSA applies to misappropriations that began prior to the DTSA's

enactment if the misappropriation continues to occur after the enactment date, ***so long as the defendant took some relevant act after that date***." *Id.* at *14, *quoting Veronica Foods Co. v. Ecklin,* 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017) (internal punctuation omitted and emphasis added).

In *Sonoma,* to establish a continuing violation, the plaintiff alleged that it received a letter from one of the individual defendants after the date of enactment, January 16, 2017, in which the defendant stated that each of the four individual defendants, now working for a competing firm, had "systematically copied all of [plaintiff's] trade secrets . . . and are ***currently using these*** for starting up operations." *Sonoma* at *6 (emphasis added). Thus, in *Sonoma,* the plaintiff alleged specific facts establishing that though the copying of the trade secrets occurred prior to enactment of the DTSA, each of the individual defendants had used the trade secrets post-enactment. *Id.* Here, Genentech alleges no relevant act by Ms. Lin after the date of enactment. Unlike *Sonoma,* Genentech alleges no specific fact establishing that Ms. Lin used any Genentech trade secrets after May 11, 2016 nor any fact to demonstrate that she knew or should have known of the misappropriation by others after this date. As a result, the claim for a direct violation of the DTSA must be dismissed.

Second, Genentech's argument that Ms. Lin is nonetheless liable for ongoing violations under a conspiracy theory is a failed effort to bootstrap its DTSA conspiracy claim into a theory of primary liability. As JHL sets forth in its opening and reply briefs, the statutory framework of the DTSA does not allow a private plaintiff to bring a claim under a conspiracy theory of liability. JHL Motion at § IV, B, 2, a; JHL Reply at § II, B 2, b. So Genentech cannot rely on a conspiracy theory to establish Ms. Lin's liability for the ongoing violations of others under the DTSA. And its citation to *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–511 (1994) – a California case discussing conspiracy under California law – is wholly inapposite to the DTSA claim.

Even if DTSA liability under a conspiracy theory were available to Genentech, its conclusory allegations are insufficient to state a conspiracy claim against Ms. Lin. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (conclusory allegations of a conspiracy are insufficient).  Genentech's citation to pre-*Twombly* and *Iqbal* authority (Opp. at 21:17-18) misconstrues the current Rule 8 standard: "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. citing Twombly.*  Genentech's mere assertion that Mr. Jordanov and Ms. Lin "recruited Xanthe and Allen Lam to steal trade secrets for JHL, and Xanthe and Allen agreed to do so," Opp at 21:5-6, *citing* Compl., ¶¶ 12–13, is the classic sort of unadorned accusation rejected in *Iqbal.*   And Genentech's allegation that Ms. Lin "agreed to hire Chan, whom Xanthe agreed to supervise, so that he could use Genentech trade secrets in 'formulating' JHL's products, a position for which he was otherwise unqualified," Opp. at 21:8-10, Compl., ¶¶ 31, 158–62, is also deficient.  That allegation discusses only an employment action by Ms. Lin, with the vague and conclusory addition that Mr. Chan "would use Genentech trade secrets."  It does not establish that Ms. Lin entered an agreement to misappropriate trade secrets. For these reasons, the Court should dismiss Claim One as to Ms. Lin.

## C.  Claims Three, Five, And Seven Are Also Subject to Dismissal

Genentech's additional claims against Ms. Lin should also be dismissed.  The conspiracy claims (Claim Three) fail because California does not recognize an independent cause of action for conspiracy, there is no private cause of action for conspiracy under the DTSA, and, as a matter of substance, Genentech fails to allege

an agreement among defendants – as JHL demonstrates in its opening and reply briefs *See* JHL Motion at § IV, B, 2; JHL Reply at § II, B, 2,  (addressing Claim Three).

In addition, as JHL also demonstrates, the common law claims against Ms. Lin for interference with contractual relations and aiding and abetting breach of fiduciary duty, Claims Five and Seven, are superseded by the CUTSA and were not brought within the statute of limitations.  *See* ; JHL Motion, § IV, B, 1., JHL Reply, § II, B, 1 (addressing Claims Five and Seven).

## III.    CONCLUSION

For the foregoing reasons and those set forth in Ms. Lin's opening brief, Ms. Lin should be dismissed from Claims One, Two, Three, Five, and Seven – and thus from the action.

Dated: January 25, 2019                    Respectfully Submitted,

                                           RAMSEY & EHRLICH LLP

                                           ____*/s/ Miles Ehrlich*_____
                                           Miles Ehrlich
                                           Amy Craig
                                           Katharine Kates
                                           *Attorneys for Defendant Rose Lin*