1  DAVID H. SCHWARTZ (SBN 62693)
   NANCY CHUNG (SBN 225584)
2  LAW OFFICES OF DAVID H. SCHWARTZ, INC.
   423 Washington Street, Sixth Floor
3  San Francisco, CA 94111
   Tel: (415) 399-9301
4  Fax: (415) 399-9878
   E-mail: dhs@lodhs.com; nchung@lodhs.com
5
6  Attorneys for Defendants Xanthe Lam and Allen Lam

7                    **UNITED STATES DISTRICT COURT**
8
                     **NORTHERN DISTRICT OF CALIFORNIA**
9
                          **SAN FRANCISCO DIVISION**
10
11

12 | GENENTECH, INC., | CASE NO.: 3:18-cv-06582-WHA |

13 | Plaintiff, |  |

14 | v. | **DEFENDANTS XANTHE LAM AND ALLEN LAM'S REPLY IN SUPPORT OF THEIR MOTION TO STAY PENDING DISPOSITION OF CRIMINAL CASE** |

15 | JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, | |

17 | | Date: February 14, 2019
        Time: 8:00 a.m.
        Courtroom: 12, 19th floor
        Judge: Hon. William H. Alsup |

19 | Defendants | Complaint Filed: October 29, 2018
                  Trial Date: Not Set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. SUMMARY OF LAMS' REPLY TO GENENTECH'S OPPOSITION TO MOTION FOR A STAY ........................................................................................................ 1

II. GENENTECH HAS FAILED TO DEMONSTRATE THAT A *PARTIAL* AND NOT A TOTAL STAY OF THESE CIVIL PROCEEDINGS IS PROPER UNDER THE *KEATING* FACTORS ........................................................................................................ 3

    A. *Keating* Factor 1: Genentech's Interest in Proceeding Expeditiously with the Litigation Will Be Sufficiently Addressed by the Court's Ruling on Its Motion for Preliminary Injunction. .................................................................................................. 3

    B. *Keating* Factor 2: If Genentech is Permitted to Proceed with Discovery against JHL, Including Depositions and Document Requests of JHL Managers/Employees Who Are Foreign Nationals Residing Outside the United States, the Indicted Defendants Will be Unfairly Burdened by Having the Government Benefit from Genentech's Discovery – Discovery Which the Government Could Not Obtain on its Own; If the Indicted Defendants Participate in Deposing Such Witnesses, They Will Be Exposing Their Defense Strategy to the Government. ............................... 5

    C. *Keating* Factor 3: Permitting Genentech to Pursue Its Case While the Criminal Case is Prepared for Trial Will Inevitably Create Unnecessary and Otherwise Avoidable Case Management Issues for the Court. ................................................. 8

    D. *Keating* Factor 4: While It Will Be Grossly Unfair to Bar the Indicted Defendants from Participating in Discovery that Genentech Wants to Conduct to Prove Its Case Against Them, the Government May Have Objections to the Indicted Defendants Benefiting from Participating in Such Discovery While the Criminal Action is Pending .............................................................................................................. 11

    E. *Keating* Factor 5: The Public Interest in Fair and Even-Handed Criminal Prosecutions Far Outweighs Genentech's Tardy Pursuit of Private Remuneration 12

III. IF GENENTECH INTENDS BY THE PHRASE "NOT PARTICIPATE" TO BAR THE INDICTED DEFENDANTS FROM PARTICIPATING IN DEPOSITIONS TAKEN WHILE THE STAY IS IN EFFECT, THE INDICTED DEFENDANTS' RIGHT TO QUESTION DEPOSED WITNESSES AFTER THE STAY IS LIFTED MUST BE SET FORTH IN THE STAY ORDER. ...................................................................................... 13

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*American Express Business Finance Corp. v. RW Professional Leasing Services*, 225 F. Supp. 2nd 263 (E.D.N.Y. 2003) .................................................................................................................. 12

*Doe ex rel. Rudy–Glanzer v. Glanzer*, 232 F.3rd 1258 (9th Cir. 2000) ..................................................... 9

*Doe v. United States (In re Grand Jury Subpoena)* 385 F.3rd 905 (9th Cir. 2004) ................................. 6

*Douglas v. United States* 2006 U.S.Dist.LEXIS 52754 (N.D.Cal. July 17, 2006) ............................ 13

*Fed Ins. Co. v. Tabb*, 1991 WL 113204 (N.D. Ill. 1991) ........................................................................ 7

