DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
MICHAEL F. TUBACH (S.B. #145955)
mtubach@omm.com
DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:   +1 415 984 8700
Facsimile:    +1 415 984 8701

Attorneys for Defendant
JHL BIOTECH, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| GENENTECH, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50,<br><br>　　　　　　Defendants. | Case No. 3:18-cv-06582-WHA<br><br>**DEFENDANT JHL BIOTECH, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6); MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:   February 14, 2019<br>Time:   8:00 a.m.<br>Dept:   Courtroom 12, 19th Floor<br>Judge:  Hon. William Alsup<br><br>Complaint Filed: October 29, 2018<br>Trial Date: Not Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. ARGUMENT .................................................................................................................... 1
    A. The Court Does Not Have Personal Jurisdiction over JHL ................................... 1
        1. Genentech Fails to Show Purposeful Direction .......................................... 2
            a. The Lams' alleged conduct in California giving rise to the claims is not attributable to JHL ....................................................... 2
            b. No jurisdictionally sufficient conduct by Jordanov or Lin .............. 5
        2. No Claim Arises from JHL's Alleged California Activities ....................... 7
        3. The Exercise of Jurisdiction over JHL Would Not Be Reasonable ............. 8
    B. Claims Three, Five, and Seven Through Ten Fail ..................................................... 9
        1. The California Common Law Claims Fail (Claims 5 & 7) .......................... 9
            a. The claims are untimely .................................................................. 9
            b. CUTSA supersedes both common law claims .............................. 10
        2. The Conspiracy Claims Fail (Claims 3 & 9) .............................................. 11
            a. Genentech fails to properly plead common law conspiracy .......... 11
            b. The DTSA and the CFAA do not allow civil conspiracy claims ............................................................................................. 13
        3. The CFAA and CDAFA Claims Fail (Claims 8 & 10) .............................. 14
III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page
Page

**CASES**

*Agilysys, Inc. v. Hall*,
  258 F. Supp. 3d 1331 (N.D. Ga. 2017) .......................................................................... 13, 14

*Amba Mktg. Sys. v. Jobar Int'l*,
  551 F.2d 784 (9th Cir. 1977) ............................................................................................. 2

*Anokiwave, Inc. v. Rebeiz*,
  2018 WL 4407591 (S.D. Cal. 2018) ................................................................................ 11

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) ........................................................................................... 3

*Bernson v. Browning-Ferris Indus. of Cal., Inc.*,
  7 Cal. 4th 926 (1994) ...................................................................................................... 10

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) ........................................................................................... 5

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ............................................................................................. 8

*Data Disc v. Sys. Tech. Assocs.*,
  557 F.2d 1280 (9th Cir. 1977) ........................................................................................... 2

*Estakhrian v. Obenstine*,
  2011 WL 13128846 (C.D. Cal. 2011) .................................................................... 2, 3, 4, 5

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ................................................................................................. 9, 10

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ........................................................................................... 8

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  2007 WL 4284759 (D. Nev. 2007) .................................................................................... 6

*In re: Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. 2016) ............................................................................... 14

*Knapp v. Sage Payment Sols., Inc.*,
  2018 WL 659016 (C.D. Cal. 2018) ................................................................................... 4

*Mavrix Photos., LLC v. Livejournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) ....................................................................................... 2, 3

*Mont. Silversmiths, Inc. v. Taylor Brands, LLC*,
  850 F. Supp. 2d 1172 (D. Mont. 2012) ............................................................................. 7

*Naiman v. Tranzvia, LLC*,
  2017 WL 5992123 (N.D. Cal. 2017) ....................................................................... 3, 5, 15

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) .............................................................................. 13

*New Box Sols., LLC v. Davis*,
  2018 WL 4562764 (C.D. Cal. 2018) ............................................................................... 14

JHL'S REPLY ISO MOT. TO DISMISS PURSUANT TO FRCP 12(b)(2) & (6); MEM. P. & A. – 3:18-CV-06582-WHA

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Olenicoff v. UBS AG*,
  2010 WL 8530286 (C.D. Cal. 2010) .................................................................................. 12

*Oracle Corp. v. SAP AG*,
  734 F. Supp. 2d 956 (N.D. Cal. 2010) ............................................................................... 14

*Sarkis v. Lajcak*,
  2009 WL 3367069 (N.D. Cal. 2009) ................................................................................... 6

*SBM Site Servs. v. Garrett*,
  2012 WL 628619 (D. Colo. 2012) ..................................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................... 1

*Shurgard Storage Ctrs. v. Safeguard Self Storage*,
  119 F. Supp. 2d 1121 (W.D. Wash. 2000) ........................................................................ 14

*Steves & Sons v. JELD-WEN, Inc.*,
  271 F. Supp. 3d 835 (E.D. Va. 2017) ................................................................................ 13

*Taylor v. Portland Paramount Corp.*,
  383 F.2d 634 (9th Cir. 1967) ........................................................................................... 2, 3

*Terracom v. Valley Nat'l Bank*,
  49 F.3d 555 (9th Cir. 1995) ............................................................................................. 8, 9

