1    DARIN W. SNYDER (S.B. #136003)
     dsnyder@omm.com
2    MICHAEL F. TUBACH (S.B. #145955)
     mtubach@omm.com
3    DAVID R. EBERHART (S.B. #195474)
     deberhart@omm.com
4    O'MELVENY & MYERS LLP
     Two Embarcadero Center
5    28th Floor
     San Francisco, California  94111-3823
6    Telephone:     +1 415 984 8700
     Facsimile:     +1 415 984 8701
7
     Attorneys for Defendant
8    JHL BIOTECH, INC.

9    [Additional Counsel and Representations Listed on
     Signature Page]
10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13                          **SAN FRANCISCO**

14

15   GENENTECH, INC.,                        Case No. 3:18-cv-06582-WHA

16                   Plaintiff,              **DEFENDANTS JHL BIOTECH, INC.,**
                                             **RACHO JORDANOV, AND ROSE**
17          v.                               **LIN'S REPLY IN SUPPORT OF**
                                             **MOTION TO STAY PROCEEDINGS**
18   JHL BIOTECH, INC., XANTHE LAM, an       **PENDING RESOLUTION OF**
     individual, ALLEN LAM, an individual,   **CRIMINAL CASE; MEMORANDUM**
19   JAMES QUACH, an individual, RACHO       **OF POINTS AND AUTHORITIES**
     JORDANOV, an individual, ROSE LIN, an
20   individual, JOHN CHAN, an individual, and   Date:    February 14, 2019
     DOES 1-50,                              Time:    8:00 a.m.
21                                           Dept:    Courtroom 12, 19th Floor
                     Defendants.            Judge:   Hon. William Alsup
22
                                             Complaint Filed: October 29, 2018
23                                           Trial Date: Not Set

24

25

26

27

28
                                             DEFS. JHL BIOTECH, JORDANOV, AND
                                             LIN'S REPLY ISO MOTION TO STAY;
                                             MEM. P. & A. – 3:18-CV-06582-WHA

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 2

    A.    Defendants Have Significant Fifth Amendment Concerns and Face
        Substantial Prejudice Absent a Stay............................................................................. 2

        1.    Defendants Jordanov's and Lin's Fifth Amendment Rights Support
            a Stay of This Action. ................................................................................. 3

        2.    If, As Expected, All Individual Defendants Assert Their Fifth
            Amendment Privilege, JHL Will Suffer Substantial Prejudice.................. 6

    B.    Genentech Has Not Identified Any Harm to It That Outweighs the Serious
        Prejudice JHL, Jordanov, and Lin Will Face. ........................................................ 10

    C.    Judicial Efficiency Is Not Served by Entering a Partial Stay and Bifurcating
        These Proceedings.................................................................................................. 11

III.  CONCLUSION ............................................................................................................... 13

1

**TABLE OF AUTHORITIES**

2

**Page**

**CASES**

*Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Serv. Corp.*,
   225 F. Supp. 2d 263 (E.D.N.Y. 2003) ................................................................. 8, 12

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976) ................................................................................................ 6

*Bridges v. Geringer*,
   2013 WL 3888328 (N.D. Cal. 2014) ................................................................. 4, 11

*Brumfield v. Shelton*,
   727 F. Supp. 282 (E.D. La. 1989) ........................................................................... 5

*Chao v. Fleming*,
   498 F. Supp. 2d 1034 (W.D. Mich. 2007) ............................................................ 2, 5

*Chrome Hearts LLC v. Old Sch. Fairfax, Inc.*,
   2018 WL 1942766 (C.D. Cal. 2018) ........................................................................ 8

*Clifford v. Trump*,
   2018 WL 3435419 (C.D. Cal. 2018) ........................................................................ 5

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................................ 2

*Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.*,
   2016 U.S. Dist. LEXIS 64959 (S.D. Cal. 2016) ...................................................... 5

*Cont'l Ins. Co. v. Cota*,
   2008 WL 4298372 (N.D. Cal. 2008) ..................................................................... 4, 5

*David Peyser Sportswear, Inc. v. Quality Payroll Sys., Inc.*,
   2008 WL 4185704 (E.D.N.Y. 2008) ......................................................................... 4

*Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,
   2012 WL 12895670 (C.D. Cal. 2012) .................................................................. 5, 11

*eBay, Inc. v. Dig. Point Sols., Inc.*,
   2010 WL 702463 (N.D. Cal. 2010) .......................................................................... 2

*Fed. Ins. Co. v. Laney*,
   2013 WL 594267 (N.D. Cal. 2013) .......................................................................... 9

*Fed. Ins. Co. v. Tabb*,
   1991 WL 113204 (N.D. Ill. 1991) ........................................................................ 5, 9

*Fed. Sav. & Loan Ins. Co. v. Molinaro*,
   889 F.2d 899 (9th Cir. 1989) ................................................................................. 3, 4

*Hoffman v. United States*,
   341 U.S. 479 (1951) .............................................................................................. 3, 6

