KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - #158708
epeters@keker.com
LAURIE CARR MIMS - #241584
lmims@keker.com
STEVEN P. RAGLAND - #221076
sragland@keker.com
CODY S. HARRIS - #255302
charris@keker.com
ELIZABETH K. McCLOSKEY - #268184
emccloskey@keker.com
SEAN M. ARENSON - # 310633
sarenson@keker.com
MAYA PERELMAN - # 318554
mperelman@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff
GENENTECH, INC.

O'MELVENY & MYERS LLP
DARIN W. SNYDER - #136003
dsnyder@omm.com
MICHAEL F. TUBACH - #145955
mtubach@omm.com
DAVID R. EBERHART - #195474
deberhart@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:     415 984 8700
Facsimile:     415 984 8701

Attorneys for Defendant
JHL BIOTECH, INC.

(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50,<br><br>　　　　Defendants. | Case No. 3:18-cv-06582-WHA<br><br>**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT**<br><br>Date:　　February 14, 2019<br>Time:　　8:00 a.m.<br>Dept:　　Courtroom 12 - 19th Floor<br>Judge:　　Hon. William Alsup<br><br>Date Filed: October 29, 2018<br>Trial Date: Not Set |

Pursuant to the Court's November 16, 2018 order (ECF No. 43) and Civil Local Rule 16-9 and Rule 26 of the Federal Rules of Civil Procedure, the parties hereby submit this Joint Case Management Statement and Rule 26(f) Report in advance of the Initial Case Management Conference scheduled for February 14, 2019 at 8:00 am. The parties have worked together cooperatively to try to find common ground where possible, and where agreement was not possible the parties have set forth their respective positions.

## I. JURISDICTION AND SERVICE

This Court has subject-matter jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367. Defendant JHL Biotech, Inc. ("JHL") has filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No. 57), and other defendants have sought to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed those motions, which are set for hearing on February 14, 2019.

All defendants have been served.

*Plaintiff's Additional Statement*

Venue is proper in this District and this Court has personal jurisdiction over each of the named defendants. JHL disputes personal jurisdiction, but JHL committed torts in California through its agents, including the individual defendants here. JHL, through its agents, including its co-founders Defendants Racho Jordanov and Rose Lin, also purposefully directed its illegal activities at California, causing harm to Genentech in the state. Genentech's claims arise out of or relate to JHL's (and the other defendants') California activity, and JHL should reasonably expect to be haled into Court in California after stealing Genentech's trade secret information in California.

*Defendants' Additional Statement*

As set forth in detail in defendant JHL's motion to dismiss (ECF No. 57), this Court lacks personal jurisdiction over JHL. JHL is based in Taiwan and China and has no relevant contacts with California. None of the challenged conduct of the four individual indicted defendants can be

imputed to JHL for jurisdictional purposes, and the alleged acts of the other individual defendants in California are not the basis of any claim against JHL. JHL does not intend to waive this or any other defense by filing this statement.

## II.     FACTS

### *Plaintiff's Statement*

From 2013 to 2017, Defendant JHL engineered a scheme to steal Genentech's trade secrets in California and use them to build a biopharmaceutical business overseas that develops and seeks to market copycat "biosimilar" versions of Genentech's groundbreaking medicines. JHL and its top executives—notably, Defendants Racho Jordanov and Rose Lin—relied primarily on an inside source at Genentech—former Genentech senior scientist, Defendant Xanthe Lam— to misappropriate Genentech's valuable trade secrets— primarily from Genentech's South San Francisco headquarters—to help JHL develop, test, manufacture, and commercialize its own versions of Genentech's Pulmozyme®, Rituxan®, Avastin®, and Herceptin® therapies, and to enhance the chances that JHL's versions of those medicines would win regulatory approval. Xanthe,[1] along with three of her co-conspirators (and co-defendants here)—Allen Lam, James Quach, and John Chan—have now been indicted by a federal grand jury. *See United States v. Lam, et al.*, Case no. 18-CR-527, (N.D. Cal. Oct. 29, 2018). Allen Lam (Xanthe's husband) served as a JHL consultant, including by working remotely from the Lams' South San Francisco home.  James Quach unlawfully downloaded hundreds of Genentech trade-secret documents using Xanthe's credentials before departing to work at JHL's manufacturing facility in Wuhan, China, and asked Xanthe to send him additional documents from California upon his arrival in China. JHL hired scientist John Chan at Xanthe's suggestion.  Chan reported directly to Xanthe while Xanthe was in California, and Chan served as conduit for transmission of additional Genentech trade secrets to JHL through weekly Skype calls with Xanthe, who remained an employee at Genentech in California. Apart from Mr. Chan, all of the individual defendants are former Genentech employees.  All of the individuals—including Mr. Chan—own real estate or

