IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., | No. C 18-06582 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** |
| JHL BIOTECH, INC., *et al*., | |
| Defendants. | |

## INTRODUCTION

In this action for trade secret misappropriation, computer fraud, and various state law claims, plaintiff moves for leave to file an amended complaint. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Plaintiff Genentech, Inc. accuses defendant JHL Biotech, Inc., a competitor in the biopharmaceutical space, and various individual defendants of misappropriating its trade secrets, computer fraud, and violating various state laws. A prior order has set forth the detailed background of this action (Dkt. No. 128). In short, Genentech sells medicines called "biologics" — typically large-molecule, protein-based drugs produced by living cells and recombinant DNA technology — including Rituxan, Herceptin, Avastin, and Pulmozyme. JHL, a Taiwanese start-up founded by defendants Rose Lin and Racho Jordanov, currently seeks to market "biosimilars" (effectively generics) of these four biologics in China and Europe.

The relatively swift development of JHL's biosimilars is allegedly thanks to defendant Xanthe Lam, Genentech's former principal scientist. Genentech accuses Xanthe of misappropriating its trade secrets to aid JHL while she was still employed by Genentech. In 2016, JHL hired defendant John Chan, the Lams' family friend, who eventually became project leader for the Pulmozyme biosimilar development. In 2017, JHL hired defendant James Quach, another former Genentech employee, to manage JHL's manufacturing facility in China. Shortly before leaving for his new job in China, Quach allegedly visited the Lams' home on three separate occasions in the July 2017 and used Xanthe's log-in credentials to access and download onto a personal USB drive hundreds of confidential Genentech documents related to manufacturing policies and protocols. And, once Quach began his job in China, he allegedly asked Xanthe to send him additional confidential Genentech documents.

A prior order granted in part and denied in part defendants' Rule 12(b)(6) motion to dismiss various claims (Dkt. No. 128 at 14–23). That order allowed Genentech to seek leave to amend certain claims that were dismissed (*see id*. at 44). The dismissed claims given leave to amend included the following: (1) violation of the Defend Trade Secrets Act ("DTSA") as to John Chan for failure to adequately allege an agreement between JHL and Chan (*id*. at 16); (2) violation of the Computer Fraud and Abuse Act ("CFAA"), conspiracy to violate the CFAA, and violation of California's Computer Data Access and Fraud Act ("CDAFA") for failure to adequately allege an agreement between Quach and JHL and failure to adequately allege that Quach was acting as JHL's agent when he accessed Genentech documents using Xanthe's log-in credentials (*id*. at 20–21, 23); and (3) common law claims involving intentional interference with contractual relations and aiding and abetting Xanthe's breach of the duty of loyalty for lack of clarity in Genentech's pleading (*id*. at 21–22).

Genentech now moves for leave to file an amended complaint, arguing that its proposed amended complaint cures the aforementioned deficiencies (as well as those not reached in the prior order) (Dkt. No. 144). Only JHL opposes, with the other individual defendants generally joining in JHL's opposition (Dkt. Nos. 161–63, 165–67). JHL argues that amendment would be futile. This order follows full briefing and oral argument.

**ANALYSIS**

Rule 15(a)(2) permits a party to amends its pleadings with the court's leave, advising that "[t]he court should freely give leave when justice so requires." In ruling on a motion for leave to amend, courts consider: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Futility alone can justify denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). For purposes of assessing futility on this motion, the legal standard is the same as it would be on a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### 1. CHAN'S VIOLATION OF THE DTSA (CLAIM 1).

Genentech's proposed amended complaint realleges a DTSA claim against John Chan (Claim 1) (Dkt. No. 144-1 ¶¶ 277–92). Genentech asserts that the additional allegations are sufficient to support a reasonable inference that Chan agreed with JHL to misappropriate its trade secrets (Dkt. No. 144 at 5). Chan does not specifically oppose amendment of this claim. (Though he joins JHL's opposition generally (Dkt. No. 165), JHL itself did not make any arguments opposing the DTSA claim against Chan.) The unopposed motion to amend Claim 1 is therefore **GRANTED**.[*]

### 2. VIOLATION OF THE CFAA AND CDAFA.

The proposed amended complaint also re-alleges claims under the CFAA and CDAFA. Specifically, Genentech reasserts the following: (1) violation of the CFAA, 18 U.S.C. § 1030, against Quach and JHL (Claim 6); (2) conspiracy to violate the CFAA against Xanthe Lam, Quach, and JHL (Claim 7); and (3) violation of the CDAFA, Cal. Pen. Code § 502, against Xanthe Lam, Quach, and JHL (Claim 8) (Dkt. No. 144-1 ¶¶ 342–75).

