## ESCROWED SETTLEMENT AGREEMENT

THIS ESCROWED SETTLEMENT AGREEMENT (this "**Agreement**") dated as of May 15, 2020 (the "**Effective Date**") is entered into between Genentech, Inc. ("**Genentech**"), a corporation organized under the laws of Delaware, and JHL Biotech, Inc. ("**JHL**"), an exempted company with limited liability organized under the laws of the Cayman Islands, (each of Genentech and JHL a "**Party**," and together the "**Parties**").

WHEREAS Genentech, itself or through certain of its Affiliates, markets rituximab, dornase alfa, bevacizumab, and trastuzumab products (collectively "**Genentech Products**," and each of them a "**Genentech Product**");

WHEREAS Genentech sued JHL in an action captioned *Genentech, Inc. v. JHL Biotech, Inc. et al.*, No. 3:18-cv-06582 (N.D. Cal.) (the "**Action**"), which is pending in the United States District Court, Northern District of California (the "**Court**"), for, among other things, misappropriation of Genentech Confidential Information;

WHEREAS JHL's Board of Directors formed a Special Committee (the "**Special Committee**") to investigate, among other things, the facts at issue in the Action;

WHEREAS the Parties previously entered into a binding settlement agreement styled as a Memorandum of Understanding (the "**MOU**") dated August 7, 2019, a copy of which is attached hereto as **Exhibit A**, in which the parties contemplated entering into this Agreement to spell out more fully the Parties' rights and obligations under, and to supersede, the MOU;

WHEREAS the MOU required JHL's counsel to make a presentation (the "**Presentation**") to Genentech's counsel, and JHL's counsel made the Presentation in compliance with the MOU on August 23, 2019 and September 4, 2019;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.    DEFINITIONS.

    1.1    "**Affiliate**" means, with respect to any entity, any other entity that directly or indirectly controls, is controlled by, or is under common control with, such entity.  An entity shall be regarded as in control of another entity if it owns, or directly or indirectly controls, at least fifty percent (50%) of the voting stock or other ownership interest of the other entity, or if it directly or indirectly possesses the power to direct or cause the direction of the management and policies of the other entity by any means whatsoever.  Notwithstanding the foregoing, for purposes of this Agreement, Chugai Pharmaceutical Co., Ltd ("**Chugai**") and all business entities directly or indirectly controlled by Chugai shall not be considered Affiliates of Genentech, and are expressly exempted from this Agreement.

    1.2    "**Business Day**" shall mean any day other than a Saturday, a Sunday, national holidays as recognized by the Republic of China (Taiwan) or the People's Republic of

China, or a day on which the state or federal courts located in the State of Delaware are authorized or obligated by law or executive order to be closed.

1.3    "**Biosimilar**" means, with respect to a novel biological product that is approved for human use in a given country of the world, any other biological product developed to be marketed in such country and to be approved for human use: (a) by the applicable Regulatory Authority in such country under the biosimilarity standard set forth in the United States under 42 U.S.C. §§ 262(i)(2) and (k), or any similar standard under equivalent applicable law outside the United States, on a country-by-country basis where such novel biological product is marketed, provided that such applicable law exists; and (b) in reliance in whole or in part, on a prior marketing approval (or on any safety or efficacy data submitted in support of such prior marketing approval) of such novel biological product.

1.4    "**BLA**" means a Biologics License Application filed with the United States Food and Drug Administration ("FDA") pursuant to 42 U.S.C. § 262 (as may be amended or replaced), or any equivalent application or regulatory mechanism or authorization filed with the applicable Regulatory Authority of a country other than the United States.

1.5    The "**Court**" means the United States District Court for the Northern District of California and, where possible, the San Francisco Courthouse thereof.

1.6    The "**Criminal Action**" means *United States v. Lam et al.*, No. 3:18-cr-00527-WHA (N.D. Cal.).

1.7    "**Date of the MOU**" is August 7, 2019.

1.8    "**Diligence Period**" has the meaning assigned to it in Section IV of the MOU.

1.9    The "**District Court Judge**" means the United States District Judge assigned to the Action, which as of the Effective Date is the Honorable William Alsup.

1.10    "**Regulatory Authority**" means an authority charged with regulating pharmaceutical or medical products, including but not limited to the United States FDA and any equivalent authority of a country other than the United States, such as the Taiwan Food and Drug Administration, the European Medicines Agency, and the National Medical Products Administration, or any successor entities thereto.

1.11    "**Genentech Confidential Information**" means all non-public materials, information, and data generated by or at the direction of Genentech concerning Genentech and its operations. Notwithstanding the foregoing, Genentech Confidential Information shall not include materials, information, or data, or portions thereof that: (a) are disclosed to JHL either (i) free of confidentiality obligations by a Third Party who has the right to make such disclosure without obligations of confidentiality, or (ii) pursuant to a non-disclosure agreement between JHL and the Third Party who has the right to make such disclosure, (b) are or become public through no fault of JHL, or (c) are independently developed by JHL or any third party without the use of non-public materials, information, or data generated by or at the direction of Genentech concerning Genentech and its operations.

2

1.12    "**Genentech's Counsel**" means attorneys who are not employees of Genentech and who have been retained to represent or advise Genentech in this Action or are affiliated with a law firm which has appeared in this Action on Genentech's behalf.  The term includes attorneys, paralegals, clerks, administrative assistants, and other support staff.

1.13    "**Genentech's Experts**" means experts, consultants, or investigators retained by Genentech's Counsel to assist in this matter who are not (i) current or former Genentech employees or (ii) consultants who provide or have provided services to Genentech related to its drug development or manufacturing.

1.14    "**Genentech's Releasees**" means Genentech's past and present, direct and indirect, parents, subsidiaries, and Affiliates, except that—as reflected in Section 1.1—Chugai is not a Genentech Releasee and is not receiving a release from JHL under this Agreement.

1.15    "**Genentech's In-House Counsel**" means Mary Riley, Katherine Nolan Stevaux, and Greg Richardson. Additional or substitute In-House Counsel may be added at Genentech's discretion upon seven days' written notice to JHL, with such notice containing a description of the additional or substitute In-House Counsel's responsibilities at Genentech and the reason for the addition or substitution.  Any disputes regarding any such additions or substitutions shall be submitted to the Magistrate Judge pursuant to the process set forth in Section 10 below, and during the pendency of any dispute the proposed new In-House Counsel shall not be provided access to any non-public JHL information.

1.16    "**JHL Product Candidates**" means JHL 1101 (rituximab), JHL 1921 and JHL 1922 (dornase alfa), JHL 1149 (bevacizumab), and JHL 1188 (trastuzumab) (and each of them a "**JHL Product Candidate**").

1.17    "**JHL's Releasees**" means JHL's past and present, direct and indirect, parents, subsidiaries, and Affiliates, including JHL Biotech, Inc., JHL Biotech Australia PTY Ltd, JHL Biotech, Inc., Taiwan, JHL Biotech (Hong Kong) Limited, JHL Biotech USA, Inc., Xikang (Wuhan) Biopharmaceutical Co., Ltd., Jianheli (Wuhan) Biopharmaceutical Co., Ltd., and shall also include Chime Biologics (Wuhan) Co., Ltd.

1.18    The "**Magistrate Judge**" means the United States Magistrate Judge assigned to the Action, which as of the Effective Date is the Honorable Sallie Kim.

1.19    "**Roche**" means Roche Holdings Ltd, a Swiss corporation, and its past and present, direct and indirect, parents, subsidiaries, and Affiliates.

1.20    "**Third Party**" means any person or entity other than Genentech, Genentech's Releasees, JHL, and JHL's Releasees.

1.21    "**United States**" means the United States of America, including its territories and possessions.

3

2.    CESSATION OBLIGATIONS, TRAINING OBLIGATIONS, AND PERMANENT INJUNCTION

2.1    Cessation of Development.    JHL represents that as of the Date of the MOU, JHL had ceased and abandoned development and/or clinical trials (consistent with patient safety and compliance with applicable regulations) of the JHL Product Candidates.

2.1.1    Nothing in this Agreement or the Permanent Injunction contemplated herein prevents JHL from seeking to develop a Biosimilar of a Genentech Product or a Biosimilar of any other Genentech product in the future, provided that those development efforts, whether for one or more of the JHL Product Candidates or for a Biosimilar of any other Genentech product, do not rely in whole or in part on any Genentech Confidential Information or on any methods or protocols that were derived in whole or in part from Genentech Confidential Information.    JHL may not commence developing a Biosimilar of a Genentech Product unless JHL establishes through written documentation to Genentech's Counsel that such development efforts do not rely on any Genentech Confidential Information or on any methods or protocols that were derived, in whole or in part, from Genentech Confidential Information.    To the extent the Permanent Injunction the District Court enters differs from the language in this Section 2.1.1, this Section 2.1.1 shall automatically, and without further action required by either party, be amended to be identical to the Permanent Injunction.

