KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - #158708
epeters@keker.com
LAURIE CARR MIMS - #241584
lmims@keker.com
STEVEN P. RAGLAND - #221076
sragland@keker.com
CODY S. HARRIS - #255302
charris@keker.com
ELIZABETH K. McCLOSKEY - #268184
emccloskey@keker.com
SEAN M. ARENSON - #310633
sarenson@keker.com
MAYA PERELMAN - #318554
mperelman@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Plaintiff
GENENTECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GENENTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> JHL BIOTECH, INC., XANTHE LAM, an individual, ALLEN LAM, an individual, JAMES QUACH, an individual, RACHO JORDANOV, an individual, ROSE LIN, an individual, JOHN CHAN, an individual, and DOES 1-50, <br><br> Defendants. | Case No. 3:18-cv-06582-WHA <br><br> **JOINT RESPONSE RE:  ORDER RE STIPULATED CONSENT JUDGMENT** <br><br> Dept.:     Courtroom 12 - 19th Floor <br> Judge:    Hon. William Alsup <br><br> Date Filed: October 29, 2018 <br> Trial Date: January 25, 2021 |

Pursuant to the Court's Order re Stipulated Consent Judgment (Dkt. No. 247), Plaintiff Genentech, Inc. ("Genentech") and Defendant JHL Biotech, Inc. ("JHL")—collectively the "Parties"—hereby jointly submit this response to the two questions posed by the Court.

**1. Aside from Exhibit B's list of specific individuals, withheld for privacy concerns, do the submitted documents comprise the entirety of the agreement between the parties, or do side agreements remain, either written or unwritten?**

The documents submitted in conjunction with the Stipulation for Entry of [Proposed] Consent Judgment and Permanent Injunction as to JHL Biotech, Inc. (Dkt. Nos. 246 and 246-1) comprise the entirety of the agreement between Genentech and JHL. There are no other agreements, written or oral, of any sort between Genentech and JHL.

**2. Why do the parties, if they remain free to privately settle and agree to terms, want the Court to grant an injunction that may contain anticompetitive aspects?**

**a. A Preliminary Injunction and Consent Judgment provides significant benefit to Genentech.**

The Parties believe that the Stipulated Consent Judgment and Permanent Injunction (Dkt. No. 246) will provide important benefits to Genentech beyond the contractual agreement. Although the Settlement Agreement will remain in force regardless of whatever permanent injunction, if any, the Court enters, the joint request for stipulated permanent injunctive relief was a material term of the settlement the Parties negotiated.

When parties to a settlement agree to stipulated injunctive relief, they do so principally because the party for whose benefit the injunction is entered can seek immediate relief from the court for a violation of the injunction rather being forced to initiate a new lawsuit for breach of contract. Filing a new action is often more time consuming and resource intensive than preparing a motion to enforce the injunction and judgment. And here, because a new breach-of-contract case would be unlikely to be assigned to this Court (at least in the first instance), both the Parties and the Court might be forced to expend unnecessary time and resources bringing an unfamiliar judge up to speed about the case's facts and procedural history.  Moreover, litigating breach-of-contract claims to conclusion could be lengthy, whereas a potential breach of this Court's permanent injunction and judgment could be resolved more expeditiously.

Genentech maintains that a permanent injunction and consent judgment by this Court will provide two additional benefits with regard to enforcement and deterrence, as discussed below. JHL does not support or make any concession with regard to either of these points.

First, Genentech believes that a permanent injunction and consent judgment will have extraterritorial reach and power far beyond that of a contract between two parties. For example, in Taiwan—where JHL has operations and its worldwide headquarters—courts generally recognize and enforce judgments from United States federal courts. *See*, *e.g.*, *Baldwin Hardware Corp. v. Franksu Enter. Corp.*, No. 90-cv-4919-WDK (Bx), 1992 WL 340766, at *2 (C.D. Cal. Aug. 21, 1992) (recognizing enforceability of foreign judgments in Taiwan); Yen-chia Chen, *Recognition and enforcement of a Foreign Civil Judgment or Ruling in Taiwan* (Nov. 28, 2019), http://www.giant-group.com.tw/en/law-detail-793.html ("Many cases show that the courts in Taiwan have recognized and enforced various foreign judgments rendered by courts in different jurisdictions, including but not limited to . . . the United States of America"). Taiwanese law also specifically provides that, subject to exceptions not relevant here, "a final and binding judgment by a foreign court shall be recognized." Taiwan Code of Civ. Proc. art. 402. A permanent injunction and consent judgement, therefore, provides better and more direct protection against violative conduct in the jurisdiction in which JHL is headquartered.

Second, Genentech believes that a permanent injunction and consent judgment serves both Genentech's and the public's interests in deterring future wrongdoing. As this Court recognized in its Omnibus Order granting preliminary relief:

> There is public interest in vindicating intellectual property rights and prohibiting illegitimate competition. This is particularly true where biosimilar developers must expend huge amounts of time and capital to reverse engineer the innovator's manufacturing process and undergo rigorous regulatory review. Due to the high barrier to market entry, there remains an acute need to keep the playing field level and tolerate only legitimate competition.