*Industrial Indem. Co. v. Niebling* 844 F.Supp. 1374 (D.Ariz. 1994) ..................................................... 10

*ING Bank v. Korn* No. C09-124Z, 2009 U.S. Dist. LEXIS 138314 (W.D. Wash. July 8, 2009) ........ 12

*Keating v. Office of Thrift Supervision*, 45 F.3rd 322 (9th Cir. 1995) ............................................. passim

*SEC v. Alexander* No. 10-CV-04535-LHK) 2010 U.S.Dist.LEXIS 138547 (N.D.Cal. Dec. 22, 2010) 5, 8, 13

*SEC v. Dresser Indus., Inc*. 628 F.2nd 1368 (D.C. Cir. 1980) ....................................................... 1, 8, 9

*United States v. Hubbell* 530 U.S. 273 (2000) ..................................................................................... 6

*United States v. Moussaoui* 382 F.3rd 453 (4th Cir. 2004) ..................................................................... 7

*United States v. Padilla* 869 F.2nd 372 (8th Cir. 1989) ........................................................................... 7

**Statutes**

28 U.S.C. Section 1783 ............................................................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 32 ............................................................................................................ 13

Federal Rule of Criminal Procedure 16(b) .................................................................................................. 8

Federal Rule of Criminal Procedure 17 ....................................................................................................... 6

**Constitutional Provisions**

Fifth Amendment to the United States Constitution ........................................................................ passim

### I. SUMMARY OF LAMS' REPLY TO GENENTECH'S OPPOSITION TO MOTION FOR A STAY

In its Opposition to Defendants' Motions to Stay Proceedings Pending Resolution of Criminal Case [ECF 92] ("Opposition"), Genentech acknowledges that Defendants Xanthe Lam, Allen Lam, James Quach, and John Chan ("Indicted Defendants") are entitled to a stay of the civil proceedings until the criminal case is resolved, because of the consequences of forcing the Indicted Defendants to assert Fifth Amendment objections in the civil action while the criminal action remains pending. Genentech therefore agrees that the case should be stayed as to the Indicted Defendants, *except* that Indicted Defendants must be required to answer the Complaint and respond to civil discovery document requests.

Genentech's request for a partial stay (including only a partial stay of discovery against the Indicted Defendants) would undermine the most important purpose for granting a stay at all.

> [T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.

*SEC v. Dresser Indus., Inc*. 628 F.2nd 1368, 1375-76 (D.C. Cir. 1980)

Requiring the Indicted Defendants to answer the Complaint vitiates the Fifth Amendment protections that a stay is meant to preserve, including the civil application of an adverse inference from the assertion of the privilege. Genentech says civil defendants asserting their Fifth Amendment rights could apply for relief from the adverse inference once the stay is lifted. But Genentech offers no reason why such a make-work process is required. Genentech's proposal simply places additional burdens on the Court by forcing Indicted Defendants to file answers containing objections, potentially litigating whether their Fifth Amendment objections protect them from being defaulted, and then litigating the Indicted Defendants' applications to be relieved from the consequences of asserting the privilege once the stay is lifted. The purpose of the stay is to avoid this type of prejudice to the Indicted Defendants and preclude so unnecessarily burdening the Court.

The five *Keating* factors that the Court is to consider in whether to order a stay of a civil proceeding that parallels a pending criminal proceeding in combination weigh heavily in favor of a total stay pending the resolution of the criminal action.

1

Genentech says it wants the stay of discovery with respect to the Indicted Defendants to contain a loophole to permit Genentech to obtain documents from the Indicted Defendants in the civil action "including" what the Government gives the Indicted Defendants as discovery in the criminal action. While, depending upon how the request is worded, a request for Government discovery materials might not be subject to Fifth Amendment objection, production of Confidential criminal discovery materials by the Indicted Defendants is barred by the protective order currently in effect in the criminal proceeding. Nor does Genentech agree to limit its document requests to Government discovery materials, which raises the prospect of extended litigation in the civil proceeding over possible Fifth Amendment objections to responding to such requests. Again, a stay which forces Indicted Defendants to make Fifth Amendment objections to document requests will prejudice the Indicted Defendants and burden the Court with motion practice on issues that would not even arise if a total stay is ordered and will likely be moot once the partial stay is lifted.