*United States v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) ............................................................................................. 15

*United States v. Texas*,
  507 U.S. 529 (1993) ........................................................................................................... 13

*Way.com, Inc. v. Singh*,
  2018 WL 6704464 (N.D. Cal. 2018) ................................................................................... 7

*Waymo LLC v. Uber Techs.*,
  256 F. Supp. 3d 1059 (N.D. Cal. 2017) ............................................................................. 11

*Wynn v. Nat'l Broad.*,
  234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................................. 13

*Young v. Actions Semiconductor Co.*,
  386 F. App'x 623 (9th Cir. 2010) .................................................................................... 7, 9

**STATUTES**

18 U.S.C. § 1030(g) ................................................................................................................ 14

18 U.S.C. § 1832 ..................................................................................................................... 13

iii

JHL'S REPLY ISO MOT. TO DISMISS
PURSUANT TO FRCP 12(b)(2) & (6); MEM.
P. & A. – 3:18-CV-06582-WHA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Genentech fails to establish that the exercise of personal jurisdiction over JHL is appropriate. In support of its Motion, JHL submitted evidence showing its complete lack of relevant contacts with California, and that the Lams were not authorized by JHL to do anything in California, much less to steal Genentech's trade secrets. In response, Genentech fails to submit *any* evidence, relying on conclusory allegations, controverted factual allegations, and arguing that its Complaint includes allegations that it never pled. There are no uncontroverted, non-conclusory allegations in the Complaint that the alleged misconduct of the Lams in California was purposefully directed—either via authorization or ratification—by JHL. And none of the alleged conduct of Jordanov or Lin in California is sufficient or gives rise to Genentech's claims. Accordingly, personal jurisdiction is lacking and the claims against JHL should be dismissed.

Even if personal jurisdiction were proper, Genentech also fails to show why claims three, five, and seven through ten should survive as to JHL. Genentech admits that the common law claims (Claims 5 and 7) are stale unless saved by the discovery rule but fails to point to allegations sufficient to show the discovery rule excuses its lengthy delay in filing suit. Genentech likewise fails to show how the theories underlying these claims are sufficiently different from the trade secret misappropriation claims to avoid CUTSA supersession. Genentech concedes that the conspiracy claims (Claims 3 and 9) are improperly pled as separate claims, and it fails to point to sufficient allegations of any agreement in which JHL participated or authority permitting a civil conspiracy theory of liability under the applicable statutes. Finally, Genentech fails to point to allegations sufficient to establish that JHL is vicariously liable for the alleged misconduct of Quach underlying the computer fraud claims (Claims 8 and 10).

## II. ARGUMENT

### A. The Court Does Not Have Personal Jurisdiction over JHL

Genentech fails to meet its burden of showing that exercising personal jurisdiction over JHL is proper here. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (plaintiff's burden to establish personal jurisdiction). Genentech concedes that this Court cannot

exercise general jurisdiction over JHL (Opp. at 6:6-20) and instead contends that specific jurisdiction exists. Yet Genentech's contention relies only on "bare allegations" that are either conclusory or controverted by evidence JHL submitted. This is not sufficient for Genentech to carry its burden. *See Amba Mktg. Sys. v. Jobar Int'l*, 551 F.2d 784, 787 (9th Cir. 1977); *see also Data Disc v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (court may not assume the truth of allegations contradicted by affidavit); *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967) ("mere allegations of the complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction of a nonresident defendant"); *Estakhrian v. Obenstine*, 2011 WL 13128846, at *5 (C.D. Cal. 2011) (even where uncontroverted, court must take only factual, non-conclusory allegations as true).

### 1.   Genentech Fails to Show Purposeful Direction

Instead of responding to the evidence JHL submitted in support of its Motion with evidence of its own, Genentech rests on allegations that (a) "JHL committed torts in California through its agents Xanthe and Allen Lam" (Opp. at 6-9) or, alternatively, that (b) "JHL purposefully directed its illegal activities at California, causing harm in the state" (*id*. at 9-11). Neither set of allegations is sufficient.

#### a.   The Lams' alleged conduct in California giving rise to the claims is not attributable to JHL

The core of Genentech's purposeful direction argument is that Ms. and Mr. Lam acted as JHL's agents when they misappropriated trade secrets from Genentech, and that these acts may be imputed to JHL. Genentech posits two theories for the Lams' agency: (1) that JHL authorized the Lams' acts in advance, and (2) that JHL ratified them afterward, constituting purposeful direction by JHL. (Opp. at 7.) Both theories fail because they are controverted by JHL's evidence; and even if they were not, Genentech fails to state facts sufficient for either theory.

First, both theories should be rejected because Genentech does not meet its burden to show the existence of an agency relationship. Genentech's theories of actual authority and ratification are both predicated on the existence of a principal-agent relationship between JHL and the Lams. *Mavrix Photos., LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (actual

authority is one way a principal-agent relationship may be created); *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) (principal-agent relationship is a prerequisite to ratification theory of liability); *Naiman v. Tranzvia, LLC*, 2017 WL 5992123, at *11, 13 (N.D. Cal. 2017) (no agency based on actual authority or ratification where no allegations of agency relationship). To show an agency relationship existed, Genentech must show that the Lams had authority to act on behalf of JHL and that JHL had a right to control the Lams. *Mavrix Photos.*, 873 F.3d at 1054.