*In re Adelphia Commc'ns Sec. Litig.*,
   2003 WL 22358819 (E.D. Pa. 2003) ........................................................................ 3

*In re Master Key Litig.*,
   507 F.2d 292 (9th Cir. 1974) .................................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page

*ING Bank v. Korn*,
  2009 WL 10676060 (W.D. Wash. 2009) ............................................................ 4, 12

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) ...................................................................................... 2

*McCormick v. Rexroth*,
  2010 WL 934242 (N.D. Cal. 2010) ....................................................................... 1, 2

*Medina v. Argent Mortg. Co.*,
  2006 WL 1305230 (N.D. Cal. 2006) ..................................................................... 4, 8

*Metzler v. Bennett*,
  1998 WL 187454 (N.D.N.Y. 1998) ........................................................................... 2

*SEC v. Alexander*,
  2010 WL 5388000 (N.D. Cal. 2010) ..................................................................... 9, 12

*SEC v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.D.C. 1980) .................................................................................... 4

*Square 1 Bank v. Lo*,
  2014 WL 7206874 (N.D. Cal. 2014) ......................................................................... 9

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*,
  2009 WL 2136986 (E.D. Cal. 2009) ....................................................................... 4, 5

*United States v. Lam, et al.*,
  No. 18-cr-527 WHA (N.D. Cal.) ................................................................................ 1

*United States v. Moussaoui*,
  382 F.3d 453 (4th Cir. 2004) ..................................................................................... 9

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*,
  7 F. Supp. 2d 523 (D.N.J. 1998) .......................................................................... 5, 10

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2123560 (N.D. Cal. 2017) ........................................................................ 12

*Wimbledon Fund, SPC v. Graybox, LLC*,
  2017 U.S. Dist. LEXIS 5517 (C.D. Cal. 2017) ........................................................ 4

**STATUTES**

28 U.S.C. § 1783 ............................................................................................................ 9

**RULES**

Fed. R. Civ. P. 30(b)(6) ................................................................................................ 10

Fed. R. Crim. P. 17(e)(2) ............................................................................................... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Defendants JHL, Racho Jordanov, and Rose Lin have met their burden and demonstrated that the Court should stay this action pending resolution of *United States v. Lam, et al.*, No. 18-cr-527 WHA (N.D. Cal.). Courts have described the degree of overlap between the civil and criminal proceedings as "the most important factor" in deciding whether to grant a motion to stay. *McCormick v. Rexroth*, 2010 WL 934242, at *2 (N.D. Cal. 2010) (quotation omitted). Courts therefore regularly stay civil proceedings where, as here, there is substantial overlap between the civil proceedings and related criminal proceedings. The fact that not all defendants have been indicted does not change the result; courts have granted stays in similar circumstances involving unindicted defendants.

Unindicted defendants JHL, Jordanov, and Lin will each face substantial prejudice in the absence of a stay. Jordanov and Lin will have to choose between asserting their Fifth Amendment rights and defending themselves in the civil proceeding. For its part, JHL will face serious obstacles to its ability to defend itself because every Individual Defendant[1] is expected to assert his or her right against self-incrimination, thereby preventing JHL from obtaining testimonial evidence from *any* of the individuals whom Genentech itself describes as "the key witnesses" in the alleged scheme to misappropriate Genentech trade secrets. (Pl.'s Opp. to Mot. to Dismiss 13:5, ECF No. 93.) JHL will suffer added prejudice because the government will have access to discovery from the civil action to which it would not otherwise be entitled in its ongoing investigation.

By contrast, a stay will only minimally burden Genentech. Genentech was in no hurry to file its complaint. It waited to do so until more than two years after being alerted to potential wrongdoing by Xanthe Lam and more than one year after the FBI raided Defendants Xanthe and Allen Lam's house and Genentech fired Xanthe. Genentech has offered no compelling argument

---

[1] "Individual Defendants" refers to Defendants Xanthe Lam, Allen Lam, John Chan, James Quach, Racho Jordanov, and Rose Lin. As used herein, the term "Indicted Defendants" refers to Xanthe Lam, Allen Lam, John Chan, and James Quach, while "Unindicted Defendants" refers to JHL, Jordanov, and Lin.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1  why, having delayed so long to file its complaint, its new-found urgency should outweigh the

2  substantial prejudice to Defendants. Finally, judicial efficiency is not served by Genentech's

3  proposed partial stay. In fact, a partial stay is likely to lead to duplicative discovery, wasted time,

4  and needlessly contentious civil discovery.

5    The Court should stay these civil proceedings in full until the related criminal case is

6  resolved.

7  **II.**   **ARGUMENT**

8    **A.**   **Defendants Have Significant Fifth Amendment Concerns and Face**
       **Substantial Prejudice Absent a Stay.**

9

10    The Court has "broad discretion" to stay these proceedings. *Clinton v. Jones*, 520 U.S.

11  681, 706 (1997). Genentech's Opposition[2] implies that stays are only granted if an indictment has

12  been returned. This is not accurate. In circumstances such as these, where some defendants *have*

13  been indicted, an active criminal investigation is ongoing, and the degree of factual overlap

14  between the criminal and civil cases is near total, the interests of justice lean strongly in favor of

15  granting a stay. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995).