---

[1] Because Defendants Xanthe Lam and Allen Lam are a married couple, this statement refers to them by their first names rather than as "Mr. Lam" and "Ms. Lam" to avoid confusion.

maintain a residence in this state, and co-founders Jordanov and Lin both listed an address in California as JHL's "U.S. Office" in their email signatures.

Just months after Jordanov and Lin co-founded JHL, they recruited Xanthe into JHL's scheme. At that time, Xanthe was working for Genentech as a trusted senior scientist with broad access to a wealth of Genentech trade secret and confidential information. Breaching her fiduciary and contractual obligations to Genentech, Xanthe began helping JHL develop analytical methods and formulations for its drugs, which were designed to compete directly with Genentech's medicines. At Lin's and Jordanov's request, in December 2013, Xanthe surreptitiously traveled to JHL's headquarters in Taiwan—with her Genentech laptop in hand—to work in JHL's laboratory and direct its employees. In her work for JHL, Xanthe relied not only on the trade secret information she knew and had access to by virtue of her role as a Genentech senior scientist, but also on hundreds of confidential documents containing and reflecting Genentech trade secrets, which she had downloaded from Genentech's password-secured document repository and carefully organized on her Genentech laptop computer.

Xanthe's covert work continued long after her stint in Taiwan. While still employed by Genentech in California, she secretly continued to oversee JHL's analytical method and formulation development through weekly Skype calls with JHL scientist Defendant John Chan, a family friend whom JHL hired at her insistence, and who acted as her "direct report." She also continued to funnel Genentech trade secret information through her husband, Allen, to JHL's top executives, including Jordanov and Lin. Jordanov and Lin knowingly received these trade secrets, and used them to test, stabilize, manufacture, and obtain regulatory approval for clinical trials of its biosimilars of Genentech's medicines. In 2017, JHL hired former Genentech employee James Quach to help establish its manufacturing facility in Wuhan, China. Before Quach left California for JHL's Wuhan plant, Xanthe allowed him to access Genentech's secure document repository using her own personal log-in credentials. With Xanthe's knowledge, Quach used her credentials while in her home in South San Francisco to download hundreds of confidential Genentech manufacturing protocols and processes onto an external flash drive.

After receiving an anonymous tip regarding Xanthe's consulting role for a different

Taiwan-based biotechnology company, Genentech launched an internal investigation, which helped uncover Defendants' scheme. Genentech contacted law enforcement authorities, and cooperated with the U.S. Attorney's Office as it launched a criminal investigation. The FBI executed a search warrant on Xanthe's home early in the morning on September 11, 2017. Immediately thereafter, Xanthe headed to work where she voluntarily met with Genentech and its attorneys to discuss the matters revealed in Genentech's internal investigation. Xanthe sat for a second voluntary interview on September 18, 2017. Quach voluntarily met with Genentech's counsel on October 6, 2017. In their separate interviews, both Xanthe and Quach confirmed the bulk of the wrongdoing alleged in this action.

At the government's request, Genentech took no public action that could have compromised the government's investigation, including filing a civil complaint or seeking preliminary injunctive relief. The criminal investigation led to a sealed grand jury indictment on October 25, 2018, charging Xanthe, Allen, Quach, and Chan with criminal trade secret theft and violations of the Computer Fraud and Abuse Act. The indictment was unsealed only after the indicted individuals were arrested and made initial appearances on October 29, 2018.

Genentech filed its complaint on October 29, 2018, immediately following the indictment's unsealing, and filed a motion for preliminary injunction on November 6, 2018. On January 4, 2019, Defendants responded to the complaint with multiple Rule 12 motions to dismiss and motions to stay. All pending motions have now been fully briefed and are scheduled for hearing February 14, 2019.