---

[*] During oral argument, counsel for the Lams argued that the prior order dated March 1 had already dismissed with prejudice Genentech's conspiracy allegations. Not so. That order dismissed with prejudice Genentech's *standalone* claim regarding conspiracy to violate the DTSA (Dkt. No. 128 at 21). The order otherwise clearly found that Genentech had adequately alleged conspiracy (*see id*. at 16–20).

3

## A. Violation of CFAA Against JHL and Quach & Violation of CDAFA Against JHL, Xanthe, and Quach (Claims 6 & 8).

Genentech asserts claims of violation of the CFAA against JHL and Quach and violation of the CDAFA against JHL, Xanthe, and Quach (Dkt. No. 144-1 ¶¶ 342–53, 361–75). It argues that the proposed amended complaint plausibly alleges that Xanthe had both actual and apparent authority to act for JHL, and as such, JHL is liable for the conspiracy Xanthe entered on its behalf (Dkt. No. 169 at 6). Specifically, Genentech contends that Quach's alleged downloading sessions in July 2017 using Xanthe's Genentech log-in credentials to access Genentech's manufacturing trade secrets and Quach's request to Xanthe for additional Genentech documents in August 2017 were on JHL's behalf, and that Xanthe acted within the scope of her agency (Dkt. Nos. 169 at 6; 144-1 ¶¶ 207–08, 214). California law thus holds JHL (the principal) liable for Xanthe's (JHL's agent) intentional torts, according to Genentech. (Dkt. No. 169 at 6 (citing *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296–97 (1995)).

To find a principal liable for the acts of an ostensible agent, (1) "[t]he person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one"; (2) "such belief must be generated by some act or neglect of the principal sought to be charged"; and (3) "the third person in relying on the agent's apparent authority must not be guilty of negligence." *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 399 (1975).

"[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). The principal, however, need not make explicit representations regarding an agent's authority to the third party. *Ibid.* An agency is ostensible (*i.e.*, apparent) when the principal "intentionally, or by want of care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. Further, apparent authority arises by "a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (quoting Restatement (Third) of Agency

4

§ 3.03 (Am. Law Inst. 2006)). "The principal's manifestations giving rise to apparent authority may consist of . . . the granting of permission to the agent to perform acts . . . under circumstances which create in him a reputation of authority." *Ibid*. (citation omitted).

Moreover, "[a]n agent's authority may be implied from the circumstances of a particular case and may be proved by circumstantial evidence." *C.A.R. Transp.*, 213 F.3d at 479–80. "[U]nless only one conclusion may be drawn, [the] existence of an agency and the extent of an agent's authority is a question of fact." *Id*. at 480.

No defendant opposes Genentech's allegation that Xanthe and Quach conspired to misappropriate Genentech's trade secrets and violated the CFAA and CDAFA. JHL, however, argues, *inter alia*, that Genentech failed to adequately plead Xanthe's agency relationship at the time of the alleged violations (Dkt. No. 161 at 13–14, 17). This order disagrees. Genentech has alleged sufficient facts that, when viewed in light most favorable to Genentech, support a reasonable inference that JHL allowed Xanthe "to acquire a reputation of authority for acting on JHL's behalf" and that Xanthe's reputation "is what led Quach to contact her for assistance in securing a job at JHL" (Dkt. No. 169 at 3–4).

JHL argues that Genentech failed to adequately plead the second element required to find apparent authority. Specifically, it asserts that Genentech did not allege any act by *JHL* that created a reasonable belief in Xanthe's agency (Dkt. No. 161 at 13–14). But JHL *did* allegedly perform such acts that (at least negligently) plausibly created a reasonable belief. For example, JHL authorized Xanthe to act as a high-level manager when it allegedly placed her "in charge of the company" when its senior management left for the United States for the holidays (Dkt. No. 144-1 ¶¶ 27, 167, 216). JHL authorized her to formally interview then-candidate Chan and subsequently authorized her to supervise Chan's work by holding regular Skype conference calls with him through November 2016 and providing Genentech's alleged trade secrets (*id*. ¶¶ 169, 176, 216). As Genentech points out, these alleged facts show that JHL authorized or at least acquiesced in Xanthe's "wide-ranging conduct" on its behalf (Dkt. No. 169 at 4).