2.1.2    If, before the Permanent Injunction is entered, a dispute arises or exists between the Parties regarding whether JHL's efforts to develop a Biosimilar of a Genentech Product or a Biosimilar of any other Genentech product rely on Genentech Confidential Information or on any methods or protocols that were derived, in whole or in part, from Genentech Confidential Information, then the parties shall raise the dispute with the Magistrate Judge pursuant to the process set forth in Section 10 below.

2.1.3    If, after the Permanent Injunction is entered, a dispute arises or exists between the Parties regarding whether JHL is disclosing and/or using any Genentech Confidential Information in any way in its business, including but not limited to whether JHL's efforts to develop a Biosimilar of a Genentech Product or a Biosimilar of any other Genentech product rely on Genentech Confidential Information or on any methods or protocols that were derived, in whole or in part, from Genentech Confidential Information, then the parties may bring the dispute before the District Court Judge for resolution, either through a motion by Genentech to enforce the Permanent Injunction or through a motion by JHL seeking a declaration or judicial determination that JHL is not violating the Permanent Injunction.

2.1.4    Except as expressly stated otherwise herein, in any dispute brought to determine whether JHL is disclosing and/or using any Genentech Confidential Information in any way in its business, including but not limited to whether JHL's efforts to develop a Biosimilar of a Genentech Product or a Biosimilar of any other Genentech product rely on Genentech Confidential Information or on any methods or protocols that were derived, in whole or in part, from Genentech Confidential Information, the burden to make such a showing shall be on Genentech.

2.2     Destruction of Cell Lines and Cell Banks.   JHL certifies that it has destroyed all cell lines, master cell banks, and working cell banks for each of the JHL Product Candidates.

2.3     Cessation of Use of Genentech Confidential Information. JHL represents that as of the Date of the MOU, JHL immediately ceased and desisted from disclosing and using any Genentech Confidential Information in any way in its business, including in its development of any Biosimilar or other biological products and in its contract manufacturing service, and that JHL will not in the future disclose or use any such Genentech Confidential Information.

2.3.1     Ten-Day Cure Period.   If Genentech believes that JHL is possessing, disclosing, or using any Genentech Confidential Information after the Effective Date of this Agreement, it will provide notice to JHL and JHL shall have ten (10) Business Days to investigate and to cure any continued possession, disclosure, or use.  If the parties cannot agree on whether JHL is continuing to possess, disclose, or use Genentech Confidential Information, pursuant to Section 10 they will bring the matter to the Magistrate Judge (for disagreements prior to entry of the Permanent Injunction) or to the District Court Judge (for disagreements after entry of the Permanent Injunction) for resolution.  Nothing in this Agreement, however, including this paragraph, shall in any way prevent or preclude Genentech from filing a motion with the District Court Judge to enforce the Preliminary Injunction currently in effect, or to enforce the Permanent Injunction herein contemplated once that Permanent Injunction goes into effect, once the 10-day cure period has elapsed.

2.4     None of the individuals listed as custodians on **Exhibit B** (together, the "**Custodians**" and each of them a "**Custodian**") may work on—and JHL will preclude them from working on—the development, manufacturing process, analytical methods/assays, regulatory submissions, or commercialization of any Biosimilar of a Genentech Product or any other Biosimilar of any other Genentech product at JHL for a period of three (3) years from the Date of the MOU.  To the extent JHL seeks an exception to the prohibition in the prior sentence for any Custodian, then the parties will meet and confer in good faith regarding any such Custodian on a case-by-case basis.  Any dispute regarding treatment of any such Custodian under this subsection will be decided by the Magistrate Judge pursuant to Section 10.  Genentech agrees to keep Exhibit B confidential and will not disclose it except (a) pursuant to the Protective Order in the Action; or (b) as necessary to enforce the terms of this Section 2.4.  To the extent the Permanent Injunction the District Court enters differs from the language in this Section 2.4, this Section 2.4 shall automatically, and without further action required by either party, be amended to be identical to the Permanent Injunction.

2.5     JHL will terminate employees with any significant role in the misconduct alleged in the Action, the facts discovered by the Special Committee and its counsel, and/or any other misconduct involving Genentech, its Affiliates, and/or Genentech Confidential Information, and will provide an explanation to Genentech of disciplinary actions taken against JHL personnel.  Prior to the date of this Agreement, JHL provided to Genentech (a) a list of all employees terminated or separated from JHL and a list of employees against whom JHL took disciplinary action (and a description of the disciplinary action taken), as a result of misconduct relating to Genentech Confidential Information, and (b) an explanation for each such action taken.  Based on the information known as of the date of execution of this Agreement,

Genentech does not believe that additional discipline or termination is required under this Section 2.5.

2.6     For a period of five (5) years from the Date of the MOU, JHL will include the following as part of its and its Affiliates' onboarding process(es) for any employee hired or consultant retained who formerly worked for Genentech or Roche: (i) JHL will instruct the employee/consultant to review his or her Proprietary Information Agreement with Genentech/Roche ("**PIA**"), and instruct the employee/consultant that he or she must continue to abide by the obligations set forth in the PIA; (ii) JHL will instruct the employee/consultant that failure to abide by his or her PIA will result in termination of the employment or business relationship with JHL; (iii) the employee/consultant will sign an acknowledgement affirming that he or she has reviewed his or her PIA and understands all of the foregoing; and (iv) JHL will make clear, orally and in writing, that the employee is not to bring any confidential information to JHL from Genentech, and will require the employee to certify the same.  To the extent the Permanent Injunction the District Court enters differs from the language in this Section 2.6, this Section 2.6 shall automatically, and without further action required by either party, be amended to be identical to the Permanent Injunction.

2.7     For a period of five (5) years from the Date of the MOU, JHL will provide company-wide trainings at least annually regarding the prohibition on acquisition and use of third-party confidential information, will provide such training to new JHL employees within thirty (30) days of beginning work at JHL, and will require all JHL employees to certify compliance with said training.  To the extent the Permanent Injunction the District Court enters differs from the language in this Section 2.7, this Section 2.7 shall automatically, and without further action required by either party, be amended to be identical to the Permanent Injunction.

2.8     <u>Permanent Injunction</u>.  On a mutually agreed-upon date no later than five (5) Business Days after the end of the Modification Period (as defined in Section 9 below), the Parties will file a joint proposed order in the Action imposing a permanent injunction ("the Permanent Injunction") in substantially the form attached hereto as **Exhibit C**, unless modified pursuant to Section 9 below.  In no event shall this Agreement be subject to rescission or termination based on Judge Alsup declining to enter a permanent injunction or entering a permanent injunction with terms different than those contained in Exhibit C.

3.     <u>DILIGENCE PERIOD</u>

3.1     Pursuant to Section IV of the MOU, the Parties began a 90-day Diligence Period on September 4, 2019, immediately following the conclusion of the Presentation.  The Diligence Period was automatically extended for an additional 60 days at Genentech's request and was further extended several times thereafter at the request of Genentech with the consent of JHL, until March 20, 2020.  Genentech did not request that the Diligence Period be extended further, and the Diligence Period expired on March 20, 2020.

3.2     The Diligence Period afforded Genentech's counsel and experts robust access to JHL's operations, documents, and personnel during the Diligence Period, to ensure that Genentech could gain a complete and accurate picture of the facts and assess the steps JHL has

taken to halt misconduct, remedy it, and prevent future misconduct.  As part of its obligations during the Diligence Period, JHL hereby represents that:

        3.2.1   in accordance with the terms of the MOU, JHL provided a full and complete explanation and accounting of how JHL searched for information that originated at Genentech;

        3.2.2   in accordance with the terms of the MOU, JHL returned to Genentech all documents originating at Genentech found during the search conducted at the direction of counsel, and that all copies of such information, including summaries and excerpts, were destroyed (except those retained by JHL's counsel pursuant to the Court's March 1, 2019 Order);

        3.2.3   if JHL or its counsel discovered any additional non-public Genentech documents in JHL's possession, JHL immediately returned them to Genentech, with an explanation of how and where the additional documents were discovered and a confirmation that all copies of such information, including summaries and excerpts, had been destroyed (except for those retained by JHL's counsel).

        3.3    JHL's counsel is allowed to retain copies of all documents and information collected from JHL until all appeals from the Action and the Criminal Action have been exhausted.

        3.4    None of the foregoing cooperation by JHL or JHL's counsel shall be deemed to have waived the protections of the attorney-client privilege or the work product doctrine.  The Parties agree that the cooperation provided pursuant to the MOU or this Agreement has preserved and preserves, to the maximum extent permitted by law, the protections of the attorney-client privilege and the work product doctrine.  Nothing in this Agreement, however, shall prohibit Genentech, subject to the Protective Order in the Action, from using or disclosing the information it obtains, learns, or receives during the Diligence Period, under the MOU, or under this Agreement.  If Genentech seeks to use or disclose any document or data obtained pursuant to the MOU or this Agreement in the Action, it will provide notice to JHL and JHL will produce the document or data in the Action pursuant to an existing discovery request or a new subpoena issued by Genentech, as appropriate.