Ominbus Order (Dkt. No. 128) at 33. Courts in this District and Circuit have repeatedly emphasized the important deterrent value of injunctive relief. *See*, *e.g.*, *Zynga Game Network, Inc. v. Goh*, No. C-09-05297-SBA (DMR), 2011 WL 13376996, at *16 (N.D. Cal. Feb. 14, 2011) ("[I]njunctive relief would have a deterrent effect and serve the public's interest by mitigating

against consumer confusion caused by Defendant's infringing activity."), *report and recommendation adopted,* No. C 09-05297 SBA, 2011 WL 13376997 (N.D. Cal. Mar. 1, 2011); *NuScience Corp. v. Henkel*, No. CV 08-2661GAF (FFMX), 2009 WL 10700220, at *12 (C.D. Cal. Apr. 14, 2009) ("[A] permanent injunction would advance the public interest by serving as a deterrent to Defendants and third parties that infringe others' trademarks or falsely represent that their goods are identical or from the same source."); *Twentieth Century Fox Film Corp. v. Saundry*, No. CV 16-8463-RSWL-MRWX, 2017 WL 3197227, at *6 (C.D. Cal. July 27, 2017) ("[T]his district has seen an expansion of cases with defendants trafficking in the pirated movie and television DVD industry, and a permanent injunction would serve the public interest by deterring these individuals.").

Thus, in Genentech's view, a permanent injunction and consent judgment sends a much stronger message in this closely-watched case than a purely private settlement between the Parties. It tells the world—including the Parties' own employees and others in the industry—that theft of intellectual property is not only illegal and wrong, but also that competitors will pay a price if they try to compete unfairly through misappropriation of trade secrets. It thus encourages innovation, creativity, and competition. *See Carlson Pet Prod., Inc. v. Supra Nat'l Express, Inc.*, No. 219CV06312RGKMRW, 2019 WL 7882082, at *4 (C.D. Cal. Oct. 23, 2019) ("[A] permanent injunction serves the public interest because it encourages future innovation").

\*   \*   \*

Genentech sought permanent injunctive relief from the inception of this case (Compl. at 71 (Dkt. 1), and it was a material aspect of resolving this hotly contested litigation. Genentech believes such relief is necessary to ensure compliance with the settlement terms, to protect against future harm, and to educate the public about the pitfalls of trade secret misappropriation.

### b. The Proposed Preliminary Injunction and Consent Judgment is not Anticompetitive.

An injunction remedying alleged misappropriation of trade secrets is not anticompetitive. Accordingly, both federal and California law authorize injunctions to prevent and remedy misappropriation of trade-secret information. The federal Defend Trade Secrets Act specifically

3

provides that "a court may . . . grant an injunction . . . to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable." 18 U.S.C. § 1836(b)(3). California's Uniform Trade Secrets Act similarly authorizes permanent injunctive relief. *See* Cal. Civ. Code § 3426.2 ("Actual or threatened misappropriation may be enjoined.").

Because the Court has identified no specific aspect of the stipulated injunction that the Court believes raises anticompetitive concerns, the Parties will address the issue generally. If the Court has any specific or additional questions about any particular aspects of the proposed injunction—or if this submission fails to satisfy the Court's questions in any way—the Parties will be pleased to address those concerns directly in a future submission.

Pursuant to the proposed injunction, JHL has agreed to some limitations on its operations, including by abandoning the biosimilar candidates whose development was the subject of the lawsuit that has been resolved. It is well-settled that such restrictions on a company's operations are justified. In *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 973 (9th Cir. 1991), for example, the court enjoined the defendant from selling "curlicue french fries worldwide" in order to "protect the secrecy of misappropriated information," "eliminate any unfair head start the defendant may have gained," and place the defendant "in the position it would have occupied if the breach" had not occurred. In *Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 1528 (1997), the California Court of Appeal approved a permanent injunction preventing the defendant from "doing business with any of the 32 entities who switched their business from Morlife to Burlingame after being unlawfully solicited" because "[t]he misappropriation of Morlife's trade secrets justifies application of the injunction to any Morlife customer about which appellants acquired information while they were in Morlife's employment."