Genentech says its needs to be able to proceed with discovery now in order to preserve fading memories and to find out if JHL has shared Genentech trade secrets with unnamed third-parties. After prioritizing the criminal investigation and prosecution over its private remedies for over two years, Genentech now argues the priorities must be reversed to allow it immediate discovery, even though such parallel prosecution will likely undermine the criminal discovery process and prejudice the Indicted Defendants by permitting the Government access to the fruits of Genentech's civil discovery which the Government could not obtain on its own.

As to Genentech's claimed need to find out with whom JHL has shared Genentech's trade secrets, that need will be addressed by the Court in ruling on Genentech's Motion for Preliminary Injunction, which seeks that very discovery in the form of a preliminary injunction.

Genentech's proposed partial stay, compared with a total stay, threatens to burden the Court with extensive motion practice over what discovery is and is not permitted by the partial stay, Fifth Amendment issues relating to answers to the complaint to be filed by Indicted Defendants, as well as the use in the parallel criminal action of material and information developed in the civil action. All of these issues would be precluded by entry of a total stay. If Genentech's proposed partial stay is ordered, these thorny issues will arise, only to likely be mooted when the stay is lifted.

2

Genentech offers no persuasive reason why their partial ill-defined stay is preferable to a total stay in terms of burdening the Court and efficient case management.

Additionally, the public interest in having the criminal proceeding uncontaminated by discovery developed in a parallel civil proceeding far outweighs any public interest in providing Genentech a quicker private remedy, especially in light of it being afforded just that if it is successful on its Motion for Preliminary Injunction.

Finally, Genentech's proposed "symmetrical" bar on the Indicted Defendants participating in civil discovery during the pendency of the stay is both ill-defined and highly prejudicial to the Indicted Defendants. In essence, it would permit Genentech to develop its civil case against the Indicted Defendants through document requests and depositions (and providing the fruits of that discovery to the Government for use in the criminal action), while prohibiting the Indicted Defendants from defending themselves with respect to such discovery either civilly or criminally. The simplest and fairest solution to these inequities is to enter a total stay, so that Genentech cannot benefit from, and punish the Indicted Defendants for, the valid exercise of their Fifth Amendment rights.

**II.  GENENTECH HAS FAILED TO DEMONSTRATE THAT A *PARTIAL* AND NOT A TOTAL STAY OF THESE CIVIL PROCEEDINGS IS PROPER UNDER THE *KEATING* FACTORS**

    A. <u>*Keating* Factor 1: Genentech's Interest in Proceeding Expeditiously with the Litigation Will Be Sufficiently Addressed by the Court's Ruling on Its Motion for Preliminary Injunction.</u>

In arguing the first of the five factors set forth in *Keating v. Office of Thrift Supervision*, 45 F.3rd 322, 324 (9th Cir. 1995), i.e., "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay," Genentech says: "Discovery can be vital to enable a plaintiff to identify the identities of potential defendants and sources of recovery and to evaluate the need for any further injunctive relief." (Opposition, p. 10) Specifically, Genentech claims it "has already shown that there is a real risk that the Civil Defendants have disclosed their trade secret material to other individuals and entities." (Opposition, pp. 10-11.)

3

However, Genentech seeks that same discovery through its Motion for Preliminary Injunction, by way of a direct order that the unindicted Defendants:

> provide a detailed accounting under oath, setting forth each individual and entity to whom or to which Defendants and any of them, and their employees or representatives, and all persons acting in concert or participating with them, disclosed (i) any Genentech documents or other materials (in paper, electronic, or any other form, including, for example, cell lines, assays, test results, drug substances, or drug products) or (ii) any of Genentech's confidential, proprietary, and/or trade secret information, what they saw or heard, when they saw or heard it, and for what purpose. This Order requires more than querying servers with keyword searches.
>
> Genentech's Proposed Order on Motion for Preliminary Injunction [ECF 20-1], p. 2 ¶ 6]

In its Motion for Preliminary Injunction, Genentech expressly stated that it needed the relief proposed under paragraph 6 of its order because "These arrangements evidence Defendants' intention to use and *disclose* Genentech's trade secrets to benefit Genentech's competitors." [ECF 32, p. 25 (emphasis supplied)]

Neither the Indicted Defendants nor the unindicted Defendants have opposed the Court hearing and deciding Genentech's Motion for Preliminary Injunction. If Genentech has made a case for requiring the relief set forth in Paragraph 6 of its Proposed Order, its reason for opposing a general stay to obtain for additional discovery from the unindicted Defendants will be moot. If the Court finds the relief sought in Paragraph 6 is unwarranted, then it will have determined that there is no compelling basis for finding that Genentech would be prejudiced by the imposition of a general stay order.