Genentech does not meet its burden. Genentech wrongly argues that the Court must accept all its cited agency allegations as true because they are undisputed facts (Opp. at 8:1-2); however, Genentech ignores that JHL submitted evidence contradicting key agency allegations. JHL's evidence that Ms. Lam did not have a contract with JHL and that Mr. Lam was an independent contractor show that JHL (1) had no right to control their actions and (2) did not authorize Ms. Lam to act on its behalf. (Lin Decl. ¶¶ 9, 10.) *Naiman*, 2017 WL 5992123, at *1. JHL's evidence also shows that it did not authorize its contractor Mr. Lam to act on JHL's behalf in California. (Lin Decl. ¶ 9.) Once controverted, the Court is not required to take Genentech's agency allegations as true. *Taylor*, 383 F.2d at 639. To overcome JHL's evidence, Genentech was required to provide evidentiary "fact[s] rather than conclusory [assertions]" to support its agency claims. *Estakhrian*, 2011 WL 13128846, at *5; *Taylor*, 383 F.2d at 639 (allegations contradicted by affidavits insufficient to support jurisdiction). Genentech submitted no evidence, and its agency allegations should be disregarded. On this ground alone, Genentech's authorization and ratification theories must fail.

Even absent JHL's evidence, Genentech's first theory of actual authorization would fail. Genentech argues that paragraphs 26, 239-40, 34, 215-18, and 142 show that JHL authorized the Lams' wrongful conduct in advance, thereby justifying imputing their acts to JHL. (Opp. at 7:18-28.) But the cited allegations are either conclusory, controverted, or fail to state facts showing JHL had a right of control or authorized the Lams to misappropriate on its behalf. *Mavrix Photos.*, 873 F.3d at 1054; *see Naiman*, 2017 WL 5992123, at *6 (failure to plead facts showing right of control insufficient to establish agency by actual authority for personal jurisdiction). Of the paragraphs Genentech cites to show that JHL authorized misappropriation, many contain

3     JHL'S REPLY ISO MOT. TO DISMISS PURSUANT TO FRCP 12(b)(2) & (6); MEM. P. & A. – 3:18-CV-06582-WHA

conclusory or controverted allegations that may be disregarded. *See Estakhrian*, 2011 WL 13128846, at *5. Paragraphs 239-40 are the linchpin of Genentech's argument, but those paragraphs make wholly conclusory, fact-free allegations that Jordanov and Lin misappropriated Genentech confidential information by soliciting Genentech's trade secrets from the Lams despite knowing Genentech employed Ms. Lam. Nor do the remaining cited paragraphs allege that ***JHL*** authorized the Lams' misappropriation or had a right to control their actions:

- Paragraph 26 alleges that JHL knew Ms. Lam was employed by Genentech, and "knowingly received" confidential materials from Genentech, but not that JHL authorized their misappropriation;

- Paragraphs 34 and 215-18 allege that Lin recruited Ms. Lam to Eusol, that at Eusol Ms. Lam downloaded confidential Genentech documents that would be helpful to Eusol, and that Lin transitioned Ms. Lam's "unlawful work" to JHL, but not that Lin authorized particular unlawful conduct directed toward California by Ms. Lam; and

- Paragraph 142 alleges that Lin and Jordanov offered Ms. Lam a consulting job at JHL and directly communicated with her regarding her one-month visit to JHL in Taiwan, but it does not allege that any misappropriation was involved.

Indeed, none of these paragraphs contains facts regarding JHL's right of control or assent to the Lams' acting on its behalf. The authorization theory therefore cannot support jurisdiction.

Genentech next relies on the same paragraphs of the Complaint in support of its alternative theory of agency by ratification. Again, none of Genentech's non-conclusory or uncontroverted allegations state facts to support this theory. As JHL explained in its opening brief, agency by ratification requires showing the purported principal had knowledge of the material facts regarding the agent's wrongful conduct. *Estakhrian*, 2011 WL 13128846, at *4. The principal must be shown to have had such knowledge before receiving any benefit from the alleged agent's actions. *Knapp v. Sage Payment Sols., Inc.*, 2018 WL 659016, at *7 (C.D. Cal. 2018) (no agency by ratification for personal jurisdiction purposes where plaintiff failed to provide evidence that defendant had knowledge of allegedly wrongful conduct before receipt of any alleged benefit from agent's actions). As explained above, Paragraphs 26 and 239-40 allege

that JHL or its agents "knowingly received and utilized a significant amount" of stolen confidential Genentech materials and "knowingly misappropriated" them, but they fail to allege that JHL knew the facts of Ms. Lam's alleged misappropriation from Genentech before receiving any benefit from them. (Compl. ¶¶ 26, 239-40.) Paragraphs 239-40 should also be disregarded as conclusory. *Estakhrian*, 2011 WL 13128846, at *5. Paragraphs 142 and 215-18 concern the Lams' recruitment, not JHL's alleged receipt of trade secrets, and so are not relevant to the ratification inquiry. Paragraph 34 alleges that Lin previously recruited Ms. Lam to Eusol "before later transitioning Xanthe's unlawful work to JHL," but it fails to state facts showing that Lin had knowledge of the material facts regarding Ms. Lam's alleged misappropriation. These allegations also fail to state facts required for agency by ratification.