16  Indeed, some courts have found the degree of factual overlap between the civil and criminal

17  matters to be the most significant factor to consider. *See, e.g.*, *McCormick*, 2010 WL 934242, at

18  *2; *eBay, Inc. v. Dig. Point Sols., Inc.*, 2010 WL 702463, at *3 (N.D. Cal. 2010) (quotation and

19  citation omitted) ("Some courts have gone so far as to recognize the extent of the overlap as the

20  most important factor."). In *Chao v. Fleming*, no indictments had been returned, but the court

21  considered the degree of factual overlap between the civil cases and the issues that would likely

22  feature in an indictment, finding that "the extent to which the issues in the criminal case overlap

23  with those in the civil case[] is regarded as 'the most important factor' because 'if there is no

24  overlap, then there would be no danger of self-incrimination and no need for a stay.'" 498 F.

25  Supp. 2d 1034, 1039 (W.D. Mich. 2007) (quoting *Metzler v. Bennett*, 1998 WL 187454, at *6

26  (N.D.N.Y. 1998)); *see also In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *3 (E.D.

27

28   [2] As used herein, "Opposition" or "Opp." refers to Genentech, Inc.'s Opposition to Defendants'
Motion to Stay (ECF No. 92).

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1    Pa. 2003) ("The similarity of the issues underlying the civil and criminal actions is considered the

2    most important threshold issue in determining whether or not to grant a stay.").

3         Here, it is unequivocal that the facts underlying the civil and criminal proceedings are

4    nearly identical. *See* Genentech, Inc.'s Administrative Motion to Relate Cases, *United States v.*

5    *Lam, et al.*, No. CR-18-527-WHA, 2:16-18 (N.D. Cal. Oct. 29, 2018), ECF No. 19 (stating the

6    civil and criminal cases "concern substantially the same transaction or events, are predicated upon

7    the same underlying facts, involve the theft of the same intellectual property, and are brought

8    against the same parties."). The overlap is so complete and so obvious that Genentech does not

9    even address the issue in its Opposition. Given the near total overlap, a stay is warranted here.

### 1.    Defendants Jordanov's and Lin's Fifth Amendment Rights Support a Stay of This Action.

12        Genentech belittles Lin's and Jordanov's Fifth Amendment rights as "negligible." (*See*

13   Opp. at 7-8 (citing *Fed. Sav. & Loan Ins. Co. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)).)

14   Genentech presumably does not mean that Lin's and Jordanov's privilege against self-

15   incrimination is negligible pre-indictment, as that is contrary to settled law. *See Hoffman v.*

16   *United States*, 341 U.S. 479 (1951) (upholding Fifth Amendment privilege of unindicted grand

17   jury witness); *In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974) ("[T]he right to assert

18   one's privilege against self-incrimination does not depend upon the likelihood, but upon the

19   possibility of prosecution."). What Genentech presumably means is that in cases where no

20   indictment has been returned, Fifth Amendment concerns are less significant in evaluating

21   whether to stay a civil action. But that principle has no application here. The majority of the civil

22   defendants here have been indicted for conduct identical to that described in the civil complaint,

23   the unindicted defendants are central to the allegations in the indictment, and there is an ongoing

24   criminal investigation. (*See* Decl. of Michael F. Tubach in Supp. of Defs. JHL, Jordanov, and

25   Lin's Mot. to Stay ("Tubach Decl.") ¶ 2, Ex. 1.)

26        *Molinaro*, on which Genentech principally relies for the proposition that Lin's and

27   Jordanov's Fifth Amendment rights are not implicated, actually supports a stay. *Molinaro* holds

28   that the "case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1   returned[, *and*] *no Fifth Amendment privilege is threatened*.'" 889 F.2d at 903 (quoting *SEC v.*

2   *Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.D.C. 1980) (emphases added) (brackets in

3   original)). In *Molinaro*, not only had no indictment been returned, but the court found that no

4   Fifth Amendment concerns were implicated because, among other reasons, defendant Molinaro

5   had already testified in a deposition in the civil proceeding. *Id*. Here, by contrast, an indictment

6   has been returned, and Jordanov and Lin have given no deposition testimony. In the words of the

7   *Molinaro* court, their "Fifth Amendment privilege is threatened." *Id*.