***Defendant JHL's Statement***

Genentech first discovered the alleged misconduct at issue in the Complaint nearly 28 months ago, in October 2016. Genentech's Complaint alleges that it discovered that its employee Xanthe Lam allegedly provided consulting services to a number of Genentech competitors, including JHL, over the course of several years, and that she allegedly provided confidential Genentech information to employees of those competitors. One year after discovering these purported facts, Genentech terminated Xanthe Lam. On October 29, 2018—more than two years after initiating its investigation—Genentech filed its Complaint in this action.

Genentech filed its Complaint hours after the government unsealed the indictment in the related criminal action, *United States v. Lam, et al.*, No. CR-18-527-WHA (N.D. Cal.). The indictment in that action names four of the defendants also named in the civil action—Xanthe Lam, Allen Lam, James Quach, and John Chan. It charges defendants with theft of trade secrets, 18 U.S.C. § 1832, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and related charges for conspiracy, aiding and abetting, and criminal forfeiture. The indictment was returned one week after JHL's counsel declined to accept service of a grand jury subpoena on JHL's behalf.

As detailed in JHL's motion to dismiss (ECF No. 57), this Court lacks jurisdiction over JHL. JHL was incorporated in the Cayman Islands, is based in Taiwan, and operates solely in Asia, where its only clients are based. JHL has no offices, manufacturing facilities, or clients in California. JHL has no employees based in California. JHL currently focuses on biosimilar development and contract-based manufacturing, particularly in developing countries where Genentech's products have been cost-prohibitive. JHL is in the process of seeking regulatory approvals to sell its biosimilar products in Europe and China. JHL has not sought U.S. regulatory approval for any of these candidates. JHL has not yet received regulatory approval to market any of its core biosimilars in any country, and JHL does not expect to be ready to sell any such product until 2021 at the earliest.

As detailed in Defendants' Oppositions to Genentech's Motion for Preliminary Injunction (ECF No. 77), there is no evidence that JHL currently uses or is likely to use any of Genentech's claimed trade secrets. Furthermore, Genentech claims trade secrets in information that does not qualify as trade secrets, including because it has disclosed that information publicly and because Genentech claims as trade secrets broad concepts already available in the public domain. Genentech's other claims against JHL are meritless for the reasons described in JHL's Motion to Dismiss.

***Defendants Jordanov and Lin's Statement***

Plaintiff also alleges that defendants Racho Jordanov and Rose Lin orchestrated and participated in the alleged misappropriation scheme. However, as detailed in Lin's and

Jordanov's motions to dismiss (ECF Nos. 59 and 62), the Plaintiff's allegations in that regard are factually-devoid and insufficient to state a claim. Plaintiff alleges only that Jordanov and Lin recruited a Genentech employee to work at JHL and worked with her on tasks related to Plaintiff's publicly disclosed formulations.

***Defendants Xanthe Lam and Allen Lam's Statement***

Defendants Xanthe Lam and Allen Lam are charged in criminal action 3:18-cr-00527-WHA, *United States vs. Xanthe Lam, et al.*, asserting criminal liability against each of them as well as Defendants John Chan, and James Quach, arising out of the same conduct and facts as Plaintiff alleges in its Complaint. As such, Xanthe Lam and Allen Lam, consistent with their rights against self-incrimination under the Fifth Amendment to the United States Constitution, will, at this time, neither contest nor deny Plaintiff's description of their conduct, the conduct of indicted Defendants John Chan or James Quach, or the conduct of the remaining Defendants, all of whom Plaintiff essentially characterizes as unindicted co-conspirators. Defendants Xanthe Lam and Allen Lam have addressed Plaintiff's description of its own conduct in their Opposition to Plaintiff's Motion for Preliminary Injunction and their Motion for Stay, both currently pending before this Court. (ECF Nos. 60, 71, 72, 100.)

***Defendant John Chan's Statement***

Defendant John Chan is also charged in criminal action 3:18-cr-00527-WHA, *United States vs. Xanthe Lam, et al.*, asserting criminal liability arising out of the same conduct and facts as Plaintiff alleges in its Complaint. Accordingly, Mr. Chan will assert his rights against self-incrimination under the Fifth Amendment to the United States Constitution with respect to Plaintiff's allegations concerning his conduct or the conduct of other Defendants.