5

JHL also asserts that Genentech failed to adequately plead the first and third elements. That is, according to JHL, Genentech failed to plead that *Genentech* believed Xanthe had apparent authority to act on JHL's behalf or that *Genentech* relied on Xanthe's apparent authority (Dkt. No. 161 at 13). As Genentech points it, however, apparent authority does not necessarily require the purportedly injured party to retain the belief of apparent authority. Our court of appeals has held that a defendant principal may be liable for the actions of its agents based on apparent authority where the plaintiff itself was not alleged to have believed in or relied upon the agent's apparent authority; a third party's belief was sufficient. *See Mavrix*, 873 F.3d at 1055. Thus under these circumstances, it is sufficient that *Quach* allegedly believed that Xanthe was authorized to act on JHL's behalf to support the inference of apparent authority.

Specifically, on May 6, 2017, Quach allegedly emailed Xanthe a copy of his resume and let her know that he was "very interested in Roslyn's project and any other job opportunities" and that he "hope[d he] spell [sic] her name right" (Dkt. No. 144-1 ¶ 204). Xanthe responded that same day to set up a call with Quach "about the job openings at JHL Biotech" and clarified that her "friend's name is called [sic] Rose Lin" (*ibid.*). On May 11, 2017, Quach again allegedly sent Xanthe his resume for her review and set up another phone call with Xanthe to discuss taking a position at JHL (*id.* ¶ 205). And, in July 2017, he allegedly conspired with Xanthe to unlawfully use her Genentech log-in credentials to access confidential Genentech documents in preparation for his new job at JHL (*id.* ¶¶ 355–56). Taking all allegations as true and in light most favorable to Genentech, as this order must, it is thus reasonable to infer that Quach believed Xanthe had the authority to act on JHL's behalf regarding his employment at JHL and that his reliance on such belief is likely traceable to her high-level responsibilities at JHL (Dkt. No. 169 at 4). *See Mavrix*, 873 F.3d at 1055.

As such, this order finds that, at this early stage, there are sufficient factual allegations to support a plausible inference that Xanthe acted with apparent authority on behalf of JHL during the alleged CFAA and CDAFA violations. In turn, JHL (as Xanthe's alleged principal) is therefore liable for Xanthe's actions. *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) ("The legal consequences of an agent's actions may be attributed to a principal when

the agent has actual authority (express or implied) or apparent authority." (citing Restatement (Third) of Agency § 2 intro. note)). Accordingly, Genentech's motion to amend Claims 6 and 8 is **GRANTED**.

### B. Conspiracy to Violate the CFAA Against JHL, Quach, Xanthe (Claim 7).

JHL opposes Genentech's proposed separate claim of conspiracy to violate the CFAA (Claim 7), arguing that (1) the CFAA does not provide for a conspiracy claim, and (2) Genentech failed to adequately plead an agreement between JHL and Quach (Dkt. No. 161 at 14–17).

*First*, this order finds that the CFAA allows for a claim of conspiracy to violate the CFAA. Section 1030(g) allows "[a]ny person who suffers damage or loss by reason of *a violation of this section*" to "maintain a civil action *against the violator*." 18 U.S.C. § 1030(g) (emphasis added). JHL argues that a civil conspiracy claim under the CFAA "would extend CFAA liability beyond the 'violator,' thereby expanding the civil claim beyond Congress's intent" (Dkt. No. 161 at 14). Section 1030, however, does not only proscribe certain conduct under subsection (a) (*e.g.*, accessing a computer without authorization), the violation of which "shall be punished as provided in subsection (c) of this section." 18 U.S.C. § 1030(a). It also proscribes, under subsection (b), the "conspir[acy] to commit or attempt[] to commit an offense under subsection (a)," the violation of which also "shall be punished as provided in subsection (c)." *Id*. § 1030(b). Thus Congress intended to bring co-conspirators who violate Section 1030(b) within the purview of a civil action. *See Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. C 09-00422 PMP, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011) (Judge Philip Pro) ("The statute's plain language sets forth who is liable under [Section] 1030: a primary violator, a person who attempts a primary violation, and a co-conspirator of a primary violator.").