    4.    <u>RELEASES</u>

        4.1    <u>Release by Genentech.</u>  Genentech, on behalf of itself and Genentech's Releasees, grants JHL and JHL's Releasees a release covering all claims arising out of or related to the allegations asserted in the Action and through the Effective Date of this Agreement; provided, however, that Genentech retains the right to proceed against JHL to enforce compliance with, or seek remedies for breaches of, any term of this Agreement, the Preliminary Injunction, and/or the Permanent Injunction.

        4.1.1   Genentech covenants not to seek, and will inform the Department of Justice that it is not seeking, from JHL or JHL's Releasees any further financial restitution or disgorgement beyond the monetary terms set forth in this Agreement.

4.1.2   Genentech and Genentech's Releasees are not releasing, and no release is given under this Agreement to, any individual or entity other than JHL and the JHL Releasees.   For the avoidance of doubt, and without limitation, Genentech and Genentech's Releases are not releasing, and no release is given under this Agreement, to the individual defendants named in the Action or in the Criminal Action. Nothing in this Agreement shall prevent Genentech from seeking different or additional monetary relief from the individual defendants named in the Action or in the Criminal Action, or from any other individual or entity other than JHL and the JHL Releasees.

4.1.3   To the extent that Chugai asserts any claims against JHL or any of the JHL Releasees arising out of or related to the allegations asserted in the Action and existing up to the Effective Date of this Agreement, Genentech will defend, indemnify, and hold harmless JHL and JHL Releasees for any losses incurred in connection with any such claim, including reasonable attorneys' fees and costs.

4.2   <u>Release by JHL</u>.   JHL, on behalf of itself and JHL's Releasees, grants Genentech and Genentech's Releasees a release covering all claims arising out of or related to the allegations asserted in the Action and through the Effective Date of this Agreement; provided, however, that JHL retains the right to proceed against Genentech to enforce compliance with, or seek remedies for breaches of, any term of this Agreement.

5.   <u>CERTIFICATION AND AUDIT RIGHTS</u>

5.1   To confirm compliance with the Permanent Injunction, for a period of two (2) years starting on October 4, 2019 (the "**Audit Period**"):

5.1.1   JHL shall certify on October 4, 2020 and October 4, 2021 to Genentech in writing that JHL neither possesses nor is using Genentech Confidential Information and that it is complying with the other terms of the Permanent Injunction.  If the Audit Period is extended for an additional year pursuant to section 5.2, then JHL shall give an additional such written certification on October 4, 2022.

5.1.2   JHL shall submit to onsite audits ("**Audits**") of its research and manufacturing facilities by Genentech's Counsel and Genentech's Experts (all on an attorneys'-eyes-only basis), up to twice per year during the Audit Period and with no requirement of prior notice by Genentech or its counsel.[1]

5.1.3   Each such Audit shall last no longer than two (2) Business Days, and must be consistent with JHL's obligations to maintain the confidentiality of Third Party materials and information that may be present.

5.1.4   Genentech's Counsel and Genentech's Experts shall be allowed to review information only to determine whether it contains Genentech Confidential Information, and for no other purpose.

---

[1] The language in sections 5.1.2, 5.1.3, and 5.1.4 is taken verbatim from Section D.1 of the MOU. Each Party's respective understanding of this language is the same on the date of execution of this Agreement as it was on the date of execution of the MOU, and each Party reserves all rights regarding these provisions.

8

5.1.5    Genentech's Experts shall be allowed to share the results of the Audits only on an attorneys'-eyes-only basis with Genentech's Counsel and Genentech's In-House Counsel.

5.2    If Genentech, through Genentech's Experts, Genentech's Counsel, and Genentech's In-House Counsel, concludes that JHL is using or disclosing Genentech Confidential Information, and JHL agrees, then the Audit Period shall be extended for an additional one (1) year, and Genentech may, following the 10-day cure period in Section 2.3.1, seek appropriate relief, including monetary and non-monetary sanctions, from the District Court Judge pursuant to Section 10.  If JHL disagrees with Genentech's conclusion, then either party may bring the dispute before the District Court Judge for resolution pursuant to Section 10, either through a motion by Genentech to enforce the Permanent Injunction and seek appropriate relief, including additional injunctive relief and monetary or non-monetary sanctions, or through a motion by JHL seeking a declaration or judicial determination that JHL is not violating the Permanent Injunction.

6.    RESTITUTION

6.1    JHL shall reimburse Genentech for Genentech's reasonable costs associated with investigating and litigating against JHL, including Genentech's cooperation with the DOJ's investigation and prosecution in the related Criminal Action, including attorneys' fees and costs, the value of in-house personnel's time spent on investigation, and costs associated with auditing compliance with and enforcing the settlement and Permanent Injunction contemplated herein, all in a total amount not to exceed ███Redacted███ (the "**Restitution Cap**").

6.1.1    Confidentiality.  The amount of the Restitution Cap will be kept confidential and may not be disclosed by either party, subject to the following exceptions:  either party may disclose the amount of the Restitution Cap (a) under appropriate confidentiality restrictions to that party's employees, consultants, or auditors, or to potential or actual investors or business partners of that party, as deemed reasonably necessary by the party making the disclosure, or (b) to DOJ or as otherwise required by law or by the rules of self-regulating entities (such as stock exchanges).

6.1.2    Documentation of Costs.  Genentech shall provide documentation of its costs to JHL sufficient to allow JHL to verify their reasonableness ("**Genentech's Cost Documentation**").  Any dispute about the disclosure of the Restitution Cap to a Third Party, the sufficiency of Genentech's Cost Documentation, or the reasonableness of the costs shall be brought to the Magistrate Judge (prior to entry of the Permanent Injunction) or the District Court Judge (after entry of the Permanent Injunction) pursuant to Section 10.

6.1.3    Time for Payment.  JHL shall reimburse Genentech for its documented costs, up to the Restitution Cap, within sixty (60) days of receipt of Genentech's Cost Documentation.  In the event of a dispute regarding any amount set forth in Genentech's Cost Documentation, JHL shall remit payment for all undisputed amounts within sixty (60) days of receipt of Genentech's Cost Documentation and shall remit any additional payment to Genentech within twenty (20) days of any ruling by the Magistrate Judge or District Court Judge resolving such a dispute.

9

7.    COOPERATION WITH LITIGATION

      7.1    JHL will, upon request from Genentech:

          7.1.1    Respond to Genentech's requests for production of documents in the Action for use in litigation against the individual defendants in the Action, and/or, if necessary, accept service of and promptly respond to subpoenas for documents for use in the Action;

          7.1.2    Produce for deposition in San Francisco, California pursuant to Fed. R. Civ. P. 30(b)(6) and/or for trial a witness to testify regarding JHL's knowledge of the individual defendants' actions; and

          7.1.3    Produce for deposition and/or for trial JHL employees, agents, or other individuals under JHL's control to testify regarding their knowledge of the individual defendants' actions at JHL, relating to JHL, and/or relating to the allegations in the Action.

8.    PRESS STATEMENTS

      8.1    Genentech and JHL each issued press statements regarding the MOU prior to execution of this Agreement.  Nothing herein shall preclude Genentech or JHL from issuing any additional press statements or releases regarding the Action, the MOU, or this Agreement.

9.    ESCROW AND MODIFICATIONS OF THIS AGREEMENT

      9.1    This Agreement shall be final and binding as of the Execution Date. However, this Agreement shall be deemed in escrow until the end of the Modification Period as described in this Section solely to allow any modifications pursuant to this Section.

      9.2    If, during the Diligence Period, Genentech learns about conduct by JHL or its employees (including but not limited to conduct relating to the JHL Product Candidates) of which conduct Genentech was previously unaware and that Genentech believes requires a material alteration of the remedies set forth in this Agreement or the agreed Permanent Injunction to protect Genentech's rights and interests, Genentech may propose a modification to this Agreement within 90 days of the conclusion of the Diligence Period (the "**Modification Period**").

      9.3    The Parties will meet and confer regarding any modification proposed by Genentech pursuant to this Section.  If the Parties cannot resolve the issue after meeting and conferring, Genentech may seek a modification of this Agreement from the Magistrate Judge pursuant to Section 10 only if it files a motion seeking such modification within the Modification Period.

      9.4    At the later of (i) the end of the Modification Period or (ii) the date the Magistrate Judge rules on any motion to modify this Agreement, this Agreement shall be deemed released from escrow, and shall be final according to its terms (as modified by the Magistrate Judge's rulings, as applicable).

10

10.    <u>DISPUTE RESOLUTION</u>

10.1    If, after the Effective Date but before the Permanent Injunction is entered by the Court, a dispute arises regarding (a) compliance with this Agreement, (b) the interpretation of this Agreement's terms; (c) any proposed modifications to this Agreement; and/or (d) the specific disputes mentioned in Sections 1.15, 2.1.2, 2.3.1, 2.4, 6.1.2, and 9.3 above, and the Parties cannot resolve the dispute after meeting and conferring, then the parties agree to seek an expedited ruling on the issue(s) from the Magistrate Judge.  Each party will be afforded the right to submit written briefing to the Magistrate Judge, which will be shared with opposing counsel, and, subject to the Court's agreement, to be heard in a hearing before the Magistrate Judge.   The Magistrate Judge's decision regarding the issue(s) will be final and binding, and each party waives any right it may have to appeal that decision.  Each party will bear its own costs and fees in any dispute brought to the Magistrate Judge under this Section, provided however that either party may seek reimbursement of fees and costs incurred in connection with any particular dispute if that party believes that the dispute was frivolous or raised in bad faith.  Any award of such fees and costs will remain in the Magistrate Judge's sole discretion.  If Genentech is not the prevailing party, the fees and costs it incurs in connection with the dispute shall not be reimbursable under Section 6.