In this case, the Court issued a preliminary injunction stating that "Defendants shall not offer to sell, market, commercialize, or sell biologics, therapeutics, drugs, and/or products of any kind that utilize, embody, or were developed, in whole or in part, with the benefit or use of" a specified subset of alleged Genentech trade secrets. Dkt. No. 128 at 36. The Parties are now asking the Court to make that order permanent but limited to the JHL product candidates that may have been affected by the alleged misappropriation. The proposed injunctive terms targeting only

1     particular JHL product candidates concern only those candidates (JHL 1101, 1921, 1922, 1149,
2     and 1188) that were directly associated with the alleged wrongdoing at issue in this litigation.
3     Thus, the restriction is reasonably tailored because abandoning development of those candidates
4     is the most effective and efficient means to ensure that JHL does not use Genentech trade secret
5     information to develop biosimilars to Genentech's products, and to "eliminate any unfair
6     headstart the defendant may have gained" through the misappropriation.  *Lamb-Weston, Inc.* 941
7     F.2d at 973.
8           The proposed injunction in no way prevents JHL from developing biosimilars that would
9     compete with Genentech's medicines.  It specifically provides that "[n]othing . . . prevents JHL
10    from seeking to develop a Biosimilar of any Genentech product in the future, provided that those
11    development efforts . . . do not rely in whole or in part on any Genentech Confidential
12    Information . . . ."  Dkt. No. 246 at ¶ 3.  Thus, the injunction explicitly permits competition and
13    allows JHL to pursue any development paths it wishes, as long as such paths do not involve use
14    of misappropriated trade secret information.
15          Similarly, the proposed injunction imposes time-limited restrictions on a specified list of
16    JHL employees to protect against the use of Genentech trade secret information in JHL's
17    development efforts.  The Parties' investigation determined that each of these specified
18    individuals possessed Genentech documents.  The vast majority of the individuals on the list no
19    longer work at JHL, but for those few who still do, JHL wants to wall them off from working on
20    any Genentech biosimilar for the next 23 months to protect JHL from even the suggestion that
21    these employees are using Genentech trade-secret information in the course of their work.
22          As numerous courts have recognized, courts may impose specific restrictions on the work
23    of an employee who was involved in trade secret misappropriation.  For example, in *Waymo LLC*
24    *v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *13 (N.D. Cal. May 15,
25    2017), this Court placed significant restrictions on former Waymo employee Anthony
26    Levandowski's  ability to work on Uber's competing LiDAR project, ordering that "defendants
27    shall immediately (a) remove him from any role or responsibility pertaining to LiDAR; (b) take
28    all steps in their power to prevent him from having any communication on the subject of LiDAR

with any officer, director, employee, agent, supplier, consultant, or customer of defendants; and (c) prohibit him from consulting, copying, or otherwise using the downloaded materials in any way." *See also The Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009) ("[A] court may enjoin tortious conduct by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer"); *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1021–22 (2005) (explaining that while California "Business and Professions Code section 16600 prohibits contracts restraining employees from engaging in a lawful profession[,] [m]isappropriation of trade secret information constitutes an exception to section 16600.").

Here, the limited restriction on specific employees is a reasonable measure to protect Genentech's trade-secret information and prevent future misappropriation.  It applies only to JHL employees who were found to possess Genentech documents, and nothing in the proposed injunction would prohibit JHL from employing those individuals in any capacity other than working on biosimilars to Genentech products for the next 23 months.  Moreover, the proposed injunction (1) allows JHL to seek an exception for identified employees whom JHL wishes to assign to a project developing a biosimilar to a Genentech product, and (2) provides a mechanism to resolve any disputes that may arise regarding any such potential assignment.  Dkt. No. 246 at ¶ 4 ("To the extent JHL seeks an exception to the prohibition…Genentech and JHL will meet and confer in good faith.  Any dispute regarding treatment of any such individual is hereby referred to the Magistrate Judge for a final and binding decision.").

\*   \*   \*

The Parties believe that the proposed permanent injunction and consent judgment is not anticompetitive.  To the contrary, they believe the injunctive terms are reasonable, narrowly tailored to address the potential harms here; further, they believe those terms will encourage fair competition among Genentech, JHL, and other biosimilar competitors as they move forward in their respective development efforts and operations.  The Parties respectfully ask the Court to enter the relief requested in their Stipulation for Entry of [Proposed] Consent Judgment and Permanent Injunction as to JHL Biotech, Inc. (Dkt. No. 246).

Dated: September 30, 2020                           KEKER, VAN NEST & PETERS LLP

                                            By:    *s/Steven P. Ragland*
                                                   ELLIOT R. PETERS
                                                   LAURIE CARR MIMS
                                                   STEVEN P. RAGLAND
                                                   CODY S. HARRIS
                                                   ELIZABETH K. McCLOSKEY
                                                   SEAN M. ARENSON
                                                   MAYA PERELMAN

                                                   Attorneys for Plaintiff
                                                   GENENTECH, INC.

Dated: September 30, 2020                           O'MELVENY & MYERS LLP

                                            By:    *s/Michael F. Tubach*
                                                   DARIN WALTER SNYDER
                                                   MICHAEL F. TUBACH
                                                   DAVID R. EBERHART
                                                   JAMES KEITH ROTHSTEIN

                                                   Attorneys for Defendant
                                                   JHL BIOTECH, INC.

## **ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), Steven P. Ragland attests that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

                                                   *s/Steven P. Ragland*
                                                   STEVEN P. RAGLAND