It should be noted that since both the Indicted Defendants and the individual unindicted Defendants will be asserting Fifth Amendment objections to discovery requests of the sort envisioned by Genentech, the discovery Genentech says it needs will be fruitless to the extent it is targeted at the Indicted Defendants or the unindicted individual Defendants. The only real target of Genentech's discovery targeting follow-on disclosures is JHL. However, Genentech's expressed concern that JHL is blithely disclosing alleged trade secrets to third parties seems hardly credible in light of Genentech's allegation that "By stealing Genentech's trade secrets, JHL has dramatically accelerated its progress on the development of competing drugs, providing it with an unfair advantage not only vis-à-vis Genentech, but also with respect to other biosimilar manufacturers who are playing by the

4

rules and competing lawfully." (Complaint, ¶ 6 [ECF 1]) It is not plausible that JHL would choose to disseminate to third parties the allegedly secret information that Genentech says is so valuable to JHL's business future.

The Court should impose a stay on discovery for all parties, not just the Indicted Defendants as proposed by Genentech. If Genentech (or any other party) can show a pressing need to conduct specific targeted discovery before the criminal case is resolved, for example that specific evidence is at risk of being destroyed or a witness may become unavailable, it can seek agreement from the parties for relief from the stay for that limited discovery, and if agreement is not forthcoming, apply to the Court for permission to take such limited discovery. *SEC v. Alexander* No. 10-CV-04535-LHK, 2010 U.S.Dist. LEXIS 138547, at *14 (N.D. Cal. Dec. 22, 2010): "if there are specific witnesses whose poor health, fading memories, or other circumstances justify more immediate discovery, the Court can avoid prejudice to Plaintiff by permitting discovery from these witnesses on a case-by-case basis."

Genentech has not demonstrated that it will suffer any meaningful prejudice by imposition of a general stay that will not be adequately addressed by the Court's ruling on the Motion for Preliminary Injunction. The first *Keating* factor weighs against a partial stay and in favor of the requested general stay.

B. *Keating* Factor 2: If Genentech is Permitted to Proceed with Discovery against JHL, Including Depositions and Document Requests of JHL Managers/Employees Who Are Foreign Nationals Residing Outside the United States, the Indicted Defendants Will be Unfairly Burdened by Having the Government Benefit from Genentech's Discovery – Discovery Which the Government Could Not Obtain on its Own; If the Indicted Defendants Participate in Deposing Such Witnesses, They Will Be Exposing Their Defense Strategy to the Government.

The second *Keating* factor is "the burden which any particular aspect of the proceedings may impose on defendants." Genentech pays lip service to the Indicted Defendants' protections against self-incrimination and will consent to a stay as to the Indicted Defendants but inserts caveats that would unreasonably burden the Indicted Defendants.

First, Genentech's caveats do not relieve the Indicted Defendants of the burden of having to raise Fifth Amendment objections in the civil action. Genentech insists Defendants, despite the stay, must have to answer the Complaint, which will require the assertion of the privilege (and potentially

5

a resulting adverse inference for purposes of pre-trial proceedings if not for the trial as well). Genentech also insists that it will have the right to propound document requests to the Indicted Defendants, which also may well require the Indicted Defendants to assert Fifth Amendment objections.

Genentech says an "example" (Opposition, p. 13:24-25) of the kind of document requests it seeks to serve on the Indicted Defendants would be "non-testimonial discovery "including" (Genentech Proposed Order Denying Defendants' Motions to Stay [ECF 92-1], p. 1 ¶ 2) documents and materials produced to the Indicted Defendants in the criminal action. While the "example" Genentech cites, depending upon the specific content and wording of the request, may not raise Fifth Amendment concerns, Genentech would seem to be reserving the right to propound other requests which may require Indicted Defendants to "use of the contents of his[/her] own mind" to respond, and which therefore would raise important Fifth Amendment concerns. *United States v. Hubbell* 530 U.S. 27, 43 (2000). Among other concerns, in order for a response to a document request to be "non-testimonial discovery" Genentech will have "the burden of showing possession and existence of the summoned documents" with the Indicted Defendant. *Doe v. United States (In re Grand Jury Subpoena)* 385 F.3rd 905, 909-910 (9th Cir. 2004). At least for documents other than those produced in criminal discovery, Genentech may not be able to satisfy that burden.