Genentech cites *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1078 (9th Cir. 2011), in arguing that the legal relationship of the Lams to JHL is irrelevant to the jurisdictional inquiry. (Opp. at 8:15-18.) Genentech takes *CollegeSource* out of context: there, the court ruled that forum-directed acts by an independent contractor's employees could be attributed to the defendant where the defendant hired the contractor and specifically instructed it how to perform the forum-directed acts. 653 F.3d at 1078. Here, Genentech has not alleged, much less shown, that any JHL representative gave the Lams specific instructions to misappropriate trade secrets in California. *Naiman* is closer to the facts here. There, the plaintiff tried to impute an individual's unlawful contacts with a California plaintiff to the company that allegedly hired him. *Naiman*, 2017 WL 5992123, at *1. The company's agreement with the individual was critical: because it disclaimed an agency relationship and established an independent contractor relationship, the individual's contacts with California could not be imputed to the company. *Id.* at *6.

### b. No jurisdictionally sufficient conduct by Jordanov or Lin

Alternatively, Genentech asserts that JHL is subject to personal jurisdiction because Jordanov and Lin allegedly directed illegal activities at California by organizing and executing a scheme to steal Genentech's trade secrets. (Opp. at 9:11-12, 9:20-27.) Genentech claims it pled that Jordanov and Lin recruited Ms. Lam for the specific purpose of stealing trade secrets from Genentech (citing Compl. ¶¶ 26, 142, 143, 235, 306), solicited trade secrets from her (citing *id.* ¶¶

239-40), and knowingly accepted and used Genentech's stolen information (citing *id.* ¶ 26).[1] (Opp. at 9:20-27, 10:1-4.) But Genentech's Opposition overstates the allegations of the Complaint, and the allegations actually pled are factually deficient.

Genentech argues that paragraphs 26, 142, 143, 235, and 306 show that JHL recruited the Lams specifically to steal trade secrets from Genentech. But none of the cited paragraphs alleges that JHL recruited the Lams for this purpose or that JHL executed a scheme to steal trade secrets. Paragraphs 26, 235, and 306 allege that Jordanov and Lin knew Ms. Lam was employed by Genentech and knowingly received and utilized stolen Genentech materials, but those paragraphs do not allege any recruitment or scheme to enable trade secret theft. (Compl. ¶ 26.) Paragraphs 142 and 143 allege that Jordanov and Lin offered Ms. Lam a consulting job at JHL and communicated about her visit to JHL, but not that they recruited her to steal trade secrets. (*Id.* ¶¶ 142-43.) Merely emailing Ms. Lam to discuss a potential consulting relationship when she was in California does not suffice to establish jurisdiction. *Sarkis v. Lajcak*, 2009 WL 3367069, at *3-4 (N.D. Cal. 2009) (telephone calls and emails with forum resident to negotiate employment contract did not create sufficient connection where employee's work was to be performed abroad). Genentech attempts to distinguish *Sarkis* on the ground that JHL specifically recruited the Lams *because* Ms. Lam worked at Genentech in California and had access to Genentech computer systems to execute a scheme to obtain Genentech's trade secrets; but Genentech does not cite any factual allegations in its Complaint that support its argument. (Opp. at 10:12-15.)

Genentech next cites paragraphs 239-40 for its claim that Jordanov and Lin solicited trade secrets from the Lams. But, as noted above, these paragraphs are devoid of facts and contain only conclusory allegations that Jordanov and Lin solicited Genentech's trade secrets from Ms. Lam. These paragraphs should be disregarded. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2007 WL 4284759, at *3 (D. Nev. 2007) (conclusory allegations of intentional acts with foreseeable effect in forum state insufficient).

---

[1] Genentech claims in passing that John Chan and James Quach acted with Jordanov and Lin to solicit trade secret information from Genentech on behalf of JHL. (Opp. at 9:27-10:3.) But Genentech does not respond with argument or evidence to JHL's evidence controverting these claims of agency; accordingly, these claims fail. (Lin Decl. ¶¶ 11-12 (JHL had no contract with John Chan; James Quach was an independent contractor).)

Genentech argues that paragraph 26 alleges Jordanov and Lin knowingly received and utilized stolen Genentech materials. But this paragraph does not allege that either officer performed an intentional act directed at California. Thus, it fails to establish jurisdiction.