8          Genentech also seems to be arguing that a stay is not warranted unless *all* defendants in

9   the civil action have been indicted. (*See* Opp. at 13-14 (agreeing to partial stay as to Indicted

10  Individuals).) This argument ignores the numerous decisions that have stayed civil proceedings

11  where, as here, some, but not all, defendants in the civil action had been indicted. *See, e.g.*,

12  *Wimbledon Fund, SPC v. Graybox, LLC*, 2017 U.S. Dist. LEXIS 5517, at *10 (C.D. Cal. 2017)

13  (granting a stay as to all defendants, even though only one defendant had been indicted); *Bridges*

14  *v. Geringer*, 2013 WL 3888328, at *3 (N.D. Cal. 2014) (granting stay where individual

15  defendants had been indicted, but corporate defendant had not); *Taylor, Bean & Whitaker Mortg.*

16  *Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *1 (E.D. Cal. 2009) (granting stay as to all

17  defendants where only two of four had been indicted); *ING Bank v. Korn*, 2009 WL 10676060, at

18  *1, *4 (W.D. Wash. 2009) (granting stay as to all defendants, even though several defendants had

19  not been indicted and no indication unindicted defendants were under investigation); *Cont'l Ins.*

20  *Co. v. Cota*, 2008 WL 4298372, at *1-3 (N.D. Cal. 2008) (granting stay where two of three

21  defendants had been indicted); *David Peyser Sportswear, Inc. v. Quality Payroll Sys., Inc.*, 2008

22  WL 4185704, at *1 (E.D.N.Y. 2008) (granting stay as to all defendants, even though only one

23  defendant had been indicted); *Medina v. Argent Mortg. Co.*, 2006 WL 1305230, at *1 (N.D. Cal.

24  2006) (staying civil proceedings where two defendants had been indicted, but others had not).

25         In *Taylor, Bean & Whitaker*, three individuals and a corporation were defendants in a civil

26  proceeding, but only two of the individuals had been indicted on related criminal charges. 2009

27  WL 2136986, at *1. The corporate defendant and its president had not been indicted. *Id.* The

28  court nevertheless stayed the civil proceedings, finding that "[w]hile only two of [defendant]

Triduanum's officers have been indicted, the civil complaint alleges that all three individual defendants were involved in the alleged fraudulent scheme." *Id.* at *3. The same is true here; although Jordanov, Lin, and JHL have not been indicted, all are central to the allegations in the complaint and indictment. *See also Cont'l Ins.*, 2008 WL 4298372, at *2-3 (granting stay as to all defendants even though two of the defendants actually opposed a stay, based on the risk of prejudice to the individual defendant and the significance of his Fifth Amendment rights).

Indeed, courts stay civil actions even when *no* indictment has been returned. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) ("It is still possible to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation.") (quotation and citation omitted). *See, e.g.*, *Clifford v. Trump*, 2018 WL 3435419, at *3 (C.D. Cal. 2018) (granting stay where at least one of the individual defendants was under criminal investigation but had not been indicted); *Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.*, 2016 U.S. Dist. LEXIS 64959, at *9-11, 17 (S.D. Cal. 2016) (granting stay due to ongoing criminal investigation, even though no indictments had been returned); *Delphi Connection Sys., LLC v. Koehlke Components, Inc.*, 2012 WL 12895670, at *2 (C.D. Cal. 2012) (granting stay as to all defendants, though none had been indicted, due to ongoing criminal investigation); *Chao*, 498 F. Supp. 2d at 1040 (granting stay even though no indictments had been issued, because "an indictment appears to be much more than some fanciful and far-off possibility"); *Walsh Sec.*, 7 F. Supp. 2d at 526-28 (granting stay even though no indictments had been issued, and "several," but not all, defendants were under investigation); *Brumfield v. Shelton*, 727 F. Supp. 282, 283-4 (E.D. La. 1989) (stay granted even though no indictments had been returned and only one of multiple defendants was a target of a grand jury investigation); *Fed. Ins. Co. v. Tabb*, 1991 WL 113204, at *1 (N.D. Ill. 1991) (same).

An indictment of JHL, Lin, and Jordanov is not a mere "fanciful and far-off possibility." *Chao*, 498 F. Supp. 2d at 1040. The government's investigation into the conduct at issue in the complaint is far from over; in mid-October 2018, the FBI sought to serve a grand jury subpoena on JHL. (Tubach Decl. ¶ 3.) JHL, Lin, and Jordanov are also central to the allegations in the indictment. (*See, e.g.*, *id*. ¶ 2, Ex. 1 ¶ 13.) Under these circumstances, Lin's and Jordanov's Fifth

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1    Amendment concerns are significant, and a stay is warranted. Absent a stay that includes them,

2    Jordanov and Lin will either have to provide testimony that could prove to be the "link in the

3    chain of evidence needed to prosecute [them]" or face the harm of having adverse inferences

4    drawn against them in the civil proceeding if, as expected, they assert their Fifth Amendment

5    rights. *Hoffman*, 341 U.S. at 486; *Baxter v. Palmigiano*, 425 U.S. 308, 327 (1976). Genentech has

6    offered no compelling justification for subjecting Lin and Jordanov to this substantial burden just

7    so Genentech can avoid a delay.

8         Genentech argues that Jordanov and Lin "care not about their constitutional rights"

9    because an attorney filed a declaration stating that neither had Genentech trade secrets on their

10   personal electronic devices. (Opp. at 8.) Having an attorney declare that certain devices do not

11   contain Genentech documents does not implicate any Fifth Amendment issues. Genentech's

12   effort to muddy the waters with those declarations does nothing to undermine the fact that all of

13   the individual defendants—Jordanov and Lin included—have stated unequivocally that they

14   intend to invoke their Fifth Amendment rights in this civil action.