### III. LEGAL ISSUES

At the present time, the parties have identified the following legal issues, all of which have been fully briefed and are presently before the Court:

- Whether or not a preliminary injunction should issue, as sought in Genentech's Motion for Preliminary Injunction (ECF No. 25);
- Whether or not the Court should stay the case as to all or some of the Defendants

6
JOINT CASE MANAGEMENT STATEMENT AND RULE 26(F) REPORT
Case No. 3:18-cv-06582-WHA

1319576

following its ruling on Genentech's preliminary injunction motion, as requested in Defendants Motions to Stay (ECF Nos. 56, 58, 60, 61, 64);

- Whether or not the Complaint should be dismissed pursuant to Rules 12(b)(2) or 12(b)(6), as sought in Defendants' Motions to Dismiss (ECF Nos. 57, 59, 62, 66, 67, 68, 69).

The parties reserve the right to raise additional factual or legal issues that may arise through the course of this action.

## IV. MOTIONS

### Pending Motions

Genentech has filed a Motion for Preliminary Injunction, which is set for hearing on February 14, 2019.

Defendants have filed motions to dismiss pursuant to Fed. R. Civ. P. 12, and/or joinders in such motions by co-defendants. These Rule 12 motions are set for hearing on February 14, 2019.

Defendants have moved to stay this case following the Court's determination of Genentech's motion for preliminary injunction. The motions to stay are set for hearing on February 14, 2019.

### Anticipated Motions

*Plaintiff's Statement*

Genentech intends to file a summary judgment motion at the appropriate time. Genentech also expects the parties may litigate discovery motions as the case progresses, in addition to pre-trial motions *in limine* and *Daubert* motions related to expert opinions offered by various parties.

*Defendants' Statement*

Subject to the outcome of Defendants' currently pending motions, Defendants anticipate that they would move for summary judgment on at least some of Genentech's claims.

## V. AMENDMENT OF PLEADINGS

*Plaintiff's Statement*

In the event that the Court grants any of the pending Rule 12 motions in whole or in part, Genentech intends to amend its Complaint to correct any pleading deficiencies identified by the

Court.

*Defendants' Statement*

Defendants have not yet answered Genentech's Complaint and reserve all objections to any attempt by Genentech to seek leave to amend its Complaint.

*Defendants Xanthe Lam and Allen Lam's Statement*

Defendants Xanthe Lam and Allen Lam object to Genentech's attempt to amend its Complaint in the event the Court grants their Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for the third, fifth, sixth and seventh causes of action on the grounds that those claims are pre-empted by California Uniform Trade Secrets Act. (ECF Nos. 67, 68, 99, 104.)  Defendants Xanthe Lam and Allen Lam further object to Genentech's attempt to amend its Complaint in the event the Court dismisses the third cause of action on the grounds that the federal Defend Trade Secrets Act ("DTSA") does not permit a private right of action for conspiracy under the DTSA. (ECF Nos. 67, 68, 99, 104.)  Defendants Xanthe Lam and Allen Lam further object to Genentech's attempt to amend its Complaint in the event the Court dismisses the sixth cause of action for Breach of Duty of Loyalty on the grounds that the claim is time-barred in light of Genentech's admission in the Complaint that Genentech knew Xanthe Lam had allegedly engaged in improper consulting activities outside of Genentech on October 11, 2016.  (ECF Nos. 67, 93, 99.) Genentech did not file this lawsuit until October 29, 2018, after the two-year statute of limitations ran, and any request to amend as to the sixth cause of action should be denied. (ECF Nos. 1, 67, 93, 99.)

*Defendant John Chan's Statement*

Defendant John Chan joins in the objections set for by Defendants Xanthe and Allen Lam as set forth above.

## VI. EVIDENCE PRESERVATION

Counsel certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and confirm that on January 24, 2019, the parties met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to this action.  Pursuant to the Supplemental Order to Order Setting

Initial Case Management Conference in Civil Cases Before Judge William Alsup, counsel state they have taken affirmative steps necessary to comply with the Court's ESI Guidelines.