JHL's citation to *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331 (N.D. Ga. 2017), is unavailing. There, the plaintiff asserted a claim relating to the violation of the CFAA against both defendants, Solutions II and individual defendant Hall. The district court noted that "[e]ven if Plaintiff had alleged sufficient facts to show that Solutions II directed or induced Hall

7

to act, the CFAA states that the person who has suffered damage or loss by a violation of the CFAA may maintain a civil action against the 'violator.' " *Id*. at 1343–44. It further noted that the plaintiff "alleged that Hall was the individual who acted, or was the violator, not Solutions II. Indeed, Solutions II did not access [the plaintiff's] computers." *Ibid*. (citing 18 U.S.C. § 1030(g)). The district court accordingly held that "Solutions II may not be held liable as the violator under the CFAA." *Id.* at 1344. As Genentech points out, however, the district court's reasoning is unclear and does seemingly recognize a conspiracy claim in the very next paragraph. That is, the district court further noted that a "claim under section (b) requires evidence of an agreement and common activities in furtherance of the unlawful act." *Id*. at 1344 (citing *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015)). It then found "no allegation supported by facts that Hall and Solutions II entered into an agreement for Hall to commit the unlawful act of accessing information beyond authorization." *Ibid*. This order thus finds JHL's reliance on *Agilysis* for the proposition that Section 1030 does not provide for a claim for conspiracy to violate the CFAA unpersuasive.

*Second*, for the reasons stated above, this order finds that Genentech has adequately pled Xanthe's agency relationship with JHL at the time of the alleged violations. As such, Genentech has adequately pled an agreement between Quach and JHL (through Xanthe). Accordingly, Genentech's motion to amend Claim 7 is **GRANTED**.

### 3. STATE LAW CLAIMS.

Genentech realleges the following state law claims: (1) intentional interference with Xanthe's contractual relations against JHL, Racho Jordanov, Rose Lin, Allen Lam, and James Quach (Claim 4); and (2) aiding and abetting Xanthe's breach of duty of loyalty against JHL, Jordanov, Lin, Allen Lam, Chan, and Quach (Claim 5) (Dkt. No. 144-1 ¶¶ 318–41). These claims are based on allegations that defendants "induc[ed]" and/or "encouraged" Xanthe to breach her employment agreement with Genentech (*id*. ¶¶ 10, 324, 328). JHL argues that these claims are both time-barred and superseded by California's Uniform Trade Secrets Act ("CUTSA") (Dkt. No. 161 at 2–11).

### A. Statute of Limitations.

"Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)). A court may dismiss a claim based on the statute of limitations "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo*, 68 F.3d at 1207 (citing *Jablon*, 614 F.2d at 682).

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id*. at 807. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" *Ibid*. (quoting *Norgart*, 21 Cal. 4th at 398). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Ibid*.

Genentech argues that the first amended complaint adequately pleads that it did not know (nor had reason to know) of Xanthe Lam's involvement with JHL until mid-November 2016 when Genentech's Healthcare Compliance Office gained access to Xanthe Lam's email account, at which time the state law claims at issue accrued (Dkt. No. 169 at 8). Reading the proposed complaint with the "required liberality," this order agrees.

JHL contends that the statute of limitations period began when Genentech first learned of Xanthe's illicit consulting relationship with *AP Biosciences*, another biotechnology competitor, on October 11, 2016 (Dkt. Nos. 161 at 4–6; 144-1 ¶¶ 259–61). It argues that

Genentech's knowledge of a breach of a duty is enough to trigger the clock regarding the claims premised on that breach and that knowledge of the defendant's identity does not postpone the accrual of that claim (Dkt. No. 161 at 4). In support, JHL cites *Bernson v. Browning-Ferris Industries*, 7 Cal. 4th 926, 932 (1994), for the proposition that the discovery rule is "premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers." The injury here, JHL asserts, is Xanthe's violation of the Proprietary Information Agreement and breach of duty of loyalty, and Genentech's awareness of these alleged injuries was thus sufficient to start the clock (Dkt. No. 161 at 4). Genentech's common law claims are therefore barred, according to JHL, because Genentech brought the instant action on October 29, 2018 — just outside the two-year window.

This argument, however, is unpersuasive. True, Xanthe allegedly violated the Proprietary Information Agreement and duty of loyalty for many years prior to the instant action by consulting for multiple competitors. But Xanthe's involvement with those other competitors such as AP Biosciences did not give rise to a claim against *JHL* for the distinct injury *JHL* allegedly caused by intentionally interfering with contractual relations or aiding and abetting Xanthe in breaching her duty of loyalty. *Fox* thus gains no ground for JHL, as this order agrees with Genentech that the issue here is not simply Genentech's ignorance of a defendant's identity, but rather Genentech's ignorance of the existence of a cause of action (Dkt. No. 169 at 8). *See Fox*, 35 Cal. 4th at 812. As such, this order finds that Genentech's notice of a potential claim against AP Biosciences did not begin the limitations period relating to a *separate* claim against JHL.