10.2    Nothing in this Section or in this Agreement shall in any way prevent or preclude Genentech, following the cure period in Section 2.3.1, from filing a motion with the District Court Judge to enforce the Preliminary Injunction currently in effect, or to enforce the Permanent Injunction, including by seeking additional injunctive relief, monetary, or non-monetary sanctions.  Each party will bear its own costs and fees in any dispute brought to the District Court Judge under this Section, provided however that either party may seek reimbursement of fees and costs incurred in connection with any particular dispute if that party believes that the dispute was frivolous or raised in bad faith.  Any award of such fees and costs will remain in the District Court Judge's sole discretion.  If Genentech is not the prevailing party, the fees and costs it incurs in connection with the dispute shall not be reimbursable under Section 6.

10.3    Each Party consents to continuing jurisdiction in the Court and before the District Court Judge to enforce the terms of the Permanent Injunction once entered (as well as the Magistrate Judge, to resolve the disputes specifically noted herein).  JHL further agrees that outside counsel to JHL will accept service of all documents related to such litigation on behalf of JHL.

11.    <u>REPRESENTATIONS AND WARRANTIES.</u>

11.1    <u>Representations</u>.  Each Party hereby represents and warrants as of the Effective Date to the other Party, on behalf of itself and its Affiliates, that (a) the person executing this Agreement is authorized to execute this Agreement on behalf of the Party and, to the extent this Agreement affects their rights, its Affiliates; (b) this Agreement is legal and valid and the obligations binding upon such Party and its Affiliates are enforceable by their terms; and (c) the execution, delivery and performance of this Agreement does not conflict with any agreement, instrument, or understanding, oral or written, to which such Party may be bound, nor

11

violate any law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

    11.2 <u>Disclaimer of Warranties</u>. Except as explicitly set forth herein, neither party makes any warranty, written, oral, express or implied, with respect to this Agreement. ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, HEREBY ARE DISCLAIMED BY BOTH PARTIES.

    12. <u>GENERAL PROVISIONS.</u>

    12.1 <u>Notices</u>. All notices hereunder shall be delivered by email and confirmed by overnight delivery with a reputable overnight delivery service to the following address of the respective parties:

|  |  |
|---|---|
| If to Genentech: | Katherine Nolan-Stevaux<br>Litigation Group<br>Genentech, Inc.<br>1 DNA Way, MS 49<br>South San Francisco, CA 94080<br>nolanstk@gene.com |
| with a copy to: | Elliot R. Peters<br>Keker, Van Nest & Peters, LLP<br>633 Battery Street<br>San Francisco, CA 94111<br>epeters@keker.com |
| If to JHL: | James Huang<br>Executive Chairman<br>JHL Biotech, Inc.<br>5F., No.18, Sec. 2, Shengyi Rd.<br>Zhubei City, Hsinchu County 302<br>Taiwan<br>jzhuang@jhlbiotech.com |
| with a copy to: | Darin W. Snyder<br>O'Melveny & Myers LLP<br>2 Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>dsnyder@omm.com |

    Notices shall be effective on the day of receipt. A party may change its address listed above by notice to the other party given in accordance with this Section.

12.2    The Parties acknowledge that this Agreement sets forth the entire agreement and understanding of the parties and supersedes all prior written or oral agreements or understandings with respect to the subject matter hereof, including the MOU.

12.3    No modification of any of the terms of this Agreement, or any amendments thereto, shall be deemed to be valid unless in writing and signed by an authorized agent or representative of both parties hereto.

12.4    No course of dealing or usage of trade shall be used to modify the terms and conditions herein.

12.5    This Agreement shall be binding on each of JHL and Genentech and their respective successors and assigns. For clarity, Chime Biologics (Wuhan) Co., Ltd. is considered a successor and assign of JHL for all purposes under this Agreement.

12.6    None of the provisions of this Agreement shall be considered waived by any party hereto unless such waiver is agreed to, in writing, by authorized agents of such party. The failure of a party to insist upon strict conformance to any of the terms and conditions hereof, or failure or delay to exercise any rights provided herein, shall not be deemed a waiver of any rights of any party hereto.

12.7    Neither Party shall assign this Agreement or any part hereof or any interest herein (whether by operation of law or otherwise) unless the assignor provides written notice to the other party and the assignee(s) agrees to assume (i) all obligations of the assignor under this Agreement (if the assignment is of the whole Agreement) or (ii) those obligations that attach to a partial assignment.  No assignment shall relieve any party of responsibility for the performance of its obligations hereunder.  Any purported assignment in violation of this Section shall be void.

12.8    Any action brought regarding the validity, construction, or enforcement of this Agreement shall be governed in all respects by the laws of the State of California, without regard to the principles of conflicts of laws of California or any other jurisdiction.  The Court shall have exclusive jurisdiction over the Parties hereto in all such actions, and each Party irrevocably consents to the personal jurisdiction of the Court and agrees not to challenge venue or to seek to transfer any such action to any other forum.  If, for any reason, the Court decides it lacks jurisdiction over any such action, then the Parties agree that any such action shall be heard in the Superior Court of California, County of San Francisco, and each Party agrees not to challenge venue or to seek to transfer any such action to any other forum.

12.9    If any term or provision of this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other term or provision hereof, and this Agreement shall be interpreted and construed as if such term or provision, to the extent the same shall have been held to be invalid, illegal, or unenforceable, had never been contained herein.

12.10    The headings used in this Agreement are for convenience only and are not part of this Agreement.

12.11   Each Party participated in the drafting of this Agreement, represented by experienced counsel of its choosing, and the Parties agree that no provision of this Agreement will be construed against or interpreted to the disadvantage of either Party by virtue of that Party having drafted or being deemed to have drafted this Agreement or any of its provisions.

12.12   The Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Remainder of this page intentionally blank]*

IN WITNESS WHEREOF, the parties hereto have each caused this Agreement to be executed by their duly-authorized representatives effective as of the Effective Date.

GENENTECH, INC.

By: _Mary F. Riley_____

Name: ___Mary F. Riley_____

Title: ___VP, Litigation_____


JHL BIOTECH, INC.

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the parties hereto have each caused this Agreement to be executed by their duly-authorized representatives effective as of the Effective Date.

GENENTECH, INC.

By: _____

Name: _____

Title: _____


JHL BIOTECH, INC.

By: _____

Name: James Z Huang

Title: Executive Chairman and CEO

**EXHIBIT A**

**[MEMORANDUM OF UNDERSTANDING]**

CONFIDENTIAL

*Genentech, Inc. v. JHL Biotech, Inc, et al.*, No. 3:18-cv-06582 (N.D. Cal.)

Memorandum of Understanding

August 7, 2019

## I.    Declarations

A.    Plaintiff Genentech Inc. ("Genentech") and Defendant JHL Biotech, Inc. ("JHL") (together, the "parties") enter this Memorandum of Understanding ("MOU") with the intent to settle the claims that Genentech has brought against JHL in *Genentech, Inc. v. JHL Biotech, Inc. et al.*, No. 3:18-cv-06582 (N.D. Cal.) (the "Action"), which is currently pending before Judge William Alsup in the Northern District of California (the "Court").

B.    Genentech is and has been represented by the undersigned counsel at Keker, Van Nest & Peters, LLP ("KVP"). JHL is and has been represented by the undersigned counsel at O'Melveny & Myers LLP ("OMM").

C.    JHL's Board of Directors formed a Special Committee to investigate the facts at issue in the Action. The Special Committee was represented by counsel at Ropes & Gray, which conducted the investigation.

D.    The parties intend this MOU, upon execution, to be fully binding upon and enforceable against each party, and their respective parents, subsidiaries, affiliates, successors-in-interest, assignees, officers, directors, employees, and agents, and any subsequent acquirer of either party, with the exception of Chugai Pharmaceuticals Co., Ltd. ("Chugai"), which is expressly exempted from the scope of affiliates and related entities of Genentech and from this MOU, and which has no known claims against JHL or any known connection with the subject matter at issue in the Action or referenced in this MOU.

E.    This MOU is the result of good-faith negotiations between the parties' respective counsel. The undersigned counsel are fully authorized to enter into the agreement by and on behalf of the party each represents.

## II.    Pre-Settlement Obligations

A.    **Cessation of Development**. Upon signing this MOU, JHL will immediately cease and abandon development and/or clinical trials (consistent with patient safety and compliance with applicable regulations) of the following product candidates: JHL 1101 (rituximab), JHL 1921 and JHL 1922 (dornase alfa), JHL 1149 (bevacizumab), and JHL 1188 (trastuzumab) (collectively, "Product Candidates").

B.    **Cessation of Use of Genentech Confidential Information**. Upon signing this MOU, JHL will immediately cease and desist from disclosing and using any confidential Genentech information in any way in its business, including in its

1

CONFIDENTIAL

development of biosimilars or other biological products, and in its contract manufacturing services. If Genentech believes that JHL is disclosing or using any confidential Genentech information after this MOU is executed, it will provide notice to JHL and JHL shall have 10 business days to investigate and to cure any continued disclosure or use. If the parties cannot agree on whether JHL is continuing to disclose or use confidential Genentech information, pursuant to Section V they will bring the matter to Magistrate Judge Kim (for disagreements prior to entry of the Permanent Injunction) or to Judge Alsup (for disagreements after entry of the Permanent Injunction) for resolution. Nothing in this MOU, however, including this paragraph, shall in any way prevent or preclude Genentech from filing a motion with Judge Alsup to enforce the Preliminary Injunction currently in effect, or to enforce the Permanent Injunction herein contemplated once that Permanent Injunction goes into effect, once the 10-day cure period has elapsed.

C. **Presentation**. Upon signing this MOU, JHL's counsel, and to the extent necessary, the Special Committee's counsel at Ropes & Gray, will promptly provide a presentation (the "Presentation") to Genentech's counsel and in-house counsel for Genentech—Katherine Nolan-Stevaux, Greg Richardson, and Mary Riley (collectively, "In-House Counsel")—consisting of materially the same oral report that was presented to JHL's Board/the Special Committee, and any further material information acquired or discovered since that original report was made.

1. **Privilege.** The Presentation will be made pursuant to Federal Rule of Civil Procedure 408, and will not be deemed a waiver of the attorney-client privilege or the work-product doctrine.

2. **Follow-up.** JHL's counsel will respond to all reasonable follow-up questions from Genentech regarding the Presentation, either orally or in writing.

III. **Escrowed Settlement Agreement ("ESA")**

A. **Execution of ESA.**

1. The parties will work in good faith to draft and agree upon an ESA that embodies the terms and obligations set forth in this MOU and that also contains other customary provisions not inconsistent with this MOU.

2. The parties will endeavor to execute the ESA within thirty days following the Presentation to Genentech's counsel as described in Section II.C.

3. Regardless of whether the ESA is executed within thirty days following the Presentation to Genentech's counsel as described in Section II.C, this MOU shall bind the parties unless and until a superseding ESA is executed. Under no circumstances shall any delay in drafting or executing the ESA cause a delay in commencing or implementing the Diligence

CONFIDENTIAL

Period set forth in Section IV below, which will commence immediately following the Presentation.

B.    **Permanent Injunction.**  JHL will stipulate to entry of an order in the Action setting forth a permanent injunction with the following components ("the Permanent Injunction") to be entered after the completion of the Diligence Period:

1.    JHL is enjoined from using any confidential Genentech information, including any documents or information derived, in whole or in part, from confidential Genentech information, in any way in JHL's business, including in its development of biosimilars or other biologic products, and in its contract manufacturing services.

2.    JHL is enjoined from disclosing to any third party any confidential Genentech information, including any documents or information derived, in whole or in part, from confidential Genentech information.

3.    JHL will cease and abandon current development and/or clinical trials (consistent with patient safety and compliance with applicable regulations) of the Product Candidates.

4.    Nothing in this agreement prevents JHL from seeking to develop a biosimilar of rituximab, dornase alfa, bevacizumab, or trastuzumab or a biosimilar of any other Genentech product in the future, provided that those development efforts, whether for one or more of the Product Candidates or for biosimilars of any other Genentech medicine or medicines, do not rely in whole or in part on any confidential Genentech information or on any methods or protocols that were derived in whole or in part from Genentech confidential information. JHL may not commence developing a biosimilar of rituximab, dornase alfa, bevacizumab, or trastuzumab unless JHL establishes that such development efforts do not rely on any confidential Genentech information or on any methods or protocols that were derived, in whole or in part, from Genentech confidential information.

a.    If, before the Permanent Injunction is entered, a dispute arises or exists between the parties regarding whether JHL's efforts to develop a biosimilar to any Genentech product rely on Genentech confidential information or on any methods or protocols that were derived, in whole or in part, from Genentech confidential information, then the parties shall raise the dispute with Magistrate Judge Kim pursuant to the process set forth in Section IV.D.4 and Section V below.

b.    If, after the Permanent Injunction is entered, a dispute arises or exists between the Parties regarding whether JHL is disclosing and/or using any confidential Genentech information in any way in

3

CONFIDENTIAL

its business, including but not limited to whether JHL's efforts to develop a biosimilar to any Genentech product rely on Genentech confidential information or on any methods or protocols that were derived, in whole or in part, from Genentech confidential information, then the parties may bring the dispute before Judge Alsup for resolution, either through a motion by Genentech to enforce the Permanent Injunction; or through a motion by JHL seeking a declaration or judicial determination that JHL is not violating the Permanent Injunction.

Except as expressly stated otherwise herein, in any dispute brought to determine whether JHL is disclosing and/or using any confidential Genentech information in any way in its business, including but not limited to whether JHL's efforts to develop a biosimilar to any Genentech product rely on Genentech confidential information or on any methods or protocols that were derived, in whole or in part, from Genentech confidential information, the burden to make such a showing shall be on Genentech.

5.  None of the individuals listed as custodians for any of the Genentech documents returned by JHL to Genentech ("Custodians," listed by name on Attachment A) may work on the development, manufacturing process, analytical methods/assays, regulatory submissions, or commercialization of any biosimilar to any Genentech medicine for a period of three (3) years from the signing of this MOU. To the extent JHL seeks an exception to the prohibition in the prior sentence for any Custodian, then the parties will meet and confer in good faith regarding any such Custodian on a case-by-case basis. Any dispute regarding treatment of any such Custodian under this subsection will be decided by Magistrate Judge Kim pursuant to Section V.

6.  For a period of five (5) years, JHL must include the following as part of its onboarding process for any employee that it hires or consultant that it retains who formerly worked for Genentech or Roche: (1) JHL must instruct the employee/consultant to review his or her Proprietary Information Agreement with Genentech/Roche ("PIA"), and instruct the employee/consultant that he or she must continue to abide by the obligations set forth in the PIA; (2) JHL must instruct the employee/consultant that failure to abide by his or her PIA will result in termination of the employment or business relationship with JHL; (3) the employee/consultant must sign an acknowledgement affirming that he or she has reviewed his or her PIA and understands all of the foregoing; and (4) JHL must make clear, orally and in writing, that the employee is not to bring any confidential information to JHL from Genentech, and must certify the same.

CONFIDENTIAL

7.    For a period of five (5) years, JHL must provide company-wide trainings at least annually regarding the prohibition on acquisition and use of third-party confidential information, and all JHL employees shall certify compliance with said training. In addition, new JHL employees shall receive such training within thirty (30) days of beginning work at JHL.

C.    **Mutual Release.** In the ESA and in this MOU, Genentech, on behalf of itself and its Releasees, grants JHL Releasees a release covering all claims arising out of or related to the allegations asserted in the Action and through the date of the MOU. No release is or will be made of or to any individual or entity other than JHL Releasees, including the individual defendants named in the Action or in the related criminal action, *United States v. Lam et al.*, No. 3:18-cr-00527-WHA (N.D. Cal.) ("Criminal Action"), and Genentech retains the right to proceed against JHL to enforce compliance with, or seek remedies for breaches of, any term of the MOU, ESA, the Preliminary Injunction, and/or the Permanent Injunction. Genentech agrees not to seek and will inform the Department of Justice that it is not seeking from JHL Releasees any further financial restitution or disgorgement beyond the monetary terms set forth in the MOU or ESA. Nothing in the MOU or ESA shall prevent Genentech from seeking different or additional monetary relief from the individual defendants named in this Action or in the Criminal Action, or from any other individual or entity other than JHL Releasees. In the ESA and in this MOU, JHL, on behalf of itself and its Releasees, grants Genentech Releasees a release covering all claims arising out of or related to the allegations asserted in the Action and through the date of the MOU. The term "Releasees" in this Section III.C shall refer to JHL and Genentech, respectively, and their past and present, direct and indirect, parents, subsidiaries, and affiliates. JHL's Releasees consist of JHL Biotech, Inc., JHL Biotech Australia PTY Ltd; JHL Biotech, Inc., Taiwan; JHL Biotech (Hong Kong) Limited; JHL Biotech USA, Inc.; Xikang (Wuhan) Biopharmaceutical Co., Ltd.; and Jianheli (Wuhan) Biopharmaceutical Co., Ltd. As reflected in Section I.D., Chugai is not a Genentech Releasee, nor is it receiving a release from JHL under this MOU or the ESA.

1.    **Indemnification regarding Chugai**. To the extent that Chugai asserts any claims against any of the JHL Releasees arising out of or related to the allegations asserted in the Action and existing up to the date of this MOU, Genentech will defend, indemnify, and hold harmless JHL Releasees for any losses incurred in connection with any such claim, including reasonable attorneys' fees and costs.

D.    **Audit Rights.** To confirm compliance with the Permanent Injunction, for a period of two (2) years after the date specified in Section III.A.2:

1.    JHL will submit to onsite audits ("Audits") of its research and manufacturing facilities by Genentech's counsel and experts retained by Genentech's counsel, up to twice per year and with no requirement of prior notice by Genentech or its counsel.

CONFIDENTIAL

2.   Each such Audit shall last no longer than two (2) business days, must be consistent with JHL's obligations to maintain the confidentiality of third-party materials and information that may be present, and the counsel/experts shall be allowed to review information only to determine whether it contains Genentech confidential information, and for no other purpose.

3.   The experts shall be allowed to share the results of the Audits only on an attorneys-eyes-only basis with counsel for Genentech, including In-House Counsel.

4.   If the experts and Genentech's counsel, including its In-House Counsel, conclude that JHL is using or disclosing Genentech confidential information, and JHL agrees, then the Audit period shall be extended for an additional one (1) year, and Genentech may, following the 10-day cure period in II.B, seek appropriate relief, including monetary and non-monetary sanctions, from Judge Alsup. If JHL disagrees with the expert's conclusion, then either party may bring the dispute before Judge Alsup for resolution, either through a motion by Genentech to enforce the Permanent Injunction and seek appropriate relief, including additional injunctive relief and monetary or non-monetary sanctions; or through a motion by JHL seeking a declaration or judicial determination that JHL is not violating the Permanent Injunction.

5.   JHL will certify annually that it neither possesses nor is using Genentech confidential information and that it is complying with the other terms of the Permanent Injunction.

E.   **Restitution.** JHL shall reimburse Genentech for its reasonable costs associated with investigating and litigating against JHL, including Genentech's cooperation with the DOJ's investigation and prosecution in the related Criminal Action, including attorneys' fees and costs, the value of in-house personnel's time spent on investigation, and costs associated with auditing compliance with and enforcing the settlement and permanent injunction contemplated herein, all in a total amount not to exceed Redacted ("Restitution Cap").

1.   **Confidentiality**. The amount of the Restitution Cap will be kept confidential and may not be disclosed by either party, subject to the following exceptions: either party may disclose the amount of the Restitution Cap (a) under appropriate confidentiality restrictions to that party's employees, consultants, or auditors, or to potential or actual investors or business partners of that party, as deemed reasonably necessary by the party making the disclosure, or (b) to the DOJ or as otherwise required by law or by the rules of self-regulating entities (such as stock exchanges).

6

CONFIDENTIAL

2.    **Documentation of Costs**. Genentech shall provide documentation of its costs to JHL sufficient to allow JHL to verify their reasonableness. Any dispute about the disclosure of the Restitution Cap to a third party, the sufficiency of the documentation of costs, or the reasonableness of the costs shall be brought to Magistrate Judge Kim (prior to entry of the Permanent Injunction) or Judge Alsup (after entry of the Permanent Injunction) pursuant to Section V.

F.    **Cooperation with Litigation.** Upon request from Genentech, JHL will:

1.    Respond to Genentech's requests for production of documents in the Action, for use in litigation against the individual defendants in the Action, or, if necessary, accept service of and promptly respond to subpoenas for documents for use in the Action;

2.    Produce for deposition in San Francisco, California pursuant to Fed. R. Civ. P. 30(b)(6) and/or for trial a witness to testify regarding JHL's knowledge of the individual defendants' actions; and

3.    Produce for deposition and/or for trial JHL employees, agents, or other individuals under JHL's control to testify regarding their knowledge of the individual defendants' actions at JHL, relating to JHL, and/or relating to the allegations in the Action.

G.    **Other Relief**

1.    **Employee Discipline.** JHL will terminate employees with any significant role in the misconduct, and provide an explanation to Genentech of disciplinary actions taken against JHL personnel.

2.    **Continuing Jurisdiction.** The Parties will consent to continuing jurisdiction by N.D. Cal. (Judge Alsup) to enforce the terms of the Permanent Injunction (as well as Magistrate Judge Kim, to resolve the disputes specifically noted herein). JHL further agrees that undersigned outside counsel to JHL (or successor counsel as may be retained) will accept service of all documents related to such litigation on behalf of JHL.

3.    **Press Statements.** The parties shall agree upon a joint press release to be issued upon the execution of the ESA. Nothing herein shall preclude Genentech or JHL from issuing its own separate press release(s) regarding the Action or the ESA.

H.    **Modification of and Disputes Regarding ESA.**

1.    If Genentech learns during the Diligence Period about misconduct of which it was previously unaware and believes a material alteration of the remedies set forth in this MOU, the ESA, or the agreed Permanent Injunction is required to protect Genentech's rights and interests

7

CONFIDENTIAL

(including but not limited to the enumerated Product Candidates), it may propose a modification within 90 days of the conclusion of the Diligence Period (the "Modification Period").

2.    If the parties cannot resolve the issue after meeting and conferring, Genentech may seek a modification of the ESA from Magistrate Judge Kim pursuant to Section V.

3.    At the later of (i) the end of the Modification Period or (ii) the date Magistrate Judge Kim rules on any motion to modify the ESA, the ESA shall be released from escrow.

## IV.    Diligence Period

A.    **Length.**  Immediately following the Presentation, the parties will begin a 90-day Diligence Period. Notwithstanding the foregoing, as soon as practicable after execution of the MOU JHL will begin complying with Sections IV.D.5 and IV.D.6 below.

1.    **Extensions.**  The Diligence Period can be automatically extended for up to an additional 60 days upon Genentech's request. Any further extensions will be subject to negotiation, but JHL's acquiescence to requests for further extensions of the Diligence Period will not be unreasonably withheld.

B.    **Purpose.**  The purpose of the Diligence Period will be to afford Genentech's counsel and experts robust access to JHL's operations, documents, and personnel, to ensure that Genentech can gain a complete and accurate picture of the facts, and can assess the steps JHL has taken to halt misconduct, remedy it, and prevent future misconduct.

C.    **Partial Stay of Discovery.**  All discovery between JHL and Genentech in the Action will be stayed during the Diligence Period. Neither party will be required to respond to outstanding discovery requests or supplement any discovery responses, and neither party will propound additional discovery requests during the Diligence Period.  Third-party discovery may continue unabated.

D.    **Cooperation with Investigation.**  JHL will fully cooperate with Genentech's investigation into trade secret misappropriation by taking the following actions and any reasonable requested follow-up:

1.    Provide a full and complete explanation and accounting of how JHL searched for information that originated at Genentech.

2.    Certify that all documents originating at Genentech found during the search conducted at the direction of counsel have been returned to Genentech, and that all copies of such information, including summaries and excerpts, have been destroyed (except those retained by JHL's counsel

CONFIDENTIAL

pursuant to the Court's March 1, 2019 Order). If JHL discovers any additional Genentech documents in its possession, it will immediately return them to Genentech, with an explanation as to how and where the additional documents were discovered and a confirmation that all copies of such information, including summaries and excerpts, have been destroyed (except for copies retained by JHL's counsel). JHL's counsel must maintain copies of all documents and information collected from JHL until all appeals from this Action and the Criminal Action have been exhausted.

3. Allow access to counsel for Genentech on an attorneys-eyes-only basis (including the In-House Counsel), and Genentech's experts, for each of JHL 1101, JHL 1921, JHL 1922, JHL 1149, JHL 1188, JHL 1199, and JHL 1211 the following: all regulatory submissions and correspondence with regulators in any jurisdiction; all technical reports, technical reference documents, and technology transfer documents; information regarding cell lines and cell banks; copies of all lab notebooks; and read-only access to a complete, forensically-sound copy of JHL's Document Management & Protection (DMP) system used to store JHL methods, protocols and policies. JHL's production should include any previous drafts and versions of any of these documents.

4. If Genentech in good faith concludes that any JHL method, protocol, or policy reflects, contains, or derives from Genentech trade secret information, then JHL must either (a) show that such methods, protocols and policies were independently developed as evidenced through production of contemporaneous written records and communications or (b) abandon use of that method, protocol, or policy. Any disagreements regarding whether any JHL method, protocol, or policy reflects, contains, or derives from Genentech trade secret information will be submitted to Magistrate Judge Kim pursuant to Section V.

5. Promptly produce or make available to Genentech to the extent such material is in JHL's possession, custody or control:

   a. All emails, calendar entries, phone records, and other records referenced in the logs JHL produced to Genentech on May 6, 2019; and

   b. All documents JHL has provided or provides to the U.S. Department of Justice, unless the Department of Justice objects to providing such documents to Genentech.

6. Provide access to the litigation database/document repository described in Darin Snyder's email of June 19, 2019 (the "Database"), subject to further clarification of the terms of access discussed by counsel for the parties. JHL shall supplement the Database with non-privileged emails relating to

CONFIDENTIAL

JHL in James Huang's email inbox and, to the extent applicable, his JHL-issued computer(s) and mobile device(s). JHL shall further supplement the Database with additional documents and data to the extent available, upon reasonable request from Genentech. Any disputes regarding Genentech's request for additional documents and data, or any disputes relating to JHL's privilege designations, shall be resolved by Magistrate Judge Kim pursuant to Section V.

7.    Respond to reasonable inquiries from Genentech, orally or in writing, regarding JHL's cooperation with the Diligence Period, and the facts obtained or shared during the Diligence Period.

8.    Allow Genentech's counsel, including In-House Counsel, and experts to conduct interviews of JHL employees as may be reasonably necessary to determine the extent of JHL's acquisition and use of Genentech information. JHL shall bear the expense of any necessary translation service.

9.    Allow Genentech's counsel, including In-House Counsel, and experts, on an attorneys-eyes-only basis, to inspect/audit all JHL manufacturing and research facilities and labs to the full extent consistent with JHL's obligations to maintain the confidentiality of third-party materials and information that may be present at such facilities and labs.

10.   Allow forensic expert(s) hired by Genentech's counsel to have full (read-only) access to JHL's systems and complete forensic images of any computers or electronic storage devices issued by JHL to any of the Custodians listed on Attachment A, all to the full extent (a) such computers and devices still exist, (b) such access is consistent with JHL's obligations to maintain the confidentiality of third-party materials and information that may be present on such systems, computers, or devices, and (c) such access is allowed under Taiwanese or Chinese law, as applicable.

11.   Provide last known address and contact information for departed JHL personnel, to the extent allowed under Taiwanese or Chinese law, as applicable.

12.   Provide a full and complete accounting of any third parties beyond JHL to whom JHL may have disclosed Genentech documents containing confidential, proprietary, and trade secret information.

E.    **Cell Lines and Cell Banks**. Within the Diligence Period, JHL shall destroy all cell lines, master cell banks, and working cell banks for each of the Product Candidates, and will provide Genentech written certification that it has done so.

F.    **Privilege**. None of the foregoing cooperation by JHL, JHL's counsel, or the Special Committee's counsel shall be deemed to waive the protections of the

CONFIDENTIAL

attorney-client privilege or the work product doctrine. All such cooperation shall be pursuant to an agreement between the parties that preserves, to the maximum extent permitted by law, the protections of the attorney-client privilege and the work product doctrine. Nothing herein, however, shall prohibit Genentech, subject to the Protective Order in the Action, from using or disclosing in the Action the information it obtains, learns, or receives during the Diligence Period, under this MOU, or under the ESA. If Genentech seeks to use any document or data obtained pursuant to this agreement or the ESA in the Action, it will provide notice to JHL so that JHL can produce the document or data in the litigation pursuant to the existing discovery request or a subpoena.

**V.    Dispute Resolution.**

A.    If, after this MOU is executed but before the Permanent Injunction is entered by the Court, a dispute arises regarding (a) compliance with this MOU, (b) the interpretation of the MOU's terms; (c) any proposed modifications to the MOU or ESA; and/or (d) the specific disputes mentioned in Sections II.B, III.B.4, III.B.5, III.E, III.H.2, IV.D.4, and IV.D.6 above, and the Parties cannot resolve the dispute after meeting and conferring, then the parties agree to seek an expedited ruling on the issue(s) from Magistrate Judge Sallie Kim. Each party will be afforded the right to submit written briefing to Magistrate Judge Kim, which will be shared with opposing counsel, and, subject to Magistrate Judge Kim's agreement, to be heard in a hearing before Magistrate Judge Kim. Magistrate Judge Kim's decision regarding the issue will be final and binding, and each party waives any right it may have to appeal that decision. Each party will bear its own costs and fees in any dispute brought to Magistrate Judge Kim under this section, provided, however, that either party may seek reimbursement of fees and costs incurred in connection with any particular dispute only if the party in good faith believes that the dispute was frivolous or raised in bad faith. Any award of such fees and costs will remain in Magistrate Judge Kim's sole discretion. If Genentech is not the prevailing party, the fees and costs it incurs in connection with the dispute shall not be reimbursable under Section III.E.

B.    Nothing in this Section or in this MOU shall in any way prevent or preclude Genentech, following the cure period in Section II.B, from filing a motion with Judge Alsup to enforce the Preliminary Injunction currently in effect, or to enforce the Permanent Injunction, including by seeking additional injunctive relief, monetary, or non-monetary sanctions. Each party will bear its own costs and fees in any dispute brought to Judge Alsup under this section, provided, however, that either party may seek reimbursement of fees and costs incurred in connection with any particular dispute only if the party in good faith believes that the dispute was frivolous or raised in bad faith. Any award of such fees and costs will remain in Judge Alsup's sole discretion. If Genentech is not the prevailing party, the fees and costs it incurs in connection with the dispute shall not be reimbursable under Section III.E.

**VI.    Confidentiality Period**

CONFIDENTIAL

A.     The contents and existence of this MOU shall remain confidential for a period of seven days following its execution (the "Confidentiality Period"), subject to the following exceptions: either party may disclose the contents and existence of the MOU during the Confidentiality Period (a) under appropriate confidentiality restrictions to that party's employees, consultants, or auditors, or to potential or actual investors or business partners of that party, as deemed reasonably necessary by the party making the disclosure; (b) to Magistrate Judge Kim or the Court, if agreed upon by the parties; or (c) to the DOJ or as otherwise required by law or by the rules of self-regulating entities (such as stock exchanges).


Date: August 7, 2019
Counsel for Genentech, Inc.


Date: August 2, 2019
Counsel for JHL Biotech, Inc.


On behalf of Genentech, Inc.
By: MARY RILEY
Title: VP, LITIGATION
Date: August 12, 2019


On behalf of JHL Biotech, Inc.
By:
Title:
Date: August __, 2019

**EXHIBIT C**

<u>Consent Judgment</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| GENENTECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 3:18-cv-06582-WHA |
| | ) | |
| JHL BIOTECH, INC., XANTHE LAM, | ) | |
| an individual, ALLEN LAM, an | ) | |
| individual, JAMES QUACH, an | ) | |
| individual, RACHO JORDANOV, an | ) | |
| individual, ROSE LIN, an individual, | ) | |
| JOHN CHAN, an individual, and DOES | ) | |
| 1-50, | ) | |
| Defendants. | ) | |

**STIPULATION FOR ENTRY OF CONSENT JUDGMENT AND**
**<u>PERMANENT INJUNCTION AS TO JHL BIOTECH, INC.</u>**

      Plaintiff Genentech, Inc. and Defendant JHL Biotech, Inc. having met, conferred,

and agreed to resolve their dispute upon execution of a Memorandum of Understanding,

subsequently superseded by a Settlement Agreement, hereby stipulate to entry of the executed

Consent Judgment and Permanent Injunction submitted herewith, subject to the Court's

approval.

                    KEKER, VAN NEST & PETERS LLP

                    _____

                    ELLIOT R. PETERS

                    *Attorney for Plaintiff*
                    *Genentech, Inc.*

O'MELVENY & MYERS LLP

_____

*Attorney for Defendant*
*JHL Biotech, Inc.*

Dated:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENENTECH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 3:18-cv-06582-WHA |
| ) | |
| JHL BIOTECH, INC., XANTHE LAM, ) | |
| an individual, ALLEN LAM, an ) | |
| individual, JAMES QUACH, an ) | |
| individual, RACHO JORDANOV, an ) | |
| individual, ROSE LIN, an individual, ) | |
| JOHN CHAN, an individual, and DOES ) | |
| 1-50, ) | |
| Defendants. ) | |

### [PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION AS TO JHL

This matter is before the Court on the unopposed motion of Plaintiff Genentech, Inc. ("Genentech") and Defendant JHL Biotech, Inc. ("JHL").

**WHEREAS**, in this Action, Genentech alleges that JHL has misappropriated Genentech's confidential, proprietary, and/or trade secret information;

**WHEREAS,** Genentech and JHL have agreed to settle the Litigation as set forth in the Memorandum of Understanding and the superseding Settlement Agreement ("Settlement Agreement"), of which this [Proposed] Consent Judgment and Permanent Injunction as to JHL is a part;

**WHEREAS**, the capitalized terms in this [Proposed] Consent Judgment and Permanent Injunction are defined in the Settlement Agreement, which has been filed with the Court (except for Attachment A to Exhibit A and Exhibits B and D thereto which, for privacy reasons, have not been filed with the Court);

WHEREAS, settlement of this Action allows Genentech and JHL to avoid the substantial uncertainty and risks involved with prolonged litigation;

WHEREAS, settlement of this Action permits Genentech and JHL to save litigation costs, as well as adhere to the judicially recognized mandate that encourages the settlement of litigation whenever possible;

WHEREAS, settlement of the Action serves the public interest by saving judicial resources and avoiding the risks to each of Genentech and JHL associated with litigation;

WHEREAS, Genentech and JHL each consent to personal jurisdiction in the Northern District of California for purposes of enforcing the Settlement Agreement on the terms set forth in the Settlement Agreement; and

**GOOD CAUSE HAVING BEEN SHOWN**,

**IT IS HEREBY ORDERED, DECREED, and ADJUDGED as follows:**

1.      JHL and its affiliates are permanently enjoined as of the date hereof from using any Genentech Confidential Information, including any documents or information derived in whole or in part from Genentech Confidential Information, in any way in JHL's business, including in its development of Biosimilars or other biologic products, and in its contract manufacturing services.

2.      JHL and its affiliates are permanently enjoined as of the date hereof from disclosing to any third party any Genentech Confidential Information, including any documents or information derived in whole or in part from Genentech Confidential Information.

3.      JHL and its affiliates are enjoined from development and/or clinical trials (consistent with patient safety and compliance with regulations applicable to the cessation of ongoing clinical trials) of the following product candidates: JHL 1101 (rituximab), JHL 1921 and

JHL 1922 (dornase alfa), JHL 1149 (bevacizumab), and JHL 1188 (trastuzumab) (collectively, "JHL Product Candidates").   Nothing in this Order prevents JHL from seeking to develop a Biosimilar of any Genentech product in the future, provided that those development efforts, whether for one or more of the JHL Product Candidates or for a Biosimilar of any other Genentech product, do not rely in whole or in part on any Genentech Confidential Information or on any methods or protocols that were derived in whole or in part from Genentech Confidential Information.   JHL may not commence developing a Biosimilar of a Genentech Product unless JHL establishes through written documentation that such development efforts do not rely on any Genentech Confidential Information or on any methods or protocols that were derived, in whole or in part, from Genentech Confidential Information.

4.    The individuals listed on Exhibit B of the Settlement Agreement (which, for privacy reasons, is not being made part of the public Court record) are enjoined from working, and JHL is enjoined from permitting them to work, on the development, manufacturing process, analytical methods/assays, regulatory submissions, or commercialization of any Biosimilar to any Genentech product at JHL prior to August 7, 2022.  To the extent JHL seeks an exception to the prohibition in this paragraph for any individual, Genentech and JHL will meet and confer in good faith.   Any dispute regarding treatment of any such individual is hereby referred to the Magistrate Judge for a final and binding decision.

5.    For a period of five (5) years from the date of this Order, JHL must include the following as part of its and its affiliates' onboarding process(es) for any employee that it hires or consultant that it retains who formerly worked for Genentech, Roche Holdings Ltd, or any of its past and present, direct and indirect, parents, subsidiaries, and affiliates (collectively, "Roche"), the list of which are attached hereto as Exhibit 1: (1) JHL and its

3

affiliates must instruct the employee/consultant to review his or her Proprietary Information Agreement with Genentech/Roche ("PIA"), and instruct the employee/consultant that he or she must continue to abide by the obligations set forth in the PIA; (2) JHL and its affiliates must instruct the employee/consultant that failure to abide by his or her PIA will result in termination of the employment or business relationship with JHL; (3) the employee/consultant must sign an acknowledgement affirming that he or she has reviewed his or her PIA and understands all of the foregoing; and (4) JHL and its affiliates must make clear, orally and in writing, that the employee is not to bring any confidential information to JHL or its affiliates from Genentech, and must certify the same.

6.     For a period of five (5) years from the date of this Order, JHL must, and must ensure that its Affiliates also, provide company-wide trainings at least annually regarding the prohibition on acquisition and use of third-party confidential information, and all their respective employees shall certify compliance with said training.  In addition, new employees of JHL or any of its affiliates shall receive such training within thirty (30) days of beginning work at JHL or at the respective affiliate.

7.     Except as provided in the Settlement Agreement, each party shall bear its own costs and attorneys' fees.

8.     This Permanent Injunction supersedes and extinguishes the order granting provisional relief with respect to JHL (the "Preliminary Injunction") entered by the Court in this Action on March 1, 2019 (ECF No. 128 at 36–39), and extinguishes the corresponding requirement for Genentech to post and maintain a bond (*see id.* at 36).

9.     This Action is dismissed with prejudice as to JHL.  This Court shall retain jurisdiction over Genentech and JHL for the purpose of enforcing the terms of this Consent

Judgment and Permanent Injunction and over any disputes regarding the interpretation or enforcement of the Settlement Agreement.

**IT IS SO ORDERED, DECREED AND ADJUDGED** this ___ day of ____, 2020 by:


_____
The Honorable William Alsup
United States District Judge

Agreed to:

KEKER, VAN NEST & PETERS LLP                O'MELVENY & MYERS LLP

_____             _____
ELLIOT R. PETERS                            DARIN W. SNYDER

*Attorneys for Plaintiff*                    *Attorneys for Defendant*
*Genentech, Inc.*                            *JHL Biotech, Inc.*

## AMENDMENT TO ESCROWED SETTLEMENT AGREEMENT

THIS AMENDMENT TO ESCROWED SETTLEMENT AGREEMENT (the "**Amendment**"), dated August 24, 2020, is entered into between Genentech, Inc. ("**Genentech**"), a corporation organized under the laws of Delaware, and JHL Biotech, Inc. ("**JHL**"), an exempted company with limited liability organized under the laws of the Cayman Islands, (each of which Genentech and JHL a "**Party**," and together the "**Parties**").

WHEREAS, the Parties entered into that certain Escrowed Settlement Agreement dated May 15, 2020 (the "**ESA**"), wherein, among other provisions, JHL agreed in Section 6 to reimburse Genentech for Genentech's reasonable costs associated with investigating and litigating against JHL, all in a total amount not to exceed ▮Redacted▮ (the Restitution Cap);

WHEREAS, the ESA states that none of the individuals listed as custodians on Exhibit B to the ESA may work on the development, manufacturing process, analytical methods/assays, regulatory submissions, or commercialization of any biosimilar of a Genentech product for a certain time specified in the ESA;

WHEREAS, the ESA was released from escrow on June 18, 2020, pursuant to Section 9.4 of the ESA;

WHEREAS, on June 11, 2020 and August 7, 2020, Genentech submitted documentation of its costs to JHL pursuant to Section 6.1.2 of the ESA ("Genentech's Cost Documentation");

WHEREAS, the Parties now desire to modify Section 6.1.3 of the ESA and to remove certain individuals from those listed in Exhibit B to the ESA;

NOW, THEREFORE, in consideration of the foregoing promises and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. Section 6.1.3 of the ESA is deleted in its entirety and replaced with the following:

   6.1.3 <u>Time for Payment</u>. JHL shall reimburse Genentech for its documented costs, up to the Restitution Cap, pursuant to the following schedule: ▮Redacted▮ shall be due on September 11, 2020; an additional ▮Redacted▮ shall be due on March 29, 2021; and an additional ▮Redacted▮ shall be due on September 2, 2021. By no later than August 21, 2020, Genentech shall provide JHL with wire transfer information sufficient to allow JHL to make payment. Ten Business Days prior to the due date for each of the two additional payments, Genentech shall confirm that the wire transfer information previously provided should be used to make the additional payment or provide new wire transfer information. If the information regarding the wire transfer is not received at least ten Business Days prior to the due date for either additional payment, that additional payment shall be due ten days following receipt of such wire transfer information. For avoidance of doubt, JHL has waived any right to dispute the reasonableness of Genentech's costs as set forth in Genentech's Cost Documentation and agrees that it will pay the entire

amount of the Restitution Cap ▮Redacted▮) on the schedule described in this Section.

2.  Section 2.4 of the ESA is deleted in its entirety and replaced with the following:

> 2.4  None of the individuals listed as custodians on **Amended Exhibit B** (together, the "**Custodians**" and each of them a "**Custodian**") may work on—and JHL will preclude them from working on—the development, manufacturing process, analytical methods/assays, regulatory submissions, or commercialization of any Biosimilar of a Genentech Product or any other Biosimilar of any other Genentech product at JHL for a period of three (3) years from the Date of the MOU.  To the extent JHL seeks an exception to the prohibition in the prior sentence for any Custodian, then the parties will meet and confer in good faith regarding any such Custodian on a case-by-case basis.  Any dispute regarding treatment of any such Custodian under this subsection will be decided by the Magistrate Judge pursuant to Section 10.  Genentech agrees to keep Amended Exhibit B, Exhibit B (superseded with this Amendment), and Attachment A to Exhibit A of the ESA confidential and will not disclose their contents except (a) pursuant to the Protective Order in the Action; or (b) as necessary to enforce the terms of this Section 2.4.  To the extent the Permanent Injunction the District Court enters differs from the language in this Section 2.4, this Section 2.4 shall automatically, and without further action required by either party, be amended to be identical to the Permanent Injunction.

3.  Exhibit B of the ESA is deleted in its entirety and replaced with **Amended Exhibit B**, attached hereto.

4.  This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have each caused this Amendment to be executed by their duly-authorized representatives effective as of the Effective Date.

GENENTECH, INC.

By:    _Mary F. Riley_

Name:    Mary F. Riley

Title:    Vice President, Litigation

2

JHL BIOTECH, INC.

By: _____

Name:  James Z Huang

Title:  Executive Chairman and CEO