Second, Genentech totally fails to address the issue raised by the Lams' in their Motion to Stay [ECF 60, p. 5] that if it is permitted to proceed with discovery, it will be a conduit to the Government for information that the Government wouldn't be able to obtain on its own if the entire civil action is stayed.

As discussed in the Lams' Opposition to the Motion for Preliminary Injunction [ECF 71, p. 13], under Criminal Rule 17, the Government's ability to subpoena records in a foreign country is limited by the provision of 28 U.S.C. § 1783; Fed. R. Crim. P. 17(e)(2); see also *United States v. Moussaoui* 382 F.3rd 453, 463-64 (4th Cir. 2004). Section 1783 limits the subpoena power to "a national or resident of the United States." There is no power for the Government or defendants to pursue criminal discovery against a foreign national located outside the United States. *United States v. Padilla* 869 F.2nd 372, 376-377 (8th Cir. 1989); Wright & Miller, 2 Fed. Prac. & Proc. Crim. § 278.

If Genentech is permitted to take discovery against JHL and its non-U.S. managers/employees in China or Taiwan, it will be conducting discovery that is denied the Government under the Criminal Rules, and it will undoubtedly be under pressure to share, if not avidly sharing, the fruits of that discovery with the Government to assist the Government in proving its criminal case against the Indicted Defendants. *See, e.g.*, *Fed Ins. Co. v. Tabb*, 1991 WL 113204, at *1 (N.D. Ill. June 7, 1991): "It is conceivable that the broad scope of civil discovery may present to the prosecutors of the impending criminal action an irresistible temptation to use that discovery to their advantage in the criminal case.".  Under the protective order in this action Genentech would be free to share information with the Government, including information that Genentech has designated as Confidential or Highly Confidential – Outside Attorney's Eyes Only, as the Order restricts the use of such material only by a party who *receives* it, not the party who produces it. (*See* ETF 51, Section 7) For example, it is probable that the Government would be eager to obtain civil deposition testimony where witnesses said they discussed alleged Genentech trade secret information with an Indicted Defendant. Nothing in the civil Protective Order would prevent Genentech from sharing that testimony with the Government.[1]

Genentech's request for a partial stay (including only a partial stay of discovery against the Indicted Defendants) undermines the overriding purpose for granting a stay at all:

> Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.  If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.
>
> *SEC v. Dresser Indus., Inc*. 628 F.2nd 1368, 1375-76 (D.C. Cir. 1980)

---

[1] Such deposition testimony could be either inculpatory or exculpatory as to one or more Indicted Defendants. Serious Fifth Amendment Due Process and Sixth Amendment Right to Counsel issues could arise were the Indicted Defendants prohibited from using exculpatory civil discovery materials in their criminal defense.

7

Genentech's right to broad civil discovery (when it is permitted) and its sharing of such information with the Government is inconsistent with Federal Rule of Criminal Procedure 16. *SEC v. Alexander* No. 10-CV-04535-LHK 2010 U.S.Dist.LEXIS 138547, at *15 (N.D.Cal. Dec. 22, 2010): "permitting the SEC to engage in broad civil discovery would unfairly expand the scope of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)." Such sharing is a "well-recognized consequence" of parallel criminal and civil proceedings that may support a stay or deferral of discovery in cases where delay would not seriously injure the public interest or otherwise cause prejudice.

Genentech proposes a "symmetrical" prohibition on the Indicted Defendants from participating in civil discovery during the pendency of the stay. The unfairness and prejudice to the Indicted Defendants will be compounded if Genentech is permitted to develop its civil case (as well as the Government's criminal case) through civil discovery while the Indicted Defendants are barred from participating in Genentech's discovery or conducting discovery of their own to support their defense in the civil case and to counter the evidence the Government would be able to use directly or indirectly in the criminal proceedings. On the other hand, if the Court rejects the bar on the Indicted Defendants participating in depositions noticed by other parties while the stay is in effect, they are likely to be prejudiced by being required to ask their questions at those depositions or risk losing their right to pre-trial deposition examination of witnesses for preparation of their defenses. Cross-examination of deposition witnesses by counsel for Indicted Defendants could unfairly "expose the basis of the defense to the prosecution in advance of criminal trial." *SEC v. Dresser Indus., Inc.*, supra, 628 F.2nd at 1376. The only option that will minimize the prejudicial burden on the Indicted Defendants is to apply the stay to all parties to the civil action, including Genentech.

The burden to the Indicted Defendants from Genentech's proposal for a partial stay would be substantial. Thus, the second *Keating* factor weighs heavily in favor of a total stay.

  C. <u>*Keating* Factor 3: Permitting Genentech to Pursue Its Case While the Criminal Case is Prepared for Trial Will Inevitably Create Unnecessary and Otherwise Avoidable Case Management Issues for the Court.</u>

Genentech wants the Indicted Defendants to answer the Complaint [ECF 92, p. 13] and bear the onus of potential adverse inferences from asserting their Fifth Amendment rights in doing so. To

8

soften the blow Genentech suggests that the Court might later exercise its discretion to relieve defendants from adverse inferences resulting from assertion of the privilege once the need for Fifth Amendment assertion has abated. [ECF 92, pp. 8-9]: "This Court reserves substantial discretion in allowing later discovery after Fifth Amendment concerns have abated, or in granting relief) from adverse consequences associated with having invoked the Fifth Amendment. See, e.g., *Doe ex rel. Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)." In other words, Genentech wants the Court to force Fifth Amendment assertions at the outset of the stay promising that the Court can address requests for relief from the adverse consequences of such forced assertions when the stay is lifted. What is the point of such an exercise besides pointlessly punishing the Indicted Defendants for exercising constitutional rights and burdening the Court with avoidable motion practice?

Genentech's proposed stay conditions including forcing the defendants to answer the complaint and respond to document requests is a recipe for extensive motion practice over issues that will not arise from a total stay.

Answering the Complaint while the criminal case is pending will likely enmesh the Court in thorny issues relating to the assertion of the privilege. For example, in *Industrial Indem. Co. v. Niebling* 844 F.Supp. 1374, 1378 (D.Ariz. 1994), the court, in response to a motion for summary judgment against a defendant asserting the privilege in refusing to answer the complaint, ordered that the defendant could file an amended complaint so that the Court could determine whether the privilege was being properly asserted or whether a judgment of dismissal should be entered. "[T]he Court cannot determine at this time whether the invocation of the privilege was proper. Accordingly, the proper course is to require the defendants to file an amended Answer. If the defendants wish to continue to assert the privilege, they shall do so in accordance with the guidelines established in this Order. If, after the Answer is filed, the Court finds that the defendants have not provided a sufficient foundation for the invocation of the privilege, the Court will order the defendants to show cause why judgment should not be entered for the plaintiff." *Id*.

Forcing the Indicted Defendants to answer the complaint while the criminal action remains pending will require them to navigate between the Scylla of alleging too much and thereby waiving the privilege and the Charybdis of alleging too little and thereby waiving some or all defenses to the

civil action. Since it is acceptable to Genentech to stay this action as to the Indicted Defendants until the criminal case is resolved, having the stay preclude filing answers will permit the Indicted Defendants to avoid the privilege conundrum and moot the need for extensive motion practice over whether the Indicted Defendants got it right or will be defaulted for technical errors.

Genentech's proposal also would require the Indicted Defendants to respond to requests for production, including, *but not limited to,* requests to produce documents provided to the Indicted Defendants by the Government under the criminal discovery rules. Genentech's proposed order for a Stay [ECF 92-1] reads "Second, Genentech is entitled to seek non-testimonial discovery from each of the Indicted Defendants, *including*, specifically, requests for production which call for the production of documents or other evidence, where responding to those requests would require the Indicted Defendants to identify and then produce documents and evidence received by those defendants from the government in United States v. Lam, et al." (emphasis supplied)

Under its express terms, the protective order in the criminal action does not permit the Indicted Defendants to produce either to Genentech or to counsel for defendants in the civil case (including their own counsel in the civil case) Confidential discovery materials received by the Indicted Defendants from the Government in the criminal case:

> Discovery Material designated as "CONFIDENTIAL" shall be retained by defendant's counsel in the above-captioned case and furnished, at this time, to no one other than defendant's counsel in the above-captioned case, the staff supporting defendant's counsel in the above-captioned case such as interpreters, paralegal assistants, and secretarial, stenographic, and clerical employees who are working on this case under the direction of defendant's counsel and to whom it is necessary that the materials be disclosed for purposes of the defense of this case.

*United States v. Lam*, no 3:18-cr-00527-WHA ECF 59, ¶ 4, p. 5

Genentech's use of the criminal discovery materials would not be for purposes of the defense of the criminal action. Moreover, if Genentech has the right to obtain criminal discovery materials and use them in the civil action, then all counsel in the civil action have a right to see those materials and use them in the civil action. At the least, permitting the discovery asked for by Genentech will require harmonizing the protective order in the criminal action with the protective order in the civil action.

As noted, Genentech's caveat that it be permitted to request "non-testimonial" production of documents is not necessarily limited to Government produced discovery materials, and in any case, is likely to result in additional motion practice over what is or is not "testimonial." *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 U.S.Dist.LEXIS 103663. (N.D.Cal. July 5, 2017).

If the stay order is limited to the Indicted Defendants and includes Genentech's request that the Indicted Defendants not participate in discovery while the stay is in effect, the result will be that many JHL and third-party witnesses will have to be re-deposed by the Indicted Defendants when the stay is lifted. *American Express Business Finance Corp. v. RW Professional Leasing Services*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2003): witnesses deposed during stay may have to be re-deposed by Plaintiff in light of post-stay testimony provided by indicted defendants; *see also, ING Bank v. Korn* No. C09-124Z, 2009 U.S. Dist. LEXIS 138314, at *17 (W.D. Wash. July 8, 2009): "The administration of justice is best served by a discovery plan that allows the parties to take or set the depositions when all the parties can be present. After the Criminal Proceedings conclude and the Fifth Amendment issues are resolved, civil deposition discovery will likely proceed more efficiently."

The need for litigating Fifth Amendment issues arising from Genentech's request to conduct discovery against the Indicted Defendants even as the stay is in effect could easily be eliminated if Genentech's right to conduct such discovery is delayed until the stay is lifted. The partial stay proposed by Genentech will also lead to an inefficient discovery process.

The Third Keating factor of convenience of the courts in the management of its cases and efficient use of judicial resources weighs heavily in favor of a total stay.

> D. *Keating* Factor 4: While It Will Be Grossly Unfair to Bar the Indicted Defendants from Participating in Discovery that Genentech Wants to Conduct to Prove Its Case Against Them, the Government May Have Objections to the Indicted Defendants Benefiting from Participating in Such Discovery While the Criminal Action is Pending

Genentech has not discussed whether the Government has a position on Genentech's proposal for permitting discovery to go forward. Assuming the Court rejects Genentech's proposal that the Indicted Defendants not be permitted to participate in discovery while the stay is in effect, it is

11

unclear what the Government's position would be if the Indicted Defendants were able to conduct discovery in the civil action while the criminal proceeding remains pending. Presumably, just as the Indicted Defendants consider it prejudicial to their rights in the criminal proceeding for Genentech to conduct discovery that would benefit the Government, the Government may consider it prejudicial for the Indicted Defendants to have access to discovery tools in the civil action that will benefit them in defending the criminal charges.

Without the Government taking a position, it cannot be presumed that the fourth *Keating* factor supports Genentech's bid to permit the civil discovery to go forward.

### E. *Keating* Factor 5: The Public Interest in Fair and Even-Handed Criminal Prosecutions Far Outweighs Genentech's Tardy Pursuit of Private Remuneration

As stated in *Douglas v. United States*, Nos. C 03-04518 JW, C 04-05357 JW, 2006 U.S.Dist. LEXIS 52754, at *18-19 (N.D.Cal. July 17, 2006), the public has an interest in "ensuring that the criminal process is not subverted" by ongoing civil cases. *Bridgeport Harbour*, 269 F. Supp. 2d at 10 (quoting *Rosenthal v. Giuliani*, 2001 U.S. Dist. LEXIS 1207, 2001 WL 121944 at *2 (S.D.N.Y. Feb. 9, 2001)).

The public interest in expeditious civil litigation is stronger where the plaintiff is a federal agency than where the civil suit is between private parties. *SEC v. Alexander*, *supra,* 2010 U.S.Dist.LEXIS 138547, at *19.

Genentech waited two years from when it claims it first learned of Xanthe Lam's alleged breach of her duty of loyalty to Genentech before filing its complaint. [ECF 1, ¶ 36] It deferred filing its complaint for over a year from when the FBI revealed its investigation to the Lam's by raiding their residence and seizing documents and devices on September 11, 2017. (*See* Oosterhout Corrected Decl. [ECF 86] ¶ 4). To date, all of the delay in Genentech's ability to conduct civil discovery must be attributed to Genentech's prioritizing criminal prosecution of the Indicted Defendants over pursuing its civil remedies. Now that indictments are pending, Genentech seeks to reverse its priorities and risk subverting the criminal proceedings by conducting parallel civil discovery before the criminal proceedings are resolved.

Whatever public interest exists in providing Genentech with a private avenue for recovery of compensation is satisfied by Genentech getting the opportunity to convince the Court it is entitled to preliminary injunctive relief in the form of discovery of the same information that it argues is the reason to exempt Genentech from the discovery stay it otherwise considers appropriate. The public interest in providing Genentech a private remedy does not require more than it is already getting.

Thus, the fifth *Keating* factor also weighs heavily against Genentech's request to be able to proceed with discovery and in favor of a total stay of the civil action until the criminal action is resolved.

Looking at all of the *Keating* factors together, the need for a total stay that does not permit Genentech to run a discovery project parallel to the criminal prosecution is plain. Exempting Genentech from the stay will severely burden the Indicted Defendants in their civil and criminal defense while unfairly benefiting the government in pursuing its criminal prosecution. A total stay is necessary to respect the Indicted Defendants' rights to assert the privilege, minimize motion practice over privilege assertions which will be unnecessary if a total stay is granted but inevitable if Genentech is permitted to proceed with discovery, and protect the strong public interest in the criminal prosecutions proceeding fairly without being subverted by parallel civil case discovery.

### III. IF GENENTECH INTENDS BY THE PHRASE "NOT PARTICIPATE" TO BAR THE INDICTED DEFENDANTS FROM PARTICIPATING IN DEPOSITIONS TAKEN WHILE THE STAY IS IN EFFECT, THE INDICTED DEFENDANTS' RIGHT TO QUESTION DEPOSED WITNESSES AFTER THE STAY IS LIFTED MUST BE SET FORTH IN THE STAY ORDER.

Genentech proposes the Court order that "The Indicted Defendants shall not participate in discovery in this action until the stay is lifted." [ECF 92-1] Genentech does not define what "not participate in discovery" means. On its face, it would bar the Indicted Defendants not only from noticing depositions or propounding written discovery, but also bar the Indicted Defendants from attending depositions and cross-examining the deposition witnesses, or perhaps even being able to obtain and review discovery responses and deposition transcripts.

If Genentech intends "not participate" to include barring the Indicted Defendants from attending depositions and cross-examining deposition witnesses, the Indicted Defendants must have clearly enunciated the right to depose such witnesses once the stay is lifted.

13

Under Fed. R. Civ. Proc. Rule 32(a)(1)(A), no deposition from which the Indicted Defendants were barred could be used against them at a hearing or trial. But many witnesses who are likely to be deposed if Genentech is given permission to proceed with discovery against JHL will be JHL employees in China or Taiwan who may have material information about contact or lack of contact with Indicted Defendants as well as the nature of any contact that occurred. Genentech will have no interest in eliciting testimony from such witnesses that would undermine its contentions, while JHL is unlikely to pursue deposition questioning of its own employees. At such depositions, the barred Indicted Defendants will have no party representing their interest in eliciting information into the deposition record testimony specific to their defense. Depositions of third-party witnesses and Genentech employees are also likely to omit material questioning on issues central to the defense of the Indicted Defendants but peripheral or irrelevant to JHL's defense. Many if not most of these witnesses may not be subject to a subpoena for trial.

For these reasons, if the Court is inclined to grant Genentech's request to order that the Indicted Defendants not participate in discovery until the stay is lifted, the order should clearly state that no deposition taken where the Indicted Defendants were barred from participating should be deemed completed or its time limits exhausted until the Indicted Defendants have been afforded a reasonable opportunity to question such witnesses.

## IV. CONCLUSION

For the foregoing reasons, the Lam Defendants respectfully request that the Court stay this action as to all parties to the action for both responsive pleadings and discovery, pending resolution of the parallel criminal proceeding pending against the Indicted Defendants.

Dated: January 25, 2019                    Respectfully submitted,

                                           LAW OFFICES OF DAVID H. SCHWARTZ, INC.


                                           By:    _____ */s/ David H. Schwartz*_____
                                                       David H. Schwartz
                                           Attorney for Defendants Xanthe Lam and Allen Lam