Finally, Genentech ignores the evidence that JHL does not compete with Genentech in California. (Lin. Decl. ¶ 16.) This critical fact distinguishes this case from several decisions Genentech relies on in opposition. In *Montana Silversmiths, Inc. v. Taylor Brands, LLC*, for example, the court found personal jurisdiction over a defendant who "used trade secrets obtained by a former [] employee *to compete with* the [forum]-based plaintiff." 850 F. Supp. 2d 1172, 1182 (D. Mont. 2012) (emphasis added). In *Way.com, Inc. v. Singh*—where purposeful direction was a "close question"—the out-of-state defendant allegedly used the plaintiff's confidential information to obtain the California plaintiff's business partners, causing the plaintiff harm in California. 2018 WL 6704464, at *8 (N.D. Cal. 2018). Unlike the defendants in both cases, JHL does not compete with Genentech anywhere, let alone in California. (Lin Decl. ¶ 16.) These cases therefore cannot support a finding of purposeful direction.

### 2. No Claim Arises from JHL's Alleged California Activities

Nor does Genentech show that its claims would not have arisen "but for" the JHL acts directed at California that constitute purposeful direction. Genentech's perfunctory assertion that its claims for trade-secret misappropriation, interference, aiding and abetting Ms. Lam's breach of the duty of loyalty, and computer fraud would not have arisen but for contacts with California is premised on JHL's recruitment of Ms. Lam (as she worked for a California company) and actions she undertook, including with respect to Quach. (Opp. at 11:22-12:8.) But Genentech has not shown that JHL had control over Ms. Lam's actions—let alone any acts she allegedly undertook with Quach. Indeed, on its allegations, Genentech's claims would still have arisen but for Jordanov's and Lin's few alleged intentional acts directed at California—recruitment of employees from California or email communications with Ms. Lam regarding a potential consulting relationship. (Compl. ¶¶ 142, 175.) *See Young v. Actions Semiconductor Co.*, 386 F. App'x 623, 627 (9th Cir. 2010) (claims that would still have arisen "but for" California activities did not satisfy second prong). This deficiency separately warrants dismissal.

### 3. The Exercise of Jurisdiction over JHL Would Not Be Reasonable

None of Genentech's arguments rebut JHL's showing that the exercise of jurisdiction in California would be unreasonable. Genentech argues that the first prong weighs in its favor based on an unsupported claim that JHL's purposeful interjection into California was "extensive." JHL's alleged contacts with California are, at best, attenuated and few: JHL has no business operations, employees, or offices in California and does not specifically solicit clients in California. (Lin Decl. ¶¶ 4-6, 8.) Accordingly, this factor weighs in JHL's favor. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (first factor weighed in defendant's favor where defendant performed no services nor solicited business in forum).

On the second prong, Genentech claims that the declarations submitted by JHL witnesses located in Taiwan and China show the burden on JHL is not great, because they attest that if called as witnesses, they would testify to the facts in their declarations under oath. (Opp. at 12:27-13:9.) This claim is unsupported by authority or logic. The foundational attestation of a small number of witnesses is irrelevant to burden, which focuses on a defendant's connection to the forum and resources to defend itself there. *Core-Vent*, 11 F.3d at 1489 (second factor weighed in favor of nonresident alien with no ongoing connection to United States). JHL is a nonresident alien with no ongoing connection to California and would be significantly burdened by defending itself in California. This factor therefore weighs in JHL's favor.

On the third prong, Genentech questions whether the exercise of jurisdiction would actually conflict with Taiwan's sovereignty. (Opp. at 13:17-20.) Genentech misunderstands the standard: a showing of actual conflict is not required. A court may presume a foreign sovereign has an interest in adjudicating a suit involving its resident. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). The court may presume Taiwan's interest in adjudicating this dispute, and this factor weighs in JHL's favor.

Genentech's other arguments ignore that the forum's and the plaintiff's interest are given limited weight, particularly where plaintiff operates outside the forum and could have brought suit elsewhere, as Genentech could have. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ([T]he law of personal jurisdiction is … primarily concerned with the defendant's

burden."). The heavy burden on JHL and the sovereignty concerns of exercising jurisdiction over JHL, a foreign corporation, should be given greater weight. *Young*, 386 F. App'x at 629 (finding these factors of particular importance where jurisdiction sought over alien corporation).

Genentech requests jurisdictional discovery "to the extent that any question remains about the Court's jurisdiction." (Opp. at 14.) This request should be denied, because Genentech has neither offered evidence to contradict JHL's evidence nor explained how such discovery might help meet Genentech's burden. *See Terracom*, 49 F.3d at 562 (denying jurisdictional discovery where plaintiff's claim of personal jurisdiction was attenuated and based on bare allegations in the face of defendants' specific denials).

### B. Claims Three, Five, and Seven Through Ten Fail

If the Court finds that the exercise of jurisdiction over JHL would be proper, the Court should still dismiss claims three, five, and seven through ten because Genentech fails to identify allegations in its Complaint sufficient to overcome the defects JHL identified in its Motion.

#### 1. The California Common Law Claims Fail (Claims 5 & 7)

##### a. The claims are untimely

Genentech effectively concedes that it failed to file its claims for interfering with Ms. Lam's contract with Genentech (Claim 5) and aiding and abetting Ms. Lam's alleged breach of the duty of loyalty (Claim 7) within two years of discovering Ms. Lam's alleged misconduct. (Opp. at 28-29.) Genentech argues that its delay in filing suit should not bar these claims because it did not immediately discover the full extent of the alleged misconduct. Genentech attempts to support this argument with "facts" that are neither alleged in the Complaint nor supported by evidence. (*Id*. at 29 & n.15.) But those unpled allegations cannot rescue the untimely claims.

Under the discovery rule, "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). To rely on the discovery rule, "a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

1  diligence." *Id.* at 808.

2  Genentech first argues that its delay is excusable because it did not learn of *JHL's* role in
3  the alleged misconduct in October 2016. (Opp. at 29:8-10.) This argument directly contradicts the
4  Complaint, which does not so circumscribe Genentech's knowledge: "Genentech first received
5  notice of the allegations described herein on or about October 11, 2016." (Compl. ¶ 244.) Nor is
6  this argument a sufficient excuse. The "failure to discover, or have reason to discover, the identity
7  of the defendant does not postpone the accrual of a cause of action." *Fox*, 35 Cal. 4th at 807. This
8  rule is "premised on the commonsense assumption that once the plaintiff is aware of the injury,
9  the applicable limitations period (often effectively extended by the filing of a Doe complaint)
10 normally affords sufficient opportunity to discover the identity of all the wrongdoers." *Bernson v.*
11 *Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 932 (1994). Genentech's admission that it
12 knew of Ms. Lam's allegedly disloyal conduct in violation of her employment agreement (Compl.
13 ¶¶ 244, 296, 302-11, 317-24) put it on notice to suspect other elements of the claims it now
14 asserts against JHL. *Fox*, 35 Cal. 4th at 807 ("[S]uspicion of one or more of the elements of a
15 cause of action, coupled with knowledge of any remaining elements, will generally trigger the
16 statute of limitations period"). Its lack of knowledge of *JHL* as of October 11, 2016 is irrelevant.

17 Moreover, Genentech fails to plead any facts explaining why—even after discovering Ms.
18 Lam's misconduct—it was unable to discover its claims against JHL despite exercising due
19 diligence. *Fox*, 35 Cal. 4th at 808 (plaintiff must plead "inability to have made earlier discovery
20 despite reasonable diligence"). Genentech attempts to cure this deficiency by asserting—without
21 evidence or explanation—that it waited over three weeks to interview any employees and over a
22 month to initiate any review of Ms. Lam's electronic files. (Opp. at 29:19-20.) This attempt to
23 reach beyond the pleadings is not only improper, but it also fails to establish that Genentech
24 reacted with reasonable diligence.

25       **b.  CUTSA supersedes both common law claims**

26 Genentech contends that CUTSA does not supersede its common law claims because
27 neither "depends on the misappropriation of any information, whether trade secret or otherwise."
28 (Opp. at 23:14-15.) But the Complaint refutes this argument.

1    The parties agree that CUTSA supersession turns on whether "stripped of facts supporting trade secret misappropriation, the remaining *factual* allegations can be reassembled to independently support other causes of action." *Waymo LLC v. Uber Techs.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). Genentech points to a total of two supposedly non-trade secret allegations in its 355-paragraph Complaint: (1) Ms. Lam engaged in "employment and/or other activity with Genentech competitor JHL, thereby breaching her Proprietary Information Agreement with Genentech," and (2) Ms. Lam "consulted or otherwise worked for or on behalf of Eusol, Mycenax, JHL, APBio, and OBI." (Opp. at 23:25-24:2, 25:20, citing Compl. ¶¶ 308, 314).

But these allegations are not only conclusory, they directly support Genentech's trade secret misappropriation claims. That is, the only "employment," "other activity," "consult[ing]," or "other[] work" Ms. Lam purportedly had with JHL is her alleged disclosure of trade secrets to JHL. (*E.g.*, Compl. ¶¶ 31, 125, 146.) And the Complaint fails to allege any breach of the duty of loyalty unrelated to the alleged trade secret misappropriation. Indeed, "the whole theory behind the breach[es] of [contract and duty of loyalty] here is the disclosure of proprietary information," *Anokiwave, Inc. v. Rebeiz*, 2018 WL 4407591, at *4 (S.D. Cal. 2018), and Genentech has not alleged any "wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim." *Waymo*, 256 F. Supp. 3d at 1063. For these reasons, CUTSA supersedes these claims.

### 2.   The Conspiracy Claims Fail (Claims 3 & 9)

#### a.   Genentech fails to properly plead common law conspiracy

JHL's Motion explained that Genentech (1) failed to plead the required elements of civil conspiracy under California or federal common law and (2) improperly alleged distinct conspiracy claims. (Mem. at 20-21.) In response, Genentech concedes the latter point (Opp. at 20-21, n.9), but contends it adequately alleged that JHL conspired to violate DTSA and CUTSA (Claim 3) and the CFAA (Claim 9) (*id*. at 21-22, 26-27). Those allegations are not sufficient.

Under any standard, the barebones allegations Genentech cites are insufficient to plausibly allege or infer a conspiracy to misappropriate trade secrets. First, Genentech claims it alleged that JHL recruited the Lams to steal trade secrets. (Opp. at 21:5-6.) But Genentech actually alleged only that the Lams were hired, that Ms. Lam continued to work at Genentech (Compl. ¶ 12), and

that information Ms. Lam took helped JHL's development of biosimilars (*id.* ¶ 13). These allegations do not show that JHL had an *agreement* with anyone to misappropriate trade secrets. Second, Genentech points to its allegations that Ms. Lam collected trade secrets, shared them with Mr. Lam, and that both used the trade secrets for JHL's benefit. (Opp. at 21:6-8.) But again, the Lams' alleged sharing and use of trade secrets likewise fails to establish any *agreement* with JHL to misappropriate. Third, Genentech points to its allegation that Ms. Lam recruited Chan and later provided him with trade secret information. (*Id*. at 21:9-10.) Again, this does not show an *agreement* involving JHL. This is especially true because Genentech alleges that it was Ms. Lam who arranged the hiring of Chan who was "a family friend," and it was Ms. Lam who provided the trade secret information to Chan (as opposed to JHL orchestrating Chan's hiring and receipt of alleged trade secrets). (*See* Compl. ¶¶ 31, 159-62.) Finally, Genentech alleges "JHL then agreed to hire Quach" (Opp. at 21:11), but merely hiring Quach does not suggest, let alone establish, an agreement to conspire. Genentech also alleges that Quach "agreed with Xanthe" to download trade secrets, not that he did so with JHL. *Id.* Genentech further alleges that it was *Ms. Lam* who gave Quach "advice and support" so he could get the job at JHL, and *Ms. Lam* who arranged with Quach to use Genentech login credentials for the downloading. (Compl. ¶¶ 197-98.) In isolation or in sum, these allegations do not amount to or plausibly suggest an agreement by JHL to misappropriate Genentech's trade secrets.

Genentech compares its allegations to those in *Olenicoff v. UBS AG*, 2010 WL 8530286, at *30 (C.D. Cal. 2010). But the conspiracy allegations in *Olenicoff* were supported by facts that plausibly suggested the existence of an agreement—not anodyne facts like hiring or recruiting employees. *See id.* (conspiracy pled by "specifically alleg[ing] that each of the … Defendants participated in the 'pump and dump' scheme" by "fabricating office locations, development status, third-party financial support and viability" and "pa[ying] UBS bankers … a 'kickback'").

The allegations supporting Genentech's CFAA conspiracy claim are also insufficient (assuming such a conspiracy claim exists). Genentech points to the alleged agreement between Ms. Lam and Quach and argues that JHL supposedly benefited from information Quach allegedly received from Ms. Lam. (Compl. ¶ 338.) But as explained in JHL's Motion, these "conspiracy by

1  benefit" allegations do not suffice and are logically absurd: the alleged agreement would not have
2  JHL joining the conspiracy to violate the CFAA until *after* all the alleged CFAA violations had
3  occurred in July 2017. (Mem. at 23:20-24.) Further, Genentech cannot implicate JHL merely by
4  pointing to Ms. Lam's involvement (Opp. 27:14-16); instead, it must plead facts supporting the
5  conclusion that her actions were "in the scope of employment [by JHL] or the employer direct[ed]
6  the employee's conduct," which Genentech has not done. *NetApp, Inc. v. Nimble Storage, Inc.*, 41
7  F. Supp. 3d 816, 835 (N.D. Cal. 2014). Finally, Genentech argues that JHL is liable because
8  Quach was its agent during his involvement in the alleged agreement to violate CFAA. (Opp. at
9  27:16-24). But as discussed above, Genentech's anemic agency allegations on this point are
10 insufficient.

      **b.**  **The DTSA and the CFAA do not allow civil conspiracy claims**

    Genentech does not cite a single case supporting a civil conspiracy claim under either CUTSA or the DTSA. The only authority the parties cite on the DTSA—*Steves & Sons v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835 (E.D. Va. 2017)—specifically rejects such a claim because only the *criminal* portion of the DTSA (18 U.S.C. § 1832) permits a conspiracy enforcement action. Genentech tries to circumvent the statute's narrow ambit by relying on vague references to common law principles it contends apply if the statute does not "speak directly" to an issue. (Opp. at 23:1-3 (citing *United States v. Texas*, 507 U.S. 529, 534 (1993)).) But of course the DTSA *does* speak directly to the inchoate offenses, and Congress chose to provide only a *criminal* recourse on that basis. Thus, "[w]here, as here, Congress has made such a clear demarcation, it is not for the courts to change that line by implying what Congress did not see fit to provide." *Id.*; *see also Wynn v. Nat'l Broad.*, 234 F. Supp. 2d 1067, 1115 (C.D. Cal. 2002) (declining to allow common law theories to extend liability and "make an 'end run' around the federal statutory structure").

    Similarly, the CFAA does not create liability for one who does not actually access information, but merely *receives* it from another—the type of acts alleged in Genentech's CFAA conspiracy claim. *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017) (collecting cases rejecting efforts to extend the reach of the CFAA beyond those who actually accessed the plaintiff's computer network). Without addressing *Agilysys*, Genentech cites a single

case that allowed a claim of conspiracy to violate the CFAA to survive a motion to dismiss. (Opp. at 26:25-27:2 (citing *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *6 (N.D. Cal. 2016)).) Yet *Lenovo* does not meaningfully consider the issue and concluded only in passing that a conspiracy claim is authorized. Critically, *Lenovo* does not reconcile how CFAA liability can be extended to those who did not actually access the information when the statute permits actions only "against the violator"—*i.e.*, the individual who accessed the plaintiff's computer network. 18 U.S.C. § 1030(g); *Agilysys*, 258 F. Supp. 3d at 1344. The conspiracy claims therefore fail.

### 3. The CFAA and CDAFA Claims Fail (Claims 8 & 10)

JHL's Motion explains that Claims 8 (CFAA) and 10 (CDAFA) fail because the Complaint does not sufficiently plead under both federal and California law that Quach was JHL's agent when the alleged misconduct occurred, acts Genentech admits were *before* Quach began working for JHL. (Mem. at 23-25.) Genentech's response fails to address JHL's case law, relies on irrelevant allegations, and ignores that its pleadings do not establish agency.

Genentech does not dispute *Oracle v. SAP*, which establishes that "simply assert[ing] that [a party's] downloading was within the scope of [that party's] authority as agent … is not sufficient to establish liability under the federal common law of agency." 734 F. Supp. 2d 956, 967 (N.D. Cal. 2010) (for summary judgment under CFAA, plaintiff must prove violator was acting on defendant's behalf, such as through understanding that violator would act on defendant's behalf); *see also New Box Sols., LLC v. Davis*, 2018 WL 4562764, at *4-5 (C.D. Cal. 2018) (conclusory agency allegations insufficient for CFAA; claim dismissed because plaintiff failed to allege defendant instructed or authorized violator to undertake conduct). For Claim 10, Genentech cites only federal cases when California law governs.[2] (Mem. at 24-25.)

Genentech neither addresses JHL's on-point authority nor cites factual allegations that

---

[2] The two cases Genentech does cite are consistent with JHL's position. In *SBM Site Servs. v. Garrett*, the plaintiff pled that an employment relationship existed at the time of the alleged CFAA violation. 2012 WL 628619, at *6 (D. Colo. 2012) ("[employee] accessed [plaintiff's computer] during the time that he was employed with [defendant]"). Genentech relies on agency not employment, and it has not and cannot allege that Quach and JHL had an employment relationship as of July 2017 (that relationship did not arise until August (Mot. at 24:7-25:10)). *Shurgard Storage Ctrs. v. Safeguard Self Storage* is also unhelpful to Genentech, because it concludes summarily that the individual defendant was an agent of another defendant without any discussion of the relevant facts or standard. 119 F. Supp. 2d 1121, 1123 (W.D. Wash. 2000).

correspond to the requisite elements under federal and California common law. Instead, Genentech points to largely irrelevant allegations. First, Genentech argues that when Quach allegedly accessed Genentech's systems, "JHL had offered [him] a job." (Opp. at 27:18-19.) But it cites no authority that a mere job offer establishes an agency relationship. Further, this ignores that Genentech also pleads that Quach did not travel to China to begin working for JHL until August 2017—*after* the alleged July access. (Compl. ¶ 256(f).) Second, Genentech points to its allegation that Quach "asked for and received additional Genentech documents after arriving at JHL's plant in China." (Opp. at 27:19-27:20.) This allegation is also irrelevant because, at that time, Genentech had not terminated Ms. Lam's credentials and she was still authorized to access Genentech material. (Compl. ¶ 51.) Thus, any alleged access at this time cannot underlie the CFAA claim, because the CFAA only covers access that "exceeds authorized access" not "violations of use restrictions." *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

Finally, Genentech argues that JHL "ratified" Quach's conduct. (Opp. at 27:20-24 (citing Compl. ¶ 340).) But Genentech fails to point to any specific factual allegations establishing ratification by JHL for the July 2017 downloads. *Naiman*, 2017 WL 5992123, at *10 (ratification requires principal "(1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further"). No such knowledge—actual or constructive—of JHL specific to the July 2017 downloads is alleged, and neither the allegation Genentech identifies (¶ 340) nor any other pled in the Complaint mentions ratification. These claims should be dismissed.

## III. CONCLUSION

The Court should dismiss all claims against JHL for lack of personal jurisdiction, or, at least, dismiss claims three, five, and seven through ten against JHL for failure to state a claim.

Dated: January 25, 2019

O'MELVENY & MYERS LLP

By:  /s/ *Darin W. Snyder*
      Darin W. Snyder
Attorneys for Defendant
JHL BIOTECH, INC.