15                    **2.    If, As Expected, All Individual Defendants Assert Their Fifth
                           Amendment Privilege, JHL Will Suffer Substantial Prejudice.**
16

17        Genentech argues that any prejudice JHL would suffer if all of the Individual Defendants

18   assert their Fifth Amendment privilege against self-incrimination is minimal. (Opp. at 5-7.) For

19   example, Genentech argues that the burden on JHL if its founders and key executives do not

20   testify is insignificant, because others at JHL do not have the same Fifth Amendment concerns

21   and could testify. (*Id*. at 1:14-19, 5:22-6:3.) While it is true that other JHL witnesses may be

22   available to testify to certain issues, none of these JHL employees is alleged, either by the

23   government or by Genentech, to have been involved in the purported scheme to misappropriate

24   trade secrets.[3] This is true even though the government and Genentech have been investigating

---

[3] The individuals to whom Genentech refers in its opposition are DJ Lin (JHL Director of Legal);
Jan-Song "Fred" Shaw (JHL Director, Engineering); Shao-Hung "Mark" Wei (Senior Manager of
Quality Control); Yu "Allen" Ho (Senior Director of Regulatory Technical CMC); Andres
Nechansky (Vice President of Research & Analytical Development); and Peter Pang (General
Manager of the Wuhan Facility and Executive Vice President of Corporate Regulatory Affairs).
(Opp. at 5:23-28.) None of these individuals is mentioned, either directly or by implication, in
either the complaint or the indictment.

DEFS. JHL BIOTECH, JORDANOV, AND
                                                              LIN'S REPLY ISO MOTION TO STAY;
                                                              MEM. P. & A. – 3:18-CV-06582-WHA

1   the conduct at issue in the complaint and the indictment for nearly two years and have conducted

2   numerous interviews, seized electronic devices and documents, and worked with experts to

3   bolster Genentech's and the government's cases. (Decl. of William Osterhoudt in Supp. of the

4   Lam Defs.' Opp. to Pl.'s Mot. for Prelim. Inj. ("Osterhoudt Decl.") ¶ 5 (ECF No. 71-2); *see*

5   Compl. ¶ 248 (noting Genentech's ongoing cooperation with the U.S. Attorney's Office

6   investigation).)

7        The availability of some employees at JHL to testify does not alleviate the severe

8   prejudice to JHL that would result if Jordanov and Lin, JHL's founders, assert their Fifth

9   Amendment privilege and do not testify in the civil proceedings. According to the complaint,

10  Jordanov and Lin, and no other current JHL personnel, are at the center of Genentech's claims

11  against JHL. (*See, e.g.*, Compl. ¶¶ 12, 13, 26, 45, 142, 182.) When describing with whom

12  Defendant Xanthe Lam had contact at JHL, only Defendants John Chan, Allen Lam, and Lin are

13  mentioned. (*Id.* ¶ 175.) Meanwhile, there are scant references to any other JHL employees being

14  involved in the alleged scheme, and none of those individuals are mentioned by name. (*See id.*

15  ¶¶ 29, 189 (vague references to "other JHL personnel").)

16       But the prejudice to JHL does not rest solely on Jordanov's and Lin's expected refusal to

17  testify. Defendants Xanthe Lam, Allen Lam, John Chan, and James Quach have all indicated that

18  they will refuse to testify, and Genentech concedes that a stay as to these defendants is

19  appropriate. (Schwartz Decl. ¶¶ 2-11 (ECF No. 60-1, Lams); Divelbiss Decl. ¶ 6 (ECF No. 56-2,

20  Chan); Boersch Decl. ¶ 7-8 (ECF No. 74, Quach); Opp. at 2: 9-10.) This means that JHL will be

21  unable to procure testimony from ***any*** of the alleged perpetrators of the scheme to misappropriate

22  Genentech's trade secrets. Genentech, meanwhile, has the benefit of having interviewed

23  Defendants Xanthe Lam and Quach, as well as unspecified other individuals. (Compl. ¶¶ 39, 40,

24  247.) Because all of the Individual Defendants (who are also the ***only*** named individuals

25  Genentech claims had a role in the alleged scheme) are expected to be unavailable due to their

26  anticipated assertion of their rights against self-incrimination, JHL will be unable adequately to

27  rebut many of Genentech's allegations. As but one of many examples of the type of quandary that

28  Genentech's proposed partial stay would lead to, the complaint states: "In late September 2013,

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1    Defendants Racho Jordanov and Rose Lin emailed Xanthe Lam at her personal email address to

2    offer her a consulting job for JHL." (*Id*. ¶ 142.) Whether Xanthe was a consultant for JHL, and

3    whether her conduct could be imputed to JHL, is critical to a determination of JHL's liability.

4    Given that all of the individuals who sent or received this email are expected to refuse to testify,

5    JHL will be severely hampered in its ability to dispute this allegation. The same is true of many

6    other allegations in the complaint.

7         Courts confronting this issue have found that a stay is appropriate in cases like this, where

8    the Fifth Amendment rights of individuals will severely impede a corporation's efforts to mount a

9    defense. *See, e.g.*, *Medina*, 2006 WL 1305230, at *2 (granting stay as to corporate defendant

10   where most knowledgeable individuals had been charged with crimes related to the same facts as

11   the civil matter); *Chrome Hearts LLC v. Old Sch. Fairfax, Inc.*, 2018 WL 1942766, at *3 (C.D.

12   Cal. 2018) ("[W]here individuals' Fifth Amendment rights will interfere with a corporation's

13   ability to defend itself, a stay might be appropriate."); *Am. Express Bus. Fin. Corp. v. RW Prof'l

14   Leasing Serv. Corp.*, 225 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2003) (staying civil discovery as to

15   individual and entity defendants because the entity could not effectively mount a defense without

16   availability of individual defendants). Here, where the Individual Defendants (whether indicted or

17   not) are expected to invoke their Fifth Amendment privilege, a stay is warranted because, without

18   one, JHL will be substantially prejudiced in its ability to defend itself.

19        Given Genentech's close collaboration with the government (*see* Compl. ¶ 248), JHL

20   faces additional prejudice from the threat that the government could gain access to JHL

21   documents from civil discovery to which it would not otherwise have access. In its Opposition,

22   Genentech admits that it worked with the government to time the filing of its complaint. (*See*

23   Decl. of Elliot R. Peters in Supp. of Pl. Genentech, Inc.'s Mot. for Prelim. Inj. ("Peters Decl.")

24   ¶¶ 2-4 (ECF No. 20-7).) The Osterhoudt Declaration further illustrates the high degree of

25   collaboration between the government and Genentech. For example, as the Osterhoudt

26   Declaration explains, after the FBI executed a search warrant on the Lams' house in September

27   2017, it sent Xanthe Lam to work at Genentech, where Genentech's lawyers were waiting to

28   interview her and then escort her out of the building. (Osterhoudt Decl. ¶ 5d-e (ECF No. No. 71-

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

2).)  In light of the close collaboration with Genentech, the government could use the civil proceedings to gain access to discovery beyond what it would be permitted under the Federal Rules of Criminal Procedure. *See Fed. Ins. Co. v. Laney*, 2013 WL 594267, at *3 (N.D. Cal. 2013).

*Laney* is directly on point, and Genentech does not even address it. In *Laney*, in part due to the same concerns Defendants raise here, this Court entered a stay in favor of the moving defendants, finding that "[a]llowing the civil proceedings to continue will permit the government to gain access to discovery that it would otherwise not have under the federal rules of criminal procedure, such as documents derived from initial disclosures, defendants' responses to interrogatories, pleadings and admissions at any depositions." 2013 WL 594267, at *3 (citation omitted). Similarly, in *Square 1 Bank v. Lo*, the court found that even though the government was not a party to the civil proceedings, "the risk of potential collaboration between the private plaintiff in this civil action and the government in the criminal action remains." 2014 WL 7206874, at *2 (N.D. Cal. 2014).

The prejudice to JHL of allowing the government access to civil discovery is even more acute here because JHL, as a foreign corporation, is not subject to the grand jury's subpoena power. *See* 28 U.S.C. § 1783; Fed. R. Crim. P. 17(e)(2); *see also United States v. Moussaoui*, 382 F.3d 453, 463-64 (4th Cir. 2004). There is an undeniable threat that the government will attempt to use information Genentech obtains in civil discovery as part of its ongoing investigation, potentially even including a case against JHL. *See, e.g.*, *Tabb*, 1991 WL 113204, at *1 ("It is conceivable that the broad scope of civil discovery may present to the prosecutors of the impending criminal action an irresistible temptation to use that discovery to their advantage in the criminal case."). Allowing the government to use civil discovery as an end-run around the Rules of Criminal Procedure threatens fundamental fairness and should not be permitted. *SEC v. Alexander*, 2010 WL 5388000, at *5 (N.D. Cal. 2010) (recognizing prejudice where "broad civil discovery would unfairly expand the scope of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b).").

Rather than address this argument directly, Genentech suggests in a footnote that the

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1    Court could use unspecified "other measures" to protect against the disclosure of testimonial

2    evidence to the government. (*See* Opp. at 6 n.2.) Genentech does not explain what those measures

3    might be, and in any event such a jury-rigged solution would be unworkable. If JHL produces

4    documents or provides testimony under Fed. R. Civ. P. 30(b)(6) in the civil litigation, the Indicted

5    Defendants will be entitled to that discovery as they are parties in the civil litigation. Does

6    Genentech propose that the Indicted Defendants be precluded from using that discovery in

7    defense of their criminal case, or that the Indicted Defendants may use the discovery but the

8    government may not? Genentech provides no answers. In a multi-defendant case such as this,

9    where some defendants have been indicted and some have not, it is not feasible to expect that

10   civil discovery can proceed without the government obtaining it. And that, in all likelihood, is

11   exactly what Genentech wants.

12         **B.      Genentech Has Not Identified Any Harm to It That Outweighs the Serious
               Prejudice JHL, Jordanov, and Lin Will Face.**
13

14         In contrast to the substantial prejudice JHL and the Individual Defendants will face, the

15   potential prejudice to Genentech from a delay is minimal. Genentech was willing to wait two

16   years after its discovery of the conduct at issue to file its complaint. (Compl. ¶ 244.) Genentech

17   claims that it delayed filing its lawsuit until October 2018, because the government wanted to

18   avoid disclosing its investigation. (*See* Opp. at 11:15-21 (citing Peters Decl.).) But by at least

19   September 2017, that concern had abated, when Xanthe and Allen Lam—central figures in

20   Genentech's and the government's allegations—became aware that the government was

21   investigating them. On September 6, 2017, the FBI raided the Lams' residence, seizing

22   documents and information. (Osterhoudt Decl. ¶¶ 4, 5.d.) The FBI interviewed Xanthe Lam that

23   day, then sent her off to work at Genentech, where Genentech attorneys were waiting to interview

24   her and then escort her out of the building. (*Id*. ¶ 6.) There can be no doubt that at least as of

25   September 2017, the Lams knew about the ongoing criminal investigation, obviating any further

26   need for Genentech to delay filing its complaint. Genentech has provided no explanation why,

27   after waiting so long to file this suit, it now has an urgent need to proceed with discovery.

28   Genentech has not identified any injury that is "particularly unique" to it. *Walsh Sec.*, 7 F. Supp.

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1   2d at 528. When balanced against the importance to the individual defendants of their Fifth

2   Amendment rights, and the heavy burden JHL will face in its ability to mount a defense,

3   Genentech's desire to avoid delay pales in comparison.

4         Moreover, Genentech has not identified any particular evidence or witness memories that

5   it believes will fade during a stay, as is typical in cases where a stay is denied on that basis.

6   *Delphi*, 2012 WL 12895670, at *3 (finding unpersuasive plaintiff's argument that it would be

7   prejudiced where it "has not explained why a delay in this case might present an exceptional

8   problem"). Genentech relies on *Bridges*, arguing "'the passage of time may imperil evidence

9   gathering.'" (Opp. at 7 (quoting *Bridges*, 2013 WL 3888328, at *5).) But in *Bridges*, the concern

10  about the passage of time was articulated specifically because many of the witnesses were elderly.

11  2013 WL 3888328, at *5. Genentech has not made a similar showing here.

12        In fact, the only specific harm Genentech has identified is that a stay would prevent

13  Genentech from engaging in third-party discovery, potentially forestalling Genentech's ability to

14  identify third parties with whom trade secret information was theoretically shared. (Opp. at 10-

15  11.) This is entirely speculative. Genentech has provided no credible indication that such conduct

16  has occurred, much less who these unnamed third parties even are. JHL and the Individual

17  Defendants should not be irreparably harmed just so Genentech can investigate its concern that

18  defendants may have disclosed Genentech's alleged trade secrets to non-parties in the two years

19  Genentech waited to file its complaint.

20  **C.    Judicial Efficiency Is Not Served by Entering a Partial Stay and Bifurcating
21          These Proceedings.**

22        Genentech proposes a partial stay, covering the Indicted Defendants only, which it claims

23  is "symmetrical." (Opp. at 2:18, 14:14.) But there is nothing "symmetrical" about Genentech's

24  proposal. If it has its way, Genentech will have access to everything the Indicted Defendants

25  obtain from the government in the criminal case, as well as everything JHL and the Unindicted

26  Defendants may be required to produce in the civil proceedings. Meanwhile, the Indicted

27  Defendants "shall not participate in discovery in this civil action until the stay is lifted." (*Id*. at

28  14:14-15.) Much like Genentech's vague "other measures" discussed above, this proposal is

1    entirely unworkable. Genentech does not explain whether "not participat[ing]" in civil discovery

2    means the Indicted Defendants will not receive documents and other discovery produced in the

3    civil action or whether they are allowed to attend depositions or ask questions. And if Genentech

4    proposes that the answers to those questions are no, then there is a substantial risk of duplicative

5    discovery when the Indicted Defendants are allowed to participate in discovery in the civil action.

6    If the answer is yes, then Genentech's proposal further threatens the Indicted Defendants'

7    constitutional protections by requiring each to disclose their defense strategy before the criminal

8    trial. *Alexander*, 2010 WL 5388000, at *7 (noting that even if a defendant invokes his Fifth

9    Amendment privilege, "the discovery he seeks from third-party witnesses may expose the basis of

10   his criminal defense."). Furthermore, Genentech has provided no authority to support its

11   contention that it ought to be permitted access to discovery in the criminal proceedings. It is

12   inappropriate and a plain overreach for Genentech to craft a stay that allows it such

13   unprecedented access to the criminal case, while denying the Indicted Defendants similar access

14   in the civil litigation.[4]

15        Only a full stay will adequately protect the Fifth Amendment rights of the Individual

16   Defendants and ensure that JHL and the Unindicted Defendants are not unfairly disadvantaged in

17   their ability to defend themselves. A partial stay would not just be detrimental to the parties, it

18   would also create judicial inefficiencies. A partial stay would not resolve the discovery disputes

19   noted in Defendants' opening brief, such as discovery disputes regarding the scope of Lin's or

20   Jordanov's privilege against self-incrimination. (Mot. at 14.) *See Waymo LLC v. Uber Techs.,*

21   *Inc.*, 2017 WL 2123560, at *5 (N.D. Cal. 2017) (assertion of Fifth Amendment privilege led to

22   numerous discovery disputes). With only a partial stay as to the Indicted Defendants, there is also

23   a potential for duplicate depositions, because certain individuals may need to be re-deposed. *See*

24   *Am. Express*, 225 F. Supp. 2d at 266; *see also ING Bank*, 2009 WL 10676060, at *4 (noting that,

---

[4] It is not even clear that the Indicted Defendants would be able to comply with the terms of Genentech's proposed partial stay. (*See* Second Am. Interim Protective Order, *United States v. Lam*, 3:18-cv-00527-WHA (ECF No. 64) at 5:4-9 ("All material designated Confidential shall be used solely for the purpose of conducting pre-trial, trial, and appellate proceedings in this case and for no other purpose whatsoever, and shall not be used for the economic benefit of defendant or the benefit of any third party.").)

DEFS. JHL BIOTECH, JORDANOV, AND
LIN'S REPLY ISO MOTION TO STAY;
MEM. P. & A. – 3:18-CV-06582-WHA

1  in light of indicted defendants' Fifth Amendment rights, "[p]roceeding with testimonial discovery

2  from unindicted defendants would only result in a needless duplication of discovery"). Moreover,

3  Plaintiff's proposal does nothing to address Defendants' concern that discovery in the civil case

4  would permit the government access to documents and information to which it would not have

5  access in the criminal proceeding. Nor does it address that JHL's document productions and

6  interrogatory responses could prejudice the Individual Defendants in the criminal proceedings, by

7  revealing defense strategies to the government. There is no credible justification for Genentech's

8  proposal.

9  **III.    <u>CONCLUSION</u>**

10        Based on the foregoing, and on the arguments contained in their opening brief, Defendants

11  JHL, Jordanov, and Lin respectfully request that the Court grant their Motion to Stay Pending

12  Resolution of Criminal Proceedings.

13        Dated:  January 25, 2019

14                                                    DARIN W. SNYDER
                                                      MICHAEL F. TUBACH
15                                                    DAVID R. EBERHART
                                                      O'MELVENY & MYERS LLP
16
                                                      By:     /s/ Michael F. Tubach
17                                                                 Michael F. Tubach

18                                                    Attorneys for Defendant
                                                      JHL BIOTECH, INC.

19        Dated:  January 25, 2019

20                                                    Edward W. Swanson, SBN 159859
                                                      ed@smllp.law
21                                                    Britt Evangelist, SBN 260457
                                                      britt@smllp.law
22                                                    SWANSON & McNAMARA LLP
                                                      300 Montgomery Street, Suite 1100
23                                                    San Francisco, California 94104
                                                      Telephone: (415) 477-3800
                                                      Facsimile: (415) 477-9010
24
                                                      By:     /s/ Edward W. Swanson
25                                                                 Edward W. Swanson

26                                                    Attorneys for Defendant
                                                      RACHO JORDANOV

27

28

                                                      DEFS. JHL BIOTECH, JORDANOV, AND
                                                      LIN'S REPLY ISO MOTION TO STAY;
                                                      MEM. P. & A. – 3:18-CV-06582-WHA

1       Dated:  January 25, 2019

2                                    MILES EHRLICH (SBN 237954)
miles@ramsey-ehrlich.com

3                                    ISMAIL RAMSEY (SBN 189820)
izzy@ramsey-ehrlich.com

4                                    AMY E. CRAIG (SBN 269339)
amy@ramsey-ehrlich.com

5                                    KATHARINE KATES (SBN 155534)
katharine@ramsey-ehrlich.com

6                                    RAMSEY & EHRLICH LLP
803 Hearst Avenue

7                                    Berkeley, CA 94710
(510) 548-3600 (Tel)

8                                    (510) 291-3060 (Fax)

9                           By:     /s/Amy E. Craig
                                          Amy E. Craig

10                                 Attorneys for Defendant
ROSE LIN

11

12                            **SIGNATURE ATTESTATION**

13       Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on

14  whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

15

16  Dated: January 25, 2019

17                                  /s/ Michel F. Tubach
                                  Michael F. Tubach

18

19

20

21

22

23

24

25

26

27

28