The parties understand their duty to preserve records, including paper and electronic copies, and have taken steps to preserve all documents potentially relevant to this action in their possession, custody, or control, without regard to where such documents may be located.

## VII.  DISCLOSURES

*Plaintiff's Statement*

Genentech had planned to serve its Initial Disclosures on February 7, 2019, as required by Rule 26(a)(1)(C). On January 30, 2019, counsel for Defendants advised Genentech's counsel that they would not exchange Initial Disclosures on February 7 in light of the pending motions. Genentech is prepared to move forward with Initial Disclosures and asks the Court to overrule Defendants' objection to making Initial Disclosures. Genentech believes the parties should be required to exchange Initial Disclosures no later than fourteen (14) days after the Court orders them to proceed.

*Defendants' Statement*

At the parties' Rule 26(f) conference on January 24, 2019, counsel for all Defendants informed Genentech that they objected pursuant to Federal Rule of Civil Procedure 26(a)(1)(C) to making initial disclosures by February 7, 2019, on the grounds that initial disclosures were not appropriate at this time due to the pending motion to stay the action (including discovery) and the Fifth Amendment objections articulated by counsel for the individual defendants. Counsel reiterated this objection in an email to Genentech on January 30, 2019. Defendants respectfully propose that the Court hold the deadline for initial disclosures in abeyance for all parties (including Genentech) pending a ruling on Defendants' motions to stay and motion to dismiss for lack of personal jurisdiction. In the event the Court denies those motions, Defendants suggest that the Court set the deadline for initial disclosures for 21 days thereafter.

## VIII.  DISCOVERY AND RULE 26(F) DISCOVERY PLAN

Defendants have filed motions to stay discovery pending resolution of the criminal action. Those motions are currently pending. In the event the Court denies Defendants' motions to

dismiss for lack of personal jurisdiction, the parties agree that when discovery begins, there should be separate deadlines for close of fact discovery and close of expert discovery. Genentech has proposed a partial stay of discovery as to the Indicted Defendants in its opposition to defendants' motions to stay. (ECF No. 92).  The parties do not propose any other phasing of discovery.  Genentech below sets forth a proposed schedule for discovery and trial.  Defendants believe it is premature to set a trial and discovery cut-off schedule until the Court rules on the pending motions.

### Discovery Taken to Date

No discovery of any party has been taken to date. The parties disagree about whether and when party-based discovery should commence. Genentech believes it should proceed forthwith. Defendants believe it should not proceed until the Court has ruled on their pending motions to dismiss and/or stay.

Genentech intends to propound Rule 45 subpoenas on third parties and anticipates that one or more such subpoenas will be served prior to the February 14, 2019 initial case management conference. Genentech does not anticipate that any third party will have produced any documents pursuant to those subpoenas by that time.

### Anticipated Scope and Subjects of Discovery

*Plaintiff's Statement*

Genentech at this time intends to conduct discovery from all Defendants, and from third parties, related to the allegations in the Complaint (ECF No. 1), the evidence submitted in conjunction with Genentech's motion for preliminary injunction (ECF No. 20), and the information and documents disclosed in Genentech's Statement Regarding Trade Secrets Pursuant to California Code of Civil Procedure Section 2019.210 (ECF No. 21). This includes, but is not limited to, the detailed categories of information outlined in letters Genentech sent to all Defendants, and relevant third parties, on or about October 29, 2018.

As noted above, Genentech has proposed a partial stay of discovery as to the Indicted Defendants in light of their invocation of Fifth Amendment rights (*see* ECF No. 92).  However, Genentech does not believe a complete stay of discovery as to the Indicted Defendants is

appropriate, or that there is any basis to stay discovery at all as to JHL, which has no Fifth Amendment rights to invoke, or as to Mr. Jordanov and Ms. Lin, who have not been indicted.

*Defendants' Statement*

Subject to the outcome of Defendants' currently pending motions, the Defendants anticipate that they would seek discovery on matters raised by the Complaint, Genentech's motion for preliminary injunction, and Genentech's purported trade secrets. This discovery includes, but is not limited to,

- The design, development, manufacture, and operation of Rituxan, Pulmozyme, Herceptin, and Avastin;
- Genentech's delay in bringing this lawsuit;
- Genentech's motivations for litigating against JHL;
- Genentech's failure to protect the confidentiality of its alleged trade secrets;
- Public disclosure of Genentech's alleged trade secrets, by Genentech or third parties;
- Genentech's communications with the Department of Justice;
- Genentech's investigation into alleged misconduct by some individual Defendants; and
- Lack of authority for the alleged actions of the individual Defendants.

*Defendants Xanthe Lam and Allen Lam's Statement*

In its Opposition to Defendants' Motions to Stay Proceedings Pending Resolution of Criminal Case (ECF No. 92), Genentech acknowledges that Defendants Xanthe Lam and Allen Lam as well as the other Indicted Defendants are entitled to a stay of the civil proceedings. Subject to the outcome of Defendants' currently pending Motions to Stay, Defendants Xanthe Lam and Allen Lam will be asserting their right against self-incrimination under the Fifth Amendment to the United States Constitution.

*Defendant John Chan's Statement*

Defendant John Chan will assert his rights under the Fifth Amendment. Accordingly, he reserves the right to supplement this portion of the Joint Statement after conclusion of any

criminal proceedings.

### Electronically Stored Information (ESI)

The parties have met and conferred regarding preservation and disclosure of ESI and have reviewed the Court's model ESI order. The parties have agreed to further meet and confer regarding ESI production following the Court's ruling on the pending motions, and at that time will consider whether to execute the Court's model ESI order, a modified version of that order, or adopt another protocol to be submitted to the Court.

### Claims of Privilege/Privilege Issues

Genentech recognizes that the individual Defendants who have been charged in the related criminal case, *United States v. Xanthe Lam, Allen Lam, John Chan, and James Quach*, Case No. 18-CR-527-WHA, may assert their Fifth Amendment rights in response to certain discovery requests. Genentech intends to address those issues as they arise in conjunction with the specific requests at issue.

The parties submitted a Proposed Stipulated Protective Order, which the Court approved subject to stated positions (ECF Nos. 51 & 52). That Order applies to production and treatment of Confidential and Highly Confidential – Outside Attorneys' Eyes Only material.

The parties agree that Federal Rule of Evidence 502 shall govern inadvertent production of privileged information.

### Changes to the Limitations on Discovery Imposed by the Federal Rules

The parties at this time do not propose any changes to the limitations on discovery imposed by the federal rules, but reserve the right to seek such modifications as needed as this case and the discovery process progresses.

### Opportunities to Reduce Costs and Increase Efficiency and Speed

The parties have discussed presenting any party or party-affiliated witnesses who reside overseas for deposition in a mutually-agreeable location that reduces need for international travel and/or international process. The parties anticipate working cooperatively in this regard in an attempt to reach agreement.

The parties will also increase efficiency and speed by exchanging documents

electronically and anticipate successfully negotiating an ESI protocol to ensure all parties receive material in a readily-usable format.

## IX. CLASS ACTIONS

This is not a class action case.

## X. RELATED CASES

On November 6, 2018, the Court entered an order relating this case to *United States v. Lam, et al.*, Case No. 18-CR-527, currently pending before this Court.

## XI. RELIEF

*Plaintiff's Statement*

Genentech seeks the following relief:

A. Judgment in favor of Genentech and against Defendants on each cause of action alleged herein;

B. All damages caused by Defendants' unlawful actions in an amount to be determined at trial, such damages to include actual loss and unjust enrichment;

C. Exemplary and punitive damages as provided by law;

D. Disgorgement of all proceeds Defendants have received from the misappropriation of Genentech's confidential, proprietary, and/or trade secret information;

E. Awarding Genentech pre-judgment and post-judgment interest;

F. Attorneys' fees, costs, and expenses incurred by Genentech in investigating this misconduct and litigating this action;

G. Preliminary and permanent injunctive relief pursuant to which Defendants, and each of them, and their employees or representatives, and all persons acting in concert or participating with them are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

    a. From disclosing or using Genentech's confidential, proprietary, and trade secret information;

    b. From making, testing, using, promoting, offering to sell, marketing, commercializing, or selling biologics, therapeutics, drugs, and/or products of

any kind that utilize, embody, or were developed, in whole or in part, with the benefit or use of any of Genentech's confidential, proprietary, and/or trade secret information;

c. From utilizing any processes or methods that are derived from, contain, or embody, in whole or in part, any of Genentech's confidential, proprietary, and/or trade secret information;

d. From submitting to or filing with any regulatory body any documents or other materials (in paper, electronic, or any other form, including, for example, cell lines, assays, or drug substances) that are derived from, contain, or embody, in whole or in part, any of Genentech's confidential, proprietary, and/or trade secret information;

e. Immediately to preserve and return to Genentech (i) all copies of all Genentech documents and information, including without limitation any trade secret and other confidential or proprietary information acquired from Genentech; and (ii) all copies of all materials (in paper, electronic, or any other form, including, for example, cell lines, assays, or drug substances) containing any, or derived from any, Genentech information, trade secrets, or other confidential or proprietary information; and

f. To identify each individual and entity to whom or to which Defendants and any of them, and their employees or representatives, and all persons acting in concert or participating with them, disclosed (i) any Genentech documents or other materials (in paper, electronic, or any other form, including, for example, cell lines, assays, or drug substances) or (ii) any of Genentech's confidential, proprietary, and/or trade secret information; and

g. To turn over to the Court any proceeds Defendants have received from the misappropriation of Genentech's confidential, proprietary, and/or trade secret information, which proceeds would be held in constructive trust until the conclusion of this litigation;

H.  Granting Genentech such other and further relief as this Court deems just and proper.

*Defendants' Statement*

Defendants seek the following relief:

- Denial of Genentech's preliminary injunction motion;
- Grant of Defendants' motions to stay;
- Grant of Defendants' motion to dismiss;
- Declaratory judgment that Genentech's asserted trade secrets are not trade secrets;
- Genentech take nothing for any of the claims asserted in its Complaint;
- Costs of suit;
- Attorneys' fees and costs; and
- Such other and further relief as the Court may deem to be just and proper.

## XII.  SETTLEMENT AND ADR

The parties have met and conferred regarding their obligations pursuant to Civil Local Rule 16-8 and ADR Local Rule 3-5.  The parties believe that it is premature to initiate any ADR process at this time. On January 10, 2019 the parties filed ADR Certifications certifying the above and agreeing to discuss ADR selection with the Assigned Judge at the case management conference. (Dkts. 79-85.)

## XIII.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

On November 5, 2018, Genentech filed a Declination to Magistrate Judge Jurisdiction (ECF No. 22).

## XIV.  OTHER REFERENCES

The parties do not at this time believe that this case should be referred to binding arbitration or a special master. This case is not suitable for reference to the Judicial Panel on Multidistrict Litigation.

## XV.  NARROWING OF ISSUES

The parties are not at this time aware of any issues that can be narrowed by agreement.

## XVI. EXPEDITED TRIAL PROCEDURE/SCHEDULE

The parties do not believe that an expedited schedule is appropriate for this case.

## XVII. SCHEDULING

*Plaintiff's Statement*

Genentech believes the Court should set a schedule for trial so that the case may proceed without further delay. Genentech proposes the following schedule:

| Event | Date |
| --- | --- |
| Close of fact discovery | May 22, 2020[2] |
| Affirmative expert reports/disclosures | June 19, 2020 |
| Rebuttal expert reports/disclosures | July 24, 2020 |
| Close of expert discovery | August 28, 2020 |
| Hearing on dispositive motions | October 29, 2020 |
| Pretrial Conference | November 18, 2020 |
| Trial | November 30, 2020 |

*Defendants' Statement*

Defendants believe that it is premature to develop a trial schedule until the Court rules on Defendants' motions to stay so that Defendants can make an informed proposal that accounts for the nature and extent to which the case will progress, if at all, pending the criminal action.

## XVIII. TRIAL

Genentech has demanded a jury trial. The parties at this time anticipate a trial of this matter will last no more than three weeks.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

*Plaintiffs' Statement and Disclosure*

Genentech filed its Corporate Disclosure Statement and Certification of Interested Persons on October 29, 2018 (ECF No. 4). Pursuant to the Standing Order for all Judges of the Northern District of California, Genentech hereby restates the contents of its disclosure:

---

[2] As noted above, the parties have not yet exchanged Initial Disclosures and Defendants object to discovery proceeding at this time. Should discovery not proceed promptly following the February 14, 2019 Initial Case Management Conference, Genentech may ask that this schedule be modified accordingly.

Pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15, Plaintiff Genentech, Inc. ("Genentech") certifies that the following persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- Genentech is a subsidiary of Roche Holdings, Inc., a Delaware corporation.
- Genentech ultimately is wholly owned by Roche Holding Ltd.
- Novartis Ltd. owns more than 10% of the stock in Roche Holding Ltd.

***Defendants' Statements and Disclosures***

JHL filed its Corporate Disclosure Statement and Certificate of Interested Persons on November 29, 2018 (ECF No. 55). Pursuant to the Standing Order for all Judges of the Northern District of California, JHL hereby restates the contents of its disclosure:

Pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15, Defendant JHL Biotech, Inc. ("JHL") certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a nonfinancial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- KPCB Asia Investment, Ltd. (owner of more than 10% of JHL stock);
- Sanofi – Aventis Singapore Pte Ltd. (owner of more than 10% of JHL stock);
- Biomark Capital Fund IV L.P. (owner of more than 10% of JHL stock); and
- Sequoia Capital CV IV Holdco, Ltd (owner of more than 10% of JHL stock).

## XX. GUIDELINES FOR PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California and agree to abide by these guidelines.

## XXI. OTHER MATTERS

The parties have no other matters to bring to the Court at this time.

## XXII. PLAN TO PROVIDE OPPORTUNITIES TO JUNIOR LAWYERS

*Plaintiff's Statement*

Genentech currently has two attorneys of record in this action who are six years or less out of law school: Sean M. Arenson and Maya Perelman. Genentech intends to provide opportunities for these and/or other junior lawyers to argue motions, take and defend depositions, and examine witnesses at trial. Because this case has not yet proceeded to discovery, Genentech has not yet identified specific motions or witnesses that Mr. Arenson or Ms. Perelman (or other junior lawyers) will cover, but anticipates that they each may at a minimum argue discovery-related motions and depose one or more third-party witnesses over the course of discovery in this action. Undersigned counsel does not believe it is necessary to require a client representative to attend the case management conference to discuss this subject because counsel and clients have already discussed it and are in agreement that such opportunities should be provided to junior lawyers.

*Defendants' Statement*

Subject to the outcome of Defendants' currently pending motions, counsel for JHL intends to provide opportunities for junior attorneys to argue motions, take and defend depositions, and examine witnesses at trial. Because discovery has not yet commenced, counsel for JHL has not yet identified any specific motions or depositions that its junior attorneys will argue or take, though counsel anticipates that its junior attorneys may argue discovery-related motions and take the depositions of one or more third-party witnesses, should discovery proceed in this matter. Counsel for JHL has discussed with JHL the potential use of junior attorneys to argue motions, take or defendant depositions, and examine witnesses at trial and therefore does not believe it useful to require client representatives to attend the upcoming case management conference.

Dated: February 7, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/ Laurie C. Mims*
LAURIE CARR MIMS

Attorney for Plaintiff
GENENTECH, INC.

Dated: February 7, 2019  
O'MELVENY & MYERS LLP

By: /s/ Michael F. Tubach  
MICHAEL F. TUBACH

Attorney for Defendant  
JHL BIOTECH, INC.

Dated: February 7, 2019  
LAW OFFICES OF DAVID H. SCHWARTZ, INC.

By: /s/ David H. Schwartz  
DAVID H. SCHWARTZ, INC.

Attorney for Defendants  
Xanthe Lam, Allen Lam

Dated: February 7, 2019  
SWANSON & MCNAMARA LLP

By: /s/ Edward D. Swanson  
EDWARD D. SWANSON

Attorney for Defendant  
Racho Jordanov

Dated: February 7, 2019  
BOERSCH SHAPIRO LLP

By: /s/ Martha Boersch  
MARTHA BOERSCH

Attorney for Defendant  
James Quach

Dated: February 7, 2019  
ARGUEDAS, CASSMAN & HEADLEY, LLP

By: /s/Ted W. Cassman  
TED W. CASSMAN

Attorney for Defendant  
JOHN CHAN

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: February 7, 2019

/s/ Laurie C. Mims  
LAURIE CARR MIMS