JHL also asserts that Genentech failed to plead that its delay of one month between the time Genentech first learned of Xanthe's potential breach of the Proprietary Information Agreement and its gaining of access to Xanthe's email account was reasonable (Dkt. No. 161 at 6–7). A party relying on the discovery rule must plead facts to show "the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (quoting *McKelvey v.*

*Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)). JHL argues that Genentech failed to explain why its Health Compliance Officer took one month to access Xanthe Lam's email account and files where Genentech's policies appears to have allowed access without delay (Dkt. No. 161 at 6–7 (citing Dkt. No. 1., Exh. E at 45)). This order, however, cannot say at this stage that it "appears beyond doubt" that Genentech's diligence was unreasonable simply based on the one month gap. *Supermail Cargo*, 68 F.3d at 1207.

JHL further argues that Genentech impermissibly attempts to contradict its prior allegation that it "received notice of the allegations described herein on or about October 11, 2016" by limiting that notice to AP Biosciences (Dkt. No. 161 at 4 (citing Dkt. Nos. 1 ¶ 244). This order disagrees. The proposed amendment is more accurately described as expansion of Genentech's prior allegation with further context rather than an outright contradiction. Accordingly, this order finds that at this stage, Genentech's state law claims are timely.

### B. Supersession.

Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. CUTSA therefore supersedes claims based on the same nucleus of facts as trade secret misappropriation. Cal. Civ. Code § 3426.7; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232, 236 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).

JHL argues that CUTSA supersedes Genentech's common law claims because they "arise from the same nucleus of facts as Genentech's trade secret misappropriation claims" (Dkt. No. 161 at 8). This order disagrees. Though there is certainly overlap between the common law claims and the trade secret misappropriation claims, Xanthe's alleged unauthorized work for JHL leading to her breaches of contract and duty of loyalty are not "one and the same as her alleged disclosure and use of trade secrets," as JHL so contends (*id*. at 9).

As Genentech points out, the mere fact that Xanthe consulted for JHL, a clear Genentech competitor, gives rise to these common law claims regardless of whether Xanthe misappropriated trade secrets in the process (Dkt. No. 169 at 10–11). The Proprietary Information Agreement prohibited Xanthe from " 'engag[ing] in any employment or activity other than for the Company in any business in which the Company is now or may hereafter become engaged' without Genentech's express written consent" (Dkt. No. 144-1 ¶ 328). Genentech's Code of Conduct similarly prohibited Xanthe "from engaging in conduct that could give rise to conflicts of interest, including by moonlighting for another company, or by engaging in activities creating personal interests at odds with those of Genentech" (Dkt. No. 144-1 ¶ 340). The premise of Genentech's common law claims are therefore distinguishable from that in *Anokiwave, Inc. v. Rebeiz*, No. C 18-629 JLS (MDD), 2018 WL 4407591 (S.D. Cal. Sept. 17, 2018) (Judge Janis L. Sammartino), where the alleged breach of fiduciary duty was based on the defendant's use of his position "to receive certain information and then disclose[] this information to" other defendants and the alleged intentional interference with existing contractual relations was based on a contract "which prohibited [the defendant] from disclosing [the plaintiff's] Proprietary Information." *Id*. at *4, 6.

Here, in contrast, many aspects of Xanthe's involvement with JHL — such as traveling to Taiwan for JHL, getting paid by JHL, and interviewing and supervising Chan — go beyond the trade secret misappropriation claim, as those alleged acts alone and violated contractual relations and duty of loyalty by engaging in activities with another company without Genentech's express written consent and that created personal interests at odds with those of Genentech. Those activities are thus "materially distinct from the wrongdoing alleged in" the CUTSA claim. *Waymo*, 256 F. Supp. 3d at 1063. CUTSA thus does not supersede Genentech's common law claims.

Accordingly, Genentech's motion to amend its common law claims (Claims 4 and 5) is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Genentech's motion for leave to file an amended complaint is **GRANTED**. Genentech shall file an amended complaint that comports with this order by **JUNE 17 AT NOON**. There will be no more Rule 12 practice.

**IT IS SO ORDERED.**

Dated: